UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

KENNEY, BECKER LLP and
EUGENE S. BECKER,

                      Plaintiffs,             Docket 06 Cv 2975 (JSR)

       -against-

MARTIN S. KENNEY,

                      Defendant.

-------------------------------------------------------------------x

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR REARGUMENT & RENEWAL OF
<u>STATE COURT ORDERS COMPELLING ARBITRATION</u>**

<u>**Preliminary Statement**</u>

      By Notice of Removal filed April 17, 2006, defendant removed this action to this court from the Supreme Court of The State of New York in accordance with the provisions of 9 U.S.C. § 205.

      Plaintiffs' move this court for reargument and renewal of the state court order granting defendant's motion to compel arbitration and denying plaintiffs' cross motion to stay arbitration. Upon reargument and renewal, the court should, applying federal law, deny and dismiss defendant's motion to compel arbitration dated January 6, 2006 and stay and set aside defendant's demanded arbitration in Miami, Florida and proceedings related thereto.

## Statement of The Case

**1. Prior Proceedings.**

Plaintiff Kenney, Becker LLP (the "Partnership") is a New York Registered Limited Liability Partnership formed in accordance with the provisions of Article 8-B of the New York Partnership Law to practice as legal consultants pursuant to section 53 of the Judiciary Law of the State of New York and Part 521 of the Rules of the New York Court of Appeals.

Martin Kenney and Eugene Becker are the sole members of the Partnership, each licensed in New York State as Foreign Legal Consultants under part 521 of the Rules of the Court of Appeals of the State of New York and section 53 of the New York Judiciary Law

The Partnership operated under a written a Partnership Agreement, consisting of three writings, as follows: a Registered Limited Liability Partnership Agreement for Kenney Becker, Solicitors LLP, dated June 15, 1995 (the "1995 Agreement"); the First Amendment and Modification to Registered Limited Liability Partnership Agreement for Kenney, Becker, Solicitors LLP, effective July 1, 1996 (the "First Amendment"), and the Second Amendment and Modification to Registered Limited Liability Partnership Agreement for Kenney, Becker, Solicitors LLP, now known as Kenney, Becker LLP, dated as of January 1, 2001 (the "Second Amendment").

The First Amendment provides that each partner may provide legal services jointly or individually, upon compliance with its terms. Subsequent to the effective date

of the First Amendment, either partner's legal services were categorized as either "Joint Work" or "Extra Partnership Work" under the terms of the Partnership Agreement.

The First Amendment requires, *inter alia*, disclosure to the other partner of Extra Partnership Work. Paragraph 8, provides that the "partners shall agree on a list of current or prospective client matters that shall make-up the *corpus* of work known as "Extra-Partnership Work."  Paragraph 9 of the First Amendment provides, "In the event that, after 1 July 1996, either ESB [plaintiff Becker] or MSK [defendant Kenney] choose to perform Extra Partnership Work, they must (i) notify the other, by memorandum (or another writing), and (ii) make their own arrangements concerning the servicing of the clientele which will be the subject of such Extra-Partnership Work."

Plaintiff Kenney, Becker LLP commenced this action with the filing of a summons and complaint on October 12, 2005 with the Clerk of the Supreme Court of The State of New York, County of New York (exhibit A[1]). The complaint seeks a judgment directing Kenney to account to the Partnership for all legal services provided by him subsequent to July 1996.

On January 6, 2006, defendant filed a motion with the New York State Supreme Court to compel arbitration and a Notice for Arbitration before the International Centre for Dispute Resolution ("ICDR") for arbitration in Miami, Florida (exhibit B). Defendant asked that the state court compel arbitration in accordance with the Notice. The Partnership cross-moved the court for an order staying arbitration under the notice filed by defendant (exhibit G). The Partnership argued that the relief requested by defendant

---

[1] Exhibit references are to exhibits comprising defendant's composite exhibit 1.

in arbitration included matters which are non-arbitrable, beyond the scope of an arbitrator's powers under the Partnership Agreement, and that Miami, Florida as the place of arbitration is improper.

The motion and cross motion were orally argued (exhibit J–A). At oral argument, the court commented that defendant's requested relief in arbitration included "an attempt to modify the written agreement among the parties.. . But that can't be done by the arbitrator" (exhibit J-A, page 30). The court observed that the isues have no connection to Miami, but stated that venue of arbitration is "not one of the issues here in the court we deal with when it's an arbitration" (exhibit J-A, page 36).

By orders entered February 15, 2006, the Supreme Court of the State of New York granted defendant's motion to stay the action pending arbitration and denied plaintiffs' cross-motion to stay arbitration proceedings commenced by defendant in the International Centre for Dispute Resolution for hearing in Miami, Florida (exhibit H[2]).

Plaintiffs' filed a notice of appeal to the Appellate Division of The Supreme Court of The State of New York, First Judicial Department (exhibit I). By order entered March 30, 2006, the Appellate Division denied plaintiffs' motion to stay arbitration pending appeal (exhibit N). The appeal has not been perfected in state court.

On April 17, 2006, defendant filed a Notice of Removal "pursuant to 9 U.S.C. § 205 and 28 U.S.C. § 1446" removing to this court the state court action. In accordance with the Individual Rules of Practice, counsel for the parties appeared before the Honorable Jed S. Rakoff, U.S.D.J., on April 24, 2006. The court granted an order

---

[2] The order also granted the motion of Eugene S. Becker for leave to intervene.

staying arbitration through May 24, 2006. Prior thereto, the ICDR requested and the parties submitted papers on plaintiffs' objections to jurisdiction and venue of the demanded arbitration.

**2. The Partnership.**

The Partnership was formed and initially operated under a Partnership Agreement dated June 15, 1995, entitled "Registered Limited Liability Partnership Agreement for Kenney, Becker Solicitors LLP, dated as of the 15th day of June 1995" (the "1995 Agreement").

The 1995 Agreement established the partnership, and provided, *inter alia,* for the participation interests of Martin Kenney and Eugene Becker as sixty per cent and forty per cent, respectively. Each partner was to practice in New York as foreign legal consultants. Mr. Kenney's address was shown as 100 Central Park West, New York, New York.

Effective July 1, 1996, the partners agreed to amend and modify the Initial Agreement and entered into the "First Amendment and Modification to Registered Limited Liability Partnership Agreement for Kenney, Becker Solicitors LLP, dated as the first day of July 1996" (the "First Amendment"). The underlying purpose of the First Amendment is set forth in the third recital paragraph, as follows:

> "WHEREAS, an important event has occurred which has given rise to ESB's [Becker] and MSK's [Kenney] desire to enter into this First Amendment. This event relates to the recent formation… of…Interclaim, Ltd….Should the First and Second Offerings be successful…MSK will, on or about such event, be required to move to the Islands of Bermuda or to another locale to assume the position of President if the Company. In such event, and only in such event, it is agreed, he shall thereafter hold a nominal interest in the Partnership, not

exceeding 1% of the profits, losses and his capital interest…of the Partnership, should it then be subsisting;"

The First Amendment provided, effective July 1, 1996, for a fifty-fifty allocation of partnership profits and losses between Messrs. Becker and Kenney. Further, in the event of Mr. Kenney's relocation from New York, his interest in the profits and losses of the Partnership would be reduced to one-per cent, should the Partnership subsist. The Partnership continued to subsist thereafter until plaintiff Mr. Becker's withdrawal from the Partnership in February 2005, approximately eight and a half years after the effective date of the First Amendment. Subsection (v) of Article 18.3 of the First Amendment provides in part: "In the event of such relocation or in the event of the completion of the Second Offering, the Partnership shall have the right but not the obligation to continue to use the name of Kenney Becker Solicitors LLP for its business and MSK shall retain his capital account in the Partnership and receive 1% of the profits and losses of the Partnership."

The First Amendment provided that each partner might provide legal services jointly or individually, upon compliance with its terms. Joint Work and Extra-Partnership Work are defined. In full, the second recital of the First Amendment provides:

> "WHEREAS, events have occurred which have given rise to the agreement between ESB and MSK to enter into this First Amendment. MSK has Spent approximately three months to assist divers professionals in the formation of interclaim, Ltd., about which see *infra*, while ESB has continued to service then existing and new clientele of the Partnership during this period, and both ESB and MSK continue in their respective endeavours. ESB and MSK have reached an agreement as between them to reconstruct their jural relationship, as partners, to permit each to elect, in their sole discretion, to perform legal professional services, jointly, on individual cases, where it is agreed so to do. In such event, ESB and MSK have agreed a formula to allocate profit and loss from the Partnership to

6

one another, deriving from such joint work (hereinafter referred to as Joint Work). Further, ESB and MSK have agreed, subject to applicable law and legal professional ethical rules, to enter into this First Amendment to, *inter alia*, memorialize their agreement to the effect that there may subsist a separate sub-spacies of Sole and Separate Work, where they shall each have the right to conduct Sole and Separate Work, separate and apart from, and not under the aegis or the name of the partnership (hereinafter called, *Extra-Partnership* Work);"

On February 19, 1997, the partners met at the offices the Partnership accountant in New York City. The meeting memorialized the effective date of the reduction of Mr. Kenney's interest in the Partnership from fifty per cent to one percent as anticipated in the First Amendment. The partners allocated the profits and losses as of that date, and divided other partnership property. The meeting memorandum provides in part: "1. The operable cut-off date was settled at the close of business on February 19, 1997. 2. The profit sharing and capital interests were to change from a 50/50 relationship to a 99/1 relationship in favor of Eugene." The meeting memorandum does not mention nor concern Joint Work and Extra-Partnership Work.

Subsequently the partners executed a second amendment dated as of January 1, 2001 (the "Second Amendment").  The purpose was, as stated therein, "to exclude from doubt any matter concerning any actual or purported limitation concerning clause 18.2 of said First Amendment and Modification." Clause 18.2 of the First Amendment, entitled "Limitation of Powers" provided that certain partnership actions, including the borrowing of money or pledge of Partnership assets, required approval of both partners. In connection with a bank loan, clause 18.2 was deleted and replaced with a provision providing for the singular authority of Mr. Becker to borrow money on behalf of the

Partnership and otherwise adopting the February 19, 1997 memorandum. The Second Amendment does not mention nor concern Joint Work and Extra-Partnership Work.

### 3. The Partnership Requests an Accounting

Subsequent to the effective date of the First Amendment, either partner's legal services were categorized as "Joint Work" or "Extra Partnership Work."  As provided for in the First Amendmentl, either partner may perform legal services separate and apart from the Partnership. The First Amendment requires disclosure to the other partner of Extra Partnership Work. Paragraph 8 of the First Amendment provides, the "partners shall agree on a list of current or prospective client matters that shall make-up the *corpus* of known as "Extra-Partnership Work."  Paragraph 9 of the First Amendment provides, "In the event that, after 1 July 1996, either ESB or MSK choose to perform Extra Partnership Work, they must (i) notify the other, by memorandum (or another writing), and (ii) make their own arrangements concerning the servicing of the clientele which will be the subject of such Extra-Partnership Work."

By his notice of withdrawal dated February 17, 2005, plaintiff Becker caused the Partnership to be placed in dissolution. On June 2, 2005, Mr. Becker on behalf of the Partnership, wrote the Mr. Kenney requesting a "comprehensive list of all matters in which [he] has provided legal services after July 1, 1995."

By correspondence dated June 24, 2005, counsel for defendant Kenney responded. Counsel argued that paragraph 8 of the First Amendment, relating to Extra-Partnership Work, "only addresses circumstances of performing 'extra-partnership work' when Messrs. Kenney and Becker were equal partners who shared an office."  There is

nothing in the Partnership Agreement to support said contention. The parties did not agree such a circumstance.

Plaintiff commenced this action with the filing of a summons and complaint on October 12, 2005 (exhibit A). The complaint seeks a judgment directing Kenney to account to the partnership for all legal services provided by him subsequent to July 1996. In light of the position taken by defendant's counsel, the complaint places in issue the continued efficacy of paragraph 8 of the First Amendment by alleging that legal services provided by Mr. Kenney subsequent to July 1996 is "Joint Work" rather than "Extra Partnership Work."

### 4. Defendant's Demand for Arbitration

On January 6, 2006, defendant simultaneously filed a motion to compel arbitration and a Notice for Arbitration before the International Centre for Dispute Resolution ("ICDR") for arbitration in Miami, Florida. Defendant asked the state court to compel arbitration in accordance with the Notice. By its cross-motion the Partnership sought to stay the demanded arbitration.

Defendant seeks to submit to arbitration the controversy framed by its counsel's previous response to the Partnership's pre-action demand for an accounting. Defendant asks that the arbitrator determine that paragraph 8 of the First Amendment is not effective by reason of changed circumstances.

Paragraph 40 of defendant's Statement of Claim, alleges:

> "Mr. Kenney says that by virtue of the effect of Mr. Kenney's effective withdrawl [sic] from the Partnership as of 19th February, 1997; and based on his move from New York to Ireland; the protocol contained in the First Amendment designed to justly and fairly allocate partnership

overhead costs to the partner who might perform Extra-Partnership Work from the Partnership's office premises in New York City no longer had any purpose or effect and was subsumed by the substantial reconstruction to the parties' contractual relationship effective 19th February, 1997 from '50/50'% partners to '99/1'% partners."

Paragraph 41 of the Statement of Claim, alleges:

"The Partnership's asserted entitlement to all of the fees earned by MKS or Mr. Kenney for legal professional services rendered to clients of the Claimant and his law firm is based upon a false construction of a nine-year old amendment to the Partnership Agreement; in that the Respondents' construction is made completely out of context. The impugned construction is dependent upon the presence of a contractual setting where the Partnership was owned by Mr. Becker and Mr. Kenney on a 50/50 basis."

Mr. Kenney asks that the Arbitrator grant

"(c) a declaration that (i) effective 19th February, 1997, the provisions contained within the First Amendment dated 1st July, 1996 governing the carrying out of, and accounting for, Extra-Partnership Work no longer subsisted or endured due to the effective withdrawal of Mr. Kenney from the Partnership (save for his nominal or inactive 1% interest in the profits, losses and distributable cash therefrom [sic]); (ii) at all material times Mr. Kenney had the right to establish MKS as a separate legal professional practice; (iii) the Respondents have no right of ownership of or any interest in MKS; and (iv) that, as a consequence, Mr. Kenney has no obligation to account to the Respondents for any Extra-Partnership Work or legal professional income of MKS or Mr. Kenney" [emphasis supplied]."

On January 10, 2006, plaintiffs' counsel received correspondence from the International Centre for Dispute Resolution ("ICDR") acknowledging receipt from defendant Kenney of a Demand for Arbitration dated January 6, 2006. The ICDR correspondence refers to a contract between the parties "containing a clause providing for administration by this ICDR," and further states, "The Arbitration Clause stipulates

that the hearing be held in Miami, FL."  The Partnership Agreement neither provides for arbitration before the ICDR nor for hearing in Miami.

## Argument

### 1.    The Parties' Arbitration Agreement Falls Under The Convention on The Recognition of Enforcement of Foreign Arbitral Awards of June 10, 1958

Defendant removed this case pursuant to 9 U.S.C. § 205 and 28 U.S.C. § 1446 on the basis that the agreement to arbitrate disputes between the parties is subject to the Convention on The Recognition of Enforcement of Foreign Arbitral Awards of June 10, 1958 (9 U.S.C. § 205, *et seq.,* the "Convention"). Plaintiffs do not dispute the propriety of the removal or that the arbitration agreement falls under the Convention (9 U.S.C. § 202).

### 2.    Upon Removal, The Federal Court Can Review State Court Orders *De Novo.*

Although the federal court takes the case on removal exactly as the case stood in state court, Sun Forest v. Shvili, 152 F.Supp. 2d 367 (S.D.N.Y., 2001), the district court is free to dissolve or modify state court orders because state court orders are not considered to be the "law of the case." Quinn v. Aetna Life & Casualty Co., 616 F.2d 38,40 (2d Cir. 1980). For example, a district court is not barred from granting summary judgment following removal even though the state court denied a summary judgment motion. Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 531 (9th Cir 2000).

28 U.S.C. § 1450 provides in pertinent part: "Whenever any action is removed from a State court to a district court of the United States ... [a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court."

Once a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal.  Ex parte Fisk, 113 U.S. 713 (1885); Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County 415 U.S. 423, 437-438 (1974).

In Ex parte Fisk, it was argued that an order to take the deposition of a witness issued by the state court prior to removal was binding in federal court and could not be reconsidered by the federal court, notwithstanding its inconsistency with certain federal statutes. The Supreme Court rejected this contention, holding "The petitioner having removed his case into the Circuit Court has a right to have its further progress governed by the law of the latter court, and not by that of the court from which it was removed; and if one of the advantages of this removal was an escape from this examination, he has a right to that benefit if his case was rightfully removed.' Ex parte Fisk, 113 U.S. 713, 725-726.

Upon removal federal law governs the action. Granny Goose Foods, Inc. v. Brotherhood of Teamsters, 415 U.S. 423, 441 (1974) In Granny Goose, a state court issued a temporary restraining order preventing union workers from striking. The case was then removed to federal court. The workers went back on strike in violation of the TRO six months after its issuance, and the plaintiffs moved for contempt. Applying federal law, the district judges held that the TRO had automatically expired 10 days after its issuance.  The Supreme Court affirmed.

In <u>General Contractors Ass'n of New York, Inc. v. Local No. 46, Metallic Lathers</u> <u>Union and Reinforcing Iron Workers New York and Vicinity</u>, 1990 WL 33584 (S.D.N.Y., 1990), the court, applying federal law, dissolved a stay of arbitration issued by the state court prior to removal, holding that under federal law the stay had expired. The court, citing <u>Granny Goose</u>, held upon removal the action is governed by federal law.

In this action, the state court, on application of its view of state law, granted defendant's motion to compel arbitration in accordance with the demand for arbitration before the ICDR in Miami, Florida. The state court held that matters of arbitrability and location of the arbitration hearing are for the arbitrator and not the court. Now upon removal, this federal court should reconsider this matter *de novo*, applying federal law. Under federal law, the court rather than the arbitrator determines the arbitrability of issues and the place of hearing, before the inchoate arbitration proceeds.

### 3.    <u>The Court May Not Compel Arbitration Outside Its District</u>[3]

Over plaintiffs' objection, the state court granted defendant's motion to compel arbitration in accordance with his Notice for Arbitration in Miami, Florida. Counsel for defendant argued "the court doesn't have to decide where the venue of the arbitration is to be or what the rules of the arbitration is to be. New York courts do not generally

---

[3] The submissions in this section and before are made without prejudice to plaintiffs' contentions that reject that defendant's Demand for Arbitration (save for *de minimis* aspects) relates to matter covered by the parties' governing Partnership Agreement. Plaintiffs respectfully demonstrate that said Demand traverses matters and circumstances not part of or supported by the Partnership Agreement and in fact constitute defendant Kenney's attempt to re-write the Partnership Agreement by having an arbitrator expound on his demand. The rearrangement defendant Kenney references were never agreed to by the parties. They are, if anything, matters for a court and not subject to any arbitration provision.

provide that kind of direction to arbitrators what procedures to use, what rules to use and where the venue is to be"  (exhibit L, page 26). The state court agreed, compelled arbitration and denied the cross motion to stay arbitration. The court stated that venue of arbitration is "not one of the issues here in the court we deal with when it's an arbitration" (exhibit L, page 36).

Contrary to New York State law, the place of arbitration is a court determination under federal law. In <u>Oil Basins Ltd. v. Broken Hill Proprietary Co</u>., 613 F.Supp. 483 (S.D.N.Y.1985), District Judge Cannella held that a court "only has discretion to compel arbitration in its own district or in a place specified in the contract." *Id.* at 488. Where "no place was specified explicitly or implicitly," then "the court can only order the parties to proceed to arbitration in [its] district." *Id.* Judge Martin followed this holding in <u>Rosgoscirc on Behalf of SOY/CPI Partnership v. Circus Show Corp.</u>, 1993 WL 277333 (S.D.N.Y. 1993); accord: <u>Kipany Productions, Ltd. v. RMH Teleservices, Inc.</u>, 1997 WL 706445 (S.D.N.Y. 1997, McKenna, J.)

9 U.S.C   § 206 provides in pertinent part, "A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States. "

Chapter 2 of the Federal Arbitration Act, which implements the Convention and governs international arbitration agreements like the one at issue here, grants a district court the authority to direct that arbitration be held in accordance with the parties' agreement at a location "within or without the United States." This provision does not, however, give a district court the authority to direct arbitration in a particular location

outside its jurisdiction where no location is provided by the parties' agreement <u>Oil Basins, Ltd. v. Broken Hill Proprietary Co.,</u> 613 F.Supp. 483, 486 (S.D.N.Y.1985); <u>Hughes, Hooker & Co. and Hughes, Hooker (Correspondents) S.A. v. American Steamship Owners Mutual Protection and Indemnity Association, Inc.</u> 2005 WL 13840555 (S.D.N.Y. 2005, Stein, J.)

Arbitration may not be held outside of the Southern District of New York unless the agreement of the parties provides for such the location for arbitration of this dispute. <u>Hughes, Hooker & Co,</u> <i>id.</i> Section 9.18 of Article IX of the Initial Agreement between defendant and Mr. Becker dated June 15, 1995, provides

> "Any controversy or claim arising out of or relating to this agreement shall only be settled by arbitration in accordance with the rules of the American Arbitration Association, one arbitrator, and shall be enforceable in any court having competent jurisdiction. "

The agreement of the parties neither provides for the location of dispute arbitrating, nor provides for a party to choose venue, <u>Hughes, Hooker & Co,</u> <i>id</i>.

The court cannot compel arbitration in a location outside the Southern District of New York. <u>Oil Basins Ltd. v. Broken Hill Proprietary Co</u><i>.,</i> 613 F. Supp. 483 (S.D.N.Y.1985). On reargument, defendant's motion to compel arbitration should be denied, the cross motion to stay arbitration granted and the arbitration proceeding dismissed.

## 4. <u>Under Federal Law Arbitrability Is Determined by the Court</u>

A disagreement about whether an arbitration clause applies to a particular type of controversy is for the court. <u>Howsam v. Dean Witter Reynolds, Inc.</u><i>,</i> 537 U.S. 79, 84, 123 (2002). Under the Federal Arbitration Act "any doubts concerning the scope of

arbitrable issues should be resolved in favor of arbitration. Moses H. Cone Memorial Hospital. v. Mercury Construction. Corp., 460 U.S. 1, 24-25,(1983). Still, it remains the case that arbitration "is a matter of consent, not coercion." Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479, Specifically, "arbitration is a matter of contract,' " and therefore "a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." Vera v. Saks & Co., 335 F.3d 109, 116 (2d Cir. 2003)

As the Supreme Court stated in First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995), "[W]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally ⋯ should apply ordinary state-law principles that govern the formation of contracts." Where the scope of an arbitration agreement is ambiguous, the Federal Arbitration Act's policy favoring arbitration requires that "any doubts ⋯ be resolved in favor of arbitration." Moses H. Cone, 460 U.S. at 24-25, But where the ambiguity relates to who determines arbitrability-that is, the arbitrability of the question of arbitrability-the Act's presumption is reversed and a court ordinarily decides the question. PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1198 (2d Cir.1996); Bell v. Cendant Corp., 293 F.3d 563, 566 (2 Cir, 2002). The issue of arbitrability may only be referred to the arbitrator if "there is ' clear and unmistakable' evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." PaineWebber Inc. v. Bybyk, 81 F.3d 1193, at 1198-99.

Although the arbitration clause is broadly worded, the Partnership Agreement contains provisions limiting its modifications. Article 9.6 of the Initial Agreement provides "No modification of this agreement shall be valid unless such modification is in writing and signed by both of the parties hereto." Paragraph 9.16 of the initial partnership agreement provides, "[N]o waiver of any provision of the agreement shall be valid unless in writing and signed by person or party against whom charged."

The claims that defendant seeks to arbitrate find no basis in the Partnership Agreement. Defendant seeks to modify the terms of the Agreement to reflect changed circumstances. Absent express authority in the Partnership Agreement an arbitrator does not have the authority to modify the contractual terms to reflect alleged changed circumstances The Partnership Agreement specifically prohibits oral modifications and waivers. The presence of these clauses creates an ambiguity, at best, which, under First Options, requires that the district court and not the arbitrator determine the questions of arbitrability, Katz v. Feinberg, 290 F.3d 95 (2d Cir. 2002).

Defendant argues that effective February 19, 1997, the provisions concerning extra-partnership work contained in the First Amendment no longer has "any purpose or effect" and is unenforceable. Defendant asks that the arbitrator declare that "effective 19th February, 1997, the provisions contained within the First Amendment dated 1st July, 1996 governing the carrying out of, and accounting for, Extra-Partnership Work no longer subsisted or endured due to the effective withdrawal of Mr. Kenney from the Partnership." Defendant seeks to have an arbitrator declare, that by reason of changed

circumstances, his purported effective withdrawal from the partnership, the clear terms of the parties agreement should be varied.

In his definition of the partnership agreement, defendant attempts to include oral agreement (exhibit L, page 7, par 15). Defendant attempting to avoid the clear language prohibiting oral modifications to the Partnership Agreement defines the partnership agreement as including an oral agreement (exhibit L, page 6, par. 14). This is not the "agreement" governing the parties' partnership relationship- the instrument that does govern does not encompass or give efficacy to an oral agreement. Defendant is asking the arbitrator to, *inter alia*, rewrite the Partnership Agreement, to delete the express provision that he account to the partnership for legal services provided by him. This attempted revision is not and cannot be derived from the Partnership Agreement, and is not among the issues the parties agreed to be submitted to arbitration. In fact, defendant Kenney himself acknowledges that his contentions are outside or and unsupported by the parties' Partnership- the arrangement that he describes is a superceded "agreement"

Defendant asks that the arbitrator "determine the extent of those [his] obligations in the light of various written and oral modifications of the Initial Partnership Agreement and the course of conduct of the parties (exhibit L, page 13, par. 31). At exhibit L, page 14, paragraph 33, defendant states "Defendant-Respondent expressly alleges in this action that he and Mr. Becker by both wrote and action, did reach new a agreement which superseded the terms describing Extra-Partnership Work in the First Partnership Work in the First Amended Agreement".  Defendant specifically asks that the arbitrator

"[D]etermine the terms of the Partnership Agreement by a review of the written and oral agreements between the parties, including (but not limited to) their cause of conduct."

Defendant is asking that the arbitrator determine that provisions of the Partnership Agreement concerning extra partnership work are no longer enforceable by reason of the changed circumstance of his physical move from New York City to Ireland and his so-called "effective withdrawal." Such claims do not arise out of the Partnership Agreement. Recognizing that the Partnership Agreement has not been modified to include such provisions, respondent asks that the arbitrator declare the applicable provisions no longer "Endured" or "Subsisted" by reason of his "effective withdrawal from the partnership". The partnership agreement does not suspend the operation of the extra partnership provisions by reason of an "effective withdrawal". Defendant seeks a declaration that the Extra-Partnership Work provisions are somehow suspended by alleged oral modifications. Such oral modifications, if they occurred, which they did not, are prohibited by clear terms of the Partnership Agreement. Changed circumstances and the other riders defendant raises find no support in the Partnership Agreement, they are nowhere to be found in very detailed written arrangements the parties effected over a lengthy period from the 1995 agreement to the 2002 Second Amendment.

The essential nature of Mr. Kenney's arbitration request is to avoid his clear and unequivocal contractual and fiduciary obligations to the appellant to account for his, now admitted, Extra-Partnership Work. Defendant's argument is grounded upon the claim that changed circumstances, oral agreements, implied agreements and the parties' course of conduct, rendered the provisions in the Partnership Agreement provisions

concerning Extra Partnership work unenforceable. Such a request made to an arbitrator is improper. The Court should stay arbitration and dismiss the arbitration proceeding.

### Conclusion

For all of the foregoing reasons, the court should granted plaintiffs' application for reargument and renewal of the state court order granting defendant's motion to compel arbitration and denying plaintiffs' cross motion to stay arbitration, and upon reargument and renewal, the court should, applying federal law, stay defendant's demanded arbitration in Miami, Florida and dismiss the arbitration proceeding.

Dated:  New York, New York
           May 1, 2006

/s/ Stephen Latzman
Stephen Latzman, Esq. (SL 6462)
Attorney for Plaintiff
276 Fifth Avenue, Suite 306
New York, New York 10001
(212) 532-3368


To:    Joseph H. Lilly, Esq.
        Attorney for Defendant
        60 East 42nd Street, Suite 1338
        New York, NY 10165

# TABLE OF AUTHORITIES

Sun Forest v. Shvili, 152 F.Supp. 2d 367 (S.D.N.Y., 2001)     11

Quinn v. Aetna Life & Casualty Co., 616 F.2d 38,40 (2d Cir. 1980)     11

Fairbank v. Wunderman Cato Johnson, 212 F.3d 528 (9th Cir 2000)     11

Ex parte Fisk, 113 U.S. 713 (1885)     11

Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck
Drivers Local No. 70 of Alameda County  415 U.S. 423 (1974)     11

General Contractors Ass'n of New York, Inc. v. Local No. 46,
Metallic Lathers Union and Reinforcing Iron Workers New York and
Vicinity, 1990 WL 33584 (S.D.N.Y., 1990)     12

In Oil Basins Ltd. v. Broken Hill Proprietary Co.,
613 F.Supp. 483 (S.D.N.Y.1985)     13

Rosgoscirc on Behalf of SOY/CPI Partnership v. Circus Show Corp.,
1993 WL 277333 (S.D.N.Y. 1993)     14

Kipany Productions, Ltd. v. RMH Teleservices, Inc.,
1997 WL 706445 (S.D.N.Y. 1997)     14

Hughes, Hooker & Co. and Hughes, Hooker (Correspondents) S.A.
v. American Steamship Owners Mutual Protection and Indemnity
Association, Inc. 2005 WL 13840555 (S.D.N.Y. 2005)     14

Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84, 123 (2002).     15

Moses H. Cone Memorial Hospital. v. Mercury Construction. Corp.,
460 U.S. 1, 24-25 (1983)     15

Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468     15

Vera v. Saks & Co., 335 F.3d 109, 116 (2d Cir. 2003)     15

First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)     15

PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1198 (2d Cir.1996)          16

Bell v. Cendant Corp., 293 F.3d 563, 566 (2 Cir, 2002)          16

Katz v. Feinberg, 290 F.3d 95 (2d Cir. 2002)          16

<u>Certificate of Mailing</u>

State of New York   )
                    )ss.:
County of New York)

     Stephen Latzman, an attorney, certifies following:

     On May 1, 2006, I served the within Memorandum upon Joseph H. Lilly, Esq., Attorney for Defendant at 60 East 42nd Street, Suite 1338, New York, NY 10165, by first class mail by depositing a true copy of same in a postpaid properly addressed wrapper in an official depository under the exclusive care and control of the United States Postal Service within the state of New York.

Dated:  May 1, 2006

                              /s/ Stephen Latzman
                              Stephen Latzman, Esq. (SL 6462)
                              Attorney for Plaintiff
                              276 Fifth Avenue, Suite 306
                              New York, New York 10001
                              (212) 532-3368