UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

KENNEY, BECKER LLP and          :
EUGENE S. BECKER,               :
                                :   Case No. 06 Civ 2975 (JSR)
                  Plaintiffs,   :
                                :
        - against -             :
                                :
MARTIN S. KENNEY,               :
                  Defendant.    :
---------------------------------------------------------------x


# DEFENDANT'S MEMORANDUM OF LAW
## IN OPPOSITION TO MOTION FOR REARGUMENT & RENEWAL OF
## STATE COURT ORDERS COMPELLING ARBITRATION


Defendant Martin S. Kenney ("Defendant" or "Mr. Kenney") respectfully submits this Memorandum of Law in opposition to Plaintiffs' motion for reargument and "renewal" of the orders issued by the Supreme Court of the State of New York (the "N.Y. Supreme Court") and the Appellate Division, First Department, of the N.Y. Supreme Court (the "Appellate Division") dated February 9, 2006 and March 30, 2006, respectively (collectively, the "Orders"), granting Defendant's motion to compel arbitration of the disputes between the parties and denying Plaintiffs' cross-motion to stay the arbitration of such disputes which was commenced pursuant to that certain Notice of Arbitration, dated January 6, 2006 (the "Notice of Arbitration"), filed by Defendant with the International Centre for Dispute Resolution (the "ICDR") of the American Arbitration Association (the "AAA").  This Court is requested to deny Plaintiffs' motion and to issue orders either (i) compelling the parties to arbitrate their disputes in compliance with the Orders, and/or (ii) compelling the parties to submit their disputes to arbitration pursuant to the Notice of Arbitration and staying this action pending resolution of said arbitration, as applicable, in the Court's discretion.

## I.     Preliminary Statement.

1.      In the interest of brevity, the Court is referred to (i) Paragraphs 2 – 5 of the Notice of Removal filed with this Court on April 17, 2006 (the "Notice of Removal"), for Defendant's discussion of the diversity of the parties and of the written and oral agreements collectively comprising the "Partnership Agreement" (as such term is defined in paragraph 5 of the Notice of Removal), and (ii) Paragraphs 6 – 11 of the Notice of Removal for Defendant's discussion of the procedural background of the "State Court Action" (as such term is defined in the initial paragraph of the Notice of Removal) prior to removal of the State Court Action to this Court by Defendant pursuant to 9 U.S.C. § 205 and 28 U.S.C. § 1446.

2.      All capitalized terms which are not defined herein shall have the meanings ascribed to such terms in the Notice of Removal.

3.      Defendant's Memorandum of Law In Support of Motion to Compel Arbitration and In Opposition to Cross-Motion to Stay Arbitration, dated February 6, 2006 ("Defendant's Memorandum of Law"), and the Affidavit of Eugene S. Becker dated January 30, 2006 (the "Becker Affidavit"), originally annexed to Plaintiffs' Notice of Cross-Motion dated January 30, 2006, were inadvertently omitted from the contents of the file of the State Court Action which was submitted with the Notice of Removal as Composite Exhibit 1 thereto. Copies of Defendant's Memorandum of Law, with exhibit, and the Becker Affidavit are being submitted to the Court herewith as Exhibits "A" and "B," respectively, in Composite Exhibit 2 hereto.

## II.     The Partnership Agreement.

4.      Plaintiffs' description of the Partnership Agreement and the rights of the respective parties thereunder, as set forth in pages 2 – 9 of Plaintiffs' Memorandum of Law In Support of Motion for Reargument and Renewal of State Court Orders Compelling Arbitration dated May 1, 2006 ("Plaintiffs' Memorandum"), is incomplete

and misleading.  Although Plaintiffs' motion herein does not directly request this Court to determine the rights of the parties under the Partnership Agreement, Plaintiffs' incomplete and misleading statements regarding this matter must be addressed.

          **a.**      <u>**Extra-Partnership Work**</u>.

          5.     Defendant agrees that the First Amended Agreement provides that each partner has the right to solicit and perform "Extra-Partnership Work," which is defined in the First Amended Agreement as "Sole and Separate Work, separate and apart from, and not under the aegis or the name of the Partnership."  *See*, Second Recital, page 1, First Amended Agreement, Exhibit "2" to Exhibit "B" in Composite Exhibit No. 1.

          6.     However, although Plaintiffs cite Paragraphs 8 and 9 of the First Amended Agreement (which provide for, *inter alia*, agreement by the partners under certain circumstances "on a list of current or prospective client matters that shall make up the *corpus* known as Extra-Partnership Work," notification to the other partner of the intention to perform Extra-Partnership Work and the making of independent arrangements to service such clientele ),[1] Plaintiffs fail to include any mention whatsoever of Paragraph 10.0 of the First Amended Agreement, "Post-1 July 1996 Allocation of Work," which reads in its entirety as follows:

> "[Mr. Becker] *or* [Defendant] *are free to, severally, at any time, choose to categorize and treat new client matters, in instances where either is the procuring cause for the sale of legal professional work, as either Joint Work or otherwise, as Extra-Partnership Work.  Upon the procuring Partner's election, in this regard, such work shall be treated thereafter in accordance with such initial designation, unless agreed otherwise by* [Defendant] *and* [Mr. Becker]*.*"  *See*, Paragraph 10.0, First Amended Agreement, Exhibit "2" to Exhibit "B" in Composite Exhibit 1.

          7.     Plaintiffs' repeated failure to make any reference to this section of the First Amended Agreement in Plaintiffs' Memorandum or in any of their pleadings in the

---

[1]  See, Plaintiffs' Memorandum, page 3, second paragraph.

State Court Action results in an incomplete and misleading description of the agreement between the partners.

8.     Paragraph 10 of the First Amended Agreement is critical in evaluating the fundamental issue in this dispute of whether legal services performed by Defendant outside the Partnership during the period in question were "Joint Work" or "Extra-Partnership Work," as such terms are defined in the First Amended Agreement. All of the provisions of the First Amended Agreement pertaining to these matters must be read together, and in context of how the partners actually dealt with such issues between the date of the First Amended Agreement and the date of dissolution of the Partnership, in order to determine whether any such services fell under "Joint Work" or "Extra-Partnership Work." It is Defendant's contention that if those services are found to be "Extra-Partnership Work," then the income from such services is not Partnership property and Plaintiffs are not entitled to an accounting and compensation for income therefrom, as demanded in their Complaint filed in the State Court Action.

**b.     The Oral Agreements Regarding the Immediate Reduction of Defendant's Ownership Interest in the Partnership.**

9.     In the first full paragraph on page 7 of Plaintiffs' Memorandum, Plaintiffs describe a certain meeting between Mr. Becker and Defendant at the offices of the Partnership's accountant, Bernard Medoff ("Mr. Medoff") on February 24, 1997 (the "Meeting"),[2] as "memorializ[ing] the effective date of the reduction of [Defendant's] interest in the Partnership from fifty per cent to one percent *as anticipated in the [First Amended Agreement]*." (emphasis added).

10.     This statement is incorrect and misleading. Although the third Recital to the First Amended Agreement[3] did contemplate that Defendant might relocate to another locale in order to assume the position of President of a new company known as Interclaim, Ltd. ("Interclaim"), in which event Defendant's ownership interest in the

---

[2]  The Meeting did not take place on February 19, 1997, as stated on page 7 of Plaintiffs' Memorandum; *see*, Second Amended Agreement, paragraph 3, Exhibit "3" of Exhibit "B," Composite Exhibit No. 1.

[3]  *See*, Page 2, First Amended Agreement, Exhibit "2" of Exhibit "B", Composite Exhibit No. 1.

Partnership would be reduced to one percent (1%), this event had not taken place as of the date of the Meeting, and therefore did not occur "as anticipated in the First Amended Agreement," contrary to Plaintiffs' misleading statement, with consequences affecting the parties and their Partnership.

11.    It is important that the Court note that on the date of the Meeting, Defendant was not obliged by any term or condition of the Partnership Agreement to agree to immediately reduce his fifty percent (50%) interest in the Partnership to one percent (1%).  To the contrary, the First Amendment provided that such reduction would take effect only upon the successful sale of $10 million in securities of Interclaim, and Defendant's relocation to Bermuda or another locale to assume the position of President of Interclaim.[4]

12.    Defendant informed the N.Y. Supreme Court, in his affidavit dated February 6, 2006 and annexed to Defendant's Memorandum of Law (the "Second Kenney Affidavit"), that as of February 24, 1997, Interclaim had not raised the required amount – it was in a position to complete only a partial sale of $3 million in securities to a Canadian investment fund - and as of February 24, 1997, Defendant was not anticipating his imminent relocation to any other locale to assume the position of President of Interclaim.  He was unsure if the contemplated financing would be achieved at all.[5]  However, in light of the increasing expenditure of his time and efforts on behalf of Interclaim, he and Mr. Becker decided to accelerate his withdrawal as an active member of the Partnership, and to orally change or remove the conditions previously imposed on the same.  The Meeting was arranged in order to determine a mutually acceptable restructuring of their respective rights and obligations vis-à-vis the Partnership.  *See*, Second Kenney Affidavit, paras. 7-9, annexed to Defendant's Memorandum of Law, Exhibit "A," Composite Exhibit 2.

---

[4]  *See*, Paragraph 18.3(xv), First Amended Agreement, Exhibit "2" to Exhibit "B," Composite Exhibit 1.

[5]  In fact, it was not until July 1997 when (a) some $9,250,000 of primary finance of Interclaim was completed and (b) Defendant was in a position to move to Ireland (and not Bermuda as originally envisioned). See, Second Kenney Affidavit, n.1, p.2, n 1, annexed to Defendant's Memorandum of Law, Exhibit "A," Composite Exhibit. 2.

13.     At the Meeting, the partners entered into certain oral agreements, including, but not limited to, the reduction of Defendant's ownership interest in the Partnership to one percent (1%) effective as of February 19, 1997 (collectively, the "Oral Agreements"), even though such reduction of interest was not required at that time under the First Amended Agreement.  Defendant has informed the N.Y. Supreme Court, "Mr. Medoff took contemporaneous notes at the Meeting, highlights of which were later reduced to a memorandum (the 'Memorandum') . . . Mr. Becker and I elected not to formalize the oral agreements reached at the Meeting (which were recorded, in part, by the Memorandum), but to carry on our respective businesses as though we had done so." Second Kenney Affidavit, para. 8, annexed to Defendant's Memorandum of Law, Exhibit "A," Composite Exhibit 2.

14.     Both partners abided by their Oral Agreements and proceeded to carry on their respective separate businesses, with actual knowledge by the other.  Defendant worked with Interclaim from and after the date of the Meeting. He established his private law practice, Martin Kenney & Co., Solicitors ("MKS"), in Dublin, Ireland, in October, 2002.  Mr. Becker had actual knowledge of the establishment of MKS, as proved by, *inter alia*, correspondence from Mr. Becker to the Law Society of England & Wales, dated May 19, 2004, in which Mr. Becker admitted that "Mr. Kenney's practice was not through this firm, nor at this office," that Defendant "is an inactive 1% partner" in the Partnership, as well as his actual knowledge that "Mr. Kenney conducts practice at his principal and, we understand, only office" in Ireland.  *See*, copy of an email from Mr. Becker to the Law Society of England & Wales, dated May 19, 2004, Exhibit 15 to Exhibit "L," Composite Exhibit 1.

15.     While abiding by their Oral Agreements, the partners did not formally incorporate the Memorandum into a written amendment to the First Amended Agreement for five (5) years following the Meeting, until that certain Second Amended Agreement was executed on February 14, 2002 (but dated effective as of January 1, 2001), under circumstances described, incompletely, in the paragraph extending from page 7 to page 8

of Plaintiffs' Memorandum.[6]   Therefore, it cannot reasonably be disputed that the Partnership Agreement was modified by Oral Agreements between the partners, notwithstanding Mr. Becker's argument that the Partnership Agreement "does not encompass or give efficacy to an oral agreement" and "[s]uch oral modifications, if they occurred, which they did not, are prohibited by clear terms of the Partnership Agreement." Plaintiffs' Memorandum, first paragraph, page 18; Id., first paragraph, page 19.[7]   Mr. Becker's argument does not take into account applicable New York law regarding the enforcement of oral modifications of a written agreement, as discussed below.

### c.        Oral Modification of a Written Agreement Under New York Law.

16.     The Initial Partnership Agreement provides that "This agreement shall be subject to and governed by the laws of the State of New York."   Initial Partnership Agreement, para. 9.17, Appendix A to Exhibit "B," Composite Exhibit 1. Under New York law, an oral modification to a written agreement may be enforced under two (2) circumstances:  (1) "when there has been partial performance of the agreement to modify, so long as the partial performance is 'unequivocally referable to the oral modification,'" and (2) "when one party has induced the other party to rely on an oral modification, the first party may be equitably estopped from invoking the requirement that any modification be in writing." Towers Charter & Marine Corporation v. Cadillac Insurance Company, 894 F.2d 516, 522 (2d Cir., 1990), citing Rose v. Spa Realty Assocs., 42 N.Y.2d 338, 343 (1977).

17.     In his Statement of Claim,[8] Defendant shows that at all material times, Mr. Becker had actual knowledge of the establishment of Defendant's private law practice, MKS, in October, 2002, in Dublin, Ireland, by both written and oral communications between the parties.  For example, in early 2003, Defendant and Mr. Becker exchanged

---

[6]   Defendant reserves his right to correct and supplement Mr. Becker's account of the Meeting at the appropriate time in either this action or the arbitration.
[7]   See also, Becker Affidavit, paras. 6 and 37, Exhibit "B" to Composite Exhibit 2; Plaintiffs' Reply Affirmation dated March 24, 2006, para. 5, Exhibit "M" to Composite Exhibit 1.
[8]   Exhibit 6 to Exhibit "B," Composite Exhibit 1.

emails over the feasibility of MKS and the Partnership acquiring a joint policy of professional indemnity insurance in order to attempt to save money. Moreover, in approximately late 2002, Mr. Becker and the Partnership helped MKS by providing MKS with a sub-client trust account as a part of the Partnership's master client trust account at its bank, Fleet Bank in New York, to facilitate the holding of some of MKS's operating funds in New York. Additionally, in June 2003, the Partnership's New York accountant, Joel Agler, CPA, compiled and issued a joint Accountant's Report to the Law Society of England & Wales vouching safe for the handling and financial accounting of client trust money by each of MKS and the Partnership. *See*, Statement of Claim, para. 22, Exhibit 6 to Exhibit "B," Composite Exhibit 1.

18.    In light of Plaintiffs' compliance with the Oral Agreements reached at the Meeting for five (5) years, and their failure to make any demand on Defendant for an accounting of legal services performed by him external to the Partnership for over two (2) years, from the founding of MKS in October, 2002 until three (3) months after the dissolution of the Partnership in February, 2005 – as well as Plaintiffs' actual knowledge of and assistance in Defendant's provision of legal services to MKS's clients - Plaintiffs should be equitably estopped from asserting that any modification to the protocol set forth in Paragraph 8 of the First Amended Agreement that the parties draw up a "list of current or prospective client matters that shall make up the *corpus* known as Extra-Partnership Work" must be in writing.   Towers Charter v. Cadillac Insurance, *supra*.

19.    In addition, the facts of this case satisfy the second circumstance for enforcement of an oral modification to a written agreement, that is, "when there has been partial performance of the agreement to modify, so long as the partial performance is 'unequivocally referable to the oral modification,'" Id.   Contrary to Plaintiffs' narrow reading of paragraph 40 of the Statement of Claim, Defendant contends that the plain meaning of said paragraph 40, in the context of the adjacent sections of that document, is that the arbitrator is requested to make, *inter alia*, a determination as to whether the aforementioned protocol for a "list" of Extra-Partnership Work was suspended by virtue of the Oral Agreements of February 1997 or otherwise. Plaintiffs' failure to ask for any

accounting of Defendant's legal services for MKS for over two (2) years, despite actual knowledge of such services, constitutes partial performance, at least, of the parties' explicit or implicit agreement at the 1997 Meeting to modify or suspend said protocol, and is unequivocally referable to the Oral Agreements reached at said Meeting.

20.    It is uncontested that the parties never agreed to treat any legal services for which Defendant was the procuring cause as Joint Work pursuant to Paragraph 10 of the First Amended Agreement, and that Plaintiffs never objected to Defendant establishing a new professional legal practice under his own name and in Ireland. At no material time did Plaintiffs ever assert the purported right to access confidential information belonging to MKS, the firm's clients or Defendant, nor did Plaintiffs ever assert that the Partnership was the rightful owner of the income realized by MKS or Defendant through the provision of legal professional services to clients of MKS or otherwise. Statement of Claim, para. 23, Exhibit 6 to Exhibit "B," Composite Exhibit 1.

21.    Further, it is not contested that after the Meeting, Defendant elected to categorize as Extra-Partnership Work all of the client matters for which he was the sole procuring cause, in compliance with Paragraph 10 of the First Amended Agreement. As quoted above, Paragraph 10 provides, "Upon the procuring Partner's election, in this regard, such work shall be treated thereafter in accordance with such initial designation, unless agreed otherwise by [Defendant] and [Mr. Becker]." Paragraph 10.0, First Amended Agreement, Exhibit "2" to Exhibit "B" in Composite Exhibit 1.

22.    In light of Plaintiffs' course of conduct for over eight (8) years and the applicable provisions of New York law, Plaintiffs should be estopped from invoking the First Amended Agreement as containing any enforceable requirement that a list of Extra-Partnership Work be agreed upon _before_ any legal services can be categorized as Extra-Partnership Work. Towers Charter v. Cadillac Insurance, _supra_.

**III**.     <u>**Defendant's Claims in Arbitration**</u>.

23.     Plaintiffs argue, in their pleadings in the State Court Action and in Plaintiffs' Memorandum herein, that (i) Defendant is asking the arbitrator, in his Statement of Claim, to re-write or "modify the terms of the Agreement to reflect changed circumstances," Plaintiffs' Memorandum, third full paragraph, page 9; second paragraph on page 17,[9] and (ii) "the particular claims defendant Kenney seeks to arbitrate are outside the scope of the parties agreement to arbitrate." Affidavit of Eugene S. Becker, dated March 2, 2006 (the "Becker Appellate Affidavit"), para. 2, annexed to Notice of Motion, Exhibit "J", Composite Exhibit 1; Plaintiffs' Memorandum, first full paragraph, page 18.

24.     These statements are incorrect.  All of the claims and controversies which Defendant seeks to submit to arbitration arise from or relate to the Partnership Agreement, and are subject to compulsory arbitration in accordance with the terms of the Partnership Agreement.  Defendant has not asked the arbitrator to rewrite the Partnership Agreement, or to determine that portions of that Agreement are not effective by reason of "changed circumstances."  Instead, Defendant has requested that the arbitrator review the Partnership Agreement and all of the amendments that were made to it – written and oral, express and implied – and the partners' course of conduct over a period of eight (8) years, and make a determination whether the parties agreed to suspend the operation of (A) the protocol for agreeing on a list of Extra-Partnership Work provided in Paragraph 8 of the First Amended Agreement, and/or (B) the procedural requirement for advance notice of an intention to conduct Extra-Partnership Work provided in Paragraph 9 of the First Amended Agreement.

25.     In the alternative, Defendant seeks an arbitral finding that he has no obligation to account for his provision of legal services external to the Partnership because (i) he was the sole procuring cause for the sale of such services, and (ii)

---

[9] *See also e.g.*, Plaintiffs' Memorandum, paragraph extending from page 17 to page 18, first full paragraph, page 18, first full paragraph, page 19; Becker Appellate Affidavit paras.16 and 17, annexed to Notice of Motion, Exhibit "J", Composite Exhibit 1.

Paragraph 10 of the First Amended Agreement provides that the partner who is the sole procuring cause of the sale of legal services has the power to determine whether he or the Partnership shall be the owner of the economic benefits deriving from such services. In no instance is the prospective arbitrator being asked to re-write the parties' bargain. Moreover, there are a number of additional claims that Defendant has expressed in the Statement of Claim which cannot be construed as requests for a "re-writing" or "reformation" of the Partnership Agreement, and to which Plaintiffs have expressed no opposition. See, paragraphs (a) – (h), pages 18 – 20, Statement of Claim, Exhibit 6 to Exhibit "B," Composite Exhibit 1.

26.    Defendant does <u>not</u> claim in the Statement of Claim – or in any other document - that "changed circumstances" require an arbitrator to "modify the Partnership Agreement and create a new arrangement as among the parties," as alleged in the Becker Appellate Affidavit, para. 4. Justice Moskowitz of the N.Y. Supreme Court agreed with Defendant, stating, with reference to Plaintiffs' restrictive interpretation of paragraph 40 of the Statement of Claim, "I don't have to read that as an attempt to modify. . . . And I can read this as saying that the agreements change this." Transcript of hearing February 9, 2006, before Hon. Karla Moskowitz, N.Y. Supreme Court (the "Transcript"), page 29, lines 25-26, page 30, lines 4-5, attached as exhibit to Notice of Appeal, Exhibit "I" to Composite Exhibit 1.

27.    Defendant's claim, in the first instance, regarding the meaning and context of the Partnership Agreement, as amended, arises directly from said Agreement and is thus subject to compulsory arbitration thereunder. Moreover, Defendant's alternative claim that his provision of legal services constitutes Extra-Partnership Work also arises directly out of the Partnership Agreement and is subject to compulsory arbitration thereunder. Plaintiffs' narrow construction of the Statement of Claim to the effect that Defendant is requesting the arbitrator to re-write the Partnership Agreement is not supported by an objective reading of the eight (8) claims for relief set forth in the Statement of Claim. The N.Y. Supreme Court and the Appellate Division both agreed with Defendant, and issued Orders vacating any temporary stay of the arbitration

proceedings and directing the parties to proceed with arbitration of their claims and controversies. Exhibits "H" and "N", Composite Exhibit 1.

## IV.    This Court Should Give the State Court Orders To Arbitrate the Same Preclusive Effect as Courts Of New York State Would Give Such Orders.

28.    The preclusive effect of a state court determination in a subsequent federal action is determined by the laws of the state where the prior action occurred. 28 U.S.C. §1738; State of New York v. Sokol (In re: Sokol) 113 F.3d 303,306 (2d Cir. 1997). The doctrines of issue preclusion and direct estoppel as provided under the laws of the State of New York should apply to the orders of the N.Y. Supreme Court and the Appellate Division in the State Court Action.

29.    Here, that state is New York. New York law provides that a court order will have preclusive effect if (1) the issue in question was actually and necessarily decided, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding. Colon v. Caughlin, 58 F.3d 865, 869 (2d Cir. 1995); Sokol, supra. at 306. In this action, both the N.Y. Supreme Court and the Appellate Division have rejected Plaintiffs' motions to stay the arbitration based on the same issues Plaintiffs are presenting to this Court.

30.    While a decision of a state court – even a "final" decision – is not necessarily binding on federal courts "as a final expression of state law," in the Second Circuit the doctrine of the "law of the case is a discretionary doctrine," to be applied after consideration of the facts and circumstances of an applicable action. Hill v. U.S. Fidelity and Guaranty Company, 428 F.2d 112, 114 (2d Cir. 1970); First National Bank of Hollywood v. American Foam Rubber Corp., 530 F.2d 450, 454 (2d Cir. 1976). In this action however, the orders of the N.Y. Supreme Court and the Appellate Division have "the persuasive force of having been entered in the very case and on precisely the same issues." Hill v. U.S. Fidelity, supra. at 115.

31.    In interpreting an arbitration agreement, federal courts generally "apply ordinary state-law principles that govern the formation of contracts."  <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 944 (1995); <u>PaineWebber Incorporated v. Bybyk</u>, 81 F.3d 1193, 1198 (2d Cir. 1996).

32.    New York law provides that "disputes involving acts of the parties subsequent to the making of a contract are properly embraced by a broad arbitration clause."  <u>In the Matter of Arbitration between R.H. Macy & Co. Inc. and National Sleep Products, Inc.</u>, 39 N.Y.2d 268, 270, 383 N.Y.S.2d 562,563 (1976); <u>In the Matter of Riccardi (Modern Silver Linen Supply Co.)</u>, 45 A.D.2d 191, 356 N.Y.S.2d 872 (Ap.Div 1st Dept. 1974).

33.    The N.Y. Supreme Court ruled, and Plaintiffs now agree, that there is a valid and enforceable arbitration agreement between the parties.  Transcript, p. 12, lines 22-25, attached as exhibit to Notice of Appeal, Exhibit "I" to Composite Exhibit 1.

34.    This valid and enforceable arbitration agreement reads in full as follows:

> *"9.18   Arbitration.   Any controversy or claim arising out of or relating to this agreement shall only be settled by arbitration in accordance with the rules of the American Arbitration Association, one arbitrator, and shall be enforceable in any court having competent jurisdiction."*   Initial Partnership Agreement, p. 16, Exhibit 1 to Exhibit "B", Composite Exhibit 1.

35.    Plaintiffs alleged in the State Court Action that one (1) of the eight (8) claims for relief requested in Defendant's Statement of Claim is outside the scope of the foregoing arbitration agreement and must be adjudicated in court instead of by the arbitrator.  Following oral argument before the N.Y. Supreme Court, Justice Moskowitz expressly rejected Plaintiffs' reasoning and stated that she could later "deal with that issue if it turns out that the arbitrator has so exceeded his or her powers to go beyond what New York law permits."  Transcript, p. 30, lines 20-23, attached as exhibit to Notice of Appeal, Exhibit "I" to Composite Exhibit 1.  On February 9, 2006, Justice Moskowitz

issued an order staying the State Court Action and directing the parties to arbitration. Exhibit "H" to Composite Exhibit 1.

36.     Plaintiffs then appealed Justice Moskowitz's order to arbitrate, and moved the Appellate Division for a stay of the arbitration pending the appeal.  A panel of five (5) judges of the Appellate Division unanimously rejected Plaintiffs' motion to stay the arbitration pending the appeal.  The standard of review in such cases is that the motion to stay the arbitration proceedings may properly be denied when it is clearly shown there is no merit to the appeal.  In the Matter of Terence K, 135 A.D.2d 857, 522 N.Y.S.2d 949, 950 (Ap.Div. 2d Dept. 1987). That standard was met to the satisfaction of the Appellate Division.  On March 30, 2006, the Appellate Division issued an order denying Plaintiffs' motion.  Exhibit "J" to Composite Exhibit 1.

37.     The issues which Plaintiffs presented to the N.Y. Supreme Court and the Appellate Division are the same issues presented by Plaintiffs to this Court. The Orders of the N.Y. Supreme Court and the Appellate Division should have preclusive effect on Plaintiffs' motion to reargue said Orders.

38.     In Plaintiffs' Memorandum, Plaintiffs cite  Ex parte Fisk, 113 U.S. 713 (1885) and Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County, 415 U.S. 423 (1974) for the proposition that "once a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal."  Granny Goose, *supra.*, at 437.  These cases are cited in support of Plaintiffs' claim that "upon removal, the Federal Court can review state court orders *de novo*,"[10]

39.     However, both of these cases expressly dealt with procedural, rather than substantive, law.  Ex parte Fisk decided the issue of whether a state court order to take the deposition of a witness was binding after removal to federal court "notwithstanding

---

[10]  Plaintiffs' Memorandum, p. 11.

its inconsistency with certain federal statutes governing procedure in federal courts." Id. Granny Goose decided the issue whether a temporary restraining order issued by a state court prior to removal of the case to federal court had expired before contempt proceedings had been brought, or whether "the life of the order was indefinitely prolonged by 28 U.S.C. § 1450 'until dissolved or modified by the district court.'" Id., at 423. Neither of these cases discuss or apply to the doctrines of issue preclusion or estoppel.

40.     Plaintiffs argue that "under federal law, the court rather than the arbitrator determines the arbitrability of issues and the place of hearing." Plaintiffs' Memorandum, second full paragraph, p. 13. As shown in paragraphs 52 – 62 below, this generalization does not apply to the broad and unequivocal arbitration agreement set forth in the Partnership Agreement, because both federal and state substantive law require adherence to the contractual agreement between the parties.

41.     The specific issues raised by Plaintiffs in this action have already been decided, and Plaintiffs have had two (2) full and fair opportunities to litigate these issues. The N.Y. Supreme Court and the Appellate Division have both issued Orders denying Plaintiffs' motions to stay the arbitration. Plaintiffs are not entitled to a third bite at the same apple. This Court should give the same preclusive effect to the Orders which a state court would give. Colon v. Caughlin, *supra*, at 869; Sokol, *supra*. at 306.

## V.     Motion for Reconsideration.

### a.     Local Civil Rule 6.3.

42.     Under Local Civil Rule 6.3, a motion for reconsideration of a court order determining a motion must be served within ten (10) days after entry of the court's determination. The order of Justice Moskowitz was entered on February 9, 2006; the order of the Appellate Division was entered on March 30, 2006. In both cases, the ten (10) day period has long expired. There is no statutory authority to suspend or renew the

limitations period for a motion for reconsideration of an order upon removal of the action to federal court.

### b. Plaintiffs are Not Entitled to Equitable Relief.

43.    In the event that Plaintiffs ask this Court to grant their motion for reconsideration or reargument upon equitable grounds, Defendant respectfully requests that this Court deny such motion. Plaintiffs are not entitled to equitable relief. "He who comes into equity must come with clean hands." Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 814 (1945); McKennon v. Nashville Pub. Co., 513 U.S. 352, 360 (1995). Plaintiffs do not have "clean hands" in this action because they commenced the State Court Action for an accounting and compensation under the Partnership Agreement instead of submitting such claims to arbitration, as required under the Partnership Agreement.

44.    The arbitration agreement between the parties, set forth in full in paragraph 34 above, expressly requires arbitration of all disputes relating to the business of the Partnership as follows: "Any controversy or claim arising out of or relating to this agreement shall only be settled by arbitration in accordance with the rules of the American Arbitration Association, one arbitrator, and shall be enforceable in any court having competent jurisdiction." Initial Partnership Agreement, p. 16, Exhibit 1 to Exhibit "B", Composite Exhibit 1.

45.    This agreement providing for the compulsory arbitration of any disputes arising between Mr. Becker and Defendant and relating to their Partnership, was ratified pursuant to paragraph 21.0 of the First Amended Agreement in the following terms:

> "21.0    The terms and conditions to the original Partnership Agreement dated as of 15 June, 1995. The parties hereby adopt clauses 1.0, 1.1, 1.5, 3.2, 3.3, 3.4, 3.5, 4.0, 4.1, Article VI, Article VII and Article IX of the original Partnership Agreement." (emphasis added) First Amended Agreement, p. 23, Exhibit 2 to Exhibit "B", Composite Exhibit 1.

46.     The above-quoted arbitration provision as set forth in the Initial Partnership Agreement remains in full force and effect.   At the February 9 Hearing, Justice Moskowitz ruled that "the first amendment incorporates the article and the article has within it a valid arbitration clause."   Transcript, p. 12, lines 23 – 25, attached as exhibit to Notice of Appeal, Exhibit "I" to Composite Exhibit 1.

47.     In October, 2005, Plaintiffs commenced the State Court Action in N.Y. Supreme Court to litigate their claims arising out of the Partnership Agreement, in breach of that Agreement and in express disregard of the arbitration agreement provided therein. Defendant was served with the Complaint on or about December 6, 2005, in Tortola, BVI.  On January 6, 2006, Defendant applied for a stay of Plaintiffs' action in N.Y. Supreme Court, and for an order compelling arbitration of all disputes arising out of the Partnership Agreement.   On the same day, Defendant commenced an arbitration proceeding with the ICDR, the international division of the AAA.  Defendant prevailed in both N.Y. Supreme Court and the Appellate Division, as described above.  Because of Plaintiffs' delaying tactics in opposing compulsory arbitration, Plaintiffs did not file their statement of defense in the arbitration until April 7, 2006.  When Defendant observed in the statement of defense that Plaintiffs were raising once again their specious arguments that the dispute between the partners is not an international dispute, Defendant determined to seek the supervision of the arbitration by the Federal Courts, and filed the Notice of Removal herein on April 17, 2006.

48.     A district court will grant a motion for reconsideration "only where the court has overlooked matters or controlling decisions which might have materially influenced the earlier decision." Farkas v. Ellis, 783 F.Supp. 830, 833 (S.D.N.Y.1992), aff'd, 979 F.2d 845 (2d Cir.1992).

49.     The issues raised by Plaintiffs herein have already been thoroughly considered and decided by the N.Y. Supreme Court and the Appellate Division. Plaintiffs wish to re-litigate the same issues based on a different standard of review,

presumably drawn from what they believe to be different "controlling decisions." There is no merit to such re-litigation, as the "controlling decisions" cited in Plaintiffs' Memorandum will not be controlling in this action, for the reasons set forth in Paragraphs 52 – 62 below.

50.    A Federal Court must enforce the terms of the parties' arbitration agreement, just as state courts must do. U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd., 241 F.3d 135, 146 (2d Cir. 2001); Cargill International S.A. v. M/T Pavel Dybenko, 991 F.2d 1012, 1018 (2d Cir. 1993).

51.    Plaintiffs' motion for reargument and "renewal" of the two (2) state court Orders is subject to the doctrines of issue preclusion and direct (or collateral) estoppel, and Plaintiffs may not re-litigate these issues through a motion for reconsideration. "The standard for granting . . . a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court. . . . a motion to reconsider should not be granted where the moving party seeks solely to religitate an issue already decided.." Shrader v. CSX Transportation Inc., 70 F.3d 255, 257 (2d Cir. 1995). This Court should deny any motion by Plaintiffs for reargument of the state court orders which is made on equitable grounds.

## VI.    Federal Standard of Arbitrability.

52.    Plaintiffs claim that this Court should permit reargument of the state court orders because federal courts apply a different standard to the question of arbitrability. Plaintiffs' Memorandum, second full paragraph, p. 13. They cite Howsam v. Dean Witter Reynolds Inc., 537 U.S. 79 (2002) for the principle that "[a] disagreement about whether an arbitration clause applies to a particular type of controversy is for the court." Plaintiffs' Memorandum, Section 4, first paragraph, p. 15. However, Plaintiffs have omitted from this statement an important qualification which was emphasized by the U.S.

Supreme Court in the <u>Howsam</u> case: "unless the parties clearly and unmistakably provide otherwise." <u>Howsam v. Dean Witter</u>, *supra.*, at 591; <u>AT&T Technologies, Inc. v. Communications Workers</u>, 475 U.S. 643, 649 (1986). In their arbitration agreement, the parties clearly and unmistakably provided otherwise.

53.    The U.S. Supreme Court has held, "the question who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter. Did the parties agree to submit the arbitrability question itself to arbitration?" <u>First Options</u>, *supra.*, at 943 (emphasis in the original). The answer is in the contract between the parties. "Thus the intent of the parties, as evidenced by their contractual language, determines whether arbitrability is a determination for the court or the arbitrator." <u>Bell v. Cendant Corporation</u>, 293 F.3d 563, 566 (2d Cir. 2002).

54.    The arbitration agreement between the parties, set forth in full in paragraph 34 above, provides, in relevant part, "Any controversy or claim arising out of or relating to this agreement shall only be settled by arbitration in accordance with the rules of the American Arbitration Association."

55.    The U.S. Court of Appeals for the Second Circuit, in <u>PaineWebber v. Bybyk</u>, *supra.*, was presented with a very similar arbitration provision. That provision read, in relevant part, "{A]ny and all controversies . . . concerning any account, transaction, dispute or the construction, performance or breach of this or any other agreement . . . shall be determined by arbitration." <u>PaineWebber v. Bybyk</u>, *supra.*, at 1199.

56.    In construing this arbitration provision, the Court of Appeals held as follows:

> "The meaning of the first of these provisions is plain indeed:
> any and all controversies are to be determined by arbitration.
> The wording is inclusive, categorical, unconditional and
> unlimited. The words 'any and all' are elastic enough to
> encompass disputes over whether a claim is timely and whether

a clam is within the scope of arbitration. . . . The parties' broad grant of power to the arbitrators is unqualified by any language carving out substantive eligibility issues . . . for resolution by the courts.    PaineWebber is thus unable to overcome the presumption established in the first of the above-listed provisions that '[a]ny and all controversies' are to be arbitrated. An objective reading of the Agreement, therefore, leads us to conclude that the parties intended to arbitrate issues of arbitrability." Id., 1199-1200.

57.    The arbitration agreement set forth in the Partnership Agreement is broad, unequivocal, and substantially similar to the arbitration agreement discussed in PaineWebber v. Bybyk. *See also*, Bell v. Cendant, *supra*, at 568.    This Court should follow the guidance of the Court of Appeals in PaineWebber v. Bybyk and Bell v. Cendant, and determine that under the Partnership Agreement, the arbitrator is empowered to determine any issues of arbitrability in the event of a dispute between the parties.    The Orders of the N.Y. Supreme Court and the Appellate Division enforcing the arbitration of all controversies between the parties herein, including the question of arbitrability, should be upheld by this Court.

### VII.    The District Court Has Authority to Permit the Arbitrator To Determine the Venue of the Arbitration.

58.    Plaintiffs cite Oil Basins Ltd. v. Broken Hill Proprietary Co., 613 F.Supp 483 (S.D.N.Y. 1985) for the principle that a federal district court "only has discretion to compel arbitration in its own district or in a place specified in the contract."  Id., at 488; Plaintiffs' Memorandum, first full paragraph, p. 14.  They also cite 9 U.S.C. § 206 to the effect that "A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place be within or without the United States."  Id.

59.    However, the Oil Basins case does not address all of the facts and issues raised in this action.    This Court is referred to a subsequent case, In the Matter of Arbitration Between United States Lines Inc. and Liverpool and London Steamship, 833

F.Supp 350 (S.D.N.Y. 1993), in which the District Court held that the issue of the venue for the arbitration was resolved by the parties' broad arbitration agreement, which stated that the arbitration would be conducted by the Law Society of England, although it did not specify the location for the arbitration. "Thus, the issue of venue is itself a proper issue for resolution by arbitration." Id., at 353.

60.    In this opinion, the Court discussed another district court case, Prudential Securities Inc. v. Thomas, 793 F. Supp. 764 (W.D. Tenn 1992), as follows:  "In a case in which the parties specified that arbitration would be conducted before the American Arbitration Association ("AAA"), but did not specify where the arbitration should be conducted, the court declined to decide the issue of venue, leaving that issue to the AAA to decide."  In the Matter of Arbitration Between United States Lines Inc. and Liverpool and London Steamship, supra., at 352, citing Prudential Securities Inc. v. Thomas, supra. at 767.

61.  The reasoning of the district court in Prudential Securities Inc. v. Thomas was as follows:

> "The parties concede that the AAA has been selected as the arbitration association to resolve their disputes.  No valid reason has been advanced why the AAA should not, in accordance with the agreement of the parties, resolve the controversy that has arisen between them as to the proper venue of the arbitration proceedings.  The controversy concerning the venue of the arbitration is clearly one that relates to the account and to the parties' agreement and therefore is one that should be settled by the arbitration association."  Id., at 767.

62.    The arbitration agreement between the parties herein also selects the AAA as the arbitration association to resolve their disputes.  No valid reason has been advanced by Plaintiffs why the AAA should not, in accordance with the agreement of the parties, resolve the controversy that has arisen between them as to the proper venue of the arbitration proceedings.  The controversy concerning the venue of the arbitration is clearly one that relates to the Partnership Agreement and therefore is one that should be settled by the AAA.  This Court should follow the reasoning set forth in In the Matter of

Arbitration Between United States Lines Inc. and Liverpool and London Steamship, *supra*.; *see also* Hughes, Hooker & Co. et al. v. American Steamship Owners Mutual Protection and Indemnity Association, Inc., 2005 WL 1384055 at 5 (S.D.N.Y. 2005); Jain v. de Méré, 51 F.3d 686, at 686, fn 1 (7th Cir. 1995). The Court should affirm the Orders of the N.Y. Supreme Court and the Appellate Division enforcing the arbitration of all claims and controversies between the parties herein, including the question of venue of the arbitration.

**VIII.    Conclusion.**

63.    In light of the foregoing, this Court should deny Plaintiffs' motion to reargue and "renew" the Orders of the N.Y. Supreme Court and the Appellate Division, and give such Orders the same preclusive effect as courts of New York State would give under the same circumstances. In addition, this Court should issue orders compelling Plaintiffs and Defendant to submit to arbitration all issues arising out of the Partnership Agreement, including, but not limited to, the arbitrability of any claims by either party, and the issue of venue for the arbitration, together with such other and further relief as the Court deems proper, including an award in the amount of the reasonable legal fees and expenses incurred by Defendant in this action.

Dated:  May 8, 2006

Respectfully submitted,

_/s/ JOSEPH H. LILLY, III_____
Joseph H. Lilly, III
JL6560
Law Office of Joseph H. Lilly, III
60 East 42nd Street, Suite 1338
New York, New York 10165
(212) 687-6523
Attorneys for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
KENNEY, BECKER LLP and                    :
EUGENE S. BECKER,                         :
                                          :    Case No. 06 Civ 2975 (JSR)
                        Plaintiffs,       :
                                          :
            - against -                   :
                                          :
MARTIN S. KENNEY,                         :
                        Defendant.        :
------------------------------------------------------------x


## TABLE OF AUTHORITIES

**Statutes:**

1.  9 U.S.C. § 206...................................................................................................20

2.  28 U.S.C. §1738...............................................................................................12


**Local Rules:**

1.  Local Civil Rule 6.3 .........................................................................................15

**Federal Cases:**

**United States Supreme Court Cases:**

1.  AT&T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 649 (1986). ....19

2.  Ex parte Fisk, 113 U.S. 713 ................................................................... 14-15

3.  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943, 944 (1995). .............13, 19

4.  Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers
Local No. 70 of Alameda County, 415 U.S. 423, 437 (1974) . .................................... 14-15

5.  McKennon v. Nashville Pub. Co., 513 U.S. 352, 360 (1995)........................................16

6.  Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.,
324 U.S. 806, 814 (1945). ...................................................................................16

**United States Court of Appeals, Second Circuit Cases:**

1.  Bell v. Cendant Corporation, 293 F.3d 563, 566 (2d Cir. 2002) ..............................19, 20

2.  Cargill International S.A. v. M/T Pavel Dybenko, 991 F.2d 1012, 1018
(2d Cir. 1993) ...................................................................................................................18

3.  Colon v. Caughlin, 58 F.3d 865, 869 (2d Cir. 1995) .................................................12, 15

4.  Farkas v. Ellis, 979 F.2d 845 (2d Cir.1992) .........................................................17

5.  First National Bank of Hollywood v. American Foam Rubber Corp., 530 F.2d 450,
454 (2d Cir. 1976) .............................................................................................................12

6.  Hill v. U.S. Fidelity and Guaranty Company, 428 F.2d 112, 114, 115 (2d Cir. 1970)...12

7.  PaineWebber Incorporated v. Bybyk, 81 F.3d 1193, 1198, 1199, 1200 (2d Cir.
1996) ......................................................................................................................13, 19, 20

8.  Shrader v. CSX Transportation Inc., 70 F.3d 255, 257 (2d Cir.
1995) ..................................................................................................................................18

9.  State of New York v. Sokol (In re: Sokol) 113 F.3d 303, 306 (2d Cir. 1997)..........12, 15

10.  Towers Charter & Marine Corporation v. Cadillac Insurance Company, 894 F.2d
516, 522 (2d Cir., 1990). ................................................................................................7, 8, 9

11.  U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd., 241 F.3d 135, 146 (2d
Cir. 2001) ..........................................................................................................................18

**Other United States Court of Appeals Cases:**

1.  Jain v. de Méré, 51 F.3d 686, at 686, fn 1 (7th Cir. 1995)................................................22

**United States District Court, Southern District of New York Cases:**

1.  Farkas v. Ellis, 783 F.Supp. 830, 833 (S.D.N.Y. 1992)..................................................17

2.  Hughes, Hooker & Co. et al. v. American Steamship Owners Mutual Protection and
Indemnity Association, Inc., 2005 WL 1384055 at 5 (SDNY 2005) ...................................22

3.  In the Matter of Arbitration Between United States Lines Inc. and Liverpool and London Steamship, 833 F.Supp 350, 352, 353 (SDNY 1993) .................................20, 21, 22

4.  Oil Basins Ltd. v. Broken Hill Proprietary Co., 613 F.Supp 483, 488 (SDNY 1985)....20

**Other United States District Court Cases:**

1.  Prudential Securities Inc. v. Thomas, 793 F. Supp. 764, 767 (W.D. Tenn 1992) ..........21

**New York Cases:**

**New York Court of  Appeals Cases:**

1.  In the Matter of Arbitration between R.H. Macy & Co. Inc. and National Sleep Products, Inc., 39 N.Y.2d 268, 270, 383 N.Y.S.2d 562,563 (1976) .....................................13

2.  Rose v. Spa Realty Assocs., 42 N.Y.2d 338, 343 (1977) ..................................................7

**Appellate Division Cases:**

1.  In the Matter of Riccardi (Modern Silver Linen Supply Co.), 45 A.D.2d 191, 356 N.Y.S.2d 872 (Ap.Div 1st Dept. 1974) ..............................................................................13

2.  In the Matter of Terence K, 135 A.D.2d 857, 522 N.Y.S.2d 949, 950 (Ap.Div. 2d Dept. 1987)....................................................................................................................14

**Supreme Court Cases:**

1.  Transcript of N.Y. Supreme Court Hearing, Case No. 603614/05, February 9, 2006 ......................................................................................................11, 13, 17