IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

KENNEY, BECKER LLP and :
EUGENE S. BECKER, :
 : Case No. 06 –cv-2975 (JSR)
   Plaintiffs, :
 :
 - against - :
 :
MARTIN S. KENNEY, :
   Defendant. :

---

NOTICE OF REMOVAL

---

COMPOSITE EXHIBIT 2

EXHIBITS A - B

**EXHIBIT A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------x

KENNEY, BECKER LLP                                    :

                    Plaintiff,              :

        - against -                          :

MARTIN S. KENNEY,                                    :

                  Defendant.            :

------------------------------------------------------------------x

Index No. 603614/05

(IAS 3, Moskowitz, J.)

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND
## IN OPPOSITION TO CROSS-MOTION TO STAY ARBITRATION

Defendant respectfully submits this Memorandum of Law in support of Defendant's motion to stay the instant action and compel arbitration of the disputes between the parties, and in opposition to Plaintiff's cross-motion for an order staying the arbitration of such disputes which was commenced pursuant to that certain Notice of Arbitration dated January 6, 2006.

## I.    PRELIMINARY STATEMENT.

1.    Defendant is entitled to the requested relief because the parties entered into an enforceable written agreement to submit to arbitration any controversy or claim arising out of or relating to that certain Registered Limited Liability Partnership Agreement, dated June 15, 1995, between Defendant and Eugene Stephan Becker ("Mr. Becker") (the "Initial Partnership Agreement"), as amended by (i) that certain First Amendment and Modification of Registered Limited Liability Partnership Agreement for Kenney, Becker, Solicitors LLP dated as of July 1, 1996, by and among, Mr. Becker, Defendant and the Partnership (the "First Amendment"), (ii) an oral agreement made by Defendant and Mr. Becker at the offices of the Partnership's then accountants, M. R. Weiser & Co. LLP, in New York on the evening of February 24, 1997 and made effective as of February 19, 1997, and (iii) that certain Second Amendment and Modification of Registered Limited Liability Partnership Agreement for Kenney, Becker, Solicitors LLP, Now Known as Kenney Becker, LLP executed on February 14, 2002 but dated as

of January 1, 2001, also by and among, Mr. Becker, Defendant and the Partnership (the "Second Amendment"). The Initial Partnership Agreement, said oral agreement, the First Amendment and the Second Amendment are hereinafter collectively referred to as the "Partnership Agreement." The Partnership Agreement sets forth the terms and conditions governing Plaintiff, a New York registered limited liability partnership now known as Kenney, Becker LLP, and formerly known as Kenney Becker, Solicitors, LLP (the "Partnership").

2.     Contrary to certain statements in Plaintiff's Memorandum of Law dated January 30, 2006 ("Plaintiff's Memorandum"), Defendant is not arguing for reformation of the Partnership Agreement, so none of his claims are barred by the statute of limitations.   In addition, Plaintiff is not entitled to have this Court determine the venue or rules of the arbitration.

3.     The facts material to this application have been set forth in (i) the Affidavit of Martin S. Kenney dated January 5, 2006 (the "Kenney Affidavit"), attached to the Notice of Motion in this action dated January 6, 2006, and (ii) the Statement of Claim, dated January 5, 2006 (the "Statement of Claim"). Copies of the Initial Partnership Agreement, the First Amendment, the Second Amendment and the Statement of Claim are annexed as exhibits to the Kenney Affidavit, the Affirmation in Opposition to Order to Show Cause of the undersigned, dated January 18, 2006 (the "First Affirmation") and the Supplementary Affirmation in Opposition to Order to Show Cause of the undersigned, dated January 25, 2006 (the "Supplementary Affirmation").

## II     THE THRESHOLD QUESTIONS.

4.     As stated in the Supplementary Affirmation, it has been long recognized in the State of New York that "courts should respect and enforce arbitration clauses in contracts rather than require the parties to litigate in a judicial forum." Roffler v. Spear, Leeds & Kellogg, 13 A.D.3d 308, 333, 788 N.Y.S.2d 326 (N.Y.A.D. 1 Dept. 2004); Citizens Bank v. Alafabco, 539 U.S. 52, 123 S. Ct. 2037, 156 L.Ed.2d 46 (2003); Matter of Smith Barney, Harris Upham & Co., Inc. v. Luckie et al., 85 N.Y.d. 193, 623 N.Y.S.2d 800 (1995).

5.      Under New York statutory and case law, there are three (3) threshold questions to be resolved by courts when considering motions to stay or compel arbitration:  (i) whether the parties made a valid agreement to arbitrate, (ii) if such agreement was made, whether it has been complied with, and (iii) whether the claim sought to be arbitrated would be barred by limitations of time had it been asserted in a State court.  In the Matter of Arbitration between the County of Rockland and Primiano Construction Co., Inc., 51 N.Y.2d 1, 6-7, 431 N.Y.S.2d 478, 480-481 (1980); In the Matter of Smith Barney, *supra.*; 212 Inv. Corp. v. Kaplan, 6 Misc.3d 1031(A), 800 N.Y.S.2d 358 (N.Y. Sup. 2005).

### a.    The First Threshold Question.

6.      The first threshold question is whether the parties made a valid agreement to arbitrate.  In this case, the agreement to arbitrate is set forth in Paragraph 9.18 of Article IX of the Initial Partnership Agreement, which provides in its entirety:

> *"9.18    Arbitration.    Any controversy or claim arising out of or relating to this agreement shall only be settled by arbitration in accordance with the rules of the American Arbitration Association, one arbitrator, and shall be enforceable in any court having competent jurisdiction."* (*See,* page 16, Initial Partnership Agreement).

7.      Paragraph 9.18 of the Initial Partnership Agreement was expressly adopted and ratified by Plaintiff, Defendant and Mr. Becker in Paragraph 21.0 of the First Amendment, which provides in its entirety:

> *"21.0    The Terms and Conditions to the original Partnership Agreement Dated as of 15 June 1995.    The parties hereby adopt clauses 1.0, 1.1, 1.5, 3.2, 3.3, 3.4, 3.5, 4.0, 4.1, Article VI, Article VII and Article IX of the original Partnership Agreement."* (*See,* page 23, First Amended Partnership Agreement).

8.      Plaintiff now claims that the dispute between Plaintiff and Defendant is not subject to arbitration because Plaintiff, a limited liability partnership comprised only of Defendant and Mr. Becker, was not a signatory to the Initial Agreement which was executed by

both Defendant and Mr. Becker, notwithstanding that Plaintiff was a signatory to the First Amendment, which expressly adopted that Article of the Initial Agreement which includes the arbitration provision in question.  Plaintiff's Memorandum, p.8.

**III    PLAINTIFF IS A PARTY TO THE ARBITRATION AGREEMENT.**

      **a.    Adoption of the Arbitration Agreement by Plaintiff in the First Amendment.**

    9.    Plaintiff admits that it is a party to the First Amendment, and also admits that the First Amendment adopted Article IX of the Initial Agreement, but claims that notwithstanding the clear and unequivocal terms of Paragraph 21.0 of the First Amendment, the First Amendment "does not contain a provision for arbitration of disputes." Plaintiff contends that "[b]y its terms, paragraph 21 does not incorporate the provisions of Article IX," and Mr. Becker had "no specific intent to incorporate the provisions for arbitration [set forth in Paragraph 21.0] in the First Amendment." Id.

    10.    Plaintiff is offering a disingenuous and misleading argument.  He presents no legal support for the proposition that parties may expressly "adopt" provisions from a contract in an amendment to such contract, without incorporating those very provisions in the amended contract.  There is no New York State case law that supports such a distinction.  The plain meaning of the term "adopt" includes, inter alia, "to accept formally and put into effect." Webster's Ninth New Collegiate Dictionary, Merriam-Webster Inc., 1985.  The definition of the term "incorporate" includes, *inter alia*, "To make the terms of another (esp. earlier) document part of a document by specific reference." Black's Law Dictionary, West Publishing Co., 2004.

    11.    Mr. Becker states in paragraph 10 of his Affidavit dated January 30, 2006, in support of Plaintiff's cross-motion (the "Becker Affidavit"), "[t]here was no specific intent on behalf of plaintiff to incorporate the provisions for arbitration in the First Amendment." Plaintiff is a partnership comprised solely of Defendant and Mr. Becker, yet Mr. Becker purports to speak alone for the intent of the Partnership, although he and Defendant drafted the extremely detailed provisions of the First Amendment together.  Mr. Becker apparently believes that he alone – in

the name of the Partnership - can now negate any of the provisions "adopted" from the Initial Agreement by asserting that he had no specific intent to "incorporate" them in the First Amendment.  For example, Article IX of the Initial Agreement also contains provisions regarding, *inter alia*, (i) the partners' access to the Partnership's financial records, (ii) conflicts of interest, (iii) governing law, and (iv) indemnification of the partners.  Mr. Becker's logic implies that he can negate any of these "Miscellaneous" provisions at will.  Mr. Becker's contention that a provision specifically added to the First Amendment is superfluous is contrary to the basic principles of contract law.  Caselli v. Messina, 148 Misc.2d 671, 567 N.Y.S.2d 972 (N.Y.Sup. 1990).  This Court should reject the meaningless distinction on which Mr. Becker is attempting to evade his partnership obligations.

12.    Further, New York courts have held that where parties have entered into a valid partnership agreement which provides, *inter alia*, that all disputes regarding the agreement are to be resolved by arbitration, and subsequently factual issues arise as to whether that agreement was later modified or cancelled by mutual oral agreement and a new partnership agreement entered into which excludes an arbitration provision, such issues are to be properly determined by the arbitrator, and not by the court, even though not all of the members of the partnership were parties to the original agreement.  Oshman Helfenstein & Matza v. Matza, 243 A.D. 398, 663 N.Y.S.2d 194 (App. Div 1st Dept. 1997); Matter of Vann v. Kreindler, Relkin & Goldberg, 54 N.Y.2d 936, 445 N.Y.S.2d 139 (1981).  The issues in those cases are analogous to the issues in this case, and the Court should grant Defendant's motion to compel arbitration of the instant dispute.

13.    In addition, the principle asserted by Plaintiff is irrational.  Plaintiff maintains that if there is no signature block for a partnership entity to sign in a partnership agreement between two individuals, then the entity which is formed pursuant to that agreement can deny any of the terms of that agreement, even after the entity itself has executed an amendment to the original agreement which expressly adopts and ratifies specific terms and provisions of the original agreement.  This Court should not countenance an irrational and unjust interpretation of the Partnership Agreement.  *See*, Armotek Industries, Inc. v. Freedman, 790 F.Supp. 383, 390-391 (D. Conn. 1992).

**b.      Case Law Cited by Plaintiff is Inapplicable to the Facts of This Case.**

14.      Plaintiff also asserts that "[u]nless there is additional evidence showing an intent to adopt an arbitration clause contained in another contract, a general incorporation of such other contract by reference, without specific mention of the arbitration clause, is not sufficiently clear to obligate the parties to arbitrate . . . The intent of the Partnership to arbitrate cannot be implied since the partnership [sic] is not a party to the Initial Agreement." Plaintiff's Memorandum, p.9.

15.      Plaintiff cites a spate of cases to support this proposition. All of Plaintiff's cases can be distinguished from the case at bar:

(i)      New York Telephone Co. v. Alvord & Swift, 49 A.D.2d 726 (1st Dept. 1975): The court held that one party to a subcontract was not obligated to arbitrate with the other "since their contract did not specifically incorporate by reference or otherwise, the arbitration clause of the main contract" between that party and a third party. In the case at bar, the Court is reviewing the terms of an amended partnership agreement, and not a subcontract. Further, unlike the purported arbitration clause in the cited case, Article IX of the Initial Agreement containing the arbitration provision was specifically incorporated into the First Amendment by express agreement of Defendant, Mr. Becker and Plaintiff.

(ii)      Weiner v. Mercury Artists Corp., 284 A.D. 108 (1st Dept. 1954): The contract in question purported to incorporate a "somewhat vague provision for arbitration" contained in the rules and regulations of a third-party organization of which none of the parties was a member. 284 A.D, at 109. In the case at bar, the arbitration clause set forth in Paragraph 9.18 of the Initial Agreement is clear, explicit and unequivocal, was drafted and approved by the only two (2) members of the Partnership, and was expressly adopted by the Partnership into the First Amendment.

(iii) <u>Arthur Pile & Foundation Corp. v. Bonjay Housing Corp.</u>, 27 Misc.2d 305 (Sup. Ct. 1960): This case involved the purported incorporation by reference in a subcontract of an arbitration provision found in the main contract. However, the main contract was not specifically incorporated into the subcontract, the subcontract did not expressly reference arbitration as a remedy, and the subcontractor had never seen a copy of the main contract. In the case at bar, the Court is reviewing the terms of an amended partnership agreement, and not a subcontract. Further, Article IX of the Initial Agreement containing the arbitration provision was specifically incorporated by adoption into the First Amendment, and Mr. Becker was an active participant in the drafting of both documents.

(iv) <u>Emerson Radio & Phonograph Corp. v. Illustrated Technical Products Corp.</u>, 12 Misc. 2d 1000 (Sup. Ct. 1958): In this case, the "disputes" provision in the contract did not call for arbitration, but for "submission and determination of the dispute" by an individual residing in another state. The case did not involve the adoption of an arbitration provision from a prior contract between the same parties. This case has no relevance to the issues before this Court.

(v) <u>International Aviation Services of New York, Inc. v. Flagism Co., Inc.</u>, 43 A.D.2d 971 (2d Dept. 1974). The contract in question incorporated by reference certain provisions in a form of contract prepared by the American Institute of Architects, but did not specifically reference the arbitration provision. The court found "[t]here is no showing that the arbitration clause in the AIA contract was ever considered or referred to." <u>Id</u>. In the case at bar, the arbitration provision is not found in a form prepared by a third party, but was drafted in the Initial Agreement by both Defendant and Mr. Becker, and adopted in the First Amendment by Defendant, Mr. Becker and the Partnership.

(vi) <u>Herbert Huss, M.D., P.C. v. James D. Loftus, M.D., P.C.</u>, 143 A.D.2d 114 (2d Dept. 1988): This case actually supports Defendant's position. The parties had entered into a stockholders' agreement, which included an arbitration provision. Subsequently, the parties entered into "a partnership agreement, which specifically referred to the stockholders' agreement several times. The partnership

7

agreement did not contain any arbitration provision but did contain an integration clause which stated that '[t]his agreement and the other agreements referenced herein constitute the entire agreement and understanding of the parties.'"   The court held, "It is clear from the record that in signing the stockholders' agreement the parties entered into a valid agreement to arbitrate, that the entire stockholders' agreement, including the arbitration clause, was incorporated into the partnership agreement, and that, therefore, the instant dispute must be submitted to arbitration." 143 A.D.2d, at 115.

16.     Plaintiff, in citing Getlan v. Josephthal & Co. Inc., 91 A.D.2d 971 (2d. Dept. 1983), correctly states that court's finding that "there is no requirement that an agreement to arbitrate future disputes be signed," but omits the next part of that sentence, "so long as there is other proof that the parties actually agreed on [arbitration.]" 91 A.D.2d, at 972.  In this case, there is "other proof" that all of the parties actually agreed on arbitration, *i.e*, their express adoption of Article IX of the Initial Agreement into the First Amendment.

17.     The facts submitted in this case by both parties clearly show that the first "threshold question" in this case is answered in the affirmative, because the parties made a clear, explicit and unequivocal agreement to submit to arbitration any controversy or claim arising out of or relating to the Partnership Agreement, which should be enforced by this Court.

**c.     The Second and Third Threshold Questions.**

18.     In the interest of brevity and in order to avoid repeating arguments that have already been submitted, the Court is referred to Paragraphs 13 – 18 of the Supplementary Affirmation for Defendant's discussion of the second and third "threshold questions" enunciated in Rockland and Smith, Barney, *supra*.

# IV.    DEFENDANT'S CLAIMS ARE WITHIN THE SCOPE OF THE PARTIES' AGREEMENT TO ARBITRATE.

**a.    Introduction.**

19.    Plaintiff asserts that "the particular claim Defendant seeks to arbitrate is outside the scope of the parties' agreement to arbitrate." Plaintiff's Memorandum, p. 10.   New York courts have the authority to determine whether "the subject matter of the dispute is one that may be submitted to arbitration without violation of any law or public policy, and if so, whether it falls within the scope of the arbitration agreement." Larrison v. Scarola Reavis & Parent LLP, 2005 WL 3601791 (N.Y.Sup., 2005); Rockland, *supra.*

20.    "Furthermore, courts must resolve any ambiguities as to the scope of arbitration clauses in favor of arbitration." 212 Inv. Corp. v. Kaplan, 6 Misc.3d 1031(A), 800 N.Y.S.2d 358 (N.Y. Sup. 2005), *citing* Volt Info. Sciences v. Board of Trustees of Leland Stanford Jr. Univ., 489 U.S. 468, 476 (1988).

**b.    The "Particular Claim" Plaintiff Seeks to Challenge.**

21.    On January 6, 2006, Defendant caused the service on Mr. Becker and Plaintiff of his demand for arbitration and accompanying Statement of Claim, which calls for arbitration of, *inter alia*, the controversy described in Plaintiff's complaint before the International Centre for Dispute Resolution (the "ICDR"), an international division of the American Arbitration Association, in Miami, Florida.   Copies of the demand for arbitration and the Statement of Claim, without exhibits, were attached as Exhibit 6 to the First Affirmation and Exhibit 4 to the Supplementary Affirmation.

22.    In the Statement of Claim, Defendant asks for eight (8) forms of relief, some in the alternative.  Statement of Claim, pp. 18 – 20.  The sole item of relief objected to by Plaintiff is Defendant's request for a declaration that (a) effective 19th February, 1997, the provisions contained within the First Amendment governing the carrying out of, and accounting for, Extra-Partnership Work were no longer binding due to the effective withdrawal of Defendant from Plaintiff (other than his nominal or inactive 1% interest in the profits, losses and distributable cash of Plaintiff); (b) at all material times Defendant had the right to establish a separate legal professional practice ("MKS"); (c) Mr. Becker and Plaintiff have no right of ownership of or any interest in MKS; and (d) Defendant has no obligation to account to Mr. Becker and Plaintiff for

9

any Extra-Partnership Work (as such term is defined in the First Amendment) or legal professional income of MKS or Defendant. Plaintiff claims that the relief described herein "finds no basis in the [Partnership A]greement," on the grounds that "Defendant seeks to modify the terms of the Agreement to reflect changed circumstances." Plaintiff's Memorandum, p. 10.

23.     Plaintiff has objected to only one (1) of the eight (8) forms of relief requested in the Statement of Claim. The Court of Appeals of the State of New York has held "it is only when the **sole matter sought to be submitted to arbitration** is clearly beyond the arbitrator's power that a stay will be granted." In the Matter of Silverman and Benmor Coats, Inc., 61 N.Y.2d 299, 309, 473 N.Y.S.2d 774 (1984) (emphasis added). In light of such guidance, this Court should deny Plaintiff's motion to stay the arbitration.

**c.     The Meeting of February 24, 1997.**

24.     Plaintiff has mischaracterized Defendant's claim. Defendant is not asking an arbitrator to "modify the terms of the [Partnership] Agreement to reflect changed circumstances," Plaintiff's Memorandum, p. 10, but to enforce certain oral agreements which were reached between Defendant and Mr. Becker at a meeting held among them and the Plaintiff's then-accountant, Bernard Medoff C.P.A. ("Mr. Medoff"), at the offices of the accounting firm of M. R. Weiser & Co. LLP on the evening of February 24, 1997 (the "Meeting"). A contemporaneous note of highlights of the oral agreements was made by Mr. Medoff in the form of a memorandum (the "Memorandum"), which was adopted by the parties and made a part of the Second Amendment, which was executed by the parties some five (5) years after the Meeting. Pursuant to those oral agreements, *inter alia*, the respective profit sharing and capital interests of Defendant and Mr. Becker in the Partnership were changed effective February 19, 1997 from a 50/50 relationship to a 99/1 relationship in favor of Mr. Becker.

25.     With respect to the facts underlying this matter, it is important that the Court take notice that on February 24, 1997, Defendant was not obliged by any term or condition of the Partnership Agreement to agree to immediately reduce his 50% interest in the Partnership to 1%. To the contrary, the First Amendment provided that such reduction would take effect only upon

the successful sale of $10 million in securities of Defendant's then-newly formed company Interclaim (Bermuda) Ltd. ("Interclaim"), and Defendant's relocation to Bermuda or another locale to assume the position of President of Interclaim. *See*, First Amendment, Sec. 18.3(v), p. 20.

26.    Defendant has informed the Court, in his affidavit dated February 6, 2006 and annexed hereto in support of this application (the "Second Kenney Affidavit"), that as of February 24, 1997, Interclaim had not raised the required amount – it was in a position to complete only a partial sale of $3 million in securities to a Canadian investment fund - and Defendant was not anticipating his imminent relocation to any other locale to assume the position of President of Interclaim. He was unsure if the contemplated financing would be achieved at all.[1] However, in light of the increasing expenditure of his time and efforts on behalf of Interclaim, he and Mr. Becker decided to accelerate his withdrawal as an active member of the Partnership, and to orally change or remove the conditions previously imposed on the same. The Meeting was arranged in order to determine a mutually acceptable restructuring of their respective rights and obligations vis-à-vis the Partnership. Second Kenney Affidavit, paras. 7-9.

27.    Mr. Becker is misleading the Court when he asserts that "[t]he 1997 February meeting at Mr. Medoff's offices took place in context of and in conformance with the express contractual arrangements of the parties hereto," Becker Affidavit, para. 38, and "February 1997 was the eighth month referenced in the first recital on page 2 of the First Amendment . . . It was time to put into effect the provisions of the [First Amendment]." Becker Affidavit, para. 40. Contrary to these assertions, the "First and Second Offerings" (as such terms are defined in the First Amendment) had not been successful (see, Second Kenney Affidavit, para. 5), and as a consequence, the "eight month period" referenced in the first recital on page 2 of the First Amendment was irrelevant in February, 1997. The events described in the First Amendment which would automatically trigger the reduction of Defendant's interest in the Partnership had not occurred, and at that date, were not expected to occur. Therefore, the Meeting, and the oral agreements reached at the Meeting, took place outside of the express contractual arrangements of Mr. Becker and Defendant.

28.    Defendant and Mr. Becker elected to not formalize the oral agreements reached at the Meeting (which were recorded, in part, by the Memorandum), but to carry on their respective businesses as though they had done so. During the five (5) years between the Meeting and the execution of the Second Amendment, the parties conducted themselves in accordance with the tenor of their oral agreement effective as of February 19, 1997, including, but not limited to, the transfer of a 49% ownership stake in the Partnership from Defendant to Mr. Becker. Implicit in the tenor of this oral agreement was that Defendant and Mr. Becker were going their separate ways, and henceforth all legal services provided by Defendant would constitute Extra-Partnership Work. Second Kenney Affidavit, para 9.

**d.    Plaintiff's Course of Conduct Following the Meeting.**

29.    Mr. Becker confirms that Defendant's 50% interest in the Partnership was reduced to 1% at the Meeting as aforesaid. Becker Affidavit, para. 40. The Court will note that consequences flow from any significant change in partnership relations; some consequences are express – *see*, the Memorandum - and other consequences are implied. Such implied consequences may be manifested in the course of conduct of the respective parties following what in the instance case constitutes a fundamental change in partnership relations.

30.    Plaintiff's Complaint states that Plaintiff "is wholly ignorant and without knowledge of the legal services performed by defendant subsequent to July 1, 1996." Complaint, para. 13. This statement is misleading. Defendant has stated that between February 1997 and approximately early 2003 he and Mr. Becker communicated on a regular basis on professional and personal matters. Second Kenney Affidavit, para. 11. At all material times, Mr. Becker and Plaintiff were aware of the fact of the establishment of Defendant's new law practice, MKS, in Ireland in 2002. In early 2003, for instance, Defendant and Mr. Becker exchanged emails over the feasibility of MKS and the Partnership acquiring a joint policy of professional indemnity insurance in order to attempt to save money. Moreover, in approximately late 2002, Mr. Becker and the Partnership helped MKS by providing MKS with a sub-client trust account as a part of the Partnership's master client trust account at its bank, Fleet Bank in New

---

[1]  In fact, it was not until July 1997 when (a) some $9,250,000 of primary finance of Interclaim was completed and (b) Defendant was in a position to move to Ireland (and not Bermuda as originally envisioned). See, Second Kenney Affidavit, n.1, p.2

York, to facilitate the holding of some of MKS's operating funds in New York. Additionally, in June 2003, the Partnership's New York accountant, Joel Agler, CPA, compiled and issued a joint Accountant's Report to the Law Society of England & Wales vouching for the handling and financial accounting of client trust money by each of MKS and the Partnership. Statement of Claim, para. 22.

31.     In addition, Mr. Becker has admitted in writing his understanding that Defendant is an "inactive 1% partner" in the Partnership, and his knowledge that Defendant has been conducting an independent law practice. Attached as Exhibit 4 to the Kenney Affidavit is a copy of an email from Mr. Becker to the Law Society of England & Wales, dated 19 May, 2004 at 21:16 hrs, which states explicitly: "As to this firm, [Defendant] is an inactive 1% partner . . . It is our understanding that [Defendant] conducts practice as a lawyer at his principal and, we understand, only office. That office is in the Republic of Ireland. We have previously informed the Society of said fact." See, Kenney Affidavit, Exhibit 4.

32.     At no time did Mr. Becker or Plaintiff object to Defendant establishing a new legal professional practice under Defendant's own name and in Ireland in 2002 or otherwise. At no material time did Mr. Becker or Plaintiff ever assert the purported right to access to confidential information belonging to MKS, the firm's clients or Defendant. At no material time did Mr. Becker or Plaintiff assert that the Partnership was the rightful owner of the income realized by MKS or Defendant through the provision of legal professional services to clients of MKS or otherwise. Statement of Claim, para. 23.

33.     By their course of conduct over eight (8) years following the Meeting, Plaintiff and Mr. Becker evidenced their understanding that following the Meeting, Defendant had withdrawn from active participation in the Partnership, and henceforth all legal services provided by Defendant constituted Extra-Partnership Work. Implicit in that understanding was the fact that the protocols set forth in the First Amendment for categorizing Extra-Partnership Work and allocating Partnership resources for such Work would be of no further purpose or effect.

**e.    Applicable Law.**

34.    Contrary to Plaintiff's assertions, Defendant has not requested an arbitrator to re-write the Partnership Agreement, but to, *inter alia*, provide a declaration of the terms of their Partnership Agreement, and the rights and liabilities of the parties thereunder, in the context of all of the writings, oral agreements and course of conduct among the parties.

35.    New York law provides that when parties have entered into a valid partnership agreement, which provides that all controversies regarding or arising out of the agreement are to be resolved by arbitration, and subsequently factual issues arise as to whether the agreement was modified or cancelled by mutual oral agreement and a new partnership agreement was entered into, "such issues are properly to be determined by the arbitrator." Oshman, *supra*.

## V.    RULES AND VENUE OF THE ARBITRATION ARE TO BE DECIDED BY THE ARBITRATOR.

36.    Plaintiff contends that this Court should set the rules and determine the venue for any arbitration among the parties.  Plaintiff's Memorandum, 12–14.  New York law does not grant such authority to the Court, but reserves it to the arbitrator. Rockland, *supra*.; Mobil Oil Indonesia Inc. v. Asamera Oil (Indonesia) Ltd., 43 N.Y.2d 276, 401 N.Y.S.2d 186 (1977).

37.    In the interest of brevity and in order to avoid repeating arguments that have already been submitted, the Court is referred to Paragraphs 19 – 29 of the Supplementary Affirmation for Defendant's discussion of these issues.

## VI.    DEFENDANT HAS NOT WAIVED ANY RIGHTS BY PARTICIPATING IN UNRELATED LITIGATION.

38.    Plaintiff also contends that Defendant has waived any right to arbitrate the disputes arising out of the Partnership Agreement because he has answered a Summons and Complaint served against him by Plaintiff (alleging a claim under the terms of a unrelated contract of retainer allegedly made by Defendant and one Irving Cohen, as clients, and Plaintiff, as their counsel) for payment of legal fees allegedly owed to Plaintiff, and because one element of Defendant's prayer for relief in the Statement of Claim includes a request for a determination

that Defendant does not owe any money to the Partnership arising from the Partnership Agreement. Plaintiff's Memorandum, 14-15.  A copy of said Summons and Complaint is annexed as Exhibit 6 to Plaintiff's Memorandum; *see*, Second Kenney Affidavit, para. 11.

39.    This is a frivolous contention.  Nowhere in said Complaint is it alleged that any of Plaintiff's claims therein arise out of or are in any way related to the Partnership Agreement. Defendant's prayer for relief in his Statement of Claim specifically addresses claims and issues arising out the Partnership Agreement, and were clearly not intended to include his defense against any claims that are not related to the Partnership Agreement.

40.    For the foregoing reasons, the Defendant requests that an Order be entered permanently staying the instant action in Supreme Court, compelling arbitration of the disputes between the parties, and awarding to Defendant his costs in making this application.

Dated: February 6, 2006
      New York, New York

_____
Joseph H. Lilly, III
Law Office of Joseph H. Lilly, III
60 East 42nd Street, Suite 1338
New York, New York 10165
(212) 687-6523
Attorneys for Defendant

15

AFFIDAVIT OF MARTIN S. KENNEY DATED FEBRUARY 6, 2006

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------x
KENNEY, BECKER LLP          :

       Plaintiff,    :  Index No. 603614/05

              :  **SECOND**
              :  **AFFIDAVIT IN**
  - against -       :  **SUPPORT OF MOTION**
              :  **STAYING ACTION AND**
MARTIN S. KENNEY,       :  **COMPELLING**
              :  **ARBITRATION**
       Defendant.  :
-----------------------------------------------------------------------x

    BRITISH VIRGIN ISLANDS }
               ss.:
    ISLAND OF TORTOLA   }

   **I, MARTIN STEVEN KENNEY** of Geneva Place Building, Second Floor, Road Town, Tortola, British Virgin Islands, BEING DULY SWORN MAKE OATH AND SAY AS FOLLOWS:

   1.  I make this affidavit based on my personal knowledge, save and except where stated to be based upon information and belief, and where so stated I set out the source of my information; and I verily believe the same to be true.

   2.  I am the Defendant herein, and a co-founder of and partner in Kenney, Becker LLP, a New York registered limited liability partnership in dissolution (formerly known as Kenney, Becker, Solicitors, LLP), and the plaintiff herein (the "Partnership").

   3.  The purpose of this Second Affidavit is to set forth evidence of additional material facts in support of Defendant's motion to stay the instant action and compel arbitration on the ground that any and all controversies or claims arising out of or relating to the Kenney, Becker LLP (in Dissolution) Registered Limited Liability Partnership Agreement dated June 15, 1995, as amended, must be resolved by arbitration in accordance with the rules of the American Arbitration Association.

4.      Pursuant to the First Amendment and Modification of Registered Limited Liability Partnership Agreement for Kenney, Becker, Solicitors LLP dated as of July 1, 1996, by and among, Eugene S. Becker ("Mr. Becker"), the Partnership and myself, (the "First Amendment"), upon the successful sale of $10 million in securities of Interclaim (Bermuda) Ltd. ("Interclaim"), and my relocation to Bermuda or another locale to assume the position of President of Interclaim, my ownership interest in the profits and losses in the Partnership would be automatically reduced from 50% to 1%.

5.      As of February 24, 1997, Interclaim had not raised the required amount.  The "First and Second Offerings" (as such terms are defined in the First Amendment) had not been successful. As of that date, Interclaim was in a position to complete only a partial sale of $3 million in securities to a Canadian investment fund.  In February 1997, I was unsure if the contemplated financing would be achieved at all. The events described in the First Amendment which would automatically trigger the reduction of my interest in the Partnership had not occurred, and at that date, I did not expect them to occur.

6.      In addition, at that date I was not anticipating to relocate in the foreseeable future to Bermuda or to any other locale to assume the position of President of Interclaim.  My relocation plans were dependent upon the completion of the raising of upwards of $10 million of primary finance for Interclaim.[1]

7.      However, in light of the increasing expenditure of my time and efforts on behalf of Interclaim, in February 1997, Mr. Becker and I decided to accelerate my withdrawal as an active member of the Partnership.  We arranged a meeting with the Partnership's then accountant, Bernard Medoff C.P.A. ("Mr. Medoff"), at the offices of the accounting firm of M. R. Weiser & Co. LLP on the evening of February 24, 1997 (the "Meeting"), in order to find a mutually-acceptable restructuring of our respective rights and obligations vis-à-vis the Partnership.

---

[1] In fact, it was not until July 1997 when (a) some $9,250,000 of primary finance of Interclaim was completed and (b) I was in a position to move to Ireland (and not Bermuda as originally envisioned).

8.      Mr. Medoff took contemporaneous notes at the Meeting, highlights of which were later reduced to a memorandum (the "Memorandum").   At the Meeting, Mr. Becker and I achieved a number of oral agreements regarding the restructuring of the Partnership and the reduction of my ownership interest in the Partnership, effective as of February 19, 1997.   Mr. Becker and I elected to not formalize the oral agreements reached at the Meeting (which were recorded, in part, by the Memorandum), but to carry on our respective businesses as though we had done so.

9.      At the Meeting, Mr. Becker appeared to understand that I was withdrawing from active participation in the Partnership and, subject to certain limited exceptions for old Partnership matters that still required some input from me; henceforth all professional legal services which I might provide individually or in association with others, would constitute Extra-Partnership Work as such term is defined in the First Amendment.

10.      During the approximately five (5) years between the Meeting and the execution of the Second Amendment and Modification of Registered Limited Liability Partnership Agreement for Kenney, Becker, Solicitors LLP, now known as Kenney Becker, LLP executed on February 14, 2002 but dated as of January 1, 2001, by and among, Mr. Becker, the Partnership and myself (the "Second Amendment"), Mr. Becker and I conducted ourselves in accordance with the tenor of our oral agreements effective as of February 19, 1997, including, but not limited to the transfer of a 49% ownership stake in the Partnership from me to Mr. Becker; and the change in my status to an inactive partner of the practice.

11.      Between February, 1997 and approximately early 2003, I communicated with Mr. Becker regarding a number of different matters.   In particular, as I recall, in 1998, I was asked to assist in attempts by the Partnership to settle a major fee dispute with a former client named Mr. Mark Andre.   I flew to New York City to assist in these discussions in or about 1998. Approximately between November 1999 and October 2002, one Irving Cohen and I were represented by the Partnership in an arbitration proceeding in New York involving a Mr. Juval Aviv and a Mr. James W. Dodson, Jr.   It is in relation to these arbitration proceedings that, in 2005, the Partnership brought an unrelated action against me and Mr. Cohen for legal fees

3

allegedly owing.  In 2001, I recommended to a then client of Interclaim, GFL Advantage Fund, Ltd. ("GFL"), that GFL ought to retain the Partnership in combination with a Chicago law firm, Schwartz, Cooper, Greenberger & Krauss, to act in connection with an attempt by GFL to enforce a $21 million judgment against a Dr. Douglas R. Colkitt.  I worked closely with the Partnership and Mr. Becker on this matter between 2001 and early 2003, approximately.  At no time did Mr. Becker indicate to me that he had any concern about whether I was in a default of any of the terms of the Partnership Agreement.

12.    I have read Mr. Becker's Affidavit sworn 30 January, 2006 and filed in these proceedings.  I do not propose to respond to Mr. Becker's many slurs and personal attacks.  Such material is irrelevant to the issues before the Court, and I will not detain the Court with a detailed rebuttal.

Dated: February 6, 2006.
Road Town, Tortola, British Virgin Islands



_____
Martin S. Kenney

SWORN BEFORE ME THIS
6th DAY OF FEBRUARY, 2006

Notary Public in and for the British
Virgin Islands



4