UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
KENNEY, BECKER LLP and
EUGENE S. BECKER,

                               Plaintiffs,                  Docket 06 Cv 2975 (JSR)

      -against-

MARTIN S. KENNEY,

                               Defendant.
------------------------------------------------------------------x

**PLAINTIFFS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR REARGUMENT & RENEWAL OF
<u>STATE COURT ORDERS COMPELLING ARBITRATION</u>**

Plaintiffs submit this Reply Memorandum of Law in further support of its motion for reargument, renewal and *de novo* reconsideration of the state court orders granting defendant's motion to compel arbitration and denying plaintiffs' cross motion to stay arbitration. Such relief is appropriate in this action removed from state court. Applying federal law the court must deny defendant's motion to compel arbitration dated January 6, 2006 and dismiss the arbitration demanded by defendant in Miami, Florida. Plaintiffs address defendant's several meritless and misleading submissions that are unsupported by current law or appropriate extension.

**1. *De Novo* Reconsideration of State Court Orders.**

It is well established that upon removal the Federal Court has the authority to dissolve or modify all proceedings taken in state court prior to removal. In <u>Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County</u>, 415 U.S. 423, 437 (1974), the United States Supreme Court stated:

"More importantly, once a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings,

notwithstanding state court orders issued prior to removal. [28 USC] Section 1450 implies as much by recognizing the district court's authority to dissolve or modify injunctions, orders, and all other proceedings had in state court prior to removal."

Defendant falsely argues that the holdings Granny Goose, and in Ex parte Fisk, 113 U.S. 713 (1885) deal with procedural and not substantive law (defendant's Memorandum of Law, page 14, ¶ 39). The Supreme Court made no such distinction. The court in Granny Goose, stated upon removal the action is "governed by federal law, including the Federal Rules of Civil Procedure," 415 U.S. at 441.

Defendant removed this action from state court pursuant to 9 U.S.C. § 205 based upon federal question jurisdiction under 9 U.S.C. § 202 and 28 U.S.C. § 1331. Defendant asserted that this action falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (Notice of Removal, ¶13). Plaintiffs do not controvert this assertion.

The Federal Arbitration Act now governs this removed action, just as the Norris-LaGuardia governed in General Contractors Ass'n of New York, Inc. v. Local No. 46, Metallic Lathers Union and Reinforcing Iron Workers New York and Vicinity, 1990 WL 33584 (S.D.N.Y., 1990), also a removal case. In General Contractors, the court, citing Granny Goose, held that after removal federal law applied and dissolved an arguably proper state court injunction, which was inconsistent with federal law. The state court orders herein are inconsistent the requirements of the Federal Arbitration Act which now governs this action.

Defendant's Opposition Memorandum does not dispute that upon removal, the federal district court is free to dissolve or modify state court orders because state court orders are not considered the law of the case, Quinn v. Aetna Life & Casualty Co., 616

F.2d 38,40 (2d Cir. 1980); Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 531 (9th Cir. 2000), Instead, defendant argues that the court should give the state court determinations the same preclusive effect as a state court would (Point IV, Defendant's Memorandum of Law). This argument lacks any merit. None of defendant's purported authorities for this frivolous proposition involved a removed action.

Defendant cites 28 U.S.C. §1738 and State of New York v. Sokol, 113 F. 3d 303, 306 (2d Cir.1997) for the general proposition that "the preclusive effect of a state court determination in a subsequent federal action is determined by the laws of the state where the prior action occurred." Neither purported authority involves removal. 28 U.S.C. §1738 concerns Full Faith and Credit and the authentication of acts, records and proceedings. State of New York v. Sokol, was an adversary proceeding under Chapter 7 of Bankruptcy Act, where the court held, *inter alia,* that the amount of restitution ordered in a state criminal case was not conclusive on the amount of damages awarded in federal court.

Defendant also cites Colon v. Caughlin, 58 F 3d 865, (2d Cir 1995) in support of this meritless position. Colon, was a section 1983 civil rights action against prison officials, alleging that defendants conspired to concoct false charges, to deprive plaintiff of fair hearing, and to subject plaintiff to disciplinary action in retaliation for his two prior lawsuits. The court held that under New York law the doctrine of issue preclusion only applies if the issue in question was actually and necessarily decided in a prior proceeding, and the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding, 58 F. 3d at 869. Defendants also cite Hill v. U.S. Fidelity and Guaranty Company, 428 F. 2d 112 (2d cir. 1970), for the

3

"preclusive force" of the state court proceedings herein (defendant's Memorandum, page 12, ¶ 30). Neither Colon nor Hill is a removal case; neither has any applicability to the matter before this court.

Citing Hill v. U.S. Fidelity 428 F. 2d 112, defendant argues the "Order of the N.Y. Supreme Court and the Appellate Division have 'the persuasive force of having been entered in the very same case and on precisely the same issues'" (defendant's Memorandum, page 12, ¶ 30). Defendant misleads the court by implying that the New York State Appellate Division has finally determined the state issues. The Appellate Division has not decided plaintiffs' appeal. Plaintiffs filed a notice of appeal from the trial court order. The Appellate Division of the New York Supreme Court denied plaintiffs' motion for a stay pending appeal without stating its reasons. The appeal has not been perfected, briefed, argued or decided. Defendant's repeated implication that somehow the Appellate Division determination was on the merits is false. Defendant deceives the court by equating the trial court determination with the Appellate Division's denial of the motion for a stay pending appeal (see defendant's Memorandum, page 12, ¶ 30). On page 15, at paragraph 41 of his Memorandum, defendant dishonestly writes, "Plaintiffs have had two (2) full and fair opportunities to litigate these issues. The N.Y. Supreme Court and the Appellate Division have both issued Orders denying Plaintiffs' motion to stay the arbitration" (emphasis in original).

**2. Arbitrability and Venue Determinations are Issues for Court**

Applying its view of state law, the state trial court granted defendant's motion to compel arbitration and denied the cross motion to stay arbitration. Under New York law, absent express authority in the agreement to arbitrate, an arbitrator does not have the

4

authority to modify the contractual terms to reflect defendant's alleged changed circumstances (and supercession of the Partnership Agreement), Bowner v. Bowner 50 N.Y. 2d 288 (1980); Agora Development Corporation v. Low, 19 A.D. 126 (1st dept., 1963). Should arbitration be compelled and should an arbitrator exceed its authority, the remedy for an aggrieved party is a post arbitration proceeding to vacate the award. NY CPLR § 7511(b)(1)(iii); Silverman v. Benmor Coats, Inc., 61 N.Y.2d 299. At oral argument, the state court applying these principles, observed that an arbitrator cannot "modify the written agreement among the parties" (exhibit J-A, page 30, lines 10 - 16). The state court judge stated, should the arbitrator change the parties agreement, on "a motion to confirm and a motion to strike it [the award], I can deal with that issue if it turns out that the arbitrator has so exceeded his or her powers to go beyond what New York law permits, because New York law is the controlling law." The state court advised counsel to come back after the arbitration if the arbitrator changes the agreement (exhibit J-A, page 30, lines 190-23). Similarly, the state court stated that venue of arbitration is "not one of the issues here in the court we deal with when it's an arbitration" (exhibit J-A, page 36, lines 4 –7).

Defendant agrees that under federal law the courts rather than the arbitrator determines the arbitrability of issues and the place of hearing (defendant's Memorandum of Law, page 15, ¶ 40). But defendant argues that the parties' arbitration agreement delegates these matters to an arbitrator. An examination of the arbitration agreement shows this position to be false.

The arbitration provisions of the Partnership Agreement provides:

"Any controversy or claim arising out of or relating to this agreement shall only be settled by arbitration in accordance with the rules of the American Arbitration

5

Association, one arbitrator, and shall be enforceable in any court having competent jurisdiction. "

The arbitration provisions of the Partnership Agreement do not empower an arbitrator to change or modify the partnership agreement. The scope of an arbitrator's authority is for the court to determine not an arbitrator, unless there is "clear and unmistakable evidence" to the contrary, First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). The arbitrator must enforce the agreement as written. The partnership agreement clearly shows that the parties did not intend for modification by an arbitrator. The Partnership Agreement contains specific provisions limiting its modifications: no modification is valid unless in writing (article 9.6), no waiver is valid unless in writing (article 9.16).  The presence of these clauses requires that the court and not the arbitrator determine questions of arbitrability, see: Katz v. Feinberg, 290 F. 3d 95 (2d Cir. 2002).

Defendant's Opposition Memorandum of Law again exhibits the prohibited relief he seeks in arbitration. At page 2 (¶ 1), defendant defines the partnership agreement as including "oral agreements." At pages 6-7, (¶¶ 13, 14, & 15), he refers to the parties "oral agreements." At page 7, (¶ 15) he states that the Partnership Agreement "was modified by Oral Agreements between the partners." Point "IIc," at page 7, of the Opposition Memorandum, defendant argues that the written agreement was orally modified. Under the Partnership Agreement a valid and enforceable oral modification requires a writing. In defendant's March 14, 2006 Brief in Opposition to Motion to Stay Arbitration filed in the Appellate Division (exhibit L) he goes further in speaking of the parties' allegedly reaching "a new agreement" (page 14, ¶ 33) and that the "new agreement…superseded [sic]" the parties' Partnership Agreement. Somehow in all of

this the arbitration clause survived. These issue raised by defendant are for the court to decide, at the appropriate time in this litigation, and are not and indeed cannot be issues in arbitration.

Disputing the holdings <u>Oil Basins Ltd. v. Broken Hill Proprietary Co</u>., 613 F. Supp. 483 (S.D.N.Y.1985) and its progeny that the court has discretion only to compel arbitration in its own district or in a place specified in the contract, defendant cites several cases. Each case cited is inapposite to the matter now before the court.

<u>In the Matter of Arbitration Between United States Lines Inc. and Liverpool and London Steamship</u>, 833 F. Supp 350 (S.D.N.Y. 1993), arbitration was demanded under an arbitration agreement which provided:

"If and whenever any difference or dispute arises between the Association and any member touching any loss, claim, or contribution, such difference or dispute shall be referred to the decision of an arbitrator to be appointed by the parties in difference, or, if they cannot agree, to be appointed by the President for the time being of the Law Society of England." 833 F. Supp. 350, at 351.

Petitioner sought arbitration in New York City. Respondent rejected the venue designation. The court granted the petition to compel to the extent of directing the parties exchange lists of proposed arbitrators, and that it they are unable to agreement on one arbitrator the Law Society of England shall appoint one arbitrator who shall determine the time and place of arbitration.

The <u>U.S. Lines</u> court cited <u>Oil Basins</u> for the proposition that "In both domestic and international cases, if the agreement between the parties to arbitrate does not specify the location of the arbitration, the court may order that the arbitration be conducted only within the boundaries of the district," 833 F. Supp., at 352. The court continued, "The law is clear the court must enforce the intent of the parties as embodied

7

in their agreement to arbitrate," 833 F. Supp, at 352. The court, relying on the language of the parties' agreement, concluded that inasmuch there was a dispute between them, the parties intended to submit to an arbitrator the issue of venue, The court held, "The court concludes that the issue of the venue for the arbitration arises out of the parties' agreement to submit to arbitration any "difference or dispute between the Association and any member touching any loss, claim, or contribution."

Unlike the arbitration agreement in <u>U.S. Lines,</u> which covers "any difference or dispute," the parties to this action agreed to submit to arbitration only controversy or claims "arising out of or relating to this agreement." In <u>US Lines</u> the court held that the parties agreed to arbitrate all disputes between them.

Defendant's reliance upon <u>Hughes, Hooker & Co. and Hughes, Hooker (Correspondents) S.A. v. American Steamship Owners Mutual Protection and Indemnity Association, Inc.</u> 2005 WL 13840555 (S.D.N.Y. 2005, Stein, J), is similarly misplaced.

In <u>Hughes, Hooker</u>, the arbitration agreement gave the "defending party" certain options. The arbitration agreement provided: "This Agreement is subject to American or English law and jurisdiction either in arbitration, before a single arbitrator, or before the regular courts, at the option of the defending party." 2005 WL 1384055, at page 2. The court favorably citing <u>Oil Basins</u> and 9 U.S.C. § 206 for the proposition that the court may only direct within its district or as agreed by the parties held that the arbitration clause permitted the "defending party to chose where the arbitration shall take place" (2005 WL 1384055, at page 4). Unlike <u>Hughes, Hooker</u>, the arbitration agreement before the court does not provide for a party to designate the location of arbitration.

Defendant also relies on Prudential Securities Inc. v. Thomas, 793 F. Supp 764 (WD Tenn 1992). There the arbitration agreement provided: "Any controversy arising out of or relating to my account, to transactions with or for me or to this Agreement or the breach thereof, . . . shall be settled by arbitration in accordance with the rules then obtaining of either the NASD, AMEX, or the Board of Governors of the New York Stock Exchange as I may elect," 793 F. Supp at 764.

Following U.S. Lines 833 F. Supp 350 (S.D.N.Y. 1993), the Prudential Securities Inc. v. Thomas, court held that a venue dispute is encompassed within the broad arbitration agreement concerning controversy relating to the "account." Unlike the arbitration agreement before this court, the arbitration agreement in Prudential Securities was not limited to disputes arising or relating to the parties agreement. Further, as in Hughes, Hooker, the arbitration agreement in Prudential Securities provided for a party to "elect" the arbitration forum.  The arbitration provisions between the parties to this action, provides for arbitration on matters arising under the parties Partnership Agreement, not all disputes between them.

Defendant's citation to Jain v. de Mere, 51 F. 3d 686 (7th Cir. 1995), is misplaced and deceptive. In Jain the court was confronted with the question of the district court's jurisdiction to compel arbitration. Defendant refers to footnote 1, but a reading therefore reveals that the court calls into question the "propriety" of the decision in U.S. Lines, 833 F. Supp 350 (S.D.N.Y. 1993). The Jain court favorably cites Oil Basins, and ultimately holds: "In light of what is not at issue, the limited impact of our decision becomes clear. One foreign party can compel another foreign party to arbitrate in the United States only where the second party has expressly consented to a United States forum or has

contacts with that forum to meet the requirements of personal jurisdiction," 51 F. 3d 686, 692. Under the Federal Arbitration Act, the court has discretion only to compel arbitration in its own district or in a place specified in the contract. <u>Oil Basins Ltd. v. Broken Hill Proprietary Co</u>., 613 F. Supp. 483 (S.D.N.Y.1985).

Defendant cites Local Rule 6.3 to argue plaintiffs' motion is untimely. Defendant maintains that more than ten days have elapsed from state court orders. This legal contention is absolutely frivolous and meritless and is entirely unwarranted by existing law. The fallacies of defendant's argument is that any request for reconsideration would have been untimely because at the time of removal more than ten days elapsed subsequent to entry of the state court orders. Defendant removed this action to federal court by notice filed April 17, 2006. Plaintiffs initiated the instant motion four days later on April 21, 2006, with a telephone conference with chambers and defendant's counsel, in accordance with the court's individual rules. Counsel for the parties appeared before the court on April 23, 2006, the following Monday, at which time a stay of arbitration was granted pending disposition of the instant application.

### 3. Conclusion

For all of the foregoing reasons, the court should grant plaintiffs' requested relief.

Dated:  New York, New York
        May 12, 2006

<u>/s/ Stephen Latzman</u>
Stephen Latzman, Esq. (SL 6462)
Attorney for Plaintiff
276 Fifth Avenue, Suite 306
New York, New York 10001
(212) 532-3368

## Table of Authorities

Granny Goose Foods, Inc. v. Brotherhood of Teamsters and
Auto Truck Drivers Local No. 70 of Alameda County,
415 U.S. 423, 437 (1974)                                                      1,2

Ex parte Fisk, 113 U.S. 713 (1885)                                            2

General Contractors Ass'n of New York, Inc. v. Local No. 46,
Metallic Lathers Union and Reinforcing Iron Workers New York
 and Vicinity, 1990 WL 33584 (S.D.N.Y., 1990)                                 2

Quinn v. Aetna Life & Casualty Co., 616 F.2d 38,40 (2d Cir. 1980);            2

Fairbank v. Wunderman Cato Johnson,
212 F.3d 528, 531 (9th Cir. 2000)                                             3

State of New York v. Sokol, 113 F. 3d 303, 306 (2d Cir.1997)                  3

Colon v. Caughlin, 58 F 3d 865, (2d Cir 1995)                                 3

Hill v. U.S. Fidelity and Guaranty Company,
428 F. 2d 112 (2d cir. 1970)                                                  3,4

Bowner v. Bowner 50 N.Y. 2d 288 (1980)                                        5

Agora Development Corporation v. Low, 19 A.D. 126 (1st dept., 1963)           5

Silverman v. Benmor Coats, Inc., 61 N.Y.2d 299                                5

First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)            6

Katz v. Feinberg, 290 F. 3d 95 (2d Cir. 2002)                                 6

Oil Basins Ltd. v. Broken Hill Proprietary Co.,
613 F. Supp. 483 (S.D.N.Y.1985)                                               7, 10

In the Matter of Arbitration Between United States Lines Inc. and
Liverpool and London Steamship, 833 F. Supp 350 (S.D.N.Y. 1993)               7,9

Hughes, Hooker & Co. and Hughes, Hooker (Correspondents) S.A.
 v. American Steamship Owners Mutual Protection and Indemnity
Association, Inc. 2005 WL 13840555 (S.D.N.Y. 2005, Stein, J)                  8

Prudential Securities Inc. v. Thomas, 793 F. Supp 764 (Tenn 1992)             9

Jain v. de Mere, 51 F. 3d 686 (7th Cir. 1995)                                 9

Certificate of Mailing

State of New York   )
                    )ss.:
County of New York)

    Stephen Latzman, an attorney, certifies following:

    On May 12 2006, I served the within Reply Memorandum upon Joseph H. Lilly, Esq., Attorney for Defendant at 60 East 42nd Street, Suite 1338, New York, NY 10165, by first class mail by depositing a true copy of same in a postpaid properly addressed wrapper in an official depository under the exclusive care and control of the United States Postal Service within the state of New York.

Dated:  May 12 2006

                      /s/ Stephen Latzman
                    Stephen Latzman, Esq. (SL 6462)
                    Attorney for Plaintiff
                    276 Fifth Avenue, Suite 306
                    New York, New York 10001
                    (212) 532-3368