# JOSEPH H. LILLY, III

*Attorney-at-Law*
**60 East 42nd Street**
**Suite 1338**
**New York, New York  10165**

*tel:* **(212) 687-6523**
*fax:* **(212) 687-6526**
joelilly@worldnet.att.net

May 26, 2006

<u>BY HAND DELIVERY</u>
The Honorable Jed S. Rakoff
United States District Court
Southern District of New York
500 Pearl Street, Room 1340
New York, New York 10007-1312

Re:  Kenney, Becker LLP &  Eugene S. Becker v. Martin S. Kenney
Case No. 06 Civ. 2975 (JSR)

Dear Judge Rakoff:

At the oral argument in the above-captioned action on May 15, 2006, you requested counsel for the parties to submit letter briefs discussing the facts of this action and the claims of the respective parties under the holding of the Court of Appeals, Second Circuit, in <u>Contec Corp. v. Remote Solution Co., Ltd.</u>, 398 F.3d 205 (2d Cir. 2005).

The Court held in <u>Contec</u> that when "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." <u>Id.</u> at 208, *citing* <u>Shaw Group Inc. v. Triplefine International Corporation</u>, 322 F.3d 115, 122 (2d Cir. 2003); <u>PaineWebber Incorporated v. Bybyk</u>, 81 F.3d 1193, 1202 (2d Cir. 1996).

The <u>Contec</u> Court found that the parties in that case had incorporated such rules in the arbitration provision of their contract by providing that if the parties were unable to resolve "any controversy arising with respect to this Agreement," then "such controversy shall be determined by arbitration held . . . in accordance with the Commercial Arbitration Rules of the American Arbitration Association (the 'AAA') or any organization that is the successor thereto . . ." <u>Contec</u>, *supra*. at 208. The Court cited Rule 7 of the AAA Commercial Arbitration Rules which expressly provided that the arbitrator has the power to rule on issues of "jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." <u>Id.</u>

In the instant case, the parties agreed in the arbitration provision of their Registered Limited Liability Partnership Agreement, dated June 15, 1995 (the "Initial Partnership Agreement"), that "Any controversy or claim arising out of or relating to this agreement shall only be settled by arbitration in accordance with the rules of the American Arbitration Association, one arbitrator, and shall be enforceable in any court having competent jurisdiction." Para. 9.18, Page 16, Initial Partnership Agreement.[1] It should

---

[1] This arbitration provision was adopted and ratified pursuant to paragraph 21.0 of that certain First Amendment and Modification to Registered Limited Liability Partnership Agreement, dated 1st July, 1996 (the "First Amended Agreement").

**JOSEPH H. LILLY, III**

The Honorable Jed S. Rakoff
May 26, 2006
Page 2

be noted that the parties did not specify which AAA rules would apply to the arbitration of any controversy between them, or the effective date of such rules.

Defendant contends that the explicit incorporation in the Initial Partnership Agreement of AAA rules, which empower an arbitrator to decide issues of arbitrability, and the broad direction that "[a]ny controversy or claim arising out of or relating to this agreement shall only be settled by arbitration in accordance with" such rules, constitutes clear and unmistakable evidence of the parties' intent to delegate such issues to the arbitrator, in accordance with AAA rules.

Under the holding of <u>Contec</u>, the explicit incorporation in the parties' agreement of AAA rules which empower an arbitrator to decide issues of arbitrability, would grant to the AAA and/or any duly appointed arbitrator the sole authority to determine any such issues arising out of or relating to the agreement.

The Court should note that Article 15(1) of the International Dispute Resolution Procedures (Including Mediation and Arbitration Rules) of the AAA as of May 1, 2006 (the "International Rules") expressly provides that "The tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." See, Article 15(1), page 9, International Rules, attached hereto as Exhibit A. This Article is almost identical to Rule 7 of the AAA Commercial Arbitration Rules cited in the <u>Contec</u> opinion, and brings the facts of this case squarely within the holding in that case.

Plaintiffs argue that the <u>Contec</u> holding is inapplicable to the instant case because Defendant has commenced the arbitration before the International Centre for Dispute Resolution, a division of the AAA (the "ICDR"), and "Plaintiffs did not agree to arbitration in accordance with the rules of the ICDR." Plaintiffs' Letter Brief dated May 22, 2006 (the "Letter Brief"), p. 2.

Apparently, Plaintiffs want to persuade the Court that arbitration under the rules of the ICDR does not constitute arbitration under the rules of the AAA. This hypothesis is incorrect. The International Rules[2] are one of at least forty-eight (48) different sets of arbitral rules established by the AAA to deal with various types of disputes.[3] The Court's attention is directed to the copy of the International Rules attached hereto as Exhibit A. The very top of the first page of the International Rules bears the logo and heading "American Arbitration Association – Dispute Resolution Services Worldwide." The ICDR is not mentioned at all.

Plaintiffs claim that they never agreed to arbitrate any disputes before the ICDR, alluding to the "fact that the ICDR was not established until after the date of the parties' [Initial Partnership Agreement] and First Amended Agreement." Letter Brief, p. 3. This "fact" is incorrect; the AAA established the ICDR as a division under its corporate "umbrella" in June, 1996 – prior to the execution of the First Amended Agreement – in order to provide central administration of the many

---

[2] Based on the ICDR letter dated January 10, 2006 to the parties' counsel, the ICDR would apply the International Rules to this arbitration.
[3] Listed on the AAA's website at <<u>www.adr.org</u>> are some forty-eight (48) different sets of arbitral rules, dealing with a broad array of different types of disputes, legal relationships and languages.

**JOSEPH H. LILLY, III**

The Honorable Jed S. Rakoff
May 26, 2006
Page 3

international arbitration claims which are filed with the AAA. *See*, 7th paragraph, page 1, AAA Press Release, International Activities at the American Arbitration Association, attached hereto as Exhibit B.

Upon information and belief, the ICDR is not an independent corporate entity. The letterhead stationery of the ICDR even specifies in bold print at the bottom of the page that it is "A Division of the American Arbitration Association." *See*, letter from ICDR to counsel for the parties herein, dated May 23, 2006, attached hereto as Exhibit C.

In light of (i) the holding in the <u>Contec</u> case, (ii) the express terms of Article 15(1) of the International Rules cited above, and (iii) the fact that the ICDR is simply an internal division of the AAA, the arbitration provision of the Initial Partnership Agreement requiring that "[a]ny controversy or claim arising out of or relating to this agreement shall only be settled by arbitration in accordance with the rules of the American Arbitration Association," explicitly empowers the AAA, or any applicable division or arbitrator thereof, to decide issues of arbitrability, venue, and the procedural rules which will govern the arbitration among the parties. This Court should decide the issues before it in favor of Defendant, and grant Defendant's application to compel arbitration. *See also,* <u>Bancol y Cia S. En C. v. Bancolombia S.A.</u>, 123 F.Supp. 771, 772 (S.D.N.Y. 2000) ("This broad arbitration clause inherently subsumes the right of the arbitrators to determine what procedural rules apply, subject only to whatever limited review is available once the arbitrators have issued their final determination.")

The Court should note that Article 1(1) of the International Rules specifically contemplates the possibility of the parties failing to make an express choice of which set of AAA arbitral rules are to apply. This Article provides, in its entirety, "Where parties have agreed in writing to arbitrate disputes under these International Arbitration Rules or <u>have provided for arbitration of an international dispute by the International Centre for Dispute Resolution or the American Arbitration Association without designating particular rules,</u> the arbitration shall take place in accordance with these rules, as in effect at the date of commencement of the arbitration, subject to whatever modifications the parties may adopt in writing." Page 5-6, International Rules, Exhibit A hereto (emphasis added).

The dispute between these parties is an international dispute arising out of a written commercial agreement between New York domiciliaries and a citizen of a foreign state. Plaintiffs have acknowledged that the parties' arbitration agreement falls under the Convention on the Recognition of Enforcement of Foreign Arbitral Awards of June 10, 1958, 9 U.S.C. § 205 *et seq.* (the "New York Convention"). Plaintiffs' Memorandum of Law in Support of Motion for Reargument and Renewal of State Court Orders Compelling Arbitration, p. 11. The parties have provided for arbitration of any controversy or claim arising out of or relating to their agreement by the AAA, without designating particular AAA rules. Article 1(1) of the International Rules clearly applies to these facts, and indicates that the International Rules are the appropriate and proper AAA rules to govern the arbitration between these parties. If Plaintiffs dispute the applicability of the International Rules, or the place of arbitration, the International Rules provide fair opportunity for Plaintiffs to air

**JOSEPH H. LILLY, III**

The Honorable Jed S. Rakoff
May 26, 2006
Page 4

their grievances. *See, inter alia,* Articles 13, 15, 16 and 17 of the International Rules, pages 8-9, Exhibit A hereto.

In their Letter Brief, Plaintiffs also raise the "red herring" of which AAA rules were in effect on the dates when the Initial Partnership Agreement and the First Amended Agreement were executed. Letter Brief, page 3. When interpreting an arbitration agreement, courts "apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago Inc. v. Kaplan, 514 U.S. 938, 944 (1995). The Initial Partnership Agreement provides that "This agreement shall be subject to and governed by the laws of the State of New York." Para. 9.17, Initial Partnership Agreement. Under New York law, if the parties' contract specifies that arbitration shall be conducted in accordance with AAA rules, but does not specify which rules, or the effective date of the applicable rules, then it is up to the AAA to determine which rules shall apply. In the Matter of Port Washington Union Free School District, 45 N.Y.2d 411, 424, 408 N.Y.S.2d 453, 460 (1978) ("the arbitrators have broad powers to apply their own substantive and procedural rules during the arbitration.")

Plaintiffs also use their Letter Brief to reargue the issue of the location of the arbitration. Plaintiffs quote an excerpt from the arbitration provision in the Initial Partnership Agreement which states that an arbitral award "shall be enforceable in any court having competent jurisdiction" as evidence that "[a] clear agreement exists between the parties that arbitration may only be held in a locale that has jurisdiction over the parties." Letter Brief, pp. 3-4.

Plaintiffs apparently want the Court to believe that this provision requires that arbitration proceedings may only be held in a locale that has personal jurisdiction over all three (3) parties to the agreement. This is blatantly incorrect. Plaintiffs have agreed that the agreement falls under the New York Convention. In a New York Convention case, venue may be had, and an award may be enforced, in any jurisdiction in any country that is a signatory to that Convention. At the very least, venue may be had and an award may be enforced in any U.S. federal jurisdiction. 9 U.S.C. § 201. Since all parties intend for the arbitration to be held within the United States, it cannot be disputed that an arbitral award will be enforceable in the jurisdiction preferred by any party to this action.

In Scherk v. Alberto-Culver Co., 417 U.S. 506 (1974), the U.S. Supreme Court stated: "The goal of the [New York] Convention, and the principal purpose underlying the American adoption and implementation of it, was to encourage recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in signatory countries." Id. at 520.

The fact that the Initial Partnership Agreement provides that an arbitral award shall be enforceable in any court having competent jurisdiction has no credible relation to a purported "clear agreement . . . that arbitration may only be held in a locale that has [personal] jurisdiction over the parties." This is yet another example of Plaintiffs' repeated attempts to obscure the issues in this case with strained and contradictory conclusions derived from the broad, clear and unequivocal language of the parties' arbitration agreement.

**JOSEPH H. LILLY, III**

The Honorable Jed S. Rakoff
May 26, 2006
Page 5

In addition, Plaintiffs claim that ICDR has failed "to follow its own policies, rules and determinations" in connection with this matter. Letter Brief, page 4. This allegation is incorrect and misleading. ICDR has admitted in writing that it made a typographical error in its letter dated January 10, 2006, concerning its initial reading of the parties' arbitration agreement, and that it also erred in issuing a letter on venue during the pendency of these proceedings. These mistakes constitute harmless error, and the second error resulted from the confusion engendered by Plaintiffs' incessant "stop-start" of litigation instead of the arbitral process they agreed to follow in the Initial Partnership Agreement, as well as failure to provide copies of this Court's April 24, 2006 order to ICDR. This is evidenced by ICDR's letter of May 2, 2006, attached hereto as Exhibit D, in which ICDR states that it did not receive a copy of the Court's order dated April 24, 2006, staying the arbitration, until May 1, 2006. That order was apparently delivered to the ICDR by Plaintiffs only after receipt of ICDR's errant May 1 letter on venue. Furthermore, Plaintiffs' description of the factors considered by ICDR for locale determination is inaccurate, self-serving and intentionally omits any mention of the many reasonable and relevant factors submitted by Defendant to support Miami as the location of the arbitration. These factors cannot be enumerated in the limited space permitted for this brief, but will undoubtedly be re-submitted to the ICDR at the proper time.

Plaintiffs also request the Court's leave to file a motion to dismiss Defendant's application to compel arbitration on the grounds of *forum non conveniens*. Letter Brief, page 4. Defendant requests that the Court deny Plaintiffs leave to file such motion. In this case, determination of the venue for the arbitration is a matter for the arbitrator, not the Court. The broad terms of the parties' arbitration agreement require that all controversies arising out of or relating to the agreement shall be submitted to the arbitrator.

In In the Matter of Arbitration Between United States Lines Inc. and Liverpool and London Steamship, 833 F.Supp. 350, 352 (S.D.N.Y. 1993), the S.D.N.Y. cited another district court case, Prudential Securities Inc. v. Thomas, 793 F. Supp. 764, 767 (W.D. Tenn 1992), as follows: "In a case in which the parties specified that arbitration would be conducted before the [AAA], but did not specify where the arbitration should be conducted, the court declined to decide the issue of venue, leaving that issue to the AAA to decide." Accordingly, under the facts of this case, "the issue of venue is itself a proper issue for resolution by arbitration." United States Lines, *supra.*, at 353.

For the foregoing reasons, as well as those set forth in Defendant's other submissions in this action, Defendant respectfully requests that this Court grant Defendant's motion to compel arbitration and deny all of Plaintiffs' motions.

Very truly yours,

Joseph H. Lilly (JL6560)
Attorney for Defendant

*Enc.*
*cc:*    Stephen Latzman, Esq. (by fax and first-class mail)

**EXHIBIT A**

International Dispute Resolution Procedures



**International Dispute Resolution Procedures**
**(Including Mediation and Arbitration Rules)**
**Amended and Effective 1 May, 2006**
Click here to view the summary of the rules change.

**TABLE OF CONTENTS**

**INTERNATIONAL DISPUTE RESOLUTION PROCEDURES**

INTRODUCTION
International Mediation
International Arbitration

INTERNATIONAL MEDIATION RULES
M-1. Agreement of Parties
M-2. Initiation of Mediation
M-3. Requests for Mediation
M-4. Appointment of the Mediator
M-5. Qualifications of the Mediator
M-6. Vacancies
M-7. Representation
M-8. Date, Time and Place of Mediation
M-9. Identification of Matters in Dispute
M-10. Authority of the Mediator
M-11. Privacy
M-12. Confidentiality
M-13. No Stenographic Record
M-14. Termination of Mediation
M-15. Exclusion of Liability
M-16. Interpretation and Application of Rules
M-17. Expenses
M-18. Language


ADMINISTRATIVE FEES

INTERNATIONAL ARBITRATION RULES

R-1. Commencing the Arbitration
Notice of Arbitration and Statement of Claim
Statement of Defense and Counterclaim
Amendments to Claims


R-2. The Tribunal
Number of Arbitrators
Appointment of Arbitrators
Impartiality and Independence of Arbitrators
Challenge of Arbitrators
Replacement of an Arbitrator


R-3. General Conditions
Representation
Place of Arbitration
Language
Pleas as to Jurisdiction
Conduct of the Arbitration
Further Written Statements
Notices
Evidence
Hearings

Interim Measures of Protection
Experts
Default
Closure of Hearing
Waiver of Rules
Awards, Decisions and Rulings
Form and Effect of the Award
Applicable Laws and Remedies
Settlement or Other Reasons for Termination
Interpretation or Correction of the Award
Costs
Compensation of Arbitrators
Deposit of Costs
Confidentiality
Exclusion of Liability
Interpretation of Rules
Emergency Measures of Protection

ADMINISTRATIVE FEES
Fees
Refund Schedule
Suspension for Nonpayment
Hearing Room Rental

## INTRODUCTION

The international business community uses arbitration to resolve commercial disputes arising in the global marketplace. Supportive laws are in place. The New York Convention of 1958 has been widely adopted, providing a favorable legislative climate that enables the enforcement of arbitration clauses. International commercial arbitration awards are recognized by national courts in most parts of the world, even more than foreign court judgments. A key component to the successful resolution of an international commercial dispute is the role played by the administrative institution. The International Centre for Dispute Resolution ® (ICDR) is the international division of the American Arbitration Association (AAA) charged with the exclusive administration of all of the AAA's international matters. The ICDR's experience, international expertise and multilingual staff forms an integral part of the dispute resolution process. The ICDR's international system is premised on its ability to move the matter forward, facilitate communications, ensure that qualified arbitrators and mediators are appointed, control costs, understand cultural sensitivities, resolve procedural impasses and properly interpret and apply its International Arbitration and Mediation Rules. Additionally, the ICDR has many cooperative agreements with arbitral institutions around the world for facilitating the administration of its international cases.

### International Mediation

The parties might wish to submit their dispute to an international mediation prior to arbitration. In mediation, an impartial and independent mediator assists the parties in reaching a settlement but does not have the authority to make a binding decision or award. International Mediation is administered by the ICDR in accordance with its International Mediation Rules. There is no additional administrative fee where parties to a pending arbitration attempt to mediate their dispute under the ICDR's auspices.

If the parties want to adopt mediation as a part of their contractual dispute settlement procedure, they can insert the following mediation clause into their contract in conjunction with a standard arbitration provision:

> *If a dispute arises out of or relates to this contract, or the breach thereof, and if the dispute cannot be settled through negotiation, the parties agree first to try in good faith to settle the dispute by mediation in accordance with the International Mediation Rules of the International Centre for Dispute Resolution before resorting to arbitration, litigation, or some other dispute resolution procedure.*

If the parties want to use a mediator to resolve an existing dispute, they can enter into the following submission:

> *The parties hereby submit the following dispute to mediation administered by the International Centre for Dispute Resolution in accordance with its International Mediation Rules. (The clause may also provide for the qualifications of the mediator(s), method of payment, locale of meetings, and any other item of concern to the parties.)*

The ICDR can schedule the mediation anywhere in the world and will propose a list of specialized international mediators.

### International Arbitration

As the ICDR is a division of the AAA, parties can arbitrate future disputes under these rules by inserting either of the following clauses into their contracts:

> *"Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be determined by arbitration administered by the International Centre for Dispute Resolution in accordance with its International Arbitration Rules."*

or

*"Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be determined by arbitration administered by the American Arbitration Association in accordance with its International Arbitration Rules."*

The parties may wish to consider adding:

(a) "The number of arbitrators shall be (one or three)";

(b) "The place of arbitration shall be (city and/or country)"; or

(c) "The language(s) of the arbitration shall be _____."

Parties are encouraged, when writing their contracts or when a dispute arises, to request a conference, in person or by telephone, with the ICDR, to discuss an appropriate method for selection of arbitrators or any other matter that might facilitate efficient arbitration of the dispute. Under these rules, the parties are free to adopt any mutually agreeable procedure for appointing arbitrators, or may designate arbitrators upon whom they agree. Parties can reach agreements concerning appointing arbitrators either when writing their contracts or after a dispute has arisen. This flexible procedure permits parties to utilize whatever method they consider best suits their needs. For example, parties may choose to have a sole arbitrator or a tribunal of three or more. They may agree that arbitrators shall be appointed by the ICDR, or that each side shall designate one arbitrator and those two shall name a third, with the ICDR making appointments if the tribunal is not promptly formed by that procedure. Parties may mutually request the ICDR to submit to them a list of arbitrators from which each can delete names not acceptable to it, or the parties may instruct the ICDR to appoint arbitrators without the submission of lists, or may leave that matter to the sole discretion of the ICDR. Parties also may agree on a variety of other methods for establishing the tribunal. In any event, if parties are unable to agree on a procedure for appointing arbitrators or on the designation of arbitrators, the ICDR, after inviting consultation by the parties, will appoint the arbitrators. The rules thus provide for the fullest exercise of party autonomy, while assuring that the ICDR is available to act if the parties cannot reach mutual agreement. By providing for arbitration under these rules, parties can avoid the uncertainty of having to petition a local court to resolve procedural impasses. These rules, as administered by the IDCR, are intended to provide prompt, effective and economical arbitration services to the global business community.

Whenever a singular term is used in the rules, such as "party," "claimant" or "arbitrator," that term shall include the plural if there is more than one such entity.

Parties filing an international case with the International Centre for Dispute Resolution, or the AAA, may do so by directly contacting the ICDR in New York or the Dublin, Ireland office, or by contacting any one of the AAA's regional offices.

Further information about these rules can be secured by contacting the International Centre for Dispute Resolution at 888-855-9575 or by visiting the ICDR's Web site at www.icdr.org.

### INTERNATIONAL MEDIATION RULES

#### M-1. Agreement of Parties

Whenever parties have agreed in writing to mediate disputes under these International Mediation Rules, or have provided for mediation or conciliation of existing or future international disputes under the auspices of the International Centre for Dispute Resolution, the international division of the American Arbitration Association, or the American Arbitration Association without designating particular rules, they shall be deemed to have made these rules, as amended and in effect as of the date of the submission of the dispute, a part of their agreement.

#### M-2. Initiation of Mediation

Any party or parties to a dispute may initiate mediation by filing with the ICDR a submission to mediation or a written request for mediation pursuant to these rules, together with the appropriate fee (see below). Where there is no submission to mediation or contract providing for mediation, a party may request the ICDR to invite another party to join in a submission to mediation. Upon receipt of such a request, the ICDR will contact the other parties involved in the dispute and attempt to obtain a submission to mediation.

#### M-3. Requests for Mediation

A request for mediation shall contain a brief statement of the nature of the dispute and the names, addresses and telephone numbers of all parties to the dispute and those who will represent them, if any, in the mediation. The initiating party shall simultaneously file two copies of the request with the ICDR and one copy with every other party to the dispute.

#### M-4. Appointment of the Mediator

Upon receipt of a request for mediation, the ICDR will appoint a qualified mediator to serve. Normally, a single mediator will be appointed unless the parties agree otherwise or the ICDR determines otherwise. If the agreement of the parties names a mediator or specifies a method of appointing a mediator, that designation or method shall be followed.

International Dispute Resolution Procedures

**M-5. Qualifications of the Mediator**

No person shall serve as a mediator in any dispute in which that person has any financial or personal interest in the result of the mediation, except by the written consent of all parties. Prior to accepting an appointment, the prospective mediator shall disclose any circumstance likely to create a presumption of bias or prevent a prompt meeting with the parties. Upon receipt of such information, the ICDR shall either replace the mediator or immediately communicate the information to the parties for their comments. In the event that the parties disagree as to whether the mediator shall serve, the ICDR will appoint another mediator. The ICDR is authorized to appoint another mediator if the appointed mediator is unable to serve promptly.

**M-6. Vacancies**

If any mediator shall become unwilling or unable to serve, the ICDR will appoint another mediator, unless the parties agree otherwise.

**M-7. Representation**

Any party may be represented by persons of the party's choice. The names and addresses of such persons shall be communicated in writing to all parties and to the ICDR.

**M-8. Date, Time and Place of Mediation**

The mediator shall fix the date and the time of each mediation session. The mediation shall be held at the appropriate regional office of the ICDR, or at any other convenient location agreeable to the mediator and the parties, as the mediator shall determine.

**M-9. Identification of Matters in Dispute**

At least ten days prior to the first scheduled mediation session, each party shall provide the mediator with a brief memorandum setting forth their position with regard to the issues that need to be resolved. At the discretion of the mediator, such memoranda may be mutually exchanged by the parties.

At the first session, the parties will be expected to produce all information reasonably required for the mediator to understand the issues presented.

The mediator may require any party to supplement such information.

**M-10. Authority of the Mediator**

The mediator does not have the authority to impose a settlement on the parties but will attempt to help them reach a satisfactory resolution of their dispute. The mediator is authorized to conduct joint and separate meetings with the parties and to make oral and written recommendations for settlement. Whenever necessary, the mediator may also obtain expert advice concerning technical aspects of the dispute, provided that the parties agree and assume the expenses of obtaining such advice. Arrangements for obtaining such advice shall be made by the mediator or the parties, as the mediator shall determine.

The mediator is authorized to end the mediation whenever, in the judgment of the mediator, further efforts at mediation would not contribute to a resolution of the dispute between the parties.

**M-11. Privacy**

Mediation sessions are private. The parties and their representatives may attend mediation sessions. Other persons may attend only with the permission of the parties and with the consent of the mediator.

**M-12. Confidentiality**

Confidential information disclosed to a mediator by the parties or by witnesses in the course of the mediation shall not be divulged by the mediator.

All records, reports or other documents received by a mediator while serving in that capacity shall be confidential. The mediator shall not be compelled to divulge such records or to testify in regard to the mediation in any adversary proceeding or judicial forum.

The parties shall maintain the confidentiality of the mediation and shall not rely on, or introduce as evidence in any arbitral, judicial or other proceeding:

(a) views expressed or suggestions made by another party with respect to a possible settlement of the dispute;

International Dispute Resolution Procedures

(b) admissions made by another party in the course of the mediation proceedings;

(c) proposals made or views expressed by the mediator; or

(d) the fact that another party had or had not indicated willingness to accept a proposal for settlement made by the mediator.

**M-13. No Stenographic Record**

There shall be no stenographic record of the mediation process.

**M-14. Termination of Mediation**

The mediation shall be terminated:

(a) by the execution of a settlement agreement by the parties;

(b) by a written declaration of the mediator to the effect that further efforts at mediation are no longer worthwhile; or

(c) by a written declaration of a party or parties to the effect that the mediation proceedings are terminated.

**M-15. Exclusion of Liability**

Neither the ICDR nor any mediator is a necessary party in judicial proceedings relating to the mediation.

Neither the ICDR nor any mediator shall be liable to any party for any act or omission in connection with any mediation conducted under these rules.

**M-16. Interpretation and Application of Rules**

The mediator shall interpret and apply these rules insofar as they relate to the mediator's duties and responsibilities. All other rules shall be interpreted and applied by the ICDR.

**M-17. Expenses**

The expenses of witnesses for either side shall be paid by the party producing such witnesses. All other expenses of the mediation, including required traveling and other expenses of the mediator and representatives of the ICDR, and the expenses of any witness and the cost of any proofs or expert advice produced at the direct request of the mediator, shall be borne equally by the parties unless they agree otherwise.

**M-18 Language**

If the parties have not agreed otherwise, the language(s) of the mediation shall be that of the documents containing the mediation agreement.

**ADMINISTRATIVE FEES**

The nonrefundable case set-up fee is $325 per party. In addition, the parties are responsible for compensating the mediator at his or her published rate, for conference and study time (hourly or per diem).

All expenses are generally borne equally by the parties. The parties may adjust this arrangement by agreement.

Before the commencement of the mediation, the ICDR shall estimate anticipated total expenses.

Each party shall pay its portion of that amount as per the agreed upon arrangement. When the mediation has terminated, the ICDR shall render an accounting and return any unexpended balance to the parties.

**INTERNATIONAL ARBITRATION RULES**

**Article 1**

1. Where parties have agreed in writing to arbitrate disputes under these International Arbitration Rules or have provided for arbitration of an international dispute by the International Centre for Dispute Resolution or the American Arbitration Association without designating

particular rules, the arbitration shall take place in accordance with these rules, as in effect at the date of commencement of the arbitration, subject to whatever modifications the parties may adopt in writing.

2. These rules govern the arbitration, except that, where any such rule is in conflict with any provision of the law applicable to the arbitration from which the parties cannot derogate, that provision shall prevail.

3. These rules specify the duties and responsibilities of the administrator, the International Centre for Dispute Resolution, a division of the American Arbitration Association. The administrator may provide services through its Centre, located in New York, or through the facilities of arbitral institutions with which it has agreements of cooperation.

## R-1. Commencing the Arbitration

### Notice of Arbitration and Statement of Claim

### Article 2

1. The party initiating arbitration ("claimant") shall give written notice of arbitration to the administrator and at the same time to the party against whom a claim is being made ("respondent").

2. Arbitral proceedings shall be deemed to commence on the date on which the administrator receives the notice of arbitration.

3. The notice of arbitration shall contain a statement of claim including the following:

    (a) a demand that the dispute be referred to arbitration;

    (b) the names, addresses and telephone numbers of the parties;

    (c) a reference to the arbitration clause or agreement that is invoked;

    (d) a reference to any contract out of or in relation to which the dispute arises;

    (e) a description of the claim and an indication of the facts supporting it;

    (f) the relief or remedy sought and the amount claimed; and

    (g) may include proposals as to the means of designating and the number of arbitrators, the place of arbitration and the language(s) of the arbitration.

4. Upon receipt of the notice of arbitration, the administrator shall communicate with all parties with respect to the arbitration and shall acknowledge the commencement of the arbitration.

### Statement of Defense and Counterclaim

### Article 3

1. Within 30 days after the commencement of the arbitration, a respondent shall submit a written statement of defense, responding to the issues raised in the notice of arbitration, to the claimant and any other parties, and to the administrator.

2. At the time a respondent submits its statement of defense, a respondent may make counterclaims or assert setoffs as to any claim covered by the agreement to arbitrate, as to which the claimant shall within 30 days submit a written statement of defense to the respondent and any other parties and to the administrator.

3. A respondent shall respond to the administrator, the claimant and other parties within 30 days after the commencement of the arbitration as to any proposals the claimant may have made as to the number of arbitrators, the place of arbitration or the language(s) of the arbitration, except to the extent that the parties have previously agreed as to these matters.

4. The arbitral tribunal, or the administrator if the arbitral tribunal has not yet been formed, may extend any of the time limits established in this article if it considers such an extension justified.

### Amendments to Claims

International Dispute Resolution Procedures                                Page 7 of 15

**Article 4**

During the arbitral proceedings, any party may amend or supplement its claim, counterclaim or defense, unless the tribunal considers it inappropriate to allow such amendment or supplement because of the party's delay in making it, prejudice to the other parties or any other circumstances. A party may not amend or supplement a claim or counterclaim if the amendment or supplement would fall outside the scope of the agreement to arbitrate.

**R-2. The Tribunal**

**Number of Arbitrators**

**Article 5**

If the parties have not agreed on the number of arbitrators, one arbitrator shall be appointed unless the administrator determines in its discretion that three arbitrators are appropriate because of the large size, complexity or other circumstances of the case.

**Appointment of Arbitrators**

**Article 6**

1. The parties may mutually agree upon any procedure for appointing arbitrators and shall inform the administrator as to such procedure.

2. The parties may mutually designate arbitrators, with or without the assistance of the administrator. When such designations are made, the parties shall notify the administrator so that notice of the appointment can be communicated to the arbitrators, together with a copy of these rules.

3. If within 45 days after the commencement of the arbitration, all of the parties have not mutually agreed on a procedure for appointing the arbitrator(s) or have not mutually agreed on the designation of the arbitrator(s), the administrator shall, at the written request of any party, appoint the arbitrator(s) and designate the presiding arbitrator. If all of the parties have mutually agreed upon a procedure for appointing the arbitrator(s), but all appointments have not been made within the time limits provided in that procedure, the administrator shall, at the written request of any party, perform all functions provided for in that procedure that remain to be performed.

4. In making such appointments, the administrator, after inviting consultation with the parties, shall endeavor to select suitable arbitrators. At the request of any party or on its own initiative, the administrator may appoint nationals of a country other than that of any of the parties.

5. Unless the parties have agreed otherwise no later than 45 days after the commencement of the arbitration, if the notice of arbitration names two or more claimants or two or more respondents, the administrator shall appoint all the arbitrators.

**Impartiality and Independence of Arbitrators**

**Article 7**

1. Arbitrators acting under these rules shall be impartial and independent. Prior to accepting appointment, a prospective arbitrator shall disclose to the administrator any circumstance likely to give rise to justifiable doubts as to the arbitrator's impartiality or independence. If, at any stage during the arbitration, new circumstances arise that may give rise to such doubts, an arbitrator shall promptly disclose such circumstances to the parties and to the administrator. Upon receipt of such information from an arbitrator or a party, the administrator shall communicate it to the other parties and to the tribunal.

2. No party or anyone acting on its behalf shall have any ex parte communication relating to the case with any arbitrator, or with any candidate for appointment as party-appointed arbitrator except to advise the candidate of the general nature of the controversy and of the anticipated proceedings and to discuss the candidate's qualifications, availability or independence in relation to the parties, or to discuss the suitability of candidates for selection as a third arbitrator where the parties or party designated arbitrators are to participate in that selection. No party or anyone acting on its behalf shall have any ex parte communication relating to the case with any candidate for presiding arbitrator.

**Challenge of Arbitrators**

**Article 8**

1. A party may challenge any arbitrator whenever circumstances exist that give rise to justifiable doubts as to the arbitrator's impartiality or independence. A party wishing to challenge an arbitrator shall send notice of the challenge to the administrator within 15 days after being notified of the appointment of the arbitrator or within 15 days after the circumstances giving rise to the challenge become known to that party.

2. The challenge shall state in writing the reasons for the challenge.

3. Upon receipt of such a challenge, the administrator shall notify the other parties of the challenge. When an arbitrator has been challenged by one party, the other party or parties may agree to the acceptance of the challenge and, if there is agreement, the arbitrator shall withdraw. The challenged arbitrator may also withdraw from office in the absence of such agreement. In neither case does withdrawal imply acceptance of the validity of the grounds for the challenge.

**Article 9**

If the other party or parties do not agree to the challenge or the challenged arbitrator does not withdraw, the administrator in its sole discretion shall make the decision on the challenge.

**Replacement of an Arbitrator**

**Article 10**

If an arbitrator withdraws after a challenge, or the administrator sustains the challenge, or the administrator determines that there are sufficient reasons to accept the resignation of an arbitrator, or an arbitrator dies, a substitute arbitrator shall be appointed pursuant to the provisions of Article 6, unless the parties otherwise agree.

**Article 11**

1. If an arbitrator on a three-person tribunal fails to participate in the arbitration for reasons other than those identified in Article 10, the two other arbitrators shall have the power in their sole discretion to continue the arbitration and to make any decision, ruling or award, notwithstanding the failure of the third arbitrator to participate. In determining whether to continue the arbitration or to render any decision, ruling or award without the participation of an arbitrator, the two other arbitrators shall take into account the stage of the arbitration, the reason, if any, expressed by the third arbitrator for such nonparticipation, and such other matters as they consider appropriate in the circumstances of the case. In the event that the two other arbitrators determine not to continue the arbitration without the participation of the third arbitrator, the administrator on proof satisfactory to it shall declare the office vacant, and a substitute arbitrator shall be appointed pursuant to the provisions of Article 6, unless the parties otherwise agree.

2. If a substitute arbitrator is appointed under either Article 10 or Article 11, the tribunal shall determine at its sole discretion whether all or part of any prior hearings shall be repeated.

**R-3. General Conditions**

**Representation**

**Article 12**

Any party may be represented in the arbitration. The names, addresses and telephone numbers of representatives shall be communicated in writing to the other parties and to the administrator. Once the tribunal has been established, the parties or their representatives may communicate in writing directly with the tribunal.

**Place of Arbitration**

**Article 13**

1. If the parties disagree as to the place of arbitration, the administrator may initially determine the place of arbitration, subject to the power of the tribunal to determine finally the place of arbitration within 60 days after its constitution. All such determinations shall be made having regard for the contentions of the parties and the circumstances of the arbitration.

2. The tribunal may hold conferences or hear witnesses or inspect property or documents at any place it deems appropriate. The parties shall be given sufficient written notice to enable them to be present at any such proceedings.

**Language**

**Article 14**

If the parties have not agreed otherwise, the language(s) of the arbitration shall be that of the documents containing the arbitration agreement, subject to the power of the tribunal to determine otherwise based upon the contentions of the parties and the circumstances of the arbitration. The tribunal may order that any documents delivered in another language shall be accompanied by a translation into the language(s) of the arbitration.

**Pleas as to Jurisdiction**

**Article 15**

1. The tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

2. The tribunal shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the tribunal that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

3. A party must object to the jurisdiction of the tribunal or to the arbitrability of a claim or counterclaim no later than the filing of the statement of defense, as provided in Article 3, to the claim or counterclaim that gives rise to the objection. The tribunal may rule on such objections as a preliminary matter or as part of the final award.

**Conduct of the Arbitration**

**Article 16**

1. Subject to these rules, the tribunal may conduct the arbitration in whatever manner it considers appropriate, provided that the parties are treated with equality and that each party has the right to be heard and is given a fair opportunity to present its case.

2. The tribunal, exercising its discretion, shall conduct the proceedings with a view to expediting the resolution of the dispute. It may conduct a preparatory conference with the parties for the purpose of organizing, scheduling and agreeing to procedures to expedite the subsequent proceedings.

3. The tribunal may in its discretion direct the order of proof, bifurcate proceedings, exclude cumulative or irrelevant testimony or other evidence, and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case.

4. Documents or information supplied to the tribunal by one party shall at the same time be communicated by that party to the other party or parties.

**Further Written Statements**

**Article 17**

1. The tribunal may decide whether the parties shall present any written statements in addition to statements of claims and counterclaims and statements of defense, and it shall fix the periods of time for submitting any such statements.

2. The periods of time fixed by the tribunal for the communication of such written statements should not exceed 45 days. However, the tribunal may extend such time limits if it considers such an extension justified.

**Notices**

**Article 18**

1. Unless otherwise agreed by the parties or ordered by the tribunal, all notices, statements and written communications may be served on a party by air mail, air courier, facsimile transmission, telex, telegram or other written forms of electronic communication addressed to the party or its representative at its last known address or by personal service.

2. For the purpose of calculating a period of time under these rules, such period shall begin to run on the day following the day when a notice, statement or written communication is received. If the last day of such period is an official holiday at the place received, the period is extended until the first business day which follows. Official holidays occurring during the running of the period of time are included in calculating the period.

**Evidence**

**Article 19**

1. Each party shall have the burden of proving the facts relied on to support its claim or defense.

2. The tribunal may order a party to deliver to the tribunal and to the other parties a summary of the documents and other evidence which that

International Dispute Resolution Procedures                                    Page 10 of 15

party intends to present in support of its claim, counterclaim or defense.

3. At any time during the proceedings, the tribunal may order parties to produce other documents, exhibits or other evidence it deems necessary or appropriate.

**Hearings**

**Article 20**

1. The tribunal shall give the parties at least 30 days advance notice of the date, time and place of the initial oral hearing. The tribunal shall give reasonable notice of subsequent hearings.

2. At least 15 days before the hearings, each party shall give the tribunal and the other parties the names and addresses of any witnesses it intends to present, the subject of their testimony and the languages in which such witnesses will give their testimony.

3. At the request of the tribunal or pursuant to mutual agreement of the parties, the administrator shall make arrangements for the interpretation of oral testimony or for a record of the hearing.

4. Hearings are private unless the parties agree otherwise or the law provides to the contrary. The tribunal may require any witness or witnesses to retire during the testimony of other witnesses. The tribunal may determine the manner in which witnesses are examined.

5. Evidence of witnesses may also be presented in the form of written statements signed by them.

6. The tribunal shall determine the admissibility, relevance, materiality and weight of the evidence offered by any party. The tribunal shall take into account applicable principles of legal privilege, such as those involving the confidentiality of communications between a lawyer and client.

**Interim Measures of Protection**

**Article 21**

1. At the request of any party, the tribunal may take whatever interim measures it deems necessary, including injunctive relief and measures for the protection or conservation of property.

2. Such interim measures may take the form of an interim award, and the tribunal may require security for the costs of such measures.

3. A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

4. The tribunal may in its discretion apportion costs associated with applications for interim relief in any interim award or in the final award.

**Experts**

**Article 22**

1. The tribunal may appoint one or more independent experts to report to it, in writing, on specific issues designated by the tribunal and communicated to the parties.

2. The parties shall provide such an expert with any relevant information or produce for inspection any relevant documents or goods that the expert may require. Any dispute between a party and the expert as to the relevance of the requested information or goods shall be referred to the tribunal for decision.

3. Upon receipt of an expert's report, the tribunal shall send a copy of the report to all parties and shall give the parties an opportunity to express, in writing, their opinion on the report. A party may examine any document on which the expert has relied in such a report.

4. At the request of any party, the tribunal shall give the parties an opportunity to question the expert at a hearing. At this hearing, parties may present expert witnesses to testify on the points at issue.

**Default**

**Article 23**

International Dispute Resolution Procedures                                    Page 11 of 15

1. If a party fails to file a statement of defense within the time established by the tribunal without showing sufficient cause for such failure, as determined by the tribunal, the tribunal may proceed with the arbitration.

2. If a party, duly notified under these rules, fails to appear at a hearing without showing sufficient cause for such failure, as determined by the tribunal, the tribunal may proceed with the arbitration.

3. If a party, duly invited to produce evidence or take any other steps in the proceedings, fails to do so within the time established by the tribunal without showing sufficient cause for such failure, as determined by the tribunal, the tribunal may make the award on the evidence before it.

**Closure of Hearing**

**Article 24**

1. After asking the parties if they have any further testimony or evidentiary submissions and upon receiving negative replies or if satisfied that the record is complete, the tribunal may declare the hearings closed.

2. The tribunal in its discretion, on its own motion or upon application of a party, may reopen the hearings at any time before the award is made.

**Waiver of Rules**

**Article 25**

A party who knows that any provision of the rules or requirement under the rules has not been complied with, but proceeds with the arbitration without promptly stating an objection in writing thereto, shall be deemed to have waived the right to object.

**Awards, Decisions and Rulings**

**Article 26**

1. When there is more than one arbitrator, any award, decision or ruling of the arbitral tribunal shall be made by a majority of the arbitrators. If any arbitrator fails to sign the award, it shall be accompanied by a statement of the reason for the absence of such signature.

2. When the parties or the tribunal so authorize, the presiding arbitrator may make decisions or rulings on questions of procedure, subject to revision by the tribunal.

**Form and Effect of the Award**

**Article 27**

1. Awards shall be made in writing, promptly by the tribunal, and shall be final and binding on the parties. The parties undertake to carry out any such award without delay.

2. The tribunal shall state the reasons upon which the award is based, unless the parties have agreed that no reasons need be given.

3. The award shall contain the date and the place where the award was made, which shall be the place designated pursuant to Article 13.

4. An award may be made public only with the consent of all parties or as required by law.

5. Copies of the award shall be communicated to the parties by the administrator.

6. If the arbitration law of the country where the award is made requires the award to be filed or registered, the tribunal shall comply with such requirement.

7. In addition to making a final award, the tribunal may make interim, interlocutory or partial orders and awards.

8. Unless otherwise agreed by the parties, the administrator may publish or otherwise make publicly available selected awards, decisions and rulings that have been edited to conceal the names of the parties and other identifying details or that have been made publicly available in the course of enforcement or otherwise.

**Applicable Laws and Remedies**

**Article 28**

1. The tribunal shall apply the substantive law(s) or rules of law designated by the parties as applicable to the dispute. Failing such a designation by the parties, the tribunal shall apply such law(s) or rules of law as it determines to be appropriate.

2. In arbitrations involving the application of contracts, the tribunal shall decide in accordance with the terms of the contract and shall take into account usages of the trade applicable to the contract.

3. The tribunal shall not decide as amiable compositeur or ex aequo et bono unless the parties have expressly authorized it to do so.

4. A monetary award shall be in the currency or currencies of the contract unless the tribunal considers another currency more appropriate, and the tribunal may award such pre-award and post-award interest, simple or compound, as it considers appropriate, taking into consideration the contract and applicable law.

5. Unless the parties agree otherwise, the parties expressly waive and forego any right to punitive, exemplary or similar damages unless a statute requires that compensatory damages be increased in a specified manner. This provision shall not apply to any award of arbitration costs to a party to compensate for dilatory or bad faith conduct in the arbitration.

**Settlement or Other Reasons for Termination**

**Article 29**

1. If the parties settle the dispute before an award is made, the tribunal shall terminate the arbitration and, if requested by all parties, may record the settlement in the form of an award on agreed terms. The tribunal is not obliged to give reasons for such an award.

2. If the continuation of the proceedings becomes unnecessary or impossible for any other reason, the tribunal shall inform the parties of its intention to terminate the proceedings. The tribunal shall thereafter issue an order terminating the arbitration, unless a party raises justifiable grounds for objection.

**Interpretation or Correction of the Award**

**Article 30**

1. Within 30 days after the receipt of an award, any party, with notice to the other parties, may request the tribunal to interpret the award or correct any clerical, typographical or computation errors or make an additional award as to claims presented but omitted from the award.

2. If the tribunal considers such a request justified, after considering the contentions of the parties, it shall comply with such a request within 30 days after the request.

**Costs**

**Article 31**

The tribunal shall fix the costs of arbitration in its award. The tribunal may apportion such costs among the parties if it determines that such apportionment is reasonable, taking into account the circumstances of the case.

Such costs may include:

    (a) the fees and expenses of the arbitrators;

    (b) the costs of assistance required by the tribunal, including its experts;

    (c) the fees and expenses of the administrator;

    (d) the reasonable costs for legal representation of a successful party; and

    (e) any such costs incurred in connection with an application for interim or emergency relief pursuant to Article 21.

**Compensation of Arbitrators**

**Article 32**

Arbitrators shall be compensated based upon their amount of service, taking into account their stated rate of compensation and the size and complexity of the case. The administrator shall arrange an appropriate daily or hourly rate, based on such considerations, with the parties and with each of the arbitrators as soon as practicable after the commencement of the arbitration. If the parties fail to agree on the terms of compensation, the administrator shall establish an appropriate rate and communicate it in writing to the parties.

**Deposit of Costs**

**Article 33**

1. When a party files claims, the administrator may request the filing party to deposit appropriate amounts as an advance for the costs referred to in Article 31, paragraphs (a), (b) and (c).

2. During the course of the arbitral proceedings, the tribunal may request supplementary deposits from the parties.

3. If the deposits requested are not paid in full within 30 days after the receipt of the request, the administrator shall so inform the parties, in order that one or the other of them may make the required payment. If such payments are not made, the tribunal may order the suspension or termination of the proceedings.

4. After the award has been made, the administrator shall render an accounting to the parties of the deposits received and return any unexpended balance to the parties.

**Confidentiality**

**Article 34**

Confidential information disclosed during the proceedings by the parties or by witnesses shall not be divulged by an arbitrator or by the administrator. Except as provided in Article 27, unless otherwise agreed by the parties, or required by applicable law, the members of the tribunal and the administrator shall keep confidential all matters relating to the arbitration or the award.

**Exclusion of Liability**

**Article 35**

The members of the tribunal and the administrator shall not be liable to any party for any act or omission in connection with any arbitration conducted under these rules, except that they may be liable for the consequences of conscious and deliberate wrongdoing.

**Interpretation of Rules**

**Article 36**

The tribunal shall interpret and apply these rules insofar as they relate to its powers and duties. The administrator shall interpret and apply all other rules.

**Emergency Measures of Protection**

**Article 37**

1. Unless the parties agree otherwise, the provisions of this Article 37 shall apply to arbitrations conducted under arbitration clauses or agreements entered on or after May 1, 2006.
2. A party in need of emergency relief prior to the constitution of the tribunal shall notify the administrator and all other parties in writing of the nature of the relief sought and the reasons why such relief is required on an emergency basis. The application shall also set forth the reasons why the party is entitled to such relief. Such notice may be given by e-mail, facsimile transmission, or other reliable means, but must include a statement certifying that all other parties have been notified or an explanation of the steps taken in good faith to notify other parties.
3. Within one business day of receipt of notice as provided in paragraph 2, the administrator shall appoint a single emergency arbitrator from a special panel of emergency arbitrators designated to rule on emergency applications. Prior to accepting appointment, a prospective emergency arbitrator shall disclose to the administrator any circumstance likely to give rise to justifiable doubts to the arbitrator's impartiality or independence. Any challenge to the appointment of the emergency arbitrator must be made within one business day of the communication by the administrator to the parties of the appointment of the emergency arbitrator and the circumstances disclosed.
4. The emergency arbitrator shall as soon as possible, but in any event within two business days of appointment, establish a schedule for consideration of the application for emergency relief. Such schedule shall provide a reasonable opportunity to all

parties to be heard, but may provide for proceedings by telephone conference or on written submissions as alternatives to a formal hearing. The emergency arbitrator shall have the authority vested in the tribunal under Article 15, including the authority to rule on her/his own jurisdiction, and shall resolve any disputes over the applicability of this Article 37.

5.  The emergency arbitrator shall have the power to order or award any interim or conservancy measure the emergency arbitrator deems necessary, including injunctive relief and measures for the protection or conservation of property. Any such measure may take the form of an interim award or of an order. The emergency arbitrator shall give reasons in either case. The emergency arbitrator may modify or vacate the interim award or order for good cause shown.

6.  The emergency arbitrator shall have no further power to act after the tribunal is constituted. Once the tribunal has been constituted, the tribunal may reconsider, modify or vacate the interim award or order of emergency relief issued by the emergency arbitrator. The emergency arbitrator may not serve as a member of the tribunal unless the parties agree otherwise.

7.  Any interim award or order of emergency relief may be conditioned on provision by the party seeking such relief of appropriate security.

8.  A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with this Article 37 or with the agreement to arbitrate or a waiver of the right to arbitrate. If the administrator is directed by a judicial authority to nominate a special master to consider and report on an application for emergency relief, the administrator shall proceed as in Paragraph 2 of this article and the references to the emergency arbitrator shall be read to mean the special master, except that the special master shall issue a report rather than an interim award.

9.  The costs associated with applications for emergency relief shall initially be apportioned by the emergency arbitrator or special master, subject to the power of the tribunal to determine finally the apportionment of such costs.

**ADMINISTRATIVE FEES**

The administrative fees of the ICDR are based on the amount of the claim or counterclaim. Arbitrator compensation is not included in this schedule. Unless the parties agree otherwise, arbitrator compensation and administrative fees are subject to allocation by the arbitrator in the award.

**Fees**

An initial filing fee is payable in full by a filing party when a claim, counterclaim or additional claim is filed. A case service fee will be incurred for all cases that proceed to their first hearing. This fee will be payable in advance at the time that the first hearing is scheduled. This fee will be refunded at the conclusion of the case if no hearings have occurred.

However, if the administrator is not notified at least 24 hours before the time of the scheduled hearing, the case service fee will remain due and will not be refunded.

These fees will be billed in accordance with the following schedule:

| Amount of Claim | Initial Filing Fee | Case Service Fee |
|---|---|---|
| Above $0 to $10,000 | $750 | $200 |
| Above $10,000 to $75,000 | $950 | $300 |
| Above $75,000 to $150,000 | $1,800 | $750 |
| Above $150,000 to $300,000 | $2,750 | $1,250 |
| Above $300,000 to $500,000 | $4,250 | $1,750 |
| Above $500,000 to $1,000,000 | $6,000 | $2,500 |
| Above $1,000,000 to $5,000,000 | $8,000 | $3,250 |
| Above $5,000,000 to $10,000,000 | $10,000 | $4,000 |
| Above $10,000,000 * | | |
| Nonmonetary Claims** | $3,250 | $1,250 |

**Fee Schedule for Claims in Excess of $10 Million** .

The following is the fee schedule for use in disputes involving claims in excess of $10 million. If you have any questions, please consult your local AAA office or case management center.

| Claim Size | Fee | Case Service Fee |
|---|---|---|
| $10 million and above | Base fee of $ 12,500 plus .01% of the amount of claim above $ 10 million. | $6,000 |
| | Filing fees capped at $65,000 | |

** This fee is applicable only when a claim or counterclaim is not for a monetary amount. Where a monetary claim amount is not known, parties will be required to state a range of claims or be subject to the highest possible filing fee.

Fees are subject to increase if the amount of a claim or counterclaim is modified after the initial filing date. Fees are subject to decrease if the amount of a claim or counterclaim is modified before the first hearing.

The minimum fees for any case having three or more arbitrators are $2,750 for the filing fee, plus a $1,250 case service fee.

Parties on cases held in abeyance for one year by agreement, will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be closed.

**Refund Schedule**

The ICDR offers a refund schedule on filing fees. For cases with claims up to $75,000, a minimum filing fee of $300 will not be refunded. For all other cases, a minimum fee of $500 will not be refunded. Subject to the minimum fee requirements, refunds will be calculated as follows:

' 100% of the filing fee, above the minimum fee, will be refunded if the case is settled or withdrawn within five calendar days of filing.

' 50% of the filing fee will be refunded if the case is settled or withdrawn between six and 30 calendar days of filing.

' 25% of the filing fee will be refunded if the case is settled or withdrawn between 31 and 60 calendar days of filing. No refund will be made once an arbitrator has been appointed (this includes one arbitrator on a three-arbitrator panel). No refunds will be granted on awarded cases.

Note: the date of receipt of the demand for arbitration with the ICDR will be used to calculate refunds of filing fees for both claims and counterclaims.

**Suspension for Nonpayment**

If arbitrator compensation or administrative charges have not been paid in full, the administrator may so inform the parties in order that one of them may advance the required payment. If such payments are not made, the tribunal may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the ICDR may suspend the proceedings.

**Hearing Room Rental**

The fees described above do not cover the rental of hearing rooms, which are available on a rental basis. Check with the ICDR for availability and rates.

AAA175

©2004 American Arbitration Association. All Rights Reserved.

**EXHIBIT B**



## INTERNATIONAL ACTIVITIES AT THE AMERICAN ARBITRATION ASSOCIATION

The American Arbitration Association is a non-profit organization dedicated to providing excellent arbitration, mediation and other alternative dispute resolution services, as well as arranging education and training for arbitrators, mediators, and members of the business and legal communities.

The Association has a long history of leading the movement to resolve international conflicts by alternative means to litigation. For example, it encouraged the United States' adherence to the New York and Panama Conventions, as well as helped develop the model from which many national arbitration acts derive-the UNCITRAL Model Law on International Commercial Arbitration.

While the Association has 37 offices in the United States and Europe, over the past few years, it has expanded to become a formidable global source of information and administration of alternative dispute resolutions. It currently has cooperative agreements with arbitral institutions in 39 other nations, and has been instrumental in aiding numerous countries in establishing national arbitration acts and arbitral bodies. Under these agreements, the Association and other institutions cooperate in selecting arbitral locales if the contract is silent, assisting one another in selecting arbitrators, and actually administering the arbitration.

In December 1995, the Association signed a cooperative agreement with three arbitral institutions from Canada and Mexico to form CAMCA, the Commercial Arbitration and Mediation Center for the Americas. The other members are the British Columbia International Commercial Arbitration Centre in Vancouver, the Quebec National and International Commercial Centre, and the Mexico City National Chamber of Commerce.

The agreement established CAMCA to resolve all private business disputes under the NAFTA Accords. The Accords themselves specifically encourage use of alternative dispute resolution techniques to resolve disagreements. The CAMCA agreement includes a cooperative establishment of multinational rosters of arbitrators and mediators, and is aimed to help alleviate problems due to cultural differences between the three countries. CAMCA quickly established its ow n arbitration and mediation rules, which are available in English, French and Spanish. Representatives from each of the institutions govern the Centre and cases may be filed in any of their offices. Future plans might include adding more countries to the agreemen t, as the term "Americas" encompasses many other nations.

The Association has also guided other institutions in developing their services. For example, it was an advisor for the creation of the World Intellectual Property Organization Arbitration Center in Geneva in 1994, as well as the organization of the International Federation of Commercial Arbitration Institutions in 1985 (of which the present General Counsel of the Association is the president). The Association also helped create the Inter-American Commercial Arbitration Commission, which is now part of the Organization of American States. The Association is the United States' representative for the Inter-American Commercial Arbitration Commission, and handles all cases which are to be administered in the United States under the Commission's Rules.

In the past few years, due to the globalization of trade and business, the Association has witnessed a vast increase in the number of demands for international arbitration. In fact, the size of the Association's international caseload presently ranks a close second only to that of the ICC in Paris. In order to meet this new challenge, in June 1996, the Association established the International Centre for Dispute Resolution (ICDR) in New York City. Parties can still file their cases in any Association office, and the arbitration will still take place in its designated locale. However, once filed, all cases will be administered centrally in the Centre to achieve prompt, efficient and impartial administration. All staff attorneys are multi-lingual, and when not administering cases, they respond to inquiries about issues such as the drafting of arbitration clauses and the enforceability of arbitral awards. In the past year, the Centre has received about 500 cases.

International parties may proceed under the ICD R'S International Rules, UNCITRAL Rules, or specialized industry rules that can be augmented by the Supplementary Procedures for International Commercial Arbitration. Although users have reportedly been very pleased with the International Rule s, the Association recently revised the International Rules to provide for a speedier process, and to clarify certain issues such as presentation of evidence and the types of awards permitted. The Association continued to model them after the UNCITRAL Arbitration Rules, a preeminent set of model rules established by the UN Commission on International Trade Law.

The Association is very attentive to its users' needs. When there are any procedural disputes, the Association quickly weighs the competing interests, always holding as a top priority, fairness and efficiency of proceedings as well as the parties' requirements. The Association also continually monitors its panel of arbitrators for high levels of expertise and skill and diversity of nationality. A recent survey showed that, of those who responded, 100 percent of the parties to Association-administered international cases ranked the arbitrators as excellent to good, even though 1/3 of the respondents had not prevailed in the arbitration. In addition, ninety percent said they would choose the same arbitrator again.

As international commerce grows, so does the number of disputes. In the past few decades, many organizations and countries have realized the benefits of alternative dispute resolution. However, when they are first established, some institutions have a tendency to formulate rules that have a protectionist slant. These types of rules do not serve well the resolution of international disputes. During its long history, the Association has served as an international model for other nations as well as arbitral institutions. It has advised them that in order to facilitate the settlement process, governing rules and statutes should be uniform and neutral, placing all parties on the same level. The Association itself steadily builds upon its solid foundation to meet the evolving needs of its global users to provide them with prompt, effective, and fair

internat.html

resolution of all their disputes.

©2004 American Arbitration Association. All Rights Reserved.

**EXHIBIT C**

 **International Centre for Dispute Resolution**

Thomas Ventrone
Vice President

1633 Broadway, 10th Floor, New York, NY 10019
telephone: 212-484-4181 facsimile: 212-246-7274
internet: http://www.adr.org/ICDR

May 23, 2006

**VIA FACSIMILE ONLY**

Dan Wise
2nd Floor, Geneva Place Building
PO Box 4740
Road Town, Tortola, British V.I.

Stephen Latzman, Esq.
Law Office of Stephen Latzman
276 Fifth Avenue, Suite 306
New York, NY 10001

Re: 50 180 T 00019 06
   Martin S. Kenney
   vs
   Eugene S. Becker and Kenney, Becker LLP


Dear Counsel:

This acknowledges receipt of a letter dated May 23, 2006 from Respondent, a copy of which we note was sent to Claimant.

Please send copy of the Court Order extending the stay of arbitration to the ICDR by close of business **May 26, 2006.**

Please advise of the case status by close of business **June 23, 2006.**

Please contact the undersigned should you have any questions.

Sincerely,

Gaelle Deriaz
International Case Manager
212 484 4180
DeriazG@adr.org

Sara Matathias-Thayer
ICDR Supervisor
212 484 4077
MatathiasS@adr.org


*A Division of the American Arbitration Association*

**EXHIBIT D**

05/22/2006  16:29    212-6855731              S LATZMAN ESQ                        PAGE  20

 **International Centre for Dispute Resolution**

Thomas Ventrone
Vice President

1633 Broadway, 10th Floor, New York, NY 10019
telephone: 212-484-4181 facsimile: 212-246-7274
internet: http://www.adr.org/ICDR

May 2, 2006

**VIA FACSIMILE AND ELECTRONIC MAIL**

Dan Wise
2nd Floor, Geneva Place Building
PO Box 4740
Road Town, Tortola, British V.I.

Stephen Latzman, Esq.
Law Office of Stephen Latzman
276 Fifth Avenue, Suite 306
New York, NY 10001

Re: 50 180 T 00019 06
    Martin S. Kenney
    vs
    Eugene S. Becker and Kenney, Becker LLP

Dear Counsel:

This will serve to acknowledge receipt on May 1, 2006 of a copy of a Court Order dated April 24, 2006, staying the arbitration in the above-captioned case. Please find a copy of this order attached for your reference. The Parties are hereby advised to copy the opposing party on all correspondence.

Pursuant to this order placing a stay on the process effective April 24, 2006, the ICDR determination on the locale of the arbitration hearing dated May 1, 2006 is retracted. A new determination based upon the consideration of new Parties' comments will be made, if and when the stay is lifted and the case is re-activated.

We are placing this matter in abeyance and await further order of the court.

Should you have any questions please contact the undersigned.

Very truly yours,

Gaelle Deriaz
International Case Manager
212 484 4180
DeriazG@adr.org

Thomas Ventrone
ICDR Vice President
212 484 4115
VentroneT@adr.org

cc:   Jo H. Lilly III, Esq.

*A Division of the American Arbitration Association*