UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

..................................................................X

KENNEY, BECKER LLP and :
EUGENE S. BECKER, :

                               :

                   Plaintiffs, :

                               :

             v. :     06 Civ. 2975 (JSR)

                               :

MARTIN S. KENNEY, :

                               :

                  Defendant :

..................................................................X

## MEMORANDUM OF LAW IN SUPPORT
## <u>MOTION FOR SANCTIONS AND INJUNCTIVE RELIEF</u>

Dimitry Joffe (DJ-6498)
KASOWITZ, BENSON, TORRES
     & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
(212) 506-1700

*Attorneys for Martin S. Kenney, Gymway
Limited and Gymway Holdings Limited*

Dated:   New York, New York
            December 10, 2007

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND...........................................................................................2

    1.    Plaintiffs' unsuccessful attempts to avoid arbitration ....................................2

    2.    Arbitration proceedings and discovery..........................................................3

    3.    The North Fork Bank subpoena ......................................................................5

ARGUMENT..................................................................................................................6

    I.    Plaintiffs' subpoena was patently improper. ..................................................6

        A.    Plaintiffs had no authority to issue the subpoena................................6

        B.    Plaintiffs issued the subpoena in violation of Rule 45............................8

            1.    The subpoena was issued and served <u>ex parte</u>. ..................................8

            2    The subpoena violates the arbitrator's discovery ruling. ................................10

    II.    Plaintiffs' issuance of the subpoena warrants sanctions. .............................12

    III.    Plaintiffs' issuance of the subpoena warrants injunctive relief......................14

CONCLUSION ............................................................................................................15

## TABLE OF AUTHORITY

**Cases**                                                                                    **Page**

BASF Corp. v. The Old World Trading Co., 1992 WL 24076 (N.D. Ill. 1992) ..........................10

Burton v. Bush, 614 F.2d 389 (4th Cir. 1980)............................................................................7

Chambers v. NASCO, Inc., 501 U.S. 32 (1991)........................................................................13

Cootes Drive LLC v. Internet Law Library, Inc., 2002 WL 424647 (S.D.N.Y. 2002) ............9, 14

Dynegy Midstream Services v. Trammochem, 451 F.3d 89 (2d Cir. 2006) ..................................7

Lusk v. Village of Cold Spring, 475 F.3d 480 (2d Cir. 2007).....................................................14

Murphy v. Board of Educ., 196 F.R.D. 220 (W.D.N.Y. 2000) ...........................................8, 12, 13

NBC v. Bear Stearns & Co., 165 F.3d 184 (2d Cir. 1999).............................................................7

Pitter v. American Express, 1984 WL 1272 (S.D.N.Y. 1984) .......................................................9

IQ Products v. Onyx Corp., 48 Fed. Appx. 107 (5th Cir. 2002) ...................................................9

Schlaifer Nance & Co., Inc. v. Estate of Andy Warhol, 194 F.3d 323 (2d Cir. 1999).................13

Schweizer v. Mulvehill, 93 F. Supp. 2d 376 (S.D.N.Y. 2000).......................................................8

**Statutes**

9 U.S.C. § 7 ....................................................................................................................................7

**Other Authorities**

Alan Redfern & Martin Hunter, Law and Practice of International
    Commercial Arbitration, (4th ed. 2004) ............................................................................7 n.1

This memorandum of law is respectfully submitted on behalf of defendant Martin S. Kenney and third parties Gymway Limited and Gymway Holdings Limited in support of their motion for sanctions for the ex parte issuance of an invalid and improper subpoena and for injunctive relief prohibiting plaintiffs from issuing third-party subpoenas in the future.

## PRELIMINARY STATEMENT

The third-party subpoena issued by plaintiffs warrants sanctions as an unauthorized action contrary to the controlling Second Circuit law, a clear violation of Rule 45 of the Federal Rules of Civil Procedure, and an abuse of the judicial process.

First, as parties to a pending arbitration governed by the Federal Arbitration Act, plaintiffs have no power or authority to issue third-party subpoenas. The controlling Second Circuit law unequivocally holds that only the arbitrators -- not the parties -- can issue such subpoenas. The arbitrator here did not authorize, and was not even aware of, plaintiffs' subpoena. Accordingly, the subpoena was void as issued. See Point I.A below.

Second, plaintiffs have issued and served the subpoena ex parte, without giving any notice of the subpoena to defendant until the subpoena's return date in violation of Rule 45, and misleadingly failing to inform the arbitrator about the subpoena -- all for an improper purpose of obtaining documents in contravention of the arbitrator's prior discovery ruling and before defendant had the opportunity to object. See Point I.B below.

Third, plaintiffs' conduct in issuing the subpoena is sanctionable under both Rule 45 and the Court's inherent power to sanction conduct constituting an abuse of the judicial process. Sanctions are particularly appropriate here in light of this Court's recent findings that plaintiffs' related action arising out of the same matter was based on "deeply flawed" legal theories, brought for "highly suspect" purposes, and "vexatious," albeit not yet rising to the level

justifying an injunction (but subject to reconsideration should plaintiffs commence similar

actions in the future). Appropriate sanctions should include reasonable attorneys' fees and costs

incurred in connection with the subpoena (see Point II below), and an injunction prohibiting

plaintiffs from issuing any further subpoenas without leave of court. See Point III below.

## FACTUAL BACKGROUND

The underlying matter concerns the dissolution of the legal consultancy partnership

Kenney, Becker LLP, comprised of defendant Mr. Kenney and plaintiff Mr. Becker. The

partners' relationship was governed by a partnership agreement that contained an arbitration

clause providing that "[a]ny controversy or claim arising out of or relating to this agreement shall

only be settled by arbitration." Declaration of Joseph H. Lilly, III, dated December 10, 2007 (the

"Lilly Decl."), ¶ 4.

### 1.     Plaintiffs' unsuccessful attempts to avoid arbitration

Despite the arbitration clause, plaintiffs Becker and Kenney, Becker LLP instituted not

one but two court actions against Mr. Kenney. The first such action, Case No. 06 Civ. 2975

(JSR) (the instant Action), was originally commenced by plaintiffs in the Supreme Court of the

State of New York and subsequently removed by defendant to this Court. Lilly Decl. ¶ 6. By

Order dated June 2, 2006 (the "2006 Order"), the Court placed that action on the suspense

calendar pending the conclusion of an arbitration that had already been initiated by defendant

(the "Arbitration"), having found that plaintiffs' arguments presented "no obstacle to compelling

arbitration." Id. ¶ 7.

"Without missing a beat, plaintiffs then initiated [the second] action on June 30, 2006 in

the Supreme Court of the State of New York, County of New York, seeking a declaratory

judgment that defendant is obligated to identify for plaintiffs all persons and entities for whom

-2-

he provided legal services while a partner at Kenney, Becker LLP. Defendant then removed this new action [Case No. 06 Civ. 7634 (JSR)] to this Court." Order dated July 13, 2007, granting defendant's motion to dismiss the second action (the "2007 Order"). Lilly Decl. ¶ 8.

Having granted defendant's motion to dismiss the second action for lack of jurisdiction, the Court then turned to defendant's motion for an injunction to prohibit plaintiffs from commencing any additional actions arising out of the partnership agreement, and made the following findings: (a) "plaintiffs' legal theory on which they premised their complaint was deeply flawed" (2007 Order at p.6); (b) "plaintiffs' 'real' purpose in bringing this action, coming right on the heels of the setback in the earlier action, is highly suspect" (id.); and (c) although "the number of plaintiffs' lawsuits -- two -- is not so vexatious as to rise to the levels previously found by this Circuit to justify injunctive relief . . . . [w]ere plaintiffs to commence another such action, however, the Court would be inclined [to] reconsider whether injunctive or other relief would be proper" (id. at pp. 6-7). Lilly Decl. ¶ 9.

## 2.    Arbitration proceedings and discovery

Defendant commenced the Arbitration on January 6, 2006, by serving upon plaintiffs a notice of arbitration together with a statement of claim, requesting arbitration of the dispute between the parties by the International Centre for Dispute Resolution ("ICDR"), a division of the American Arbitration Association ("AAA"). Lilly Decl. ¶ 10. The parties stipulated that "the Arbitral law shall be the Federal Arbitration Act," and the arbitrator subsequently ruled that the "International Arbitration Rules of the ICDR shall apply" to the Arbitration, denying plaintiffs' request for the application of the Commercial Arbitration Rules. Lilly Decl. ¶ 11.

With respect to discovery, the Arbitration Scheduling Order No. 1 provided for a discovery cut-off date of January 19, 2006, which was subsequently extended until the final cut-

off date of May 23, 2007. Lilly Decl. ¶ 13. On March 13, 2007, plaintiffs served their discovery requests for "all documents which claimant intends to offer into evidence or refer to at the evidentiary hearing." Id. ¶ 13. Also on March 13, plaintiffs served their preliminary witness list. Id. ¶ 14. Neither the discovery requests nor the witness list contained any mention or reference to North Fork Bank's documents or witnesses. Id.

On October 24, 2007, a status hearing was held by the arbitrator during which the order of witnesses was established; again, plaintiffs did not give any indication that they intended to call any North Fork Bank witnesses. Id. ¶ 15. The arbitrator also allowed plaintiffs to submit, on or before November 8, 2007, a limited supplemental request for "specific information regarding certain entities allegedly affiliated with Claimant," and required claimant to respond to such request "with all requested documents, to the extent that such documents are in Claimant's possession on or before Tuesday, November 13, 2007." Lilly Decl. ¶ 16. The Order noted that the "scope of Claimant's response was limited in a subsequent Hearing on the issue." Id. ¶ 17.

On November 8, 2007, plaintiffs submitted their 31 supplemental discovery requests, 14 of which called for documents related to Gymway Limited and Gymway Holdings Limited (together, the "Companies"). Id. ¶ 17. Plaintiffs' supplemental discovery requests called for, among other things, the Companies' "corporate resolutions," other corporate documents, and "all invoices" issued by the Companies to Mr. Kenney and Martin Kenney & Co. Id. ¶ 19. The supplemental requests did not mention the Companies' North Fork Bank account records, although plaintiffs were well aware of those accounts because they had in their possession copies of wire transfers to the Companies' North Fork Bank accounts. Id. ¶ 20.

On November 9, 2007, defendant specifically objected to plaintiffs' supplemental discovery requests on the grounds of relevancy, among others. Id. ¶ 21. Based on those

-4-

objections, the arbitrator limited the scope of defendants' responses to those requests during a hearing held on November 13, 2007. Id. ¶ 22. With respect to the Companies, the arbitrator ruled that defendants should produce the Companies' formation documents and invoices to the extent such documents and invoices were in defendant's possession, but not the corporate resolutions and other corporate documents requested by plaintiffs. Id.

Unbeknownst to defendant and the arbitrator, by the time of the November 13 hearing, plaintiffs had already issued and served their third-party subpoena on North Fork Bank. Although plaintiffs had ample opportunity at the November 13, 2007 hearing to notify the arbitrator and defendant that they had issued said subpoena, and that they were seeking the testimony of the Bank at the Arbitration hearing, they failed to do so. Id. ¶ 23.

### 3. The North Fork Bank subpoena

On November 26, 2007 -- the first day of the evidentiary hearing -- plaintiffs' counsel for the first time disclosed to the arbitrator and defendant that he had issued and served the subpoena on North Fork Bank, and handed out copies of that subpoena. Id. ¶ 24. On its face, the subpoena appears to have been issued on November 8, 2007, by Stephen Latzman from this Court in Case No. 06 Civ. 2975 (JSR) -- i.e., this Action, which had been placed on the suspense calendar pursuant to the Court's 2006 Order. Id. ¶ 26. The subpoena requires North Fork Bank to produce "[a]ll documents" relating to bank accounts in the name Gymway Limited and Gymway Holdings Limited, "including account opening documents, corporate resolutions, corporate documents and correspondence." Id. ¶ 27. Mr. Kenney is the director in charge of Gymway Limited and Gymway Holdings Limited, a signatory of their North Fork Bank accounts, and the sole beneficial owner of the accounts' funds at issue. Id. ¶ 18.

The subpoena also commands North Fork Bank to appear and testify at the evidentiary hearing, but neither designates any particular representative of the Bank whose testimony it seeks to secure, nor describes the matters on which the Bank's testimony is requested in order for the Bank to designate appropriate representatives to testify on its behalf. Id. ¶ 29.

After plaintiffs disclosed the existence of the subpoena on November 26, 2007, the arbitrator stated for the record that he was not aware of, and did not authorize, the issuance of the subpoena. Id. ¶¶ 30-31. On November 27, 2007, defendant's counsel informed plaintiffs' counsel and the arbitrator that defendant had retained special counsel to prepare and file motions to quash the subpoena and for sanctions. Id. ¶ 32. On November 29, 2007, the hearing was adjourned to give the arbitrator the opportunity to resolve the issues based on motions to be filed by the parties and the record to date and the stipulated evidence, with an agreement to resume the hearing should the arbitrator fail to resolve the dispute. At all times during the arbitration hearings, plaintiffs' counsel continued to insist that the subpoena was properly issued. Id. ¶¶ 30, 33. It was not until the December 3, 2007 conference call with the Court that plaintiffs' counsel advised that he was withdrawing the subpoena. Id. ¶ 34.

## ARGUMENT

### I.      Plaintiffs' subpoena was patently improper.

#### A.      Plaintiffs had no authority to issue the subpoena.

Plaintiffs have issued the subpoena from this Court without any power or authority to do so. The controlling Second Circuit law is crystal clear that the parties to an arbitration -- such as plaintiffs here -- have no authority whatsoever to issue federal district court subpoenas. Section 7 of the Federal Arbitration Act "provides statutory authority for invoking the powers of a

federal district court to assist arbitrators in obtaining evidence." NBC v. Bear Stearns & Co.,

165 F.3d 184, 187 (2d Cir. 1999). Critically, however,

> § 7 explicitly confers authority only upon *arbitrators*; by necessary
> implication, the *parties* to an arbitration may not employ this provision to
> subpoena documents or witnesses. See 9 U.S.C. § 7; see also Burton v.
> Bush, 614 F.2d 389, 390 (4th Cir. 1980) ("While an arbitration panel may
> subpoena documents or witnesses, the litigating parties have no
> comparable privilege.")

Id. (emphasis original). In NBC, the Second Circuit affirmed the district court's decision

quashing subpoenas issued by a party to an international arbitration. The Court observed that

arbitration offers a significant advantage of "efficiency and cost-effectiveness -- characteristics

said to be at odds with full-scale litigation in the courts, and especially at odds with the broad-

ranging discovery made possible by the Federal Rules of Civil Procedure," and stated that

"[o]pening the door to the type of discovery sought by NBC in this case likely would undermine

one of the significant advantages of arbitration, and thus arguably conflict with the strong federal

policy favoring arbitration as an alternative means of dispute resolution." Id. at 190-91.[1] The

Second Circuit has recently confirmed that the parties to an arbitration have no authority to

subpoena documents or witnesses. See Dynegy Midstream Services v. Trammochem, 451 F.3d

89, 96 (2d Cir. 2006) (citing NBC).

---

[1]    This is even more true with respect to arbitrations governed by international arbitration
rules, such as the case here. "There is no practice of automatic discovery in international
commercial arbitration. The usual practice is to limit document production as much as possible
to those documents that are strictly relevant to the issues in dispute and necessary for the proper
resolution of those issues. . . . [I]n the United States there is generally no right to any discovery
in international arbitrations and to the extent which discovery is permitted it is entirely in the
hands of the arbitral tribunal if the parties do not agree." Alan Redfern & Martin Hunter, Law
and Practice of International Commercial Arbitration, 6-69, 6-72 (4th ed. 2004) (emphasis
original).

Here, plaintiffs have attempted to invoke the powers of this Court in clear violation of the controlling Second Circuit law.  The subpoena was issued by Stephen Latzman, counsel for plaintiffs -- not by the arbitrator.  The record is also clear that the arbitrator never authorized or even knew about the subpoena. Lilly Decl. ¶¶ 30-31.  Accordingly, the subpoena was invalid <u>ab initio</u>.

**B.     <u>Plaintiffs issued the subpoena in violation of Rule 45.</u>**

Even if plaintiffs had the authority to issue arbitration subpoenas from federal courts -- which, as shown above, they clearly do not -- their conduct in issuing the subpoena was manifestly improper for several additional reasons addressed below.

**1.     <u>The subpoena was issued and served <i>ex parte</i>.</u>**

Plaintiffs issued the subpoena and served it on North Fork Bank <u>ex parte</u>, without any notice to defendant, in violation of Rule 45.  "Without question, Rule 45(b)(1) requires a party issuing a subpoena for the production of documents to a non-party to provide 'prior notice to all parties to the litigation.'" <u>Murphy v. Board of Educ.</u>, 196 F.R.D. 220, 222 (W.D.N.Y. 2000) (quoting <u>Schweizer v. Mulvehill</u>, 93 F. Supp. 2d 376, 411 (S.D.N.Y. 2000)).  Rule 45(b)(1) expressly provides that "[p]rior notice of any commanded production of documents and things or inspection of premises before trial shall be served on each party in the manner prescribed by Rule 5(b)."

"The requirement of prior notice has been interpreted to require that notice be given prior to the issuance of the subpoena, not prior to its return date." <u>Murphy</u>, 196 F.R.D. at 222 (citing <u>Schweizer</u>, 93 F. Supp. 2d at 411).  The requirement that "<u>prior</u> notice must be given has important underpinning of fairness and efficiency.  As the Advisory Committee Notes to Rule 45(b) explain:  The purpose of the prior service requirement is to afford the opposing party the

-8-

opportunity to object to the production or inspection . . . ."  Cootes Drive LLC v. Internet Law

Library, Inc., 2002 WL 424647, at *2 (S.D.N.Y. 2002) (emphasis original).

Here, plaintiffs clearly violated the prior notice requirement of Rule 45.  They issued the

subpoena without any notice to defendants -- not prior to its issuance, not prior to its service, and

not even prior to its return date.  Indeed, the first time defendants learned about the subpoena

was at the November 26, 2007 arbitration evidentiary hearing -- which was the return date of the

subpoena -- when counsel for plaintiffs disclosed its existence to the arbitrator and handed out a

copy of the subpoena to defendant's counsel.

Furthermore, the subpoena's request that North Fork Bank also appear and testify at the

hearing is nothing but a ruse to give the subpoena the appearance of a trial subpoena rather than

an improper discovery device.  First, plaintiffs have neither included the Bank's anticipated

witnesses on their witness list, nor provided any notice to the arbitrator or defendants that they

intend to call Bank's representatives as witnesses at the final status conference before the

hearing, when the order of witnesses was established by the parties and the arbitrator.  Lilly

Decl. ¶¶ 14-15.  Second, the subpoena neither designates any particular representative of the

Bank whose testimony it seeks to secure, nor describes the matters on which the Bank's

testimony is requested in order for the Bank to designate appropriate representatives to testify on

its behalf.  Id. ¶ 29.  In these circumstances, the only conceivable Bank witness pursuant to the

subpoena would be its custodian of the requested records, for the sole purpose of authenticating

them at the hearing -- but the request for the production of those records itself constitutes

improper discovery.  See, e.g., IQ Products v. Onyx Corp., 48 Fed. Appx. 107, *4 (5th Cir. 2002)

("[T]rial subpoenas are not intended as a backdoor for discovery that could have been obtained

before trial."); Pitter v. American Express, 1984 WL 1272 at *6 (S.D.N.Y. 1984) (holding that

"shotgun production demands in the midst of trial are an impermissible substitute for orderly pre-trial discovery"); BASF Corp. v. The Old World Trading Co., 1992 WL 24076, at *2 (N.D. Ill. 1992) (trial subpoenas issued after the close of discovery and made returnable on the first day of trial were improper under Rule 45 because they were used as a discovery tool: "While trial subpoenas may be used to require those served to produce documents at trial for the purpose of memory refreshment or trial preparation, they may not be used as a means to engage in further discovery").

<h3 style="text-align:center">2.    <u>The subpoena violates the arbitrator's discovery ruling.</u></h3>

The subpoena also violates the arbitrator's discovery ruling denying plaintiffs' requests for certain documents sought in the subpoena. Thus, by Hearing Order No. 7, the arbitrator allowed plaintiffs to submit, on or before November 8, 2007, a limited supplemental "demand for specific information regarding certain entities allegedly affiliated with Claimant." Lilly Decl. ¶ 16. Pursuant to that ruling, on November 8, 2007, plaintiffs submitted their supplemental discovery requests, which included 14 requests for documents related to Gymway Limited and Gymway Holdings Limited. Lilly Decl. ¶ 17. Unbeknownst to defendant and the arbitrator, on the very same day plaintiffs also issued their ex parte subpoena seeking bank records related to those Companies. Id. ¶ 25.

The next day, November 9, 2007, defendant submitted his objections to plaintiffs' supplemental discovery requests based on the grounds of relevancy, among others. Id. ¶ 21. On November 13, 2007, the arbitrator held a hearing to address defendant's objections to plaintiffs' supplemental discovery requests. As stated in the Hearing Order No. 7, "[t]he scope of Claimant's response [to the supplemental discovery requests] was limited in a subsequent Hearing on the issue." Lilly Decl. ¶ 16. During that subsequent November 13 hearing, the

-10-

arbitrator limited the scope of defendant's responses to the requests concerning the Companies, allowing discovery of the Companies' formation documents and invoices to the extent such documents and invoices were in defendant's possession, but denied plaintiffs' remaining requests. Lilly Decl. ¶ 22. Those remaining requests denied by the arbitrator included demands for the Companies' "corporate resolutions," "internal organizational documents," and other corporate documents. Id. ¶¶ 19, 22. However, at no time during the November 13 hearing did plaintiffs disclose that they had already issued and served their ex parte subpoena seeking, among other banking records, the very same "corporate resolutions [and] corporate documents" of the Companies.

These facts lead to the following inescapable inferences:  first, plaintiff's subpoena violated the arbitrator's discovery ruling insofar as it sought to compel North Forth Bank to produce documents that the arbitrator had already ruled should not be produced.  Second, plaintiffs' failure to disclose the subpoena during the November 13 hearing -- when their discovery requests for the Companies' documents and defendant's objections thereto were ruled upon by the arbitrator -- was not merely a careless omission but a deliberate and misleading effort to obtain documents in contravention of the arbitrator's discovery ruling.

Moreover, throughout the evidentiary hearing that commenced on November 26, 2007, after defendant objected to the subpoena and informed the arbitrator and plaintiffs that he had retained special counsel and instructed that counsel to prepare a motion to quash the subpoena, plaintiffs continued to insist that the subpoena was valid and properly issued.  Lilly Decl. ¶¶ 30, 33.  Indeed, it was not until defendants brought their contemplated motion to quash the subpoena and for sanctions to the Court's attention on December 3, 2007, that plaintiffs agreed -- in a transparent attempt to avoid the motion -- to withdraw their subpoena.  Id. ¶ 34.

-11-

II.    **Plaintiffs' issuance of the subpoena warrants sanctions.**

Plaintiffs' conduct in connection with the issuance and service of the subpoena is sanctionable pursuant to Rule 45 and the inherent powers of the Court. Rule 45(c)(1) allows courts to impose upon the parties or attorneys in breach of their duties in issuing a subpoena "an appropriate sanction, which may include, but is not limited to . . . a reasonable attorney's fee." Courts have imposed monetary sanctions for the issuance of subpoenas without prior notice. See, e.g., Murphy, 196 F.R.D. at 223 ("Because Rule 45 is so clear [with respect to its prior notice requirement] and because plaintiff's counsel repeatedly violated it, sanctions would be appropriate based on those facts alone"; imposing monetary sanctions).

Here, plaintiffs' failure to give notice of the subpoena was not simply a technical error but appears to have been a deliberate attempt to obtain the Companies' banking records surreptitiously, without giving defendant the opportunity to object, and without disclosing the subpoena to the arbitrator during the hearing on the very subject of discovery concerning the Companies. "When an attorney misuses his or her power under Rule 45 to command a non-litigant to produce documents in a lawsuit to which he or she is a stranger by failing to give appropriate notice to the parties, public confidence in the integrity of court processes is eroded." Murphy, 196 F.R.D. at 227 (citation omitted). Accordingly, plaintiffs' breaches of their Rule 45 obligations, without more, warrant sanctions here. But there is more.

As shown above, plaintiffs' issuance of the subpoena was patently unauthorized in the first instance: plaintiffs had no power to issue the subpoena themselves under the controlling Second Circuit law, and the arbitrator who has such power never authorized the subpoena. Moreover, plaintiffs' conduct in connection with the subpoena -- i.e., their (i) failure to disclose their attempts to subpoena the Companies' documents to the arbitrator in the course of the

-12-

arbitrator's consideration -- and denial -- of their requests for many of the same records; (ii) issuance of a broad, "fishing expedition"-style subpoena for highly confidential banking records in the international arbitration where such broad discovery, even when directed by arbitrators, is generally not permitted; (iii) request for a North Fork Bank witness to appear and testify without ever disclosing any North Fork Bank witnesses in any pre-hearing witness lists or on the agreed witness testimony schedule -- constitute clear evidence of plaintiffs' improper purposes.  Thus, in addition to sanctions pursuant to Rule 45, the Court can impose sanctions pursuant to its inherent powers to sanction an abuse of the judicial purpose where, as here, the conduct in question was undertaken without any colorable basis and motivated by improper purpose. Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991); Schlaifer Nance & Co. v. Estate of Andy Warhol, 194 F.3d 323, 334 (2d Cir. 1999); Murphy, 196 F.R.D. at 226 ("[Counsel's] actions here constitute clear evidence of bad faith, and were taken for the improper purpose of obtaining and reviewing the documents in question before opposing counsel had the opportunity to object.") .

Finally, sanctions are further warranted by plaintiffs' vexatious conduct in this matter.  A court may exercise its inherent power to assess attorney's fees when a party has acted "vexatiously, wantonly, or for oppressive reasons."  Chambers, 501 U.S. at 45-46.  Plaintiffs' improper issuance and service of the subpoena is part and parcel of their prior vexatious conduct in this matter.  Indeed, this Court has made the following findings in dismissing one of the related complaints filed by defendants in this matter:  plaintiffs' theory of the complaint was "deeply flawed," their purpose in bringing it was "highly suspect," and their conduct was "vexatious" albeit not yet to the degree warranting injunctive relief.  Lilly Decl. ¶ 9 (2007 Order at pp. 6-7) (emphasis added).

III.    **Plaintiffs' issuance of the subpoena warrants injunctive relief.**

An injunction prohibiting plaintiffs from issuing any further subpoenas without leave of court would also be appropriate under the circumstances.  To obtain an injunction, a party must demonstrate that the party will be irreparably harmed if an injunction is not granted, and a balance of the hardships tips decidedly in its favor.  Lusk v. Village of Cold Spring, 475 F.3d 480, 484-85 (2d Cir. 2007).  Defendants here easily meet these requirements.

First, if an injunction is not granted, plaintiffs would remain free to issue further unauthorized and ex parte subpoenas and improperly seek defendants' confidential and private records from third parties.  Fortuitously in the instant matter, the subpoenaed party did not produce documents or witnesses on the subpoena's return date.  Next time, plaintiffs could manage to obtain defendants' highly confidential records by issuing a similarly unauthorized arbitration subpoena ex parte, and not disclosing it to defendants or the arbitrator until after the subpoenaed third party produces documents.  In Cootes Drive LLC v. Internet Law Library, Inc., 2002 WL 424647, at *2 (S.D.N.Y. 2002), counsel failed to give prior notice of third-party subpoenas but served them on the party one day after service on third parties.  Nevertheless, the court enjoined counsel from issuing any further subpoenas without leave of court.  A fortiori, plaintiffs should be enjoined here, where they not only failed either to give prior notice or to serve the subpoena on the defendants, but misleadingly failed to disclose it to the defendant and the arbitrator even as the arbitrator was denying their discovery request for many of the same documents sought by the subpoena.

Second, the injunction would impose no hardship on plaintiffs because they have no authority to issue arbitration subpoenas in the first instance.  See Point I.A above.  The hardship

on defendants from not issuing an injunction, on the other hand, is real -- they would remain

under threat of plaintiff's issuing further unauthorized, ex parte subpoenas for defendant's

confidential records, without giving defendant the chance to object.  Finally, injunctive relief is

all the more appropriate here, considering that plaintiffs' conduct in question took place after the

Court's warning that were plaintiffs to engage in further vexatious conduct, "the Court would be

inclined [to] reconsider whether injunctive or other relief would be proper."  Lilly Decl. ¶ 9.

Such a relief would be entirely proper now.  By issuing the subpoena in violation of the

FAA and Rule 45 and in an attempted end run around the arbitrator's ruling, plaintiffs have now

violated their arbitration agreement for the third time, in blatant disregard of this Court's order

compelling arbitration and its warning not to engage in further vexatious conduct, for the

improper purpose of conducting discovery outside the arbitration process to which the Court had

compelled them to confine their partnership dispute activities.  Under these circumstances, an

injunction barring plaintiffs from issuing any more subpoenas without leave should be granted.

## CONCLUSION

For reasons stated above, the Court should impose appropriate sanctions on plaintiffs

and/or their counsel, including an award of reasonable attorneys' fees and costs incurred in

connection with this motion and an injunction prohibiting plaintiffs from issuing any further

subpoenas without leave of Court.

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP

By: _____

Dimitry Joffe (DJ-6498)

1633 Broadway
New York, New York 10019
(212) 506-1700

*Attorneys for Martin S. Kenney, Gymway
Limited and Gymway Holdings Limited*

-15-