UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

KENNEY, BECKER LLP and
EUGENE S. BECKER,

                             Plaintiffs,

      -against-

MARTIN S. KENNEY,

                             Defendant.

------------------------------------------------------------------x

DECLARATION OF
STEPHEN LATZMAN
IN OPPOSITION_____

Docket 06 Cv 2975 (JSR)

Stephen Latzman, Esq., hereby declares under penalty of perjury that the following is true and correct to the best of my knowledge:

1. I am the attorney for plaintiffs and submit this Declaration in opposition to defendant's motion for sanctions and injunctive relief. The motion is wholly without merit and brought for an improper purpose. The trial subpoena to North Fork Bank, of which movants' complain, was properly issued, returnable at the trial of the arbitration between the parties, sought material and relevant evidence subject to determination of admissibility by the arbitrator. The Bank did not appear at the hearing as commanded, the hearing has been suspended; the subpoena is moot and has been withdrawn. The moving parties do not have standing for the relief they seek. Injunctive relief is wholly improper.

2. Following the orders of this court, the parties proceeded to arbitration before the International Centre for Dispute Resolution (the "ICDR"), a part of the American Arbitration Association. Defendant is the claimant before the ICDR; plaintiffs are respondents.

3.  Defendants filed an Amended Statement of Claim, (a copy of which is annexed as Exhibit 1). Defendants' invoked the arbitration provision contained in paragraph 9.18 of Article IX of the parties' agreement dated June 1, 1995 (the "Initial Agreement").

4.  Paragraph 9.17 of Article IX of the Initial Agreement provides, "This agreement shall be subject to and governed by the laws of the State of New York." Article IX of the Initial Agreement was ratified by paragraph 21 of the First Amendment dated as of July 1, 1996 (the "First Amendment"). Among other things, the First Amendment adds Kenney, Becker LLP as a party to the agreement.

5.  A preliminary hearing was held by Arbitrator DeWitt on October 24, 2006. The Preliminary Hearing and Scheduling Order # 1 (exhibit 2) which followed provides, in part, at paragraph 4 as follows: "(a) the parties stipulate that the substantive Law of New York shall apply; [and] (b) the parties stipulate that the Arbitral Law shall be the Federal Arbitration Act." Arbitrator DeWitt ordered that the evidentiary hearing be held during the weeks of April 9 –13, and April 23 – 27, 2007."

6.  On February 22, 2007, a hearing was by telephone before Arbitrator DeWitt. Hearing and Scheduling Order # 2 dated February 25, 2007 (exhibit 3) followed. Among other things Order # 2 modified portions of Order # 1. Order # 2 provides, in part, as follows:

> "9. Hearing and Scheduling Order # 1 is hereby further modified as follows: 10. Applicable Law and Rules: The following shall apply: (a) International Rules of the ICDR shall apply; and (b) New York, NY shall be the Seat of Arbitration."

7.  The International Arbitration Rules of the ICDR in effect at all times relevant to this proceeding provides at subdivision 1 of Article 28, "The tribunal shall apply the substantive laws(s) or rules of law designated by the parties as applicable to the dispute."

8. The parties have designated the law of the State of New York as applicable to this dispute.

9. Section 7505 of the New York Civil Practice Law and Rules provides in pertinent part, "An arbitrator and any attorney of record in the arbitration proceeding has the power to issue subpoenas."

10. Defendants' original and amended statements of claim designated Miami, Florida as the venue of arbitration. In support of his designation, defendants' attorney submitted an Affirmation to the Supreme Court of The State of New York dated January 26, 2006, which states, at paragraph 27, "[A]ll of the witnesses and evidence which may be reviewed by the arbitrator are located outside of the United States." Plaintiffs made application to the ICDR to change venue to New York City.  Defendant opposed the application to change venue. At paragraph 2 of Claimant's Supplementary Response to Respondents' Objection to Venue, claimant stated, "Furthermore, all of Claimant's witnesses, documents and records relating to the refutation of proof of Respondents' purported entitlement to an accounting and compensation for income earned by Claimant in the provision of legal services to client since 2002 under the name and style of Martin Kenney & Co, Solicitors, are located outside the United States."

11. Hearing Order # 2 (exhibit 3), at paragraph 7, granted respondents' application to change the place of arbitration from Miami, Florida to New York City. Claimants' Preliminary Witness List dated March 9, 2007 (exhibit 4) identifies four witnesses. All are residents of New York State except for claimant. Prior to the commencement of the evidentiary hearing, claimant identified three witnesses; claimant is the only non-resident of New York State identified

12. The hearing of October 24, 2006 scheduled the evidentiary hearing for weeks of April 9 –13, and April 23 – 27, 2007. The hearing of February 22, 2007, confirmed that the evidentiary

hearing would commence on April 23- 26, 2007. On February 23, 2007, defendant's counsel sent an email to the ICDR (exhibit 5) stating, "I have checked with Mr. Kenney's calendar, and unfortunately, he will be traveling during the week of April 23 and cannot attend the arbitration hearing that week." The arbitrator denied the request (exhibit 6) writing, "The April 23, 2007 Hearing dates were set and agreed to by both parties at the October 24, 2006 Preliminary Hearing, approximately four (4) months ago. These dates were also set out in Preliminary Hearing Order # 1. 'Traveling' does not meet the good cause shown standard for requesting a continuance. I suggest Mr. Kenney change his travel arrangements." Ultimately, the arbitrator granted Mr. Kenney a continuance (further emails annexed as exhibit 7), and the hearing was rescheduled for July 17-20, 2007. The hearing was further rescheduled for November 26 through November 30, 2007 after respondent Becker received a conflicting jury duty summons.

13. In his Amended Statement of Claim, claimant states, at paragraph 24 that between August 1, 1997 and approximately September 30, 2002, he was not involved in the private practice of law. At paragraph 25 he continues,

> "Beginning on or about 1st October, 2002, Mr. Kenney began to re-establish himself in the practice of law with the formation of his own proprietorship, Martin Kenney & Co., Solicitors ("MKS") based in Dublin, Ireland and regulated by the Law Society of England & Wales and, subsequently, by the Law Society of Ireland. At all material times, the Respondents were aware of the fact of the establishment of MKS. In early 2003, for instance, Mr. Kenney and Mr. Becker exchanged emails over the feasibility of MKS and the Partnership acquiring a joint policy of professional indemnity insurance in order to attempt to save money. Moreover, in approximately late 2002, Mr. Becker and the Partnership helped MKS by providing MKS with a sub-client trust account as a part of the Partnership's master client trust account at its bank, Fleet Bank in New York, to facilitate the holding of some of MKS's operating funds in New York. Additionally, in June 2003, the Partnership's New York accountant, Joel Agler, CPA, compiled and issued a joint Accountant's Report to the Law Society of England & Wales vouching for the handling and financial accounting of client trust money by each of MKS and the Partnership" (emphasis added).

4

Mr. Kenney refers to this paragraph 25 in arguing that he complied with the Partnership Agreement (see, Amended Statement of Claim, paragraph 56) and that the doctrine of equitable estoppel bars respondents' contractual rights to an accounting (see, Amended Statement of Claim paragraph 64).

14.    Hearing and Scheduling Order # 4 directed the parties to exchange copies of all exhibits to be offered at the arbitration evidentiary hearing. On or about October 29, 2007, I received claimant's proposed exhibits. Included were nine proposed exhibits (numbered 9, 10, 11, 17, 19 21, 23, 2 6 & 27) consisting of ten requests from Mr. Kenney to plaintiff to transfer funds from the Martin Kenney Solicitor sub account at Fleet Bank to either Gymway Holdings Ltd or Gymway Limited (the "Gymway Entities"), (copies of the facsimile memorandum are annexed as exhibit 8). Presumably these documents were to be proffered to establish respondent's knowledge of Claimant's law practice.

15. The documents show that between February 17, 2003 and October 8, 2003, claimant transferred $ 491,500 from Martin Kenney & Co., Solicitors to the Gymway Entities.

16.    On November 8, 2007, a trial subpoena to North Fork Bank was prepared for opening documents of the Gymway accounts. Also a supplemental discovery request was served on claimant's counsel. Among other things, demand was made that defendant produce the invoices referenced in the requests for wire transfers and for documents relating to the liquidation in Ireland of Interclaim, Ltd. Respondent objected to the supplemental discovery request. After a hearing by telephone on November 13, 2007, the arbitrator directed that claimant produce the invoices referenced in the requests for wire transfers and documents relating to the liquidation in Ireland of Interclaim, Ltd., or its affiliates or subsidiaries in claimant's possession.

17. On November 13, 2007, I received the results of an online report which shows that Gymway Limited was incorporated in Ireland on February 2, 2000, was previously known as "Interclaim (Ireland) Limited" and that claimant Kenney is a director (a copy of the online report is annexed as exhibit 9).

18. On November 23, 2007, Claimant produced what purport to be the invoices referenced in the requests for wire transfers (exhibit 10). The invoices contain no detail of the services alleged to have been provided. Eight of the ten invoices postdate the wire transfer allegedly made in payment. An analysis of the transfer and invoices follows:

| Claimant's Exhibit # | Date of Request | Amount | "Remarks" | Date of Referenced Invoice |
|---|---|---|---|---|
| 9 | 2/17/03 | $ 56,500 | February 2003 Invoice | 2/18/03 |
| 10 | 3/3/03 | $ 57,000 | "Gymway April 2003 Invoice" | 4/30/03 |
| 11 | 3/20/03 | $ 15,300 | "March 2003 Invoice" | 3/10/03 |
| 11 | 3/20/03 | $ 24,700 | "March 2003 Invoice" | 3/10/03 |
| 17 | 6/11/03 | $ 72,000 | "June 2003 Invoice" | 6/13/03 |
| 19 | 6/20/03 | $ 15,000 | "June 2003 Invoice" | 6/24/03 |
| 21 | 7/16/03 | $ 38,000 | "July 2003 Invoice" | 7/17/03 |
| 23 | 8/13/03 | $ 55,000 | "Payment of August 2003 Invoice" | 8/18/03 |
| 26 | 9/16/03 | $ 47,000 | "Payment of September 2003 Invoice" | 9/17/03 |
| 27 | 10/8/03 | $111,000 | "Payment of September 2003 Invoice" | 10/9/03 |
| | Total: | $491,500 | | |

19.  In his declaration submitted on this motion, at paragraph 18, claimant's counsel states that Mr. Kenney is the director in charge of Gymway Limited and Gymway Holdings Limited, a signatory of their North Fork Bank accounts, and the sole beneficial owner of the funds at issue.  The documents show that between February 17, 2003 and October 8, 2003, claimant moved $ 491,500 from one of entity of his to another.

20.  The subpoena directed North Fork Bank to appear at the International Centre for Dispute Resolution, at 1633 Broadway, New York, New York on November 26, 2007 to give testimony and produce documents before the International Centre for Dispute Resolution in case 5180T0001906.  The subpoena's command to appear and testify was at all times subject to the direction of the arbitrator at the hearing who would determine the admissibility of evidence and whether documents were to be provided to the parties.

21.  The existence of the subpoena was disclosed to the Arbitrator at the commencement of the hearing. All testimony and documents produced pursuant to the subpoena returnable at the International Centre for Dispute Resolution was to be under the control of ICDR and the arbitrator. No testimony would be allowed nor documents provided to the parties unless approved by the arbitrator.

22.  North Fork Bank did not appear at the arbitration hearing as commanded by the subpoena.

23.  The hearing commenced on November 26, 2007 with the direct testimony of respondent Kenney. The direct testimony of Kenney concluded on November 27, 2007. Cross-examination followed, but was interrupted on Wednesday November 28, to allow for the testimony of Bernard Medoff, a non-party a witness called by claimant.

24. Following the testimony of Mr. Medoff on November 28, and prior to the resumption of his cross-examination, Mr. Kenney approached plaintiff and I and suggested that we meet and discuss limiting and simplifying the issues for the Arbitrator. Mr. Lilly, attorney for defendant indicated to the arbitrator that he wished to make a "little proffer." Mr. Lilly said that his proffer "might change what we do this afternoon" (exhibit 11, at 12:17).

25. We all met. The discussion quickly turned to settlement of the matter in arbitration and the action brought by plaintiff Kenney, Becker LLP against defendant in the Supreme Court, New York County (in which a trial is scheduled for April 3, 2008.). The attorneys were excused, and Mr. Becker and Mr. Kenney met alone for approximately five hours. At approximately 6:30 PM, Mr. Kenney informed the Arbitrator that following his discussions with Mr. Becker he needed to consult with another person.

26. The cross examination of Mr. Kenney resumed the next morning, November 29. At the commencement of the proceedings on November 29, Mr. Lilly suggested that the parties continue their discussions, "during the break" (exhibit 12, at 9:40).

27. At the break, Mr. Kenney again suggested that we meet. The parties conferred from 10:33 AM until 11:56 AM. The parties with their attorneys met with a view towards limiting the scope and expense of the proceeding. We discussed and agreed to suspend all issues arising out of the arbitration, that all issues arising out of the arbitration would be submitted to the arbitrator by written motion. At 11:57 Mr. Lilly informed the arbitrator "this is a proposal that is influx, and if anybody wants to add or subtract, let me know. The proposal is to adjourned the hearings for the time being" . . . " and that the arbitrator . . . resolve the issues by review of the motion for summary judgment and the motion to dismiss supplemented by brief and including depositions." (exhibit 12, 11:57 -11:59).

28. We met starting at about noon, worked through lunch and agreed to suspend the hearing and all issues arising from the arbitration, negotiated a stipulation to conduct depositions of the parties, and scheduled the drafting and submissions of the motions to the arbitrator. The final submission, respondents' reply on its intended cross motion, being due March 14, 2008. We negotiated a stipulation of uncontested facts to be considered by the arbitrator. At a little before 4:00 PM on November 29, we informed the arbitrator of our agreement, and a stipulation was placed on the record by Mr. Lilly (exhibit 12, 15:56 – 16:31) The arbitrator asked Mr. Lilly if "You want to convert it to a paper hearing." Mr. Lilly, answered, "Yes, more or less" (exhibit 12, 15:56).

29. The purpose of the stipulation before the arbitrator was to simplify the issues, and to avoid unnecessary expense. As Mr. Kenney said, "we're trying to invest in economy and save cost" (exhibit 12, 16:35).

30. On December 3, 2007, four days after the stand-down agreement I received a telephone call from claimant's counsel to establish a pre-motion conference with the court. I commented, "what's the point." Mr. Lilly responded, "you'll see." It is clear that the purpose of this application is improper, and is intended solely to harass and cause unnecessary expense.

31. During the conference with the court, I undertook to formally withdraw the subpoena. North Fork Bank was notified on December 4, 2007 (exhibit13). The North Fork Bank documents are unnecessary in light of defendant's recent admission that he is the director in charge of Gymway Limited and Gymway Holdings Limited, a signatory of their North Fork Bank accounts, and the sole beneficial owner of the funds.

Dated: New York, New York
      December 14, 2007

_____
STEPHEN LATZMAN (SL 6462)

# Exhibit 1

**IN THE MATTER OF INTERNATIONAL ARBITRATION PROCEEDINGS
BEFORE THE ICDR OF THE AMERICAN ARBITRATION ASSOCIATION**

Between:

### MARTIN S. KENNEY

Claimant

v.

**EUGENE S. BECKER and KENNEY, BECKER LLP (formerly known as
KENNEY, BECKER, SOLICITORS, LLP), a New York Registered Limited Liability
Partnership (in Dissolution)**

Respondents

## AMENDED STATEMENT OF CLAIM

### I.   The Parties and the Requested Place of Arbitration.

1.   The Claimant, Martin S. Kenney ("Mr. Kenney") of Third Floor, Flemming House, P.O. Box 4740, Road Town, Tortola, British Virgin Islands, West Indies, hereby demands that the disputes described below be submitted to arbitration to the International Centre for Dispute Resolution (the "ICDR") of the American Arbitration Association (the "AAA") in accordance with the International Dispute Resolution Procedures (Including Mediation and Arbitration Rules) of the AAA as of May 1, 2006 (the "International Rules"). The place requested for the venue of the arbitration is the Miami, Florida office of the AAA at Bank of America Tower at International Place, 100 SE 2nd Street, Suite 2300, Miami, FL, 33131-2808.

2. The First Respondent, Eugene S. Becker ("Mr. Becker"), resides at 59 Mackey Avenue, Port Washington, New York 11050, USA.

3. The Second Respondent, Kenney, Becker LLP (formerly known as Kenney, Becker, Solicitors, LLP) (the "Partnership"), is a New York registered limited liability partnership in dissolution and maintains its registered office at One Penn Plaza, Suite 2414, New York, New York 10119, USA.

## II. Arbitration Agreement and the Arbitral Rules Applicable to this Dispute.

4. The arbitration provision that is invoked by Mr. Kenney in respect of these proceedings appears in paragraph 9.18 of Article IX of that certain Registered Limited Liability Partnership Agreement for Kenney, Becker, Solicitors, LLP dated 15th June, 1995 (the "Initial Partnership Agreement"), a copy of which is annexed hereto as Exhibit "A". Such provision provides:

> *"9.18 Arbitration. Any controversy or claim arising out of or relating to this agreement shall only be settled by arbitration in accordance with the rules of the American Arbitration Association, one arbitrator, and shall be enforceable in any court having competent jurisdiction."* (See, page 16, Initial Partnership Agreement, Exhibit "A" to this Amended Statement of Claim).

5. This provision, providing for the compulsory arbitration of any disputes arising between Messrs Kenney and Becker and relating to their Partnership, was ratified pursuant to paragraph 21.0 of that certain First Amendment and Modification to Registered Limited Liability Partnership Agreement for Kenney, Becker, Solicitors LLP dated 1st July, 1996 (the "First Amendment"), a copy of which is annexed hereto as Exhibit "B", in the following terms:

> *"21.0 The terms and conditions to the original Partnership Agreement dated as of 15 June, 1995. The parties hereby*

03/08/2007  17:58   212-6855731                S LATZMAN ESQ                              PAGE   04

*adopt clauses 1.0, 1.1, 1.5, 3.2, 3.3, 3.4, 3.5, 4.0, 4.1, Article VI, Article VII **and Article IX** of the original Partnership Agreement.*" (emphasis added) *(See*, page 23, First Amendment, Exhibit "B" to this Amended Statement of Claim).

5. The above quoted arbitration provision in the Initial Partnership Agreement remains in full force and effect, as confirmed by the respective orders of Justice Karla Moskowitz of the Supreme Court, New York State, dated February 9, 2006 (the "Supreme Court Orders") and of United States District Judge Jed S. Rakoff of the U.S. District Court, Southern District of New York, dated June 2, 2006 (the "District Court Orders"). Copies of the Supreme Court Orders and the District Court Orders are attached to this Amended Statement of Claim as Exhibits "C" and "D," respectively.

6. Article 1(1) of the International Rules provides as follows:

> "*1.    Where parties have agreed in writing to arbitrate disputes under these International Arbitration Rules or have provided for arbitration of an international dispute by the International Centre for Dispute Resolution or the American Arbitration Association without designating particular rules, the arbitration shall take place in accordance with these rules, as in effect at the date of commencement of the arbitration, subject to whatever modifications the parties may adopt in writing.*"

7. The parties' written contract to arbitrate calls for the application of the "...rules of arbitration of the American Arbitration Association," without specifically designating which set of AAA rules are to govern these proceedings. Article 1(1) of the International Rules provides that where, in the instance of an international dispute, the parties have agreed in writing to have their disputes arbitrated by the AAA "without designating particular rules," the "arbitration shall take place in accordance with these rules [*i.e.*, the International Rules]."

3

8.  This is an international dispute. One of the parties to this dispute, the Claimant, is a Canadian citizen, and another party, the Partnership, was formed and is domiciled in New York. For the past 9 years, or since 1st August, 1997, the Claimant has resided outside of the United States (namely – in Dublin, Ireland, between 1st August, 1997 and 19th August, 2005; and, since 20th August, 2005, in Road Town, Tortola, British Virgin Islands, West Indies).

9.  Furthermore, as recently as May, 2004, Mr. Becker admitted in writing to the Law Society of England & Wales that "Mr. Kenney's practice was not through this firm, nor at this office," and that Mr. Kenney was "an inactive 1% partner" in the Partnership, as well as his actual knowledge that "Mr. Kenney conducts practice at his principal and, we understand, only office" in Ireland. *See*, copy of an email from Mr. Becker to the Law Society of England & Wales, dated 19 May, 2004, attached hereto as Exhibit "E".

10.  This dispute relates to a contract that was originally signed on 15th June, 1995 and was subsequently amended by (i) an instrument dated 1st July, 1996, (ii) an oral agreement reached on 24th February 1997 and effective 19th February, 1997, and (iii) most recently by an instrument executed on or about 14th February 2002, when the Claimant was a resident of Dublin, Ireland, but made effective as of 1st January, 2001.

11.  Moreover, the subject matter of this dispute relates to the Respondents' asserted entitlement to an accounting and compensation for income earned by the Claimant relating to legal professional services provided by the Claimant whilst based in Dublin, Ireland, and to clients located in numerous jurisdictions in Europe, Africa, North America, the Caribbean and elsewhere.

4

### III.   <u>Background.</u>

12.   On 15th June, 1995, Mr. Kenney and Mr. Becker entered into the Initial Partnership Agreement establishing what was then referred to as Kenney, Becker, Solicitors, LLP (a copy of which is, again, attached as Exhibit "A" to this Amended Statement of Claim). Under Section 1.5 of the Initial Partnership Agreement, Mr. Kenney and Mr. Becker established:

> "... a foreign legal consultancy practice of foreign lawyers duly licensed in New York State to practice as such, pursuant to § 53 of the Judiciary Law of the State of New York, as limited by part 521 of the Rules of the Court of Appeals and the Rules of the Appellate Division of the Supreme Court of the State of New York, First Judicial Department."   (See, page 2, Initial Partnership Agreement, Exhibit "A" to this Amended Statement of Claim).

13.   Between the date of inception of the Partnership of 15 June, 1995 and 30 June 1996, Mr. Kenney was the holder of a 60% - 70% participation percentage in all items of profit, loss, cash available for distribution and voting rights of the Partnership; while Mr. Becker owned a 40% - 30% participation percentage therein. See, Section 4.2, Initial Partnership Agreement, Exhibit "A" to this Amended Statement of Claim.

14.   Pursuant to the terms and conditions of the First Amendment dated as of the 1st day of July, 1996, the rules and protocols governing the Partnership and the relationship between Mr. Kenney and Mr. Becker were modified.  This change in the relationship between the partners arose as a result of the "recent formation" of the company then known as Interclaim, Ltd., to which Mr. Kenney intended to devote the substantial portion of his professional energies. See, first recital, page 2, First Amendment, Exhibit "B" to this Amended Statement of Claim.

15. Under the terms of Section 11.0 of the First Amendment, the participation percentages of the partners were adjusted such that each of the two partners came to hold a 50% interest in all items of profit, loss, cash available for distribution and voting rights thereunder.

16. The Initial Partnership Agreement, as amended by the First Amendment, was further modified by that certain Second Amendment and Modification to Registered Limited Liability Partnership Agreement executed on or about 14th February, 2002 and dated as of 1st January, 2001 (the "Second Amendment") (a copy of which is attached as Exhibit "F" to this Amended Statement of Claim). The Second Amendment, in part, formally memorializes a portion of an oral agreement reached by the parties on 24th February, 1997 that was made operative as of 19th February, 1997. The Initial Partnership Agreement, the First Amendment, said oral agreement and the Second Amendment are sometimes hereinafter collectively referred to as the "Partnership Agreement."

17. Pursuant to Section 3 of the Second Amendment, the parties formally memorialized certain items of their oral agreement reached at a meeting among Mr. Kenney, Mr. Becker and the Partnership's then accountant, Bernard Medoff C.P.A. ("Accountant Medoff"), which was held at the New York offices of what was then known as the accounting firm of M. R. Weiser & Co. LLP on the evening of 24th February, 1997 (the "Meeting"). At the Meeting, Mr. Kenney and Mr. Becker agreed, among other things, to materially alter the nature of their relationship, effective 19th February, 1997, such that:

> "2. The profit sharing and capital interests [governing the ownership of the participation percentages in the partnership] [changed] from a 50/50 relationship to a 99/1 relationship in favor of Eugene [Becker]." (See, Memorandum of the Meeting, Attachment "2", Second Amendment, Exhibit "F" to this Amended Statement of Claim).

6

18.     Thus, effective 19th February, 1997, Mr. Kenney's standing and position as a
        partner of the Partnership was transformed from being an equal partner to what
        Mr. Becker has admitted in writing constituted an "inactive 1% partner." (See,
        copy of email from Mr. Becker to the Law Society of England & Wales dated 19th
        May, 2004 at 21:16 hrs attached as Exhibit "E" to this Amended Statement of
        Claim).

19.     This substantial change in the nature and extent of Mr. Kenney's interest in the
        Partnership of 19th February, 1997, took place as a result of Mr. Kenney's
        participation as a co-founder of Interclaim (Bermuda) Ltd. since the date of the
        First Amendment, his appointment as President and Chief Executive Officer of
        such company, and the anticipated completion of US$9.25 million of primary
        capitalization for the company. Moreover, it was anticipated by both Mr. Kenney
        and Mr. Becker that Mr. Kenney would shortly move to Dublin, Ireland from
        New York City to take up his responsibilities as the President and Chief Executive
        Officer of Interclaim (Bermuda) Ltd. and its related companies (collectively,
        "Interclaim").

20.     Prior to 19th February, 1997, Mr. Kenney was the partner who was principally
        responsible for, in part, marketing the services of the Partnership to prospective
        clients; and the principal procuring cause of the sale of legal services on its
        behalf.[1]

21.     Effective as of 19th February, 1997, and to assist Mr. Becker's attempts to
        preserve and carry on with the good will of the Partnership and its association

---

[1] Between approximately December 1993 and 14th June 1995, Mr. Kenney was a partner of Bermans,
English Solicitors and International Attorneys, then of 1633 Broadway, 40th Floor, New York, New York
("Bermans"). During this period of time, or for the approximate 18 month period preceding the formation
of the Partnership on 15 June 1995, Mr. Becker was an employed associate of Bermans who was
supervised principally by Mr. Kenney.

with Mr. Kenney, Mr. Kenney agreed to continue to hold a nominal interest in the Partnership (consisting of 1% of all items of profit, loss and cash available for distribution), notwithstanding what was his effective withdrawal from the private practice of law due to his then impending move to Ireland and taking up of his new permanent position as the President and CEO of Interclaim.

## IV.   **The Claimant Moves to Dublin, Ireland.**

22.   On or about 1st August, 1997, Mr. Kenney moved with his wife from New York City to Dublin, Ireland to take up his new full time position as President and CEO of Interclaim.  Mr. Kenney's role as a 1% nominal or inactive partner of the Partnership was such that Mr. Kenney (a) rarely, if ever, was provided with any material operating information regarding the affairs of the Partnership, and (b) once every year, thereafter, received a copy of a Schedule K-1 (Partners' Share of Income, Credits, Deductions, Etc.) filed with the IRS as a schedule to the Partnership's annual US federal income tax return.  Between 1st January, 1998 and 31st December, 2004, Mr. Kenney's share of ordinary income or loss allocated by the Partnership to him under his K-1s was as follows:

    (a)    1998 - $11,490 in income;

    (b)    1999 – ($1,099) in loss;

    (c)    2000 – ($1,127) in loss;

    (d)    2001 – $2,748 in income;

    (e)    2002 - $810 in income;

    (f)    2003 - $1,295 in income;

    (g)    2004 - $1,126 in income; and

    (h)    2005 - $491 in income (for period 1 January – 17 February 2005)

23.   Throughout this period, Mr. Becker operated the Partnership as his exclusive domain. Mr. Kenney was not advised of what employees or contractors might have been employed or retained by the Partnership, or the terms thereof. Nor was he advised of any new clients or client matters of the Partnership, nor did Mr. Becker ever ask Mr. Kenney if he had any potential conflicts of interest with any new clients of the Partnership, nor did Mr. Becker institute any procedures or guidelines for identifying potential conflicts of interest involving Mr. Kenney. Mr. Kenney was not advised, formally or informally, of either day-to-day or significant managerial decisions affecting the Partnership's business. Mr. Kenney was not advised of the Partnership's financial performance other than through his receipt of his annual Schedule K-1s. This mode of operating was consistent with the parties' expectations and agreement. Neither Mr. Kenney nor Mr. Becker expressed any contemporaneous statement to one another otherwise.

24.   Between approximately 1 August, 1997 and approximately 30 September, 2002, Mr. Kenney was not involved in the private practice of law, save for his nominal participation as a 1% inactive partner of the Partnership as stated aforesaid. Rather, he was employed by Interclaim, an international debt and liquidated claim acquisition and enforcement concern based in Dublin, Ireland.

25.   Beginning on or about 1st October, 2002, Mr. Kenney began to re-establish himself in the practice of law with the formation of his own proprietorship, Martin Kenney & Co., Solicitors ("MKS") based in Dublin, Ireland and regulated by the Law Society of England & Wales and, subsequently, by the Law Society of Ireland. At all material times, the Respondents were aware of the fact of the establishment of MKS. In early 2003, for instance, Mr. Kenney and Mr. Becker exchanged emails over the feasibility of MKS and the Partnership acquiring a joint policy of professional indemnity insurance in order to attempt to save money. Moreover, in approximately late 2002, Mr. Becker and the Partnership

9

helped MKS by providing MKS with a sub-client trust account as a part of the Partnership's master client trust account at its bank, Fleet Bank in New York, to facilitate the holding of some of MKS's operating funds in New York. Additionally, in June 2003, the Partnership's New York accountant, Joel Agler, CPA, compiled and issued a joint Accountant's Report to the Law Society of England & Wales vouching for the handling and financial accounting of client trust money by each of MKS and the Partnership.

26.  At no time did the Respondents object to Mr. Kenney establishing a new legal professional practice under Mr. Kenney's own name and in Ireland. At no material time did the Respondents ever assert the purported right to access to confidential information belonging to MKS, the firm's clients or Mr. Kenney. At no material time did the Respondents inquire into the identity of MKS's clients, or the nature of the legal services rendered to those clients, or the terms of MKS's retainer agreements with those clients. At no material time did the Respondents assert that the Partnership was the rightful owner of the income realized by MKS or Mr. Kenney through the provision of legal professional services to clients of MKS or otherwise.

27.  MKS was based in Ireland from approximately 1 October, 2002 until 19 August, 2005. MKS has since relocated to Road Town, Tortola, British Virgin Islands where it has been based between 20 August, 2005 and the present.

## V.  The Dissolution of the Partnership.

28.  On 27th September, 2004, Mr. Becker wrote to Mr. Kenney and demanded that Mr. Kenney make up an alleged US$73,026 deficit in his capital account with the Partnership arising from an apparently erroneous overpayment of distributions of cash to Mr. Kenney made by Mr. Becker and the Partnership during 1997. This

alleged overpayment had not been brought to the attention of Mr. Kenney by the Respondents until some seven (7) years after the fact.

29.   Mr. Kenney paid for the cost of a review of the financial records of the Partnership to determine the validity of the Respondents' demand for US$73,026 from Mr. Kenney. This review was conducted by the Partnership's former accountant, Accountant Medoff, in January 2005. Accountant Medoff's conclusion was that Mr. Kenney in fact did owe the Partnership the sum of US$73,026 by way of a deficit in his capital account arising from 1997.

30.   Paragraph 26.0 of the First Amendment provides:

> *"26.0 Deficit Make-Up Provision. Should either partner have a deficit balance in his capital account, upon a dissolution of the Partnership, he shall make-up such deficit by contributing cash to the partnership in the sum thereof."* (See, page 24, First Amendment, Exhibit "B" to this Amended Statement of Claim).

31.   On 17th February, 2005, Mr. Becker delivered a written notice, by email, to Mr. Kenney, declaring his withdrawal from the Partnership and thereby triggering a dissolution thereof. On 9th March, 2005, Mr. Becker acknowledged the Partnership's receipt of US$73,026 from Mr. Kenney in satisfaction of Mr. Kenney's obligation to make up the deficit in his capital account. Having received this amount, the Respondents next made demand on Mr. Kenney to pay interest on the unpaid deficit balance in the amount of US$2,917 accruing between 27th September, 2004 and 9th March, 2005 – based on the undocumented expectation that interest at the fixed rate of 9% *per annum* began to accrue on such deficit balance from and after the first point in time when either of the Respondents requested a make-up of the same by Mr. Kenney.

32.   Mr. Kenney says, in response, that the only provision that governs the obligation to make up a deficit balance in a partner's capital account in the Partnership Agreement, is Section 26.0 of the First Amendment which specifically provides, in relevant part, that "...***upon a dissolution of the Partnership***..." a partner who has a deficit balance in his capital account shall make up the same. Thus, until the date of the dissolution of the Partnership of 17 February, 2005, Mr. Kenney had no obligation to make-up such deficit. Moreover, the Partnership Agreement does not contain a provision entitling the Partnership to charge interest on any outstanding capital account deficit balance, at 9% *per annum* or otherwise.

## VI.   Unpaid Distributions for the Period from 1 January, 2004 through 17 February, 2005.

33.   Pursuant to Mr. Kenney's Schedule K-1 issued by the Partnership to him for the calendar year ended 31 December, 2004, Mr. Kenney was allocated some US$1,126 of ordinary income from the Partnership for that year. However, Mr. Kenney has not received any distribution from the Partnership representing his allocation of profits for such year. Mr. Kenney is therefore owed the sum of US$1,126 by the Partnership.

34.   The same is true in respect of the period of 1 January, 2005 through the date of dissolution of the Partnership of 17 February, 2005. Pursuant to Mr. Kenney's Schedule K-1 issued by the Partnership to him for the calendar year ended 31 December, 2005, Mr. Kenney was allocated some US$491 of ordinary income from the Partnership for that year. However, Mr. Kenney has not received any distribution from the Partnership representing his allocation of profits for such year. Mr. Kenney is therefore owed the sum of US$491 by the Partnership.

## VII.   First New York Action Filed by the Partnership.

35.   By a Summons and Verified Complaint filed with the Clerk of the Supreme Court of the State of New York (Index No. 05603614) on 12th October, 2005, the Partnership brought an action against Mr. Kenney (the "First New York Action") alleging, in relevant part, that:

    (a)   the First Amendment provides that the partners shall perform legal services either under the aegis of the Partnership, referred to as "Joint Work," or sole and separate from the Partnership, referred to as "Extra-Partnership Work;"

    (b)   the First Amendment provides that the income earned from Joint Work shall be for the benefit of the Partnership, allocated to the partners as provided therein;

    (c)   in the event of Extra-Partnership Work, the First Amendment provides that the income earned therefrom shall be solely the property of the partner performing the work;

    (d)   subsequent to 1st July, 1996, Mr. Kenney performed legal services for which he was compensated;

    (e)   all of the legal services performed by Mr. Kenney subsequent to 1st July, 1996 allegedly constitute "Joint Work" pursuant to the First Amendment; and

    (f)   the Partnership claims that it is entitled to all of the "compensation received" by Mr. Kenney for the legal services performed by him

since 1st July, 1996. The Partnership seeks an accounting and an award therefor.

36. The First New York Action was instituted before the Supreme Court of the State of New York in violation of Section 9.18 of the Initial Partnership Agreement, which remains in full force and effect, and which mandates that all controversies or claims arising out of or relating to the Partnership Agreement must be resolved by arbitration in accordance with the rules of the American Arbitration Association and before a sole arbitrator.

37. Concurrently with the filing and service of the initial Demand for Arbitration and Statement of Claim in this matter on January 6, 2006, Mr. Kenney filed a motion before the Supreme Court of the State of New York for an order dismissing the First New York Action for want of jurisdiction on the ground that the disputes arising between the parties must be resolved by arbitration before a sole arbitrator and pursuant to the International Rules.

38. By Order to Show Cause dated January 18, 2006, the Partnership cross-moved for an order staying the instant arbitration proceedings (the "Order to Show Cause"). Following a combined hearing of Mr. Kenney's motion and the Order to Show Cause on February 9, 2006, Justice Moskowitz issued the Supreme Court Orders which, *inter alia*, granted Mr. Becker's motion to be added as an additional plaintiff in the First New York Action, and directed Mr. Kenney and the Respondents to submit their disputes to arbitration in accordance with the Partnership Agreement.

39. On February 24, 2006, the Respondents filed a Notice of Appeal with the N.Y. Supreme Court, appealing the Supreme Court Orders; on March 2, 2006, the Respondents filed a motion with the Appellate Division of the Supreme Court of

the State of New York, First Department (the "Appellate Division") to stay arbitration pending resolution of their appeal. Following review of the parties' submissions, the Appellate Division issued an order on March 30, 2006, denying the Respondents' motion to stay the arbitration, and vacating the interim stay of arbitration granted on March 3, 2006 (the "Appellate Division's Order"). A copy of the Appellate Division's Order is attached hereto as Exhibit "G."

40.    The standard of review applicable to the Appellate Division's consideration of the Respondents' motion was that such a motion may be denied when it is clearly shown that there is no merit to the appeal. Although the Appellate Division's Order does not provide the court's reasoning, it follows that the Appellate Division found no merit in the Respondents' legal arguments in favor of prolonging the litigation of the partners' disputes, rather than submitting them to arbitration as required under the Partnership Agreement.

41.    On April 17, 2006, Mr. Kenney filed a Notice of Removal with the United States District Court, Southern District of New York (the "District Court"), Case No. 06 cv 2975, seeking to remove the First New York Action to federal court pursuant to 9 U.S.C. § 205 and 28 U.S.C. § 1446, because (i) the Partnership Agreement, as an agreement between New York entities and a citizen of Canada and the Republic of Ireland, is subject to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, to which the United States is a party (the "New York Convention"), and (ii) Mr. Kenney wanted the District Court to have the ultimate judicial supervision over the arbitration as an international dispute, rather than the Supreme Court.

42.    Respondents did not object to the removal of the First New York Action to the District Court, nor did they file a motion for remand to state court. However, they

did request a temporary stay of the arbitration pending their motion to reargue the state court orders.

43. On April 24, 2006, Judge Jed S. Rakoff of the District Court ("Judge Rakoff") issued an order temporarily staying the arbitration pending submission of memoranda of law from the parties and oral argument. On May 1, 2006, the Respondents filed a motion in the District Court for, *inter alia*, reargument of the Supreme Court Orders and the Appellate Division's Order, and a renewed stay of the arbitration. Following submissions by both parties and oral argument, Judge Rakoff issued the District Court Orders on June 2, 2006, lifting said temporary stay of the arbitration and denying Respondents' motion in its entirety. *See,* District Court Orders, attached hereto as Exhibit "D."

44. As shown in the District Court Orders, Judge Rakoff expressly found that (i) the Partnership Agreement "provides 'clear and unmistakable evidence of the parties' intent to delegate' to the arbitrator the question of whether the instant dispute is subject to the arbitration clause [in Section 9.18 of the Initial Partnership Agreement]," (ii) "the parties agreed to permit the arbitrator to determine the location of the arbitration," and (iii) the Respondents' arguments presented "no obstacle to compelling arbitration" of the disputes between Mr. Becker and Mr. Kenney. *See,* District Court Orders, p. 2.

## VIII. Second New York Action Filed by the Respondents.

45. By a Summons and Verified Complaint filed with the Clerk of the Supreme Court of the State of New York (Index No. 109148/06) on 30th June, 2006, the Respondents brought yet another action against Mr. Kenney (the "Second New York Action") in violation of Section 9.18 of the Initial Partnership Agreement, seeking substantially the same relief as they had sought in the First New York

Action, and which they had been ordered to submit to arbitration by the Supreme Court Orders, the Appellate Division's Order and the District Court's Order, in the guise of declaratory judgment determining the rights of the parties under the Lawyers Code of Professional Responsibility, 22 NYCRR §1200.1 *et seq.* (the "Code").

46.    The complaint in the Second New York Action alleges, in relevant part, that:

(a)    Upon information and belief, Mr. Kenney, while a partner in the Partnership, individually and in association with others provided legal services to clients apart from the Partnership;

(b)    In order to comply with their obligations under the Code, the Respondents "need to know the identities of all persons and entities for whom [the Claimant] provided legal services, individually and in association with others, while a partner in the Partnership, the nature and terms of any retainer agreements, and the nature and substance of the legal services provided or intended to be provided through the date of the dissolution of the Partnership." Complaint, para. 15.

(c)    "Disciplinary Rule 1-104A of [the Code] provides that a law firm shall make reasonable efforts to ensure that all lawyers in the firm conform to the disciplinary rules." Complaint, para. 17.

(d)    The Respondents "have no adequate remedy at law other than this form of action to have its rights and duties determined as to the matters set forth herein." Complaint, para. 19.

17

47. The complaint in the Second New York Action demands judgment "declaring the rights and liabilities of the parties hereto in respect to the matters set forth herein under the [Code], that the declaratory judgment specify, among other things, that [Mr. Kenney] is obligated to identify for [the Respondents] the persons and entities for whom he provided legal services while a partner of the Partnership, the nature and terms of any retainer agreements, and the nature and substance of the matters for which legal services were rendered, that [Mr. Kenney] be enjoined and directed to provide all such information as is necessary to render the parties in compliance with the obligations imposed by the [Code] and that [the Respondents] have such other and further relief as may seen just in proper [sic]." Complaint, pp. 4-5.

48. On September 22, 2006, Mr. Kenney filed a Notice of Removal with the District Court, Case No. 06 cv 7634, seeking to remove the Second New York Action to federal court pursuant to 9 U.S.C. § 205 and 28 U.S.C. § 1446, because (i) the Partnership Agreement is subject to the New York Convention, and (ii) the Second New York Action arose out of the same facts and circumstances, and the Respondents sought substantially the same remedies, as previously heard by the District Court in the First New York Action.

49. On September 27, 2006, Mr. Kenney filed an answer to the Second New York Action with the District Court. On October 10, 2006, (i) the Respondents filed a motion with the District Court, seeking orders remanding the Second New York Action back to Supreme Court, and (ii) Mr. Kenney filed a cross-motion with the District Court seeking orders (A) dismissing the Respondents' complaint in the Second New York Action on numerous grounds, including failure to state a claim cognizable at law, lack of standing and collateral estoppel, (B) compelling arbitration of the claims set forth in said complaint, and (C) enjoining the Respondents from commencing further or additional actions in state court or in

Federal court arising out of or relating to the parties' partnership agreement without leave of the District Court.

50. The parties completed their submissions on October 20, 2006, and Judge Rakoff heard oral argument on October 30, 2006. On November 3, 2006, Judge Rakoff issued an order, *inter alia*, (i) denying the Respondents' motion to remand, and (ii) granting Mr. Kenney's motion to dismiss the Second New York Action with prejudice.

51. Mr. Kenney has incurred legal fees and disbursements in excess of US$40,000 in connection with the defense of the First New York Action and the Second New York Action, both of which were commenced by the Respondents in flagrant disregard of the requirement to arbitrate all claims and controversies arising out of the Partnership Agreement set forth in Section 9.18 of the Initial Partnership Agreement, as adopted and ratified in the First Amendment.

## IX. Relevant Provisions Contained in the First Amendment.

### a. Extra-Partnership Work.

52. In the second recital to the First Amendment, Messrs. Kenney and Becker agreed, in relevant part, as follows:

> "ESB [referring to Mr. Becker] *and MSK* [referring to Mr. Kenney] *have reached an agreement as between them to reconstruct their jural relationship, as partners, to permit each to elect, in their sole discretion, to perform legal professional services, jointly, on individual cases, where it is agreed so to do. In such event, ESB and MSK have agreed a formula to allocate profit and loss from the Partnership to one another, deriving from such joint work (hereinafter referred to as* Joint Work). *Further, ESB and MSK have agreed, subject to applicable law*

19

> *and legal professional ethical rules, to enter into this First Amendment to, inter alia, memorialize their agreement to the effect that there may subsist a separate sub-species of Sole and Separate Work, where they shall each have the right to conduct Sole and Separate Work, separate and apart from, and not under the aegis or the name of the Partnership (hereinafter called, Extra-Partnership Work).* " (Emphasis added) (*See*, page 1, First Amendment, Exhibit "B" to this Amended Statement of Claim).

53. Section 10.0 of the First Amendment provided that the partner who was the procuring cause of the sale of legal professional services to a client was the only party who had the right to categorize and treat of such new client matter as either Joint Work or Extra-Partnership Work, as follows:

> "*10.0 Post-1 July 1996 Allocation of Work. ESB or MSK are free to, severally, at any time, choose to categorize and treat new client matters, in instances where either is the procuring cause for the sale of legal professional work, as either Joint Work or otherwise, as Extra-Partnership Work. Upon the procuring partner's election, in this regard, such work shall be treated thereafter in accordance with such initial designation, unless agreed otherwise by MSK and ESB.* " (*See*, page 9, First Amendment, Exhibit "B" to this Amended Statement of Claim).

### b. **Alleged Condition Precedent.**

54. The Respondents have affirmed in their oral arguments before the Supreme Court and the District Court that they believe that the Partnership Agreement contains a condition precedent that must be satisfied before any particular item of legal services can be classified as Joint Work or Extra-Partnership Work, and that Mr. Kenney failed to satisfy such condition precedent with respect to all legal services which were provided by him outside of the Partnership, and so all such legal services must be considered Joint Work..

55. To date, Respondents have not identified the condition precedent which is fundamental to their claims. The term "condition precedent" is not included in any of the documents which comprise the Partnership Agreement. However, the Respondents may be referring to the first sentence of Section 9.0 of the First Amendment, entitled "Sharing of Costs," which reads: "In the event that after 1 July, 1996, either [Mr. Becker] or [Mr. Kenney] choose to perform Extra-Partnership Work, they must (i) notify the other in this regard, by memorandum (or another writing), and (ii) make their own arrangements for the servicing of the clientele which will be the subject of such Extra-Partnership Work." The remainder of this substantial section of the Partnership Agreement discusses in detail the limited permitted uses of the Partnership's office facilities in connection with Extra-Partnership Work.

56. The Respondents received written and verbal notice of Mr. Kenney's intention to perform Extra-Partnership Work when Mr. Kenney notified Mr. Becker, in or about 1st October, 2002, that he had formed MKS in Dublin, Ireland. As discussed in paragraph 25 above, (i) at all material times, the Respondents were aware of the fact of the establishment of MKS, (ii) shortly after the formation of MKS, in approximately late 2002, Mr. Becker and the Partnership helped MKS by providing MKS with a sub-client trust account as a part of the Partnership's master client trust account at its bank, Fleet Bank in New York, (iii) in early 2003, Mr. Kenney and Mr. Becker exchanged emails over the feasibility of MKS and the Partnership acquiring a joint policy of professional indemnity insurance in order to attempt to save money, and (iv) in June 2003, the Partnership's New York accountant compiled and issued a joint Accountant's Report to the Law Society of England & Wales vouching for the handling and financial accounting of client trust money by each of MKS and the Partnership.

21

57.    The Respondents cannot reasonably claim that they did not have adequate notice of the formation of MKS in 2002 and Mr. Kenney's intent to perform Extra-Partnership Work from his new law practice based outside of the United States, over five (5) years after he had become, in Mr. Becker's words, "an inactive 1% partner" in the Partnership.

58.    Alternatively, the Respondents may claim that Section 8.0 of the First Amendment contains their alleged "condition precedent." This Section begins by conjecturing, "Although it is not, at present, envisaged that there shall be any Extra-Partnership Work, *should it be relevant*, and *should it be consistent* with applicable law and legal professional ethical rule, the Partners shall agree on a list of current or prospective client matters that shall make-up the *corpus* known as Extra-Partnership Work." (Emphasis added.) (*See*, page 7, First Amendment, Exhibit "B" to this Amended Statement of Claim).

59.    The portion of Section 8.0 quoted above clearly refutes any contention of an express "condition precedent." Under New York law,[2] a contractual provision cannot be deemed a condition precedent unless it unambiguously evidences the parties' intent to create an express condition which must be satisfied prior to the performance of one or both parties. The quoted language clearly provides that the purported agreement of the partners on a "list" of Extra-Partnership Work is hypothetical both in its expression and in the two vague pre-conditions that presage the existence of such a list. Section 8.0 of the First Amendment does not provide that unambiguous evidence of the parties' intent which is the defining quality of a condition precedent.

60.    In addition, Section 8.0 ends by unambiguously declaring that "For the avoidance of any doubt, any income earned by ESB in connection with Extra-Partnership

---

[2] Pursuant to Section 9.17 of the Initial Partnership Agreement, the Partnership Agreement is "subject to and governed by the laws of the State of New York."

22

Work shall be deemed to be his property, and conversely, any income earned by MSK in connection with Extra-Partnership Work shall be deemed to be his property." (*See*, page 7, First Amendment, Exhibit "B" to this Amended Statement of Claim).

61.  Furthermore, any construction of Sections 8.0 or 9.0 of the First Amendment which find a condition precedent to the existence of "Extra-Partnership Work" is entirely inconsistent with Section 10.0 of that same agreement, which provides unambiguously that either Mr. Becker or Mr. Kenney "are free to, severally, at any time, choose to categorize and treat new client matters, in instances where either is the procuring cause for the sale of legal professional work, as either Joint Work or otherwise, as Extra-Partnership Work. Upon the procuring partner's election, in this regard, such work shall be treated thereafter in accordance with such initial designation, unless agreed otherwise by" the partners. (*See*, page 9, First Amendment, Exhibit "B" to this Amended Statement of Claim).

62.  In light of the foregoing, it is clear that the Partnership Agreement (i) does not provide any express condition precedent to the classification of either partner's legal services as Extra-Partnership Work, but instead, (ii) unambiguously provides that during the term of the Partnership, either partner was free, at any time, to categorize and treat new client matters as either Joint Work or as Extra-Partnership Work, where he was the procuring cause for the sale of such legal services.

63.  To the extent that Sections 8.0 and 9.0 of the First Amendment set out a protocol for the accounting of Partnership resources used in connection with the performance of Extra-Partnership Work from the Partnership's offices, by virtue of the effect of Mr. Kenney's effective withdrawal from the Partnership as of 19th February, 1997, and based on the course of conduct of the Respondents following

his personal and professional relocation from New York to Ireland, the protocol contained in the First Amendment to fairly allocate Partnership overhead costs to the partner who might perform Extra-Partnership Work from the Partnership's office premises in New York City no longer had any purpose or effect and was subsumed by the substantial reconstruction to the partners' contractual relationship from 50/50% partners to 99/1% partners, effective 19th February, 1997.

## X.   Equitable Estoppel.

64.   In light of (i) the Respondents' actual knowledge that Mr. Kenney was not engaged in the private practice of law from approximately February 19, 1997 until approximately October 1, 2002, (ii) the Respondents' actual knowledge that Mr. Kenney had resumed the private practice of law through MKS commencing on or about October 1, 2002, (iii) the fact that in 2002 and 2003 the Respondents actively assisted MKS in fulfilling its professional responsibilities as described in Paragraphs 25 and 56 above, and (iv) the fact that from July 1, 1996[3] until June 2, 2005 – approximately 3.5 months after the Partnership had been placed into a state of dissolution by Mr. Becker's voluntary withdrawal - Respondents failed to make any inquiry or demand upon Mr. Kenney in respect to any accounting or claim to income from any Extra-Partnership Work, the Respondents should be equitably estopped from pursuing any accounting of, or claim to the income derived by Mr. Kenney from, his Extra-Partnership Work.

65.   Under New York law, the doctrine of equitable estoppel is imposed by law to prevent the enforcement of rights which would result in an injustice against the person upon whom such enforcement is sought, if that person has been misled by

---

[3] The Respondents' Verified Complaint in the First New York Action alleges that "[t]he legal services performed by [Mr. Kenney] since July 1, 1996 are 'Joint Work' pursuant to the [First Amendment]."

the other party's words or conduct into justifiable reliance that such enforcement would not be sought.

66.     The elements of equitable estoppel are:

   (a)   with respect to the party estopped:

      (i)    conduct which amounts to false representation or concealment of material facts,

      (ii)   of which such party was aware, and

      (iii)  the intention that such conduct would be relied on by the other party.

   (b)   with respect to the party seeking estoppel:

      (i)    lack of knowledge of the true facts,

      (ii)   reliance on the conduct of the party to be estopped, and

      (iii)  prejudicial change in position.

67.     Applying the doctrine of equitable estoppel to the facts of this case, it is clear that the failure of Respondents to make any inquiry or demand upon Mr. Kenney regarding Extra-Partnership Work for over 9 years constituted conduct amounting to a representation that the Respondents disclaimed any interest in the income from such Work. As parties to the Partnership Agreement, the Respondents were aware of Mr. Kenney's right to conduct Extra-Partnership Work pursuant to the

First Amendment, as well as their right to 99% of the income from any Joint Work from and after February 19, 1997, pursuant to the Second Amendment. *See*, Memorandum of the Meeting, Attachment "2", Second Amendment, Exhibit "F" to this Amended Statement of Claim.

68.   By actively assisting MKS in the handling and accounting of its client trust money, and by exploring with Mr. Kenney the acquisition of a joint professional indemnity insurance policy covering the independent professional activities of both MKS and the Partnership, Mr. Becker knew or should have known that his conduct would induce Mr. Kenney into reliance on the understanding that the Respondents had no interest in the income from Mr. Kenney's Extra-Partnership Work.

69.   From Mr. Kenney's perspective, he had no inkling that Mr. Becker harbored a claim for a share of his income since July 1, 1996 – including, but not limited to, a 99% share of his income since February 19, 1997 - until Mr. Becker's demand for an accounting more than 2.5 years after the founding of MKS. Mr. Kenney developed and marketed both Interclaim and MKS in reliance on the fact that Mr. Becker did not have a personal interest in either of those companies. Furthermore, Mr. Kenney has suffered prejudice and incurred substantial expenses in the defense of the First New York Action and the Second New York Action – both of which Actions were commenced needlessly and vexatiously by Mr. Becker in violation of the arbitration agreement set forth in the Partnership Agreement – and in commencing and prosecuting this arbitration, as a result of Mr. Becker's wholly unexpected claim that all of Mr. Kenney's professional efforts since July 1, 1996 constitute Joint Work under the Partnership Agreement.

70.   Accordingly, the arbitrator should find that the Respondents are equitably estopped from obtaining an accounting of, or interest in, any income derived by

26

Mr. Kenney from Extra-Partnership Work from July 1, 1996 to and including February 17, 2005, the date of dissolution of the Partnership.

## XI.     Laches and the Application of Limitations Law.

71.     At no time between 19th February, 1997 and until 2nd June, 2005 when, for the first time, the Partnership wrote to Mr. Kenney seeking information about the nature of his Extra-Partnership Work, did either Respondent ever seek information or make inquiry about Mr. Kenney's legal professional activities as stated aforesaid.  The Respondents did not seek information from Mr. Kenney about any Extra-Partnership Work (or any other form of legal professional services) performed by him until the Partnership's first request for information in respect of Extra-Partnership Work dated 2nd June, 2005, which was issued approximately 3.5 months after the Partnership was placed into a state of dissolution on 17th February, 2005 through the voluntary withdrawal of Mr. Becker.

72.     The information sought by the Respondents in the First New York Action reaches as far back as to 1st July, 1996 – over ten (10) years ago.  Assuming that a six (6) year limitation period is applicable in the instant alleged breach of contract case,[4] and even if it was to be determined that the said six (6) year limitation period was tolled on the date of the improper filing of the First New York Action on 12th October, 2005, under New York law the Respondents' demand for an accounting or an award in respect of the provision of any legal services by Mr. Kenney prior to 12th October, 1999 is statute barred, and is barred in any event by the equitable doctrine of laches.

---

[4]  See, New York Civil Practice Law and Rules § 213.

## XII.    **Prayer for Relief.**

WHEREFORE, Mr. Kenney seeks an award from a sole arbitrator to be appointed in accordance with the International Rules in the following terms:

(a) a declaration that Mr. Kenney's payment of the sum of US$73,026 to the Partnership on 9th March, 2005 fully and finally satisfied any and all liabilities that Mr. Kenney had (or has) to the Partnership;

(b) a declaration that the Partnership's demand for the payment of US$2,917 of interest on such US$73,026, calculated at the fixed rate of 9% *per annum* commencing 27th September, 2004 and ending 9th March, 2005 is without any legal or factual basis;

(c) a declaration that the Partnership be adjudged liable to pay to Mr. Kenney (i) US$1,126 in respect of the sum owed to him by the Partnership in connection with the results of the Partnership's operations for the calendar year ended on 31 December, 2004, plus (ii) US$491 in respect of the sum owed to him by the Partnership in connection with the results of the Partnership's operations for the period commencing 1st January, 2005 and ending 17th February, 2005;

(d) a declaration that Mr. Kenney has no obligation to the Respondents to account for his provision or sale of legal services between 1st July, 1996 and 30th July, 1997, on the ground that Mr. Kenney performed no Extra-Partnership Work or any other legal services requiring him to account to the Respondents, and that the Respondents are fully aware of what Mr. Kenney's activities were during this period;

28

(e) a declaration that Mr. Kenney has no obligation to the Respondents to account for his provision or sale of legal services between 1st August, 1997 and 1st October, 2002 on the ground that Mr. Kenney was not involved in the private practice of law and rendered no legal professional services to clients during this period of time;

(f) a declaration confirming that (i) at all material times Mr. Kenney had the right to establish MKS as a separate legal professional practice, (ii) Mr. Kenney rightfully chose to categorize and treat all client matters relating to his post-1st October, 2002 new practice, MKS, as Extra-Partnership Work, pursuant to Section 10.0 of the First Amendment, on the ground that he was the sole procuring cause of the sale of such legal professional services, (iii) Mr. Becker had no involvement or participation in the procurement of the sale of any such legal professional services, (iv) the Respondents have no right of ownership of or any interest in MKS, (v) any and all income earned by MSK pursuant such legal professional services was income earned by Mr. Kenney in connection with Extra-Partnership Work, (vi) such income is Mr. Kenney's sole and separate property, pursuant to Section 8.0 of the First Amendment, and (vii) Mr. Kenney has no obligation to the Respondents to account for his provision or sale of such legal professional services between 1st October 2002 and 17th February 2005;

(g) a declaration confirming that, effective no later than 1st January 2001, the provisions contained within the First Amendment providing a protocol for the accounting of Partnership resources in connection with the performance of Extra-Partnership Work, or for the formal notification to Respondents of Mr. Kenney's intention to perform

29

Extra-Partnership Work, no longer subsisted or endured due to the effective withdrawal of Mr. Kenney from the Partnership (save for his nominal or inactive 1% interest in the profits, losses and distributable cash therefrom);

(h) in the alternative, a declaration to the effect that the Respondents are equitably estopped from obtaining an accounting of, or interest in, any income derived by Mr. Kenney from Extra-Partnership Work from 1st July 1996 to 17th February 2005, the date of dissolution of the Partnership;

(i) in the further alternative, a declaration to the effect that the Respondents' demand for an accounting and an award of the value of the compensation received by Mr. Kenney through his provision of legal professional services rendered between 1st July 1996 and 12th October 1999 is statute barred by application of the applicable law of limitation of actions;

(j) in the further alternative, a declaration to the effect that the Respondents' demand for an accounting and an award of the value of the compensation received by Mr. Kenney through his provision of legal professional services between 1st July 1996 and the date of dissolution of the Partnership of 17th February 2005 is barred by virtue of the application of the equitable doctrine of laches;

(k) an award of the reasonable legal fees and costs incurred by Mr. Kenney in connection with the defense of the First New York Action and the Second New York Action which were commenced by the Respondents in violation of the Partnership Agreement;

(l) pursuant to Article 31(d) of the International Rules, an award of the reasonable legal fees and costs incurred by Mr. Kenney in connection with the prosecution of these arbitration proceedings; and

(m) pursuant to Articles 31(a), (b) and (c) of the International Rules, an award of the arbitration costs (including, but not limited to, the $1,100.00 Neutral Compensation Deposit and arbitrator expense deposit, the American Arbitration Association's service fee, all applicable filing fees and the fees and disbursements of the arbitrator), that are incurred by Mr. Kenney in connection with his prosecution of these proceedings.

DATED in Road Town, Tortola, British Virgin Islands, West Indies, on 10th November, 2006.

_____
**Dan Wise**
Martin Kenney & Co., Solicitors
2nd Floor, Geneva Place Building
P.O. Box 4740, Road Town
Tortola
British Virgin Islands, West Indies
Phone: (284) 494-2444
Fax:     (284) 494-3313
Email: <dwise@mksolicitors.com>

_____
**Joseph H. Lilly, III**
Law Office of Joseph H. Lilly, III
60 East 42nd Street, Suite 1338
New York, New York 10165
Phone: (212) 687-6523
Fax:     (212) 687-6526
Email: <joelilly@att.net>

31

# Exhibit 2

# INTERNATIONAL CENTER FOR DISPUTE RESOLUTION
## Commercial Arbitration

In the Matter of the Arbitration between

Re: 50 180 T 00019 06
   Martin S. Kenney (CLAIMANT)
   and
   Eugene S. Becker and Kenney, Becker LLP (RESPONDENTS)

## Preliminary Hearing and Scheduling Order #1

Pursuant to the Arbitration Rules of the American Arbitration Association's (the "Association") International Center For Dispute Resolution (the "ICDR") (the "Association Rules") a preliminary hearing was held by telephone on October 24, 2006 at 3:00 P.M. before Arbitrator Richard J. DeWitt. Appearing at the hearing was:  Dan Wise, Esq. and Joseph H. Lilly, Esq., on behalf of the Claimant; Stephen Latzman, Esq. on behalf of Respondents and Andrea Bugbee on behalf of the Association. By agreement of the Parties and Order of the Arbitrator, the following is now in effect.

1. **Arbitration Agreement:** This Arbitration is being held pursuant to the Arbitration Agreement set forth in that certain Registered Limited Liability Partnership Agreement of Kenney, Becker, Solicitors, LLP dated June 15, 1995 as amended by the First Amendment and Modification agreement dated as of July 1, 1996 by and among Martin S. Kenney, Eugene S. Becker and Kenney, Becker, Solicitors, LLP that incorporated the Association Rules and is the authority for this Arbitration (the "Arbitration Agreement").

2. **Demand for Arbitration and Appointment of Arbitrator:**
   a)    The Claimant filed a Demand for Arbitration on January 6, 2006.
   b)    The Arbitrator was appointed on September 12, 2006 in accordance with the Association Rules.

3. **Arbitrability and Jurisdiction:**
   a)    The Arbitrator finds that the Claims are arbitrable;
   b)    The Arbitrator finds that he has jurisdiction to determine the Claims.

4. **Applicable Law and Rules:**

The following shall apply:

a) The Parties stipulate that the substantive law of New York shall apply;

b) The Parties stipulate that the Arbitral law shall be the Federal Arbitration Act;

c) Miami, Florida shall be the Seat of the Arbitration. Hearings shall be held at the Association's Offices in Miami and/or New York (or at an alternative location) as necessary in order to reduce the cost and inconvenience to the Parties and witnesses. The Parties are directed to work together to establish a hearing schedule at locations that meet these parameters; and

d) Respondent filed a motion requesting that the Associations Commercial Arbitration Rules rather that its International Arbitration Rules shall apply in this Arbitration. The Parties shall file briefs, as set forth below, regarding the issue of the appropriate Rules that shall apply. The Arbitrator may hold a Motion Hearing on this and other motions should he determine it necessary or at the request of either Party.

5. **Statement of Claims and Defenses:** Claimants may file a detailed statement of its Claims and damages by **November 10, 2006.** Respondent may file an amended response or additional defenses or counterclaims by **December 1, 2006.**

6. **Dates & Times of Hearings:**

a) A **Status Hearing** will be held on **April 3, 2007** at **10 AM** by teleconference for the purpose of reviewing the hearing schedule, witnesses to be called, any objections to exhibits, other pending issues and opportunities to efficiently and expeditiously conduct the evidentiary hearing. It is estimated that this will require one (1) hour of hearing time. The Association will establish the teleconference.

b)    **The Evidentiary Hearing** in this matter will be held during the weeks of **April 9 – 13, 2007** and **April 23 – 27, 2007** before the Arbitrator. It is estimated six (6) days of hearing time, inclusive of argument will be required.

On or before **February 2, 2007** the Parties shall file a joint stipulation setting forth the Hearing schedule and locations as set forth in paragraph 4 (b) above.

Requests for postponement are strongly discouraged and will only be considered for good cause shown.

7. **Exchange of Information:** With regard to discovery requests, each party shall provide the other party with its discovery requests no later than **December 29, 2006** Each Party shall provide the other Party with the requested discovery by **January 19, 2006**. In the event of a discovery dispute, the Parties shall make a good faith effort to resolve said dispute. The Arbitrator will decide any discovery disputes not resolved by the Parties.

Each Party shall be responsible for updating its disclosures as information becomes available. The duty to update this information continues up to and including the date that hearing(s) in this matter terminate.

8. **Witnesses:** Each Party shall simultaneously file with the other Party and the Association, no later than **December 29, 2006**, a preliminary list of all witnesses it intends to call. The disclosure of witness shall include the full name of each witness, a short summary of anticipated testimony, copies of any expert's reports, and a written C.V. of any expert. If certain required information is not available, a statement to this effect should appear on the witness lists.

Each Party shall simultaneously file with the other Party and the Association, no later than **February 2, 2007**, a final list of all witnesses it intends to call. The disclosure of witness shall include the full name of each witness, a short summary of anticipated testimony, copies of any expert's reports, and a written C.V. of any expert. If certain required information is not available, a statement to this effect should appear on the witness lists.

Each party shall be responsible for updating its disclosures as information becomes available. The duty to update this information continues up to and including the date that hearing(s) in this matter terminate.

The Parties shall arrange to schedule the attendance of witnesses in such a manner as to expedite the conduct of the hearing and avoid delay. The party presenting evidence shall give notice to the other party the day before of the names of the witnesses who will be called to testify the next day and the order in which the witnesses will be called. Witnesses, including Claimant's may appear, testify and participate by telephone.

9. **Exhibits:** No later than **March 23, 2007**, the Parties shall exchange copies of (or, where appropriate, make available for inspection) all exhibits to be offered and all schedules, summaries, diagrams and charts to be used at the hearing. Each proposed exhibit shall be pre-marked for identification with consecutive Arabic numerals and placed in a three-ring binder notebook. Each such exhibit notebook shall have a table of contents. The Parties shall provide three (3) identical copies of each exhibit notebook to be used, by the Arbitrator, opposing counsel and witnesses.

The Parties shall attempt to agree upon and have present at the hearing a mutually agreed to consolidated set of joint exhibits. Any objections to exhibits shall be furnished to the Arbitrator prior to the Hearing and in no event later than the Status Hearing. Exhibits not objected to shall be deemed admitted at the commencement of the Hearing.

10. **Pre-Hearing Briefs:**

a) **Motion Briefs** - On or before **December 1, 2006,** Respondent shall serve and file a brief on the issue of whether the Association's Commercial Arbitration Rules or International Arbitration Rules shall apply to this Arbitration; and on the issue of whether the Arbitrator should determine the issue of legal fees and costs; setting forth briefly its position and the supporting arguments and authorities.

On or before **December 15, 2006,** Claimant shall serve and file a response brief on these issues; setting forth briefly its position and the supporting arguments and authorities.

b) **Evidentiary Hearing Briefs** - On or before **March 23, 2007** each party may serve and file a pre-hearing brief on all significant disputed issues, setting forth briefly the party's position and the supporting arguments and authorities.

11. **Briefs and Memorandums:** Pre-hearing briefs and other submissions shall have attached copies of cases cited by the submitting party with the relevant sections relied on by the party highlighted.

12. **Stipulation of Issues and Facts:**

The Parties shall file a stipulation of:

a) uncontested facts;

b) contested facts;

c) a chronological timeline of significant events in the matter

d) legal issues to be determined by the Arbitrator;

e) and other issues to be determined by the Arbitrator

with the Association no later than **March 23, 2007.** Said stipulation shall also be submitted electronically in Word format.

13. **Enforcement of Deadlines:** All deadlines stated herein will be strictly enforced.

14. **Submissions to the Arbitrator:** Unless the Parties enter into an Agreement to participate in the Association's - Accelerated Exchange Program and either party has not terminated such agreement, any and all documents to be filed with or submitted to the Arbitrator outside the hearing shall be given to the Associations Case Manager for transmittal to the Arbitrator. Copies of said documents shall also be sent simultaneously to the opposing party. The Arbitrator hereby consents to the use of the Accelerated Exchange Program by the Parties. The Arbitrator prefers, but does not require, that submissions be made electronically in Word or Adobe Acrobat (pdf) format.

**There shall be no direct oral communications between the Parties and the Arbitrators, except at oral hearings.**

15. **Duty to Disclose:** Each party has an obligation to disclose and shall have a continuing obligation to immediately disclose to the Association's Case Manager potential conflicts that the Arbitrator may have that it has knowledge of and that, to that Party's knowledge, have not been previously disclosed.

16. **Attorney's Fees and Expenses:** The Claimant has requested that the Arbitrator hear the issue of and determine prevailing party and reasonable legal fees and expenses and make an award of such legal fees and expenses. Respondent requested additional time to consider the issue and advise The Arbitrator shall make an award of the administrative fees and expenses of the Association and the compensation of the Arbitrator.

17. **Form of Award:** At the request of both Parties, the Arbitrator shall provide a Reasoned Award.

18. **Pleading and Document Filing Log:** The Claimant shall prepare an initial chronological log of pleadings and documents filed with the Arbitrator in this matter setting forth the Date, Party submitting and a brief description of the pleading or document. Each Party filing a subsequent pleading or document shall update the log and include the updated log with its filing.

19. **Additional Matters:** Any other preliminary matters which may arise and are not addressed in this Order shall be submitted to the Association for consideration by the Arbitrator no later than seven (7) calendar days before the commencement of the Hearing.

20. **Stenographic Record:** Any Party may arrange, at its expense, to have a stenographer present at any hearings conducted in this Arbitration, pursuant to the Association Rules. The Arbitrator shall be provided with an electronic time stamped copy of all transcriptions made of hearings.

21. **Effect of Preliminary Order:** This Order shall continue in effect unless and until amended by subsequent order of the Arbitrator.

This Order is made in Miami- Dade County, Florida.

Dated: October 29, 2006

Richard J. DeWitt

Arbitrator

Exhibit 3

INTERNATIONAL CENTER FOR DISPUTE RESOLUTION
Commercial Arbitration

In the Matter of the Arbitration between

Re: 50 180 T 00019 06
Martin S. Kenney (CLAIMANT)
and
Eugene S. Becker and Kenney, Becker LLP (RESPONDENTS)

### Hearing and Scheduling Order #2

1. On December 1, 2006, Respondents filed a statement of Defense, a Motion to Dismiss based on a Plea to Jurisdiction and an Objection to Venue.

2. On December 21, 2006, Claimant filed a Motion for Summary Judgment.

3. The Parties filed memorandum of law concerning the pending motions.

4. On February 22, 2007 at 2:00 P.M., a Hearing was held by telephone before Arbitrator Richard J. DeWitt. Appearing at the Hearing was Dan Wise, Esq. and Joseph H. Lilly, Esq., on behalf of the Claimant; Stephen Latzman, Esq. on behalf of Respondents and Andrea Bugbee on behalf of the ICDR. Counsel were given the opportunity to provide oral argument on the pending motions and scheduling matters.

5. By agreement of the Parties or order of the Arbitrator, the following is adopted and/ or ordered.

6. Respondents' Motion to Dismiss, based on the challenge to the Jurisdiction of the ICDR and to the scope of the subject matter of the arbitration, is hereby denied.

7. Respondents' Objection to the Venue of the Arbitration being in Miami, FL is being considered a Motion to Reconsider the Seat of the Arbitration and the location of Hearings as ordered in Hearing and Scheduling Order #1. Said Motion is hereby granted. New York, NY shall be the Seat of the Arbitration and the location of the Evidentiary Hearings.

8. Claimant's Motion for Summary Judgment is hereby denied.

9. Hearing and Scheduling Order #1 is hereby further modified as follows:

10. Applicable Law and Rules:

   The following shall apply:

   a)      International Arbitration Rules of the ICDR shall apply; and

   b)      New York, NY shall be the Seat of the Arbitration.

11. Dates & Times of Hearings:

   a)      A Status Hearing will be held on **April 16, 2007** at 10 AM by teleconference for reviewing the hearing schedule, witnesses to be called, any objections to exhibits, other pending issues and opportunities to efficiently and expeditiously conduct the evidentiary hearing. It is estimated that this will require one (1) hour of hearing time. The Association will establish the teleconference.

   b)      The Evidentiary Hearing in this matter will commence before the Arbitrator on **April 23 – 26, 2007** at 9:30 AM in New York, NY at the offices of the ICDR, 1633 Broadway, 10th Floor, New York, NY (tel. 212-484-4115). An estimated four (4) days of hearing time, inclusive of argument, will be required.

12. Exchange of Information:

    a)        With regard to discovery requests, each party shall provide the other party with its discovery requests no later than **March 9, 2007.**

    b)        Each Party shall provide the other Party with the requested discovery by **March 23, 2007.**

In the event of a discovery dispute, the Parties shall make a good faith effort to resolve said dispute. The Arbitrator will decide any discovery disputes not resolved by the Parties.

13. Witnesses: Each Party shall simultaneously file with the other Party and the Association, no later than **March 9, 2007**, a preliminary list of all witnesses it intends to call. The disclosure of witness shall include the full name of each witness, a short summary of anticipated testimony, copies of any expert's reports, and a written C.V. of any expert. If certain required information is not available, a statement to this effect should appear on the witness lists.

14. Exhibits: No later than **April 6, 2007**, the Parties shall exchange copies of (or, where appropriate, make available for inspection) all exhibits to be offered and all schedules, summaries, diagrams and charts to be used at the hearing. Each proposed exhibit shall be pre-marked for identification with consecutive Arabic numerals and placed in a three-ring binder notebook. Each such exhibit notebook shall have a table of contents. The Parties shall provide three (3) identical copies of each exhibit notebook to be used, by the Arbitrator, opposing counsel and witnesses.

15. Briefs and Memorandums :

    a)        Evidentiary Hearing Briefs - On or before **April 6, 2007** each party may serve and file a pre-hearing brief on all significant disputed issues, setting forth briefly the party's position and the supporting arguments and authorities.

    b)        Briefs and Memorandums: Pre-hearing briefs and other submissions shall have attached copies of cases cited by the submitting party with the relevant sections relied on by the party highlighted.

16. Stipulation of Issues and Facts:

The Parties shall file a stipulation of:

a)       uncontested facts;

b)       contested facts;

c)       a chronological timeline of significant events in the matter

d)       legal issues to be determined by the Arbitrator;

e)       and other issues to be determined by the Arbitrator

with the Association no later than **April 6, 2007**. Said stipulation shall also be submitted electronically in Word format.

17. Effect of Preliminary Order: Other than as modified herein, prior Hearing and Scheduling Orders continue in effect unless and until amended by subsequent order of the Arbitrator.

This Order is made in Miami- Dade County, Florida.

Dated: February 25, 2007

_____

Richard J. DeWitt

Arbitrator

Exhibit 4

IN THE MATTER OF INTERNATIONAL ARBITRATION PROCEEDINGS
BEFORE THE ICDR OF THE AMERICAN ARBITRATION ASSOCIATION

Between:

MARTIN S. KENNEY

Claimant

v.

EUGENE S. BECKER and KENNEY, BECKER LLP (formerly known as
KENNEY, BECKER, SOLICITORS, LLP), a New York Registered Limited Liability
Partnership (in Dissolution)

Respondents

## CLAIMANT'S PRELIMINARY WITNESS LIST

I.    WITNESS LIST.

Pursuant to Section 13 of the Hearing and Schedule Order #2, dated February 25, 2007, as amended, the following is the preliminary witness list of Claimant Martin S. Kenney ("Claimant"). Claimant reserves the right to call other or additional witnesses and to supplement the anticipated testimony.

1.    Joel Agler. Mr. Agler is an accountant. It is anticipated that he will testify to (i) the business relationship between Claimant and Respondent Eugene S. Becker ("Mr. Becker") between approximately February 24, 1997 and approximately March 30, 2005, (ii) Respondents' knowledge of Martin Kenney & Co. Solicitors ("MKS"), (iii) Respondents' knowledge of the involvement of Claimant with MKS, (iii) assistance given by Respondents to MKS in 2002 and 2003, (iv) his preparation of an accountant's report for the Law Society of England and Wales on behalf of both MKS and Respondent Kenney Becker LLP ("the Partnership") in 2003, and to other matters material and relevant to this proceeding.

2.    Bernard Medoff. Mr. Medoff is an accountant. It is anticipated that he will testify to (i) his presence at the February 24, 1997 meeting between Mr. Becker and Claimant in New York City, (ii) the circumstances surrounding such meeting, (iii) the substance of the parties' agreements at that meeting, (iii) his preparation of the memorandum attached as an exhibit to the Second Amendment and Modification to Registered Limited Liability

Partnership Agreement for Kenney, Becker Solicitors LLP, now known as Kenney, Becker, LLP dated as of January 1, 2001 (the "Second Amended Agreement"), (iv) his review of the Partnership's records in 2005 at Claimant's request, in connection with Mr. Becker's demand for payment of an alleged deficit in Claimant's capital account, (v) any conversations he may have had with Mr. Becker since approximately February 1, 1997 regarding Claimant's involvement with the Partnership and/or Interclaim and/or MKS, and to other matters material and relevant to this proceeding.

3.    Stephen Latzman.  Mr. Latzman is an attorney.  It is anticipated that he will testify to his knowledge of the professional relationship between Mr. Becker and Claimant learned in the course of, *inter alia*, his representation of KBS in an unrelated litigation, and to other matters material and relevant to this proceeding.

4.    Martin S. Kenney.  It is anticipated that Mr. Kenney, the Claimant in this proceeding, will testify to (i) the circumstances relating to the partnership agreement, as amended, between Claimant and Respondents, (ii) the February 24, 1997 meeting between Mr. Becker and Claimant in New York City, (iii) the circumstances surrounding such meeting, (iv) the parties' agreements at that meeting, (v) Claimant's status as an "inactive 1% partner" in the Partnership following the February, 1997 meeting, (vi) the formation of MKS in Dublin in or about 2002, (vii) Mr. Becker's knowledge of the formation of MKS, (viii) the assistance given by Respondents to MKS in 2002 and 2003, (ix) the failure of Respondents to make any inquiry as to the existence or performance of any Extra-Partnership Work (as such term is defined in the First Amendment and Modification to Registered Limited Liability Partnership Agreement dated as of July 1, 1996) by Claimant until after the dissolution of the Partnership in 2005, (x) the demand made upon him by Respondents in 2004 for payment of an alleged deficit in his capital account, (xi) the circumstances leading to his payment of such deficit, (xii) the circumstances relating to the dissolution of the Partnership, (xiii) the vexatious litigations commenced against Claimant by Respondents in Supreme Court, State of New York, in contravention of the arbitration agreement provided in the parties' partnership agreement, as amended, and to other matters material and relevant to this proceeding.

DATED in Road Town, Tortola, British Virgin Islands, West Indies, on 9 March 2007.

Dan Wise
Martin Kenney & Co., Solicitors
2nd Floor, Geneva Place Building
P.O. Box 4740, Road Town
Tortola
British Virgin Islands, West Indies
Phone: (284) 494-2444
Fax:    (284) 494-3313
Email: <dwise@mksolicitors.com>

2

Joseph H. Lilly, III
Law Office of Joseph H. Lilly, III
60 East 42nd Street, Suite 1338
New York, New York 10165
Phone: (212) 687-6523
Fax:    (212) 687-6526
Email: <joelilly@att.net>

3

# Exhibit 5

**Stephen Latzman**

| | |
|---|---|
| **From:** | Joseph H. Lilly, Esq. [joelilly@att.net] |
| **Sent:** | Friday, February 23, 2007 4:54 PM |
| **To:** | Andrea Bugbee |
| **Cc:** | Dan Wise; Stephen Ira Latzman |
| **Subject:** | 50T 180 00019 06: Martin S. Kenney vs Eugene S. Becker and Kenney, Becker LLP |

Dear Ms. Bugbee – I have just checked with Mr. Kenney's calendar, and unfortunately, he will be traveling during the week of April 23 and cannot attend the arbitration hearings that week.

He appears to be available during the weeks of May 7 and May 21. Could you please contact Mr. deWitt and Mr. Latzman and see if any of those dates are acceptable to them?

Thank you for your cooperation in this matter,

JOSEPH H. LILLY, III
Attorney-at-Law
60 East 42nd Street
Suite 1338
New York, New York 10165
tel: (212) 687-6523
fax: (212) 687-6526
joelilly@att.net

The information contained in this message, and its attachment(s), if any, is from the law office of Joseph H. Lilly, III, is legally privileged and confidential, and is intended only for the use of the individual named above and others who have been specifically authorized to receive such information. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited and that the communication should be immediately returned to this firm, at no cost to you. If you have received this communication in error, or if any problems occur with transmission, please notify me immediately by telephone at (212) 687-6523 and/or by return e-mail at joelilly@att.net. Thank you.

12/13/2007

# Exhibit 6

## Stephen Latzman

| | |
|---|---|
| **From:** | Richard Dewitt [rdewitt@dewittlaw.net] |
| **Sent:** | Monday, February 26, 2007 9:51 AM |
| **To:** | Richard Dewitt; Andrea Bugbee |
| **Cc:** | joelilly@att.net; slatzman@latzman.com; Andrea Bugbee |
| **Subject:** | RE: RE: 50T 180 00019 06: Martin S. Kenney vs Eugene S. Becker and Kenney, Becker LLP |

Ms. Bugbee

The April 23, 2007 Hearing dates were set and agreed to by both Parties at the October 24, 2006 Preliminary Hearing, approximately four (4) months ago. These dates were also set out in Preliminary Hearing Order #1. "Traveling" does not meet the good cause shown standard for requesting a continuance. I suggest Mr. Kenney change his travel arrangements.

Claimants request for a continuance is hereby denied. Hearing and Scheduling Order #2 shall continue in effect unless and until amended by subsequent order of the Arbitrator.

RJD

Richard J. DeWitt
Arbitrator, Mediator, Attorney

Resolve Disputes
305.421.6400 tel
305.444.6430 fax
richarddewitt@resolvedisputes.net
www.resolvedisputes.net

2121 Ponce de Leon Blvd.
Suite 900
Coral Gables, Florida 33134

PLEASE NOTE THE CHANGE OF ADDRESS

A business law practice providing innovative legal and business solutions and dispute resolution services. Please visit us at www.dewittlaw.net and www.resolvedisputes.net.

The information contained in this email transmission is privileged and confidential. If you are not the intended recipient, nor the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this transmission (including any attachments) is strictly prohibited. If you have received this E-mail in error, please notify the sender by E-mail reply or call 305-421-6400. Thank you.

----- Original Message -----
**From:** Andrea Bugbee
**To:** Richard Dewitt
**Sent:** 2/26/2007 9:07AM
**Subject:** RE: 50T 180 00019 06: Martin S. Kenney vs Eugene S. Becker and Kenney, Becker LLP

Dear Mr. DeWitt,

Please see the communications below sent from the Parties on Friday and this morning respectively. Please advise as to how you would like to proceed.

Kind regards,

Andrea

Andrea H. Bugbee
ICDR Senior Case Manager
International Centre for Dispute Resolution
The International Division of the American Arbitration Association
Phone: +01-212-484-3299
Fax: +01-212-246-7274
Email: bugbeea@adr.org
Web Site: <http://www.adr.org/ICDR>

This e-mail transmission is intended only for the use of the person or persons to whom it is addressed. It may contain information that is confidential, privileged or otherwise exempt from disclosure. If you are not the intended recipient you are hereby notified that any dissemination of this e-mail is prohibited. If you have received this e-mail in error please notify the sender by return e-mail and then delete it immediately.

-----Original Message-----
**From:** Stephen Latzman [mailto:slatzman@latzman.com]
**Sent:** Monday, February 26, 2007 8:12 AM
**To:** Andrea Bugbee
**Cc:** joelilly@att.net
**Subject:** RE: 50T 180 00019 06: Martin S. Kenney vs Eugene S. Becker and Kenney, Becker LLP

Dear Ms. Bugbee:

We object to adjourning the hearing scheduled to commence April 23, 2007. The hearing dates were fixed by Mr.. DeWitt during the telephone conference of October 24, 2006 and embodied in the Notice of Hearing dated October 30, 2006. Mr.. Kenney had 6 months notice of the hearing dates.

Stephen Latzman, Esq.
276 Fifth Avenue, Suite 306
New York, New York 10001
slatzman@latzman.com
Phone: (212) 532-3368
Fax: (212) 685-5731

***************************************************
This e-mail and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you receive this e-mail in error please immediately notify me at (212) 532-3368 and permanently delete the original, any copy and any printout thereof.

-----Original Message-----
**From:** Joseph H. Lilly, Esq. [mailto:joelilly@att.net]
**Sent:** Friday, February 23, 2007 4:54 PM
**To:** Andrea Bugbee
**Cc:** Dan Wise; Stephen Ira Latzman
**Subject:** 50T 180 00019 06: Martin S. Kenney vs Eugene S. Becker and Kenney, Becker LLP

Dear Ms. Bugbee – I have just checked with Mr. Kenney's calendar, and unfortunately, he will be traveling during the week of April 23 and cannot attend the arbitration hearings that week.

He appears to be available during the weeks of May 7 and May 21. Could you please contact Mr. deWitt and Mr. Latzman and see if any of those dates are acceptable to them?


Thank you for your cooperation in this matter,


JOSEPH H. LILLY, III
Attorney-at-Law
60 East 42nd Street
Suite 1338
New York, New York 10165
tel: (212) 687-6523
fax: (212) 687-6526
joelilly@att.net

_____

The information contained in this message, and its attachment(s), if any, is from the law office of Joseph H. Lilly, III, is legally privileged and confidential, and is intended only for the use of the individual named above and others who have been specifically authorized to receive such information. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited and that the communication should be immediately returned to this firm, at no cost to you. If you have received this communication in error, or if any problems occur with transmission, please notify me immediately by telephone at (212) 687-6523 and/or by return e-mail at joelilly@att.net. Thank you.

12/13/2007

Exhibit 7

**Stephen Latzman**

| | |
|---|---|
| **From:** | Joseph H. Lilly, Esq. [joelilly@att.net] |
| **Sent:** | Wednesday, February 28, 2007 12:12 PM |
| **To:** | bugbeea@adr.org; Richard Dewitt |
| **Cc:** | Stephen Ira Latzman; Dan Wise |
| **Subject:** | RE: 50T 180 00019 06: Martin S. Kenney vs Eugene S. Becker and Kenney, Becker LLP |

Dear Mr. Dewitt and Ms. Bugbee - With reference to Mr. Latzman's email of this date, please note the following:

The hearing dates of April 23 - 26 were discussed in the October 24, 2006 conference call without reference to Mr. Kenney's schedule, as all of the participants may recall. This was my error, and my client should not be penalized.

Mr. Kenney was committed to attending both days of the OffshoreAlert conference prior to the October 24, 2006 teleconference in which the April dates were first proposed.

I called Mr. Kenney's office after the conclusion of the conference call on Thursday, February 22, to confirm his availability for the week of April 23 - 27, and notified the ICDR on Friday, February 23, that Mr. Kenney would not be available to attend an evidentiary hearing during the week of April 23.

In my experience, two (2) months advance notice of a scheduling conflict for a trial or arbitral hearing is generally a sufficient period of time that reasonable people can agree on an alternate date.

Please note that Mr. Latzman's statement that "The Offshorealert website referred to by Mr. Lilly, shows Mr. Kenney's scheduled participation only during the afternoon of April 24, 2007," is not correct. The website clearly shows that in addition to leading a panel discussion on Tuesday afternoon, Mr. Kenney and his firm are hosting a networking reception until at least 7:30 that evening.

And although he is not listed on the website as a scheduled speaker at any of the events on Wednesday April 25, he is committed, as one of the Speaker Faculty and a "Diamond Sponsor" of the conference, to participating in several of the events taking place on the 25th.

Furthermore, Mr. Kenney will be engaged in preparing for his presentations at the conference for several days prior to the conference. It is unreasonable and grossly prejudicial to expect him to be able to participate in the evidentiary hearing without having the opportunity to prepare for the hearing with his NY counsel prior to the hearing date.

In addition, the blanket, unparticularised denial of Mr. Becker's availability for all of May and June is unreasonable and, especially in light of the arbitrator's decision to hold the hearings in New York, is outside the co-operative approach which is supposed to be adopted in an arbitration.

Mr. Becker's refusal to reasonably negotiate an adjustment of the hearing dates amounts to obstruction of the arbitral process intended to maximize the expense and disruption incurred by Mr. Kenney in defending himself against Mr. Becker's baseless claims, which were first made in the Summons and Complaint filed in New York State Supreme Court, Index No. 05603614.

It should be noted that this is entirely in keeping with the numerous redundant applications for relief under the Partnership Agreement which Mr. Becker made to the New York State Courts (the Supreme Court and the Appellate Division) in breach of the clear and unambiguous terms of the Partnership Agreement to submit to arbitration all claims and controversies arising out of the Partnership Agreement.

In addition, as a matter of scheduling, since the hearing is scheduled to last for up to 4 days, it is not likely that it can be completed between April 25 and 27, as proposed by Mr. Latzman, especially if Mr. Kenney has not been able to meet with his NY counsel prior

to the first hearing date. Therefore, even under Mr. Latzman's unreasonable proposal, at least one hearing date (and possibly more) will have to be scheduled for May (or subsequently, if Mr. Becker has prior commitments for every business day in May).

Finally, this arbitration is supposed to arrive at a just outcome. This goal will not be met if Mr. Kenney is deprived of time to prepare and the benefit of advice from his counsel prior to the evidentiary hearing.

Joseph H. Lilly

-----Original Message-----
From: Stephen Latzman [mailto:slatzman@latzman.com]
Sent: Wednesday, February 28, 2007 8:38 AM
To: bugbeea@adr.org
Cc: joelilly@att.net
Subject: 50T 180 00019 06: Martin S. Kenney vs Eugene S. Becker and Kenney, Becker LLP

Dear Ms. Bugbee:

A hearing during the week of April 23, 2007 was scheduled in the October 24, 2007 conference with Mr. DeWitt. Claimant knew of this scheduling for months, but did not inform Mr. DeWitt or the administrator until a few days ago of his "conflict." This is inexcusable.

Respecting Mr. DeWitt's order, respondent scheduled his professional and personal commitments knowing that this matter was to be heard during two weeks in April, including the week of April 23, 2007. Respondent advised his witnesses of the hearing schedule and was assured of their availability during this time. Claimant, not respondent, should bear the burden of his concealed "conflict."

The Offshorealert website referred to by Mr. Lilly, shows Mr. Kenney's scheduled participation only during the afternoon of April 24, 2007.

The hearing should commence on April 25, 2007. Respondents and its witnesses are available at that time. Any further delay will prejudice respondent. The witnesses are unwilling to confirm their availability thereafter. Mr. Becker is unavailable during the months of May and June.

We are prepared to commence the hearing on April 25, 2007.

Stephen Latzman, Esq.
276 Fifth Avenue, Suite 306
New York, New York 10001
slatzman@latzman.com
Phone: (212) 532-3368
Fax: (212) 685-5731

***************************************************
This e-mail and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you receive this e-mail in error please immediately notify me at (212) 532-3368 and permanently delete the original, any copy and any printout thereof.

**Stephen Latzman**

| | |
|---|---|
| **From:** | Joseph H. Lilly, Esq. [joelilly@att.net] |
| **Sent:** | Monday, February 26, 2007 10:51 AM |
| **To:** | 'Andrea Bugbee' |
| **Cc:** | slatzman@latzman.com; Dan Wise |
| **Subject:** | RE: RE: 50T 180 00019 06: Martin S. Kenney vs Eugene S. Becker and Kenney, Becker LLP |

Dear Ms. Bugbee – I have received Mr. Dewitt's email of this morning, refusing a continuance of the hearing dates because, in part, " 'Traveling' does not meet the good cause shown standard for requesting a continuance."

It appears that I did not provide a sufficiently complete explanation for Mr. Kenney's need for a continuance during the week of April 23. For several months he has been a scheduled speaker at the 5th OffshoreAlert Financial Due Diligence Conference which meets in Miami on April 24 and 25, 2007. He is scheduled to speak on Tuesday the 24th, but is also expected to participate in workshops ("break-out sessions") and meetings on both days.

A link to the OffshoreAlert website, describing the conference and Mr. Kenney's role, follows:

http://www.offshorealertconference.com/

I did not ask for a continuance of the hearing dates before this time because I anticipated that the hearing of Claimant's motion for summary judgment might obviate the need for the evidentiary hearing, or might require it to be re-scheduled.

I apologize for failing to provide Mr. Dewitt with the details of Mr. Kenney's commitment to speak at the OffshoreAlert Financial Due Diligence Conference in my prior message. I hope that such commitment meets the "good cause shown" standard required for a continuance. Mr. Kenney will be ready to present his case during the weeks of May 7 and May 21, if that is acceptable to Mr. Dewitt.

I look forward to Mr. Dewitt's response.

Joseph Lilly

---

**From:** Richard Dewitt [mailto:rdewitt@dewittlaw.net]
**Sent:** Monday, February 26, 2007 9:51 AM
**To:** Richard Dewitt; Andrea Bugbee
**Cc:** joelilly@att.net; slatzman@latzman.com; Andrea Bugbee
**Subject:** RE: RE: 50T 180 00019 06: Martin S. Kenney vs Eugene S. Becker and Kenney, Becker LLP

Ms. Bugbee

The April 23, 2007 Hearing dates were set and agreed to by both Parties at the October 24, 2006 Preliminary Hearing, approximately four (4) months ago. These dates were also set out in Preliminary Hearing Order #1. "Traveling" does not meet the good cause shown standard for requesting a continuance. I suggest Mr. Kenney change his travel arrangements.

Claimants request for a continuance is hereby denied. Hearing and Scheduling Order #2 shall continue in effect unless and until amended by subsequent order of the Arbitrator.

RJD

Richard J. DeWitt
Arbitrator, Mediator, Attorney

Resolve Disputes
305.421.6400 tel

12/13/2007

305.444.6430 fax
richarddewitt@resolvedisputes.net
www.resolvedisputes.net

2121 Ponce de Leon Blvd.
Suite 900
Coral Gables, Florida 33134

PLEASE NOTE THE CHANGE OF ADDRESS

A business law practice providing innovative legal and business solutions and dispute resolution
services. Please visit us at www.dewittlaw.net and www.resolvedisputes.net.

The information contained in this email transmission is privileged and confidential. If you are not
the intended recipient, nor the employee or agent responsible for delivering it to the intended
recipient, you are hereby notified that any dissemination or copying of this transmission (including
any attachments) is strictly prohibited. If you have received this E-mail in error, please notify the
sender by E-mail reply or call 305-421-6400. Thank you.

----- Original Message -----
**From:** Andrea Bugbee
**To:** Richard Dewitt
**Sent:** 2/26/2007 9:07AM
**Subject:** RE: 50T 180 00019 06: Martin S. Kenney vs Eugene S. Becker and Kenney, Becker LLP

Dear Mr. DeWitt,

Please see the communications below sent from the Parties on Friday and this morning respectively. Please advise as to
how you would like to proceed.

Kind regards,

Andrea


Andrea H. Bugbee
ICDR Senior Case Manager
International Centre for Dispute Resolution
The International Division of the American Arbitration Association
Phone: +01-212-484-3299
Fax: +01-212-246-7274
Email: bugbeea@adr.org
Web Site: <http://www.adr.org/ICDR>

   This e-mail transmission is intended only for the use of the person or persons to whom it is addressed. It may contain
information that is confidential, privileged or otherwise exempt from disclosure. If you are not the intended recipient you
are hereby notified that any dissemination of this e-mail is prohibited. If you have received this e-mail in error please notify
the sender by return e-mail and then delete it immediately.

      -----Original Message-----
      **From:** Stephen Latzman [mailto:slatzman@latzman.com]
      **Sent:** Monday, February 26, 2007 8:12 AM
      **To:** Andrea Bugbee
      **Cc:** joelilly@att.net
      **Subject:** RE: 50T 180 00019 06: Martin S. Kenney vs Eugene S. Becker and Kenney, Becker LLP

      Dear Ms. Bugbee:

We object to adjourning the hearing scheduled to commence April 23, 2007. The hearing dates were fixed by Mr.. DeWitt during the telephone conference of October 24, 2006 and embodied in the Notice of Hearing dated October 30, 2006. Mr.. Kenney had 6 months notice of the hearing dates.


Stephen Latzman, Esq.
276 Fifth Avenue, Suite 306
New York, New York 10001
slatzman@latzman.com
Phone: (212) 532-3368
Fax: (212) 685-5731


***************************************************

This e-mail and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you receive this e-mail in error please immediately notify me at (212) 532-3368 and permanently delete the original, any copy and any printout thereof.

-----Original Message-----
**From:** Joseph H. Lilly, Esq. [mailto:joelilly@att.net]
**Sent:** Friday, February 23, 2007 4:54 PM
**To:** Andrea Bugbee
**Cc:** Dan Wise; Stephen Ira Latzman
**Subject:** 50T 180 00019 06: Martin S. Kenney vs Eugene S. Becker and Kenney, Becker LLP

Dear Ms. Bugbee – I have just checked with Mr. Kenney's calendar, and unfortunately, he will be traveling during the week of April 23 and cannot attend the arbitration hearings that week.

He appears to be available during the weeks of May 7 and May 21. Could you please contact Mr. deWitt and Mr. Latzman and see if any of those dates are acceptable to them?

Thank you for your cooperation in this matter,

JOSEPH H. LILLY, III
Attorney-at-Law
60 East 42nd Street
Suite 1338
New York, New York 10165
tel: (212) 687-6523
fax: (212) 687-6526
joelilly@att.net

_____

The information contained in this message, and its attachment(s), if any, is from the law office of Joseph H. Lilly, III, is legally privileged and confidential, and is intended only for the use of the individual named above and others who have been specifically authorized to receive such information. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited and that the communication should be immediately returned to this firm, at no cost to you. If you have received this communication in error, or if any problems occur with transmission, please notify me immediately by telephone at (212) 687-6523 and/or by return e-mail at joelilly@att.net. Thank you.

Exhibit 8

17- 2-03;18:57  ;INTERCLAIM        Eugene Becker      ;353 1 6677490       #  1/  1



## Martin Kenney & Co.

SOLICITORS – *INTERNATIONAL FRAUD*

7 Seapoint Terrace
Dublin 4
Ireland

T 353 (0) 1-202-6250
F 353 (0) 1-667-7490
E info@mksolicitors.com

## FACSIMILE

To:         Kenny, Becker LLP

Address:    One Penn Olaza, Suite 2414, New York

Attention:  Mr. Eugene S. Becker

From:       Mr. Martin S. Kenney

Date:       17 February 2003

Re:         Electronic Funds Transfer

Sir

Please debit US$56,500 of value against the sums outstanding to our credit in your firm's trust account and cause the same to be sent by electronic funds transfer, as follows;

Beneficiary  : Gymway Limited
Bank         : North Fork Bank
Address      : 90 West Broadway, New York, NY 10013
Account No.  : 961 401 1386
Routing      : (ABA) 021 407 912
**Value Date** : 17 February 2003
Source       : Fleet Bank, New York
Account      : 216 0000 759 Kenney, Becker LLP's trust account
Sub-Account  : #22-051 in the name of Martin Kenney & Co.
Remark       : February 2003 invoice

Yours sincerely

Martin S. Kenney

To debit a/c
2160014253

Call me @ 212
7662384
if necessary

1- 5-03;17:53 ; INTERCLAIM          Eugene Becker    ; 353 1 6677490    # 1/ 1



## Martin Kenney & Co.

SOLICITORS – *INTERNATIONAL FRAUD*



7 Seapoint Terrace
Dublin 4
Ireland

T 353 (0) 1-202-6250
F 353 (0) 1-667-7490
E info@mksolicitors.com

### FACSIMILE

To:          Kenny, Becker LLP

Address:     One Penn Olaza, Suite 2414, New York

Attention:   Mr. Eugene S. Becker

From:        Mr. Martin S. Kenney

Date:        03 March 2003

Re:          Electronic Funds Transfer

*[handwritten: To Nelson Fleet Debit A/C 2160014253 for all Transactions]*

Sir  *[handwritten: US $57,000]*

Please debit US$57,000 of value against the sums outstanding to our credit in your firm's trust account and cause the same to be sent by electronic funds transfer, as follows;

Beneficiary  : Gymway Limited
Bank         : North Fork Bank
Address      : 90 West Broadway, New York, NY 10013
Account No.  : 961 401 1386
Routing      : (ABA) 021 407 912
**Value Date** : 01 May 2003
Source       : Fleet Bank, New York
Account      : 216 0000 759 Kenney, Becker LLP's trust account
Sub-Account  : #22-051 in the name of Martin Kenney & Co.
Remark       : Gymway April 2003 invoice (US$57,000)

Yours sincerely

*[signature]*

Martin S. Kenney

T:\Wordpro\01-05-03 MKsols transfer-Gymway US (April payment) to Supreme Court of England & Wales    1 May 2003 17:43

20- 3-03;15:23 ;INTERCLAIM          Eugene Becker    ;353 1 6677490       # 2/ 2



## Martin Kenney & Co.

SOLICITORS – *INTERNATIONAL FRAUD*



7 Seapoint Terrace
Dublin 4
Ireland

T 353 (0) 1-202-6250
F 353 (0) 1-667-7490
E info@mksolicitors.com

## FACSIMILE

To:        Kenny, Becker LLP

Address:   One Penn Olaza, Suite 2414, New York

Attention: Mr. Eugene S. Becker

From:      Mr. Martin S. Kenney

Date:      20 March 2003

Re:        Electronic Funds Transfer

_____

Sir

Please debit US$15,300 of value against the sums outstanding to our credit in your firm's trust account and cause the same to be sent by electronic funds transfer, as follows;

Bank          : North Fork Bank
Address       : 90 West Broadway, New York, NY 10013
Beneficiary   : Gymway Holdings Ltd
Account No.   : 961 401 4463
Routing       : (ABA) 021 407 912
**Value Date**    : 20 March 2003
Source        : Fleet Bank, New York
Account       : 216 0000 759 Kenney, Becker LLP's trust account
Sub-Account   : #22-051 in the name of Martin Kenney & Co.
Remark        : March 2003 invoice (US$40,000)

Yours sincerely

Martin S. Kenney

*$15,300*

*Debit tomorrow 3/21/03*
*our a/c 2160014253*

*Kenney, Becker*

T:\Wordpro\MK Fleet Bank to Gym.Holdings March 03 continued Original version
Solicitors of the Supreme Court of England & Wales
Page 1
20 Mar 2003 15:24

20- 3-03;16:23 ; INTERCLAIM          Eugene Becker    ;353 1 6677490     # 1/ 2



## Martin Kenney & Co.

SOLICITORS – *INTERNATIONAL FRAUD*

To Nelson

7 Seapoint Terrace
Dublin 4
Ireland

T 353 (0) 1-202-6250
F 353 (0) 1-667-7490
E info@mksolicitors.com

## FACSIMILE

To:         Kenny, Becker LLP

Address:    One Penn Plaza, Suite 2414, New York

Attention:  Mr. Eugene S. Becker

From:       Mr. Martin S. Kenney

Date:       20 March 2003

Re:         Electronic Funds Transfer

$24,700

Sir

Please debit US$24,700 of value against the sums outstanding to our credit in your firm's trust account and cause the same to be sent by electronic funds transfer, as follows;

Bank          : North Fork Bank
Address       : 90 West Broadway, New York, NY 10013
Beneficiary   : Gymway Limited
Account No.   : 961 401 1386
Routing       : (ABA) 021 407 912
**Value Date** : 20 March 2003
Source        : Fleet Bank, New York
Account       : 216 0000 759 Kenney, Becker LLP's trust account
Sub-Account   : #22-051 in the name of Martin Kenney & Co.
Remark        : March 2003 invoice (US$40,000)

Yours sincerely

Debit tomorrow 3/21/03
on a/c 2160014253
Kenney, Becker

Martin S. Kenney

Page 1

T:\Wordpro\MK-Fleet bank to Gymway US$ March 03.lwp\Probikon c/Italy Supreme Court of England & Wales        20 Mar 2003 13:12

12- 6-03; 9:18 ;INTERCLAIM          Eugene Becker     ;353 1 6677490      #  1/  1



# Martin Kenney & Co.

SOLICITORS – *INTERNATIONAL FRAUD*

7 Seapoint Terrace
Dublin 4
Ireland

T 353 (0) 1-202-6250
F 353 (0) 1-667-7490
E info@mksolicitors.com

## FACSIMILE

*To GINA u Nelson*
*Pls*
*Change*
*2160014253*
*Kenney, Becker LLP*
*+prep local wire as follows*

| | |
|---|---|
| **To:** | Kenny, Becker LLP |
| **Address:** | One Penn Plaza, Suite 2414, New York |
| **Attention:** | Mr. Eugene S. Becker |
| **From:** | Mr. Martin S. Kenney |
| **Date:** | 11 June 2003 |
| **Re:** | Electronic Funds Transfer |

Sir

Please debit US$72,000 of value against the sums outstanding to our credit in your firm's trust account and cause the same to be sent by electronic funds transfer, as follows;

| | | |
|---|---|---|
| Beneficiary | : | Gymway Limited |
| Bank | : | North Fork Bank |
| Address | : | 90 West Broadway, New York, NY 10013 |
| Account No. | : | 961 401 1386 |
| Routing | : | (ABA) 021 407 912 |
| **Value Date** | : | 03 March 2003 |
| Source | : | Fleet Bank, New York |
| Account | : | 216 0000 759 Kenney, Becker LLP's trust account |
| Sub-Account | : | #22-051 in the name of Martin Kenney & Co. |
| Remark | : | June 2003 invoice (US$72,000) |

Yours sincerely

*[signature]*

Martin S. Kenney

T:\Wordpm\Kenney Becker Client ac to Gymway US ac.   Solicitors of the Supreme Court of England & Wales          12 Jun 2003 09:08

20- 6-03;17:09 ;INTERCLAIM        Eugene Becker   ;353 1 6677490   #  1/  1



## Martin Kenney & Co.

SOLICITORS — *INTERNATIONAL FRAUD*

7 Seapoint Terrace
Dublin 4
Ireland

T 353 (0) 1-202-6250
F 353 (0) 1-667-7490
E info@mksolicitors.com

## FACSIMILE

| | |
|---|---|
| **To:** | Kenny, Becker LLP |
| **Address:** | One Penn Olaza, Suite 2414, New York |
| **Attention:** | Mr. Eugene S. Becker |
| **From:** | Mr. Martin S. Kenney |
| **Date:** | 20 June 2003 |
| **Re:** | Electronic Funds Transfer |

Sir

Please debit US$15,000 of value against the sums outstanding to our credit in your firm's trust account and cause the same to be sent by electronic funds transfer, as follows;

| | |
|---|---|
| Beneficiary | : Gymway Limited |
| Bank | : North Fork Bank |
| Address | : 90 West Broadway, New York, NY 10013 |
| Account No. | : 961 401 1386 |
| Routing | : (ABA) 021 407 912 |
| **Value Date** | : 03 March 2003 |
| Source | : Fleet Bank, New York |
| Account | : 216 0000 759 Kenney, Becker LLP's trust account |
| Sub-Account | : #22–051 in the name of Martin Kenney & Co. |
| Remark | : June 2003 invoice |

Yours sincerely

Martin S. Kenney



## Martin Kenney & Co.

SOLICITORS – *INTERNATIONAL FRAUD*

7 Seapoint Terrace
Dublin 4
Ireland

T 353 (0) 1-202-6250
F 353 (0) 1-667-7490
E info@mksolicitors.com

# FACSIMILE TRANSMISSION

**To:**          Kenney, Becker LLP

**Address:**     One Penn Plaza, Suite 2414, New York

**Attention:**   Mr. Eugene S. Becker

**From:**        Mr. Martin S. Kenney

**Date:**        16 July 2003

**Subject:**     Electronic Funds Transfer

Sir

Please debit US$38,000.00 of value against the sums outstanding to our credit in your firm's trust account and cause the same to be sent by electronic funds transfer, as follows:

| | |
|---|---|
| Beneficiary | : Gymway Ltd., |
| Bank | : North Fork Bank |
| Address | : 90 West Broadway, New York. NY 10013 |
| Account No | : 961 401 1386 |
| Routing | : (ABA) 021 407 912 |
| Value Date | : 16 July 2003 |
| Source | : Fleet Bank, New York |
| Account | : 213 0000 759 Kenney, Becker LLP's trust account |
| Sub-Account | : #22-051 in the name of Martin Kenney & Co. |
| Remark | : July 2003 invoice |

Yours sincerely

Martin S. Kenney

13- 8-03;18:07 ; INTERCLAIM                                    ;353 1 6677490        #  1/  1



## Martin Kenney & Co.

SOLICITORS – *INTERNATIONAL FRAUD*

7 Seapoint Terrace
Dublin 4
Ireland

T 353 (0) 1-202-6250
F 353 (0) 1-667-7490
E info@mksolicitors.com

### FACSIMILE TRANSMISSION

| | |
|---|---|
| To: | Kenney, Becker LLP |
| Address: | One Penn Plaza, Suite 2414, New York |
| Attention: | Mr. Eugene S. Becker |
| From : | Mr. Martin S. Kenney |
| Date: | 13 August 2003 |
| Subject: | Electronic Funds Transfer |

Sir

Please debit US$55,000.00 of value against the sums outstanding to our credit in your firm's trust account and cause the same to be sent by electronic funds transfer, as follows:

Beneficiary  : Gymway Ltd.,
Bank       : North Fork Bank
Address    : 90 West Broadway, New York, NY 10013
Account No.  : 961 401 1386
Routing    :(ABA) 021 407 912
Amount     : **US$55,000.00**
Value Date   : 14 August, 2003
Source     : Fleet Bank, New York
Account    : 213 0000 759 – Kenney, Becker LLP's trust account
Sub-Account  : 22-051 in the name of Martin Kenney & Co.
Remark     : Payment of August 2003 invoice

Yours sincerely

Martin S. Kenney

17- 9-03; 9:52 ;INTERCLAIM                          ;353 1 6677490        #  1/  1

## FACSIMILE TRANSMISSION

To:             Kenney, Becker LLP

Address:        One Penn Plaza, Suite 2414, New York

Attention:      Mr. Eugene S. Becker

From :          Mr. Martin S. Kenney

Date:           16 September  2003

Subject:        Electronic Funds Transfer

_____S
ir

Please debit US$47,000.00 of value against the sums outstanding to our credit in your firm's trust account and cause the same to be sent by electronic funds transfer, as follows:

Beneficiary   : Gymway Ltd.,
        Bank        : North Fork Bank
        Address     : 90 West Broadway, New York, NY 10013
Account No.  : 961 401 1386
        Routing     :(ABA) 021 407 912
        Amount      : US$47,000.00
        **Value Date** : 16 September, 2003
Source        : Fleet Bank, New York
        Account     : 213 0000 759 - Kenney,Becker LLP's trust account
        Sub-Account : 22-051 in the name of Martin Kenney & Co.
        Remark      : Payment of September 2003 invoice

Yours sincerely



                        Martin S. Kenney

## FACSIMILE TRANSMISSION

To:                 Mr. Eugene S. Becker      Fax #:  001 212 760 2387
                    Kenney, Becker LLP

From :              Mr. Martin S. Kenney

Date:               8 October  2003

Subject:            **Electronic Funds Transfer (revised)**

Dear Eugene,

Upon the arrival of our wire in the amount of US **$89,000.00,** please debit this amount
against the sums outstanding to our credit in your firm's trust account send us the
following wire transfer:

Bank:               North Fork Bank
Address:            90 West Broadway, New York, NY 10013
Routing:            (ABA) 021 407 912

Beneficiary:        Gymway Ltd.,
Account No.:        961 401 1386

Amount:             **US $111,000.00**
Value Date:         8 October, 2003

Source:             Fleet Bank, New York
Account:            213 0000 759 - Kenney, Becker LLP trust account
Sub-Account:        22-051 in the name of Martin Kenney & Co.

Remark:             Payment of September 2003 invoice

Yours sincerely

Martin S. Kenney

Exhibit 9

Data Date: 13/11/2007

| | |
|---|---|
| **Company** | 320026    GYMWAY LIMITED |
| **Previous Name(s)** | INTERCLAIM (IRELAND) LIMITED |
| | GYMWAY LIMITED |
| **Registered Office** | 13 ADELAIDE ST |
| | DUN LAOGHAIRE |
| | CO DUBLIN |
| **Type** | PRIVATE LIMITED BY SHARES |

| | | | |
|---|---|---|---|
| **Date Incorporated** | 07/02/2000 | | |
| **Last Annual Return** | 20/02/2006 | **Designation** | NORMAL |
| **Next Annual Return** | 20/02/2007 | **Date of Designation** | |
| **Bond Expiry Date** | | | |

Register of Particulars of Charges Including Mortgages Pursuant to Sections 103, 105 and 99 (10) of the Companies Act 1963 in Respect of the Above Named Company. Computerised information for charges may be truncated on this print-out, please refer to the company file or images for complete particulars on Charges.

**Directors Special Note**    Please note that the information displayed on this printout as to the particulars of the directors and secretary of this company may not be complete or up to date, as there may be unregistered documents which affect the position. Please refer to the list of Documents below, and if necessary, consult the company file or images for full, up-to-date particulars as to the company's officers. If this printout is blank as to officer details, please consult the images of the registered New Company documents.

| | |
|---|---|
| MARTIN STEPHEN KENNEY (14/09/1960) | DIRECTOR |
| GREAT MOUNTAIN | |
| TORTOLA | |
| BRITISH VIRGIN ISLANDS | |
| | |
| JAMES RICHARD MCGUNN (14/01/1943) | DIRECTOR |
| SOMERLED LODGE | |
| GREENAN | |
| RATHDRUM | |
| CO WICKLOW | |
| | |
| JOHN BAGALINI (05/08/1957) | DIRECTOR |
| GREAT MOUNTAIN | |
| TORTOLA | |
| BRITSH VIRGIN ISLANDS | |
| | |
| JAMES RICHARD MCGUNN (14/01/1943) | COMPANY SECRETARY |
| SOMERLED LODGE | |
| GREENAN | |
| RATHDRUM | |
| CO WICKLOW | |

## Documents

| Status | Sub Number Submission | ACs To Date / Date Effective | Date Received/ Registered |
|---|---|---|---|
| REGI | 2463426 / 2    NEW COMPANY WITH MEMO & ARTS WITH CAPITAL DUTY | | 31/01/2000 |
| REGI | 2463426 / 3    NEW COMPANY WITH MEMO & ARTS WITH CAPITAL DUTY | | 31/01/2000 |

| REGI | 2463426 / 1 | NEW COMPANY WITH MEMO & ARTS WITH CAPITAL DUTY | | 31/01/2000 |
|------|-------------|------------------------------------------------|------------|------------|
| REGI | 2826445 / 1 | G1Q REG. OF CHANGE OF NAME | 30/03/2001 | 02/05/2001 |
| REGI | 2826445 / 2 | G1Q REG. OF CHANGE OF NAME | 30/03/2001 | 02/05/2001 |
| REGI | 2848575 / 1 | G1Q REG. OF CHANGE OF NAME | 21/05/2001 | 05/06/2001 |
| REGI | 2848575 / 2 | G1Q REG. OF CHANGE OF NAME | 21/05/2001 | 05/06/2001 |
| REGI | 2848575 / 3 | G1Q REG. OF CHANGE OF NAME | 21/05/2001 | 05/06/2001 |
| REGI | 2856971 / 1 | B2 CHANGE OF REG. OFFICE | 01/09/2000 | 07/06/2001 |
| REGI | 2996581 / 1 | B10 CHANGE IN DIRECTOR OR SECRETARY | 22/11/2001 | 22/11/2001 |
| REGI | 2826420 / 1 | B10 CHANGE IN DIRECTOR OR SECRETARY | 20/02/2001 | 24/04/2001 |
| REGI | 2848572 / 1 | B2 CHANGE OF REG. OFFICE | 24/05/2001 | 25/05/2001 |
| REGI | 3219990 / 1 | B2 CHANGE OF REG. OFFICE | 21/08/2002 | 06/09/2002 |
| REGI | 3232634 / 1 | B1 ANNUAL RETURN - NO ACCOUNTS | 20/08/2002 | 11/09/2002 |
| REGI | 3232636 / 1 | B73A | 20/08/2002 | 11/09/2002 |
| REGI | 3065859 / 1 | B1C ANNUAL RETURN - GENERAL | 20/08/2001 | 14/02/2002 |
| REGI | 3065861 / 1 | G1G SR - RECLASSIFICATION OF SHARES | 30/07/2001 | 14/02/2002 |
| REGI | 3065861 / 2 | G1G SR - RECLASSIFICATION OF SHARES | 30/07/2001 | 14/02/2002 |
| REGI | 3065859 / 2 | B1C ANNUAL RETURN - GENERAL | 31/07/2001 | 14/02/2002 |
| REGI | 3563617 / 1 | B10 CHANGE IN DIRECTOR OR SECRETARY | 31/07/2003 | 12/08/2003 |
| REGI | 3519159 / 1 | B2 CHANGE OF REG. OFFICE | 30/06/2003 | 30/06/2003 |
| RECE | 3839790 / 1 | B47 RESIGNATION OF AUDITOR | 28/04/2004 | 06/05/2004 |
| REGI | 4071060 / 2 | B1C ANNUAL RETURN - GENERAL | 31/07/2002 | 24/11/2004 |
| REGI | 4071060 / 1 | B1C ANNUAL RETURN - GENERAL | 20/02/2003 | 24/11/2004 |
| RETU | 3954791 / 1 | B10 CHANGE IN DIRECTOR OR SECRETARY | 22/05/2004 | 25/08/2004 |
| REGI | 4803353 / 1 | B10 CHANGE IN DIRECTOR OR SECRETARY | 14/05/2003 | 22/08/2006 |
| REGI | 4791919 / 1 | B10 CHANGE IN DIRECTOR OR SECRETARY | 10/02/2004 | 22/08/2006 |
| REGI | 4791921 / 1 | B10 CHANGE IN DIRECTOR OR SECRETARY | 23/08/2005 | 22/08/2006 |
| REGI | 4803356 / 1 | B10 CHANGE IN DIRECTOR OR SECRETARY | 23/08/2005 | 22/08/2006 |
| REGI | 4683632 / 2 | B1C ANNUAL RETURN - GENERAL | 31/07/2003 | 25/05/2006 |
| REGI | 4683632 / 1 | B1C ANNUAL RETURN - GENERAL | 20/02/2004 | 25/05/2006 |
| REGI | 4683635 / 2 | B1C ANNUAL RETURN - GENERAL | 31/07/2004 | 25/05/2006 |
| REGI | 4683635 / 1 | B1C ANNUAL RETURN - GENERAL | 20/02/2005 | 25/05/2006 |
| REGI | 4683630 / 1 | B2 CHANGE OF REG. OFFICE | 21/08/2005 | 25/05/2006 |
| REGI | 4683638 / 2 | B1C ANNUAL RETURN - GENERAL | 31/07/2005 | 25/05/2006 |
| REGI | 4683638 / 1 | B1C ANNUAL RETURN - GENERAL | 20/02/2006 | 25/05/2006 |
| REGI | 4683629 / 1 | H1 RESTORATION OF A COMPANY | 27/01/2006 | 25/05/2006 |

## Liquidators & Receivers

**Liquidators Appointed:**    None Registered
**Receivers Appointed:**    None Registered

Exhibit 10

*INVOICE No 15*

18 February 2003

Martin Kenney & Co. Solicitors

---

**RE: CIBC v. Migirdic**

"Professional services rendered and disbursements incurred     US$56,500.00
to your account in respect of the CIBC Wood Gundy
v. Migirdic matter and investigation"

**Please remit payment to:**

Beneficiary:   Gymway Limited
Bank:          Northfork Bank
Address:       90 West Broadway, New York, NY 10013
ABA#:          021 407 912
Account No:    961 401 1386

*INVOICE No 16*

Martin Kenney & Co. Solicitors

10 March 2003

**RE: CIBC v. Migirdic**

"Professional services rendered and disbursements incurred
to your account in respect of the CIBC Wood Gundy
v. Migirdic matter and investigation"

US$24,700.00

**Please remit payment to:**

| | |
|---|---|
| Beneficiary: | Gymway Limited |
| Bank: | Northfork Bank |
| Address: | 90 West Broadway, New York, NY 10013 |
| ABA#: | 021 407 912 |
| Account No: | 961 401 1386 |

# *INVOICE*

Martin Kenney & Co. Solicitors                          10 March 2003

## RE: CIBC v. Migirdic

"Professional services rendered and disbursements incurred
to your account in respect of the CIBC Wood Gundy
v. Migirdic matter and investigation"                    US$15,300.00

**Please remit payment to:**

| | |
|---|---|
| Beneficiary: | Gymway Holdings Ltd |
| Bank: | Northfork Bank |
| Address: | 90 West Broadway, New York, NY 10013 |
| ABA#: | 021 407 912 |
| Account No: | 961 401 4463 |

*INVOICE No 17*

Martin Kenney & Co. Solicitors                                    30 April 2003

---

**RE: CIBC v. Migirdic**

"Professional services rendered and disbursements incurred
to your account in respect of the CIBC Wood Gundy
v. Migirdic matter and investigation"                                            US$57,000

**Please remit payment to:**

Beneficiary:   Gymway Limited
Bank:          Northfork Bank
Address:       90 West Broadway, New York, NY 10013
ABA#:          021 407 912
Account No:    961 401 1386

*INVOICE No 18*

Martin Kenney & Co. Solicitors                    13 June 2003

**RE: CIBC v. Migirdic**

"Professional services rendered and disbursements incurred
to your account in respect of the CIBC Wood Gundy
v. Migirdic matter and investigation"                    US$72,000

**Please remit payment to:**

Beneficiary:  Gymway Limited
Bank:         Northfork Bank
Address:      90 West Broadway, New York, NY 10013
ABA#:         021 407 912
Account No:   961 401 1386

# *INVOICE No 19*

24 June 2003

Martin Kenney & Co. Solicitors

---

**RE: CIBC v. Migirdic**

"Professional services rendered and disbursements incurred
to your account in respect of the CIBC Wood Gundy
v. Migirdic matter and investigation"                           US$15,000

**Please remit payment to:**

| | |
|---|---|
| Beneficiary: | Gymway Limited |
| Bank: | Northfork Bank |
| Address: | 90 West Broadway, New York, NY 10013 |
| ABA#: | 021 407 912 |
| Account No: | 961 401 1386 |

# *INVOICE No 20*

17 July 2003

Martin Kenney & Co. Solicitors

---

**RE: CIBC v. Migirdic**

"Professional services rendered and disbursements incurred
to your account in respect of the CIBC Wood Gundy
v. Migirdic matter and investigation"                        US$38,000

**Please remit payment to:**

Beneficiary:  Gymway Limited
Bank:         Northfork Bank
Address:      90 West Broadway, New York, NY 10013
ABA#:         021 407 912
Account No:   961 401 1386

*INVOICE No 22*

18 August 2003

Martin Kenney & Co. Solicitors

---

**RE: CIBC v. Migirdic**

"Professional services rendered and disbursements incurred
to your account in respect of the CIBC Wood Gundy
v. Migirdic matter and investigation"                    US$55,000

**Please remit payment to:**

Beneficiary:   Gymway Limited
Bank:          Northfork Bank
Address:       90 West Broadway, New York, NY 10013
ABA#:          021 407 912
Account No:    961 401 1386

*INVOICE No 23*

17 September 2003

Martin Kenney & Co. Solicitors

---

**RE: CIBC v. Migirdic**

"Professional services rendered and disbursements incurred
to your account in respect of the CIBC Wood Gundy
v. Migirdic matter and investigation"                          US$47,000

**Please remit payment to:**

Beneficiary:    Gymway Limited
Bank:           Northfork Bank
Address:        90 West Broadway, New York, NY 10013
ABA#:           021 407 912
Account No:     961 401 1386

*INVOICE No 24*

Martin Kenney & Co. Solicitors

9 October 2003

RE: CIBC v. Migirdic

"Professional services rendered and disbursements incurred
to your account in respect of the CIBC Wood Gundy
v. Migirdic matter and investigation"

US$111,000.00

**Please remit payment to:**

Beneficiary:  Gymway Limited
Bank:         Northfork Bank
Address:      90 West Broadway, New York, NY 10013
ABA#:         021 407 912
Account No:   961 401 1386

Exhibit 11

dal112807

00585
 1   INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
     CASE NO. 50 180 T 00019 06
 2   - - - - - - - - - - - - - - - - - - - - -X
     MARTIN S. KENNEY,
 3                    Claimant,
 4   -against-
 5   EUGENE S. BECKER and KENNEY, BECKER, LLP
     (formerly known as Kenney, Becker, Solicitors,
 6   LLP) a New York Registered Limited Liability
     Partnership (in Dissolution),
 7                    Respondents.
     - - - - - - - - - - - - - - - - - - - - -X
 8                    November 28, 2007
                      9:37 a.m.
 9                    1633 Broadway
10                    American Arbitration Association
                      New York, New York
11
12
13   B E F O R E :
14   RICHARD J. DeWITT, Arbitrator
15
16
17
18
19
20
21
22
23
24
□
00586
 1   A P P E A R A N C E S :
 2
 3   FOR THE APPLICANT:
 4
 5        LAW OFFICES OF JOSEPH H. LILLY, III
               60 East 42nd Street, Suite 1338
 6             New York, New York 10165
          BY:  JOSEPH H. LILLY, III, ESQ.
 7
          MARTIN KENNEY & CO.
 8             Flemming House
               P.O. Box 4740
 9             Road Town, Tortola
               British Virgin Islands VG 1110
10        BY:      DANIEL WISE, ESQ.
11
12   FOR THE RESPONDENTS:
13
14             STEPHEN LATZMAN, ESQ.
               276 Fifth Avenue, Suite 306
15             New York, New York 10001
16
17   ALSO PRESENT:
18             MARTIN S. KENNEY
               EUGENE S. BECKER
19
                         oOo
20
21

Page 1

dal112807
13          (The requested testimony was
14          read back.)
15                                                              12:15PM
16     Q.   Could you turn to the second page of your
17 memorandum, paragraph three.
18     A.   Yes.
19     Q.   In your discussion with Mr. Latzman, you
20 raised a -- that there had been a dispute between  12:15PM
21 the billing of Mr. Kenney's time between
22 Interclaim and the partnership.  Does paragraph G
23 address that dispute?
24     A.   With respect to the period of time from

00677
1 January 1, '97, through February 19th of '97.
2      Q.   Thank you.  And I believe you mentioned
3 that there -- in your discussions with Mr. Becker
4 prior to the meeting, Mr. Becker had told you
5 certain details but there had been implications of  12:16PM
6 other facts resulting from the details.
7           Now, at the meeting of February 24th,
8 1997, you set down certain agreements that were
9 made at the meeting.  But do you agree there may
10 have been some implications from those agreements  12:16PM
11 which were not stated at the meeting resulting
12 from the change to the partnership relation from
13 99 percent to one?
14     A.   Well, the answer to your question is
15 obviously somebody could have had something in  12:16PM
16 their minds that was not stated, but everything
17 that was stated at the meeting was recorded in the
18 memorandum.
19          MR. LILLY:  Okay.  I believe that's all
20 I have.                                             12:17PM
21          THE ARBITRATOR:  That's it.  I think
22 you've answered the questions that I had.  Do
23 you have anything else?
24          MR. LATZMAN:  No, sir.

00678
1          THE ARBITRATOR:  Nothing else?
2          MR. LILLY:  No.
3          THE ARBITRATOR:  Thank you so much for
4 coming and taking the time.  We appreciate
5 it.  You've been very helpful.  Appreciate  12:17PM
6 your time.
7          THE WITNESS:  Good luck.
8          THE ARBITRATOR:  Gentlemen, it is 12:15.
9 We're going to take an abbreviated -- be back
10 at 1:30 and continue on, and hopefully finish  12:17PM
11 with Mr. Kenney.
12          MR. LATZMAN:  I'll do my best.
13          THE ARBITRATOR:  I know you will.
14          MR. LILLY:  And we'll have a little
15 proffer.                                            12:17PM
16          THE ARBITRATOR:  Did you want to make
17 that?  Maybe that will help.
18          MR. LILLY:  Let's do it after lunch
19 because it's going to take a while.
20          THE ARBITRATOR:  If you want to take a  12:17PM
21 few minutes.
22          MR. LILLY:  It might change what we do
23 this afternoon.

dal112807
24              THE ARBITRATOR:  Maybe it might.
☐
00679
1              MR. LILLY:  In the interest of saving
2        time, it seems to me that there are certain
3        contract construction issues which are
4        essential to this dispute:  First example,
5        Section 9.2 of the initial partnership                12:18PM
6        agreement, and then the fact, the fact of the
7        establishment of Martin Kenney and Company,
8        in Dublin.  How that fact is reconciled with
9        the provision in the partnership agreement is
10       I think an issue of construction, which needs        12:18PM
11       to be discussed.  Similarly, Mr. Latzman has
12       talked a lot about Mr. Kenney's avowal of
13       having to effectively withdraw.  We've talked
14       about Mr. Becker's avowal of Mr. Kenney with
15       an inactive one percent partner; we contend        12:19PM
16       that has a great deal of materiality to the
17       construction of the term relevant in
18       paragraph 8.0 of the first amendment.
19              I believe that if we focused on, if we
20       took 15 minutes or so to identify the                  12:19PM
21       construction issues, to identify the facts
22       that relate to those issues, we could save
23       some time here.
24              MR. LATZMAN:  I don't think it's -- I
☐
00680
1        don't want to cut you off.
2              THE ARBITRATOR:  I'm not sure I
3        understand what you're suggesting.  You're
4        suggesting that we stop taking testimony at
5        this point, but that we address the legal        12:19PM
6        issues with respect to that?  Is that what
7        you're asking?
8              MR. LILLY:  No, I'd like to -- I think
9        to some extent the testimony should be
10       completed but --                                      12:19PM
11              THE ARBITRATOR:  Well, I mean it would
12       be, but you're saying we pause and --
13              MR. LILLY:  To focus the testimony the
14       rest of the way because it could go --
15              THE ARBITRATOR:  Mr. Latzman, what's        12:19PM
16       your feeling?
17              MR. LATZMAN:  It's possible.  I mean I
18       want to talk to Mr. Becker, discuss the
19       ramifications, I want to review the
20       provisions, review where we are in the              12:20PM
21       proceeding in the midst of Mr. Kenney's
22       cross-examination.  I mean, it's fine, but
23       maybe late or premature, untimely.
24              MR. BECKER:  If it saves --
☐
00681
1              THE ARBITRATOR:  Let me share with you
2        some thoughts that I might have.  I want both
3        parties to know that I want to give them both
4        the opportunity to, to you to put on your case,
5        you to put on your defense, and what I'm        12:20PM
6        pushing you on is saying to you that to the
7        extent, and I've been pushing Mr. Latzman on
8        some of it and pushing you on other, that
                          Page 40

dal112807

```
 9    you're trying to make a point and to move on,
10    where you're trying to make a point, I'm in      12:21PM
11    essence saying you've made that point,
12    anything you do with respect to that is
13    cumulative.  So I don't want to stop anyone
14    from putting on their case, and I hope no one
15    has perceived that I've done that.  I'm just     12:21PM
16    trying to say in essence you've made your
17    point and putting cumulative evidence isn't
18    probably going to change that.  It's the same
19    evidence, so to move things along.
20         However, moving to the next level there    12:21PM
21    certainly are some critical issues in this
22    case that -- although I haven't decided on
23    how those issues come out, I've certainly
24    identified them, that's why we read all this
```

00682

```
 1    stuff ahead of time, I've identified those
 2    issues as being the important issues of what
 3    I'm really focused on listening to.
 4         Certainly since you've raised these are
 5    two of the issues, and they've been raised, I   12:21PM
 6    don't think that's a secret that they are
 7    important, and the way that your case has
 8    been put on is you got a cascading
 9    alternative argument that if you don't
10    believe this one -- if you don't buy this --    12:22PM
11    in essence you've given me a menu, if you
12    don't buy this argument, try this one, if you
13    don't buy that one -- which is perfectly
14    legitimate to do in litigation and in this
15    kind of situation.                              12:22PM
16         To the extent that you all want to come
17    up with a way of streamlining the
18    proceedings, I will certainly -- would like
19    you to talk to each other, and if it's an
20    approach to streamlining what we're doing and   12:22PM
21    resolving this more quickly and more cost
22    effectively, I'd certainly be interested in
23    doing that.  Absent that I'm not going to
24    stop anybody from putting on a case.
```

00683

```
 1         MR. LATZMAN:  Can I just --
 2         THE ARBITRATOR:  I invite you to meet
 3    during lunch and come up with something.
 4         MR. LATZMAN:  Can I just ask, I agree
 5    that the issues come down to the documents.     12:22PM
 6    All right.  I mean I think that's what the
 7    case is about.  But what are you suggesting?
 8    You point to --
 9         THE ARBITRATOR:  What I'm suggesting you
10    not do that with me present.  Do that during    12:23PM
11    lunch and discuss it and that way, because I
12    don't want to be prejudiced either way who
13    agrees to it and who doesn't agree to it.
14    But I will tell you that my focus on the
15    issues when I was reviewing all this, and as    12:23PM
16    I've said, I've read everything that both
17    sides put together, I certainly have to agree
18    with Mr. Latzman and I believe with Mr. Lilly
19    that my decision has got to be based on
```

Page 41

dal112807

```
20        looking at these issues, and I appreciate      12:23PM
21        that there's tonal qualities as to -- you're
22        trying to show who's a good guy, who's not a
23        good guy, whose conduct was appropriate or
24        inappropriate.  My primary review is going to
```
00684
```
 1        be at the documents, at the facts and how
 2        I -- and the law and how we apply that.
 3             I do this all the time.  I've not been
 4        in an arbitration yet where one side -- well,
 5        I've had a couple where one side was sort of   12:24PM
 6        inferring that the other side wasn't a good
 7        guy, sort of a common thief that we hear
 8        daily, so, and it becomes somewhat static
 9        background.
10             In certain instances, especially when     12:24PM
11        there's accusations of fraud, we certainly
12        look at that, but we certainly don't -- I
13        don't see that here at this point.  Of course
14        we're not anywhere to the case so I'll
15        certainly reserve judgment on it, and I        12:24PM
16        certainly suggest and invite you to meet
17        during lunch and be back at 1:30.
18             MR. LATZMAN:  Thank you.
19             THE ARBITRATOR:  Thanks.
20
21
22             (Time noted:  12:24 p.m.)
23
24
```
00685
```
 1                 I  N  D  E  X
 2   DIRECT EXAMINATION              PAGE:LINE
 3   BY MR. LILLY:                   587:6
 4   (EXHIBIT CA 72, WEISER LETTER   589:10
 5   DATED FEBRUARY 27, 1997, was
 6   marked for identification.)
 7
 8   (EXHIBIT CA 42, EMAIL FROM MR.  596:8
 9   BECKER TO MR. KENNEY DATED
10   12/6/04, was marked for
11   identification and received in
12   evidence.)
13
14   (EXHIBIT CA 44, EMAIL FROM      599:17
15   MEDOFF TO KENNEY AND BECKER
16   DATED 2/11/05, was marked for
17   identification and received in
18   evidence.)
19
20   (EXHIBIT R75, LETTER FROM       655:4
21   KENNEY AND COMPANY TO MEDOFF,
22   DATED 8TH OF DECEMBER, 2004,
23   was marked for identification
24   and received in evidence.)
```
00686
```
 1                 C E R T I F I C A T I O N
 2   STATE OF NEW YORK        )
 3                            )  ss.
 4   COUNTY OF WESTCHESTER    )
```
Page 42

```
                              dal112807
 5              I, DEBRA A. LEVINSON, Court Reporter
 6  and Notary Public within and for the County of
 7  Westchester, State of New York, do hereby certify:
 8              That I reported the proceedings that
 9  are hereinbefore set forth, and that such
10  transcript is a true and accurate record of said
11  proceedings.
12              AND, I further certify that I am not
13  related to any of the parties to this action by
14  blood or marriage, and that I am in no way
15  interested in the outcome of this matter.
16
17              IN WITNESS WHEREOF, I have hereunto
18  set my hand.
19
20
21              DEBRA A. LEVINSON, CSR-RMR-CRR
22                   Court Reporter
```

Exhibit 12

00700                              AS112907

1   INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
    CASE NO. 50 180 T 00019 06
2   ------------------------------------------------x
3   MARTIN S. KENNEY,
4                           Claimant,
5          - against -
6
7   EUGENE S. BECKER and KENNEY BECKER, LLP
    (formerly known as Kenney Becker, Solicitors LLP)
8   a New York Registered Limited Liability
    Partnership (in Dissolution),
9                           Respondents.
10  ------------------------------------------------x
11                          November 29, 2007
                            9:37 a.m.
12                          American Arbitration Association
13                          1633 Broadway
                            New York, New York
14
15
    B E F O R E:
16  RICHARD J. DeWITT, Arbitrator
17
18
19
20
21
22
23
24
25
□
00701
1   A P P E A R A N C E S :                        09:33:24
2                                                  09:33:24
3   FOR THE APPLICANT:                             09:33:24
4                                                  09:33:24
5          LAW OFFICES OF JOSEPH H. LILLY, III     09:33:24
              60 East 42nd Street                  09:33:24
6             Suite 1338                           09:33:24
              New York, New York 10165             09:33:24
7          BY:  JOSEPH H. LILLY, III, ESQ.         09:33:24
8                                                  09:33:24
                                                   09:33:24
9          MARTIN KENNEY & CO.                     09:33:24
              Third Floor                          09:33:24
10            Flemming House                       09:33:24
              P.O. Box 4740                        09:33:24
11            Road Town, Tortola                   09:33:24
              British Virgin Islands VG 1110       09:33:24
12         BY:  DANIEL WISE, ESQ.                  09:33:24
                                                   09:33:24
13                                                 09:33:24
                                                   09:33:24
14  FOR THE RESPONDENTS:                           09:33:24
                                                   09:33:24
15         STEPHEN LATZMAN, ESQ.                   09:33:24
              276 Fifth Avenue                     09:33:24
16            Suite 306                            09:33:24
              New York, New York 10001             09:33:24
17                                                 09:33:24
                          Page 1

AS112907

| 18 | | 09:33:24 |
| | ALSO PRESENT: | 09:33:24 |
| 19 | MARTIN KENNEY | 09:33:24 |
| | EUGENE BECKER | 09:33:24 |
| 20 | | 09:33:24 |
| 21 | | 09:33:24 |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |

☐
00702

PROCEEDINGS

| 1 | | |
| 2 | | |
| 3 | MR. LILLY:  Before we start, I'd | 09:33:24 |
| 4 | like to put on the record, as you know, | 09:36:16 |
| 5 | Mr. Arbitrator, yesterday the parties did | 09:36:18 |
| 6 | attempt to meet some sort of settlement. | 09:36:20 |
| 7 | We're disappointed that we were not able to | 09:36:23 |
| 8 | do so.  And in light of the remaining time | 09:36:27 |
| 9 | that is left before us, I'm not going to | 09:36:29 |
| 10 | waste time on this.  We really need to | 09:36:33 |
| 11 | press forward and expeditiously focus | 09:36:35 |
| 12 | ourselves on the issues. | 09:36:37 |
| 13 | While we are disappointed that -- | 09:36:41 |
| 14 | we see this, essentially, as a contract | 09:36:42 |
| 15 | construction case.  We are disappointed | 09:36:44 |
| 16 | that it wasn't resolved on summary | 09:36:47 |
| 17 | judgment, but we hope that, together, all | 09:36:50 |
| 18 | of us will be able to press forward and | 09:36:52 |
| 19 | complete it within the time that it's | 09:36:54 |
| 20 | scheduled. | 09:36:58 |
| 21 | Mr. Latzman had indicated in our | 09:36:59 |
| 22 | conference calls that he wanted to examine | 09:37:00 |
| 23 | Mr. Kenney for about four periods.  He has | 09:37:02 |
| 24 | had three.  He's intimated that he wants up | 09:37:03 |
| 25 | to 12.  We don't have that much time left. | 09:37:06 |
| | | 09:37:08 |

☐
00703

PROCEEDINGS

| 1 | | |
| 2 | I was hoping -- we'll use our efforts to | 09:37:15 |
| 3 | try to reduce the scope of our examination | 09:37:17 |
| 4 | of Mr. Becker to compress the time, and we | 09:37:20 |
| 5 | hope both sides will work together to | 09:37:24 |
| 6 | accomplish that task. | 09:37:27 |
| 7 | MR. LATZMAN:  Is a response | 09:37:27 |
| 8 | required? | 09:37:29 |
| 9 | THE ARBITRATOR:  I'd like to get | 09:37:31 |
| 10 | a feel for where we are in scheduling.  I | 09:37:33 |
| 11 | was -- though, as I indicated, if you all | 09:37:34 |
| 12 | want to have settlement discussions, they | 09:37:38 |
| 13 | obviously have to be separate and apart | 09:37:44 |
| 14 | from anything I'm doing with you. | 09:37:46 |
| 15 | It was my understanding that we | 09:37:48 |
| 16 | were looking at some stipulations that | 09:37:50 |
| 17 | could narrow the time frame, reduce the | 09:37:51 |
| 18 | time.  Have we been able to come up with | 09:37:54 |
| 19 | any stipulations? | 09:37:58 |
| 20 | MR. LILLY:  We were not able to. | 09:38:01 |
| 21 | MR. LATZMAN:  Actually, we didn't | 09:38:02 |
| 22 | even address that question. | 09:38:02 |
| 23 | MR. LILLY:  We started. | 09:38:04 |
| | | 09:38:06 |

Page 2

AS112907

24
25
　
00704

THE ARBITRATOR:  Gentlemen,
again, let's get back into the order of          09:38:07
                                                 09:38:09

1              PROCEEDINGS
2   things here.                                 09:38:10
3           MR. LATZMAN:  We started.  There     09:38:11
4   is no doubt that we started, and then it     09:38:11
5   evolved quickly into a settlement            09:38:14
6   discussion.  We were present and Mr. Kenney  09:38:17
7   and Mr. Becker, as you know, spoke at        09:38:19
8   length.                                      09:38:21
9           Perhaps what we can do is, you       09:38:22
10  know, continue the very short-lived effort   09:38:26
11  yesterday at reaching an agreement to limit  09:38:30
12  the issues, to limit the issues of fact      09:38:34
13  that need to be decided by the arbitrator,   09:38:39
14  that way, limiting the necessary testimony.  09:38:42
15  I think that might be --                      09:38:46
16          THE ARBITRATOR:  What I'd like to    09:38:48
17  understand at this point is, and I don't     09:38:49
18  want to spend a lot of time going back and   09:38:53
19  forth on this, but if you believe taking     09:38:56
20  five minutes, five or ten minutes, would     09:38:59
21  save us hours of testimony, and as I         09:39:02
22  indicated before, if we could narrow,        09:39:06
23  through stipulation, that would help         09:39:10
24  obviously reach the objective that we're     09:39:12
25  all trying to reach, which is to complete    09:39:16

　
00705

1              PROCEEDINGS
2   this by tomorrow.  I know we're running      09:39:18
3   behind, but I'm going to want at this point  09:39:21
4   to understand how much time you believe you  09:39:23
5   are going to need.                           09:39:26
6           I think you should take into         09:39:27
7   account some of my comments before on, I     09:39:30
8   don't need cumulative evidence here.  I      09:39:33
9   need you to hit the facts.  Let me           09:39:36
10  understand what your position is.  Give me   09:39:38
11  evidence, and to the extent that it's        09:39:40
12  redundant, cumulative, we'll let it in, but  09:39:42
13  you don't have to talk about putting in      09:39:45
14  each item into the record.  We'll move them  09:39:48
15  in and let you make your points.  And once   09:39:51
16  I understand your point, I'll certainly let  09:39:55
17  you know that.  It doesn't mean, I agree     09:39:57
18  with it, just means I understand it.         09:40:00
19          And the same goes for you.           09:40:03
20          Do you think it would be fruitful    09:40:04
21  for you to take five minutes and see if you  09:40:06
22  can narrow the issues?                       09:40:07
23          MR. LILLY:  I don't think we can     09:40:07
24  do it in five minutes.  I think the better   09:40:08
25  time to do it would be during the break, so  09:40:10

　
00706

1          CROSS-EXAM - M. KENNEY
2   we don't cut into any testimony.             09:40:12
3           THE ARBITRATOR:  That's fine.        09:40:14
4   Why don't we go ahead and get the testimony  09:40:15
5   underway.  When we take your normal break,   09:40:18
                    Page 3

```
                                  AS112907
 6          you guys can talk about that.  Okay?
 7                     MR. LATZMAN:  Fine.                      09:40:21
 8                     THE ARBITRATOR:  Proceed then.          09:40:23
 9                                                             09:40:24
10   CONTINUED CROSS-EXAMINATION OF M. KENNEY                  09:40:26
11   BY MR. LATZMAN:                                           09:40:26
12                                                             09:40:26
13          Q.   Mr. Kenney, can you turn to the              09:40:26
14   amended statement of claim, which was not an             09:40:27
15   exhibit, and I'm trying to locate mine.                  09:40:30
16                     THE ARBITRATOR:  While you are         09:40:45
17   looking for that, after the break, we're                 09:40:55
18   going to take a couple of minutes and we're              09:40:56
19   going to pull out the schedule and see                   09:40:59
20   where we are getting finished today and how              09:41:00
21   much time we're going to need.                           09:41:02
22                     MR. BECKER:  What was that?            09:41:05
23                     THE ARBITRATOR:  After the break,      09:41:09
24   after you all had a chance to sit and chat               09:41:10
25   about these issues, we'll go through the                 09:41:11
                                                              09:41:14
00707
 1                CROSS-EXAM - M. KENNEY
 2   calendar and sketch out the rest of the
 3   hearing time.                                            09:41:16
 4                                                             09:41:20
 5   BY MR. LATZMAN:                                           09:41:25
 6                                                             09:41:25
 7          Q.   Do you have it, sir?                         09:41:25
 8          A.   Yes.                                         09:41:25
 9                     THE ARBITRATOR:  We're looking at      09:41:27
10   the amended complaint -- claim.  Sorry.                  09:41:28
11                     THE WITNESS:  Yes.                     09:41:29
12          Q.   Specifically, the demands for the           09:41:37
13   relief, the prayers for relief, beginning on page        09:41:42
14   28.                                                      09:41:45
15          A.   Yes.                                         09:41:50
16          Q.   I believe that is where we were.            09:41:50
17          A.   We were at E, I think.                       09:41:51
18          Q.   Yes.                                         09:41:53
19          A.   E or F on this page.                         09:41:54
20                     THE ARBITRATOR:  29?                   09:41:55
21                     THE WITNESS:  Yes, sir, page 29.       09:42:00
22   We were on F, sub 1.                                     09:42:01
23          Q.   I think we were on F, sub 1.  Excuse        09:42:03
24   me if there may be some overlap between where we         09:42:05
25   left off on the other day and where I'm picking up       09:42:08
                                                              09:42:12
00708
 1                CROSS-EXAM - M. KENNEY
 2   now, but I'll try and not miss a beat.
 3                     Mr. Kenney, prayer for relief, F1.     09:42:17
 4          A.   Yes.                                         09:42:23
 5          Q.   States that at all material times,          09:42:30
 6   seeking a declaration that at all material times        09:42:30
 7   you, Mr. Kenney, had the right to establish             09:42:37
 8   MKS as a separate legal professional practice.          09:42:40
 9                     Is that prayer for relief based upon   09:42:43
10   any allegation, in whole or in part, of an oral         09:42:51
11   agreement between yourself and Mr. Becker?              09:42:54
12          A.   No.  It's based on, as I think I           09:43:00
13   answered this question the other day, 9.2 and 1.5       09:43:03
14   of the first version of the partnership agreement,      09:43:09
                             Page 4                          09:43:12
```

```
24                          AS112907
25      Q.    How many times did you sign that
        document?                                     10:32:12
                                                      10:32:15
```
00746
```
1               CROSS-EXAM - M. KENNEY
2       A.    Twice it would appear.                  10:32:16
3       Q.    Does your signature appear on the       10:32:20
4       execution sheet twice?                        10:32:22
5       A.    Yes.                                     10:32:25
6       Q.    And in what capacity did you sign?      10:32:25
7       A.    As an individual, on the one hand, and  10:32:28
8       as a partner for KBS on the other.            10:32:32
9       Q.    What is the date of this document?      10:32:32
10      A.    February 14, 2002, as to when I         10:32:36
11      signed, and the 12th as to when Mr. Becker signed.  10:32:39
12              MR. LATZMAN:  I think it's a good      10:32:43
13      time to break.                                10:32:44
14              THE ARBITRATOR:  Let's take 15        10:32:46
15      minutes, not 30.  And why don't you           10:32:47
16      gentlemen talk for the next 15 minutes or     10:32:50
17      five of them at least about seeing how we     10:32:55
18      can make up some time here.                   10:32:58
19              Just to reemphasize, I have read      10:33:06
20      all of your papers.  I do understand the      10:33:09
21      issues.  Let's look at the resolution.        10:33:11
22      Certainly bring them up, but we don't need    10:33:13
23      to --                                          10:33:14
24              MR. LATZMAN:  The problem that        10:33:16
25      I have, I understand you read the papers      10:33:17
```
00747
```
1               PROCEEDINGS
2       but --                                        10:33:18
3               THE ARBITRATOR:  I want you to go     10:33:19
4       through it and put your case on.  I just      10:33:20
5       want to let you understand, such as the       10:33:22
6       issue you were raising with the documents,    10:33:23
7       I got it the first time.                      10:33:25
8               MR. LATZMAN:  I know you did          10:33:27
9       because it's clear now, but it's not so       10:33:29
10      clear when reading their submissions, which   10:33:31
11      have changed many times.                      10:33:34
12              THE ARBITRATOR:  Fine.                10:33:37
13              MR. LATZMAN:  Meander, if you         10:33:38
14      will.                                          10:33:41
15              THE ARBITRATOR:  Point those out.     10:33:41
16              MR. LATZMAN:  I shall.                10:33:42
17                                                     10:33:43
18              (Recess taken from                    10:33:43
19      10:33 a.m. until 11:56 a.m.)                  10:33:44
20                                                     10:33:44
21                                                     10:33:44
22              THE ARBITRATOR:  Yes, where are       10:33:44
23      we?                                            10:33:44
24              MR. LILLY:  This is a proposal        11:57:55
25      that is influx, and if anybody wants to add   11:57:54
                                                      11:57:55
```
00748
```
1               PROCEEDINGS
2       or subtract, let me know.  The proposal is
3       to adjourn the hearings for the time being,   11:57:58
4       to most respectfully direct the arbitrator    11:58:02
5       to resolve the issues by --                   11:58:07
                                                      11:58:12
                        Page 21
```

AS112907

| | | |
|---|---|---|
| 6 | | |
| 7 | MR. BECKER:  Joe, can I just say | 11:58:14 |
| 8 | something. | 11:58:16 |
| 9 | MR. LILLY:  Yes. | 11:58:16 |
| 10 | MR. BECKER:  Just tell the | 11:58:16 |
| 11 | arbitrator in summary what our thoughts | 11:58:17 |
| 12 | were, and I think you mentioned two | 11:58:20 |
| 13 | sentences and that's it, and then during | 11:58:22 |
| 14 | the luncheon period, we try and figure out | 11:58:24 |
| 15 | the specific consent. | 11:58:27 |
| 16 | MR. KENNEY:  The specific words. | 11:58:30 |
| 17 | MR. LILLY:  This is the principal | 11:58:31 |
| 18 | and outline. | 11:58:33 |
| 19 | MR. KENNEY:  The agreement that | 11:58:34 |
| 20 | we can, in principal, explain what we are | 11:58:34 |
| 21 | working on. | 11:58:34 |
| 22 | MR. LILLY:  Most respectfully, | 11:58:40 |
| 23 | that the arbitrator resolve the issues by | 11:58:40 |
| 24 | review of the motion for summary judgment | 11:58:42 |
| 25 | and the motion to dismiss, as supplemented | 11:58:45 |
| | by briefs and including the transcript of | 11:58:49 |

00749

| | | |
|---|---|---|
| 1 | PROCEEDINGS | |
| 2 | the hearing so far, plus a deposition of | 11:58:51 |
| 3 | Mr. Becker to be held by January 15th | 11:58:55 |
| 4 | rather than December 10th. | 11:58:59 |
| 5 | MR. KENNEY:  Not January 15th. | 11:59:04 |
| 6 | MR. WISE:  By December 10th. | 11:59:06 |
| 7 | MR. LATZMAN:  Those are the kind | 11:59:07 |
| 8 | of details that -- | 11:59:09 |
| 9 | MR. KENNEY:  On a date to be | 11:59:11 |
| 10 | agreed. | 11:59:11 |
| 11 | MR. LILLY:  On a date to be | 11:59:12 |
| 12 | agreed. | 11:59:13 |
| 13 | After the depositions then each | 11:59:27 |
| 14 | side has until January 15th. | 11:59:29 |
| 15 | MR. KENNEY:  No, our side has -- | 11:59:31 |
| 16 | THE ARBITRATOR:  Gentlemen, you | 11:59:35 |
| 17 | guys will have to sort this out.  As I | 11:59:37 |
| 18 | understand it, in principal, and I would | 11:59:38 |
| 19 | like you during the lunch to -- and I will | 11:59:39 |
| 20 | be candid with you, it's been a long time | 11:59:44 |
| 21 | since I looked at the summary judgment | 11:59:47 |
| 22 | motion.  I don't recall what was in it. | 11:59:49 |
| 23 | MR. KENNEY:  It's a construction | 11:59:55 |
| 24 | application. | 11:59:57 |
| 25 | THE ARBITRATOR:  So you want to | 11:59:58 |

00750

| | | |
|---|---|---|
| 1 | PROCEEDINGS | |
| 2 | adjourn.  Let me give you some thought. | |
| 3 | I'm concerned about having you all spending | 12:00:00 |
| 4 | the money to come up here and be here and | 12:00:05 |
| 5 | not have the opportunity to at least | 12:00:10 |
| 6 | address a couple of what I believe are | 12:00:13 |
| 7 | threshold issues.  And maybe we can fold | 12:00:16 |
| 8 | this in as a correlater to what you are | 12:00:20 |
| 9 | doing. | 12:00:23 |
| 10 | It seemed to me that you had | 12:00:27 |
| 11 | raised -- that what you have raised are | 12:00:27 |
| 12 | claims or ask for me to review the | 12:00:30 |
| 13 | contract, as we discussed yesterday, in | 12:00:37 |
| 14 | sort of a cascading approach.  With the | 12:00:43 |
| | | 12:00:46 |

Page 22

AS112907

| | | |
|---|---|---|
| 15 | first, at least taking into consideration | 12:00:50 |
| 16 | the fact that you have made -- you have | 12:00:55 |
| 17 | both made stipulations with respect to the | 12:00:58 |
| 18 | hind periods before then, that there was no | 12:01:00 |
| 19 | legal work, and I assume that is still the | 12:01:07 |
| 20 | case. | 12:01:10 |
| 21 | | 12:01:10 |
| 22 | The threshold issue you raised | 12:01:10 |
| 23 | and both discussed this morning was whether | 12:01:13 |
| 24 | section 9.2 of the agreement, what that | 12:01:16 |
| 25 | means and what the application of that is. | 12:01:18 |
| 🞐 | MR. KENNEY:  Yes. | 12:01:20 |

00751

| | | |
|---|---|---|
| 1 | PROCEEDINGS | |
| 2 | THE ARBITRATOR:  If 9.2, and I | 12:01:21 |
| 3 | want -- if 9.2 were determined to be as you | 12:01:23 |
| 4 | have asserted, then those other issues that | 12:01:30 |
| 5 | you have, the estoppel and the waiver and | 12:01:34 |
| 6 | that are inapplicable. | 12:01:38 |
| 7 | MR. KENNEY:  Correct, from our | 12:01:40 |
| 8 | perspective. | 12:01:43 |
| 9 | THE ARBITRATOR:  From your | 12:01:44 |
| 10 | perspective.  That is what you are arguing. | 12:01:44 |
| 11 | MR. KENNEY:  Yes. | 12:01:49 |
| 12 | THE ARBITRATOR:  So I'm -- I | 12:01:50 |
| 13 | don't know if you agree with that or not | 12:01:52 |
| 14 | with respect to just the Kenney Becker and | 12:01:53 |
| 15 | MKS, would it make sense for you to address | 12:01:59 |
| 16 | that issue while we're here, and assuming | 12:02:08 |
| 17 | that you agree with the fact -- with | 12:02:14 |
| 18 | their, and you may not, approach to it, if | 12:02:19 |
| 19 | I make a determination -- and I can assure | 12:02:25 |
| 20 | you I have no idea.  I haven't heard your | 12:02:27 |
| 21 | side of the case or fully heard theirs. | 12:02:34 |
| 22 | If that is applicable, then you | 12:02:34 |
| 23 | don't have to spend the time, effort and | 12:02:34 |
| 24 | money on the other -- there are other sub | 12:02:36 |
| 25 | issues but they are smaller issues.  If in | 12:02:39 |
| 🞐 | | 12:02:42 |

00752

| | | |
|---|---|---|
| 1 | PROCEEDINGS | |
| 2 | fact, I do not make that determination, | 12:02:45 |
| 3 | then we can refer to a process where we go | 12:02:47 |
| 4 | through what you are going through. | 12:02:51 |
| 5 | I mean, this is just -- I'm just | 12:02:54 |
| 6 | taking what you both have told me this | 12:02:56 |
| 7 | morning and seeing if that is an efficient | 12:02:58 |
| 8 | way of, in essence, bifurcating -- usually | 12:03:01 |
| 9 | we bifurcate, you know, liability and | 12:03:06 |
| 10 | damages.  Here we're bifurcating issues so | 12:03:09 |
| 11 | we can cover those in this period of time. | 12:03:12 |
| 12 | I'm just concerned that you spent | 12:03:13 |
| 13 | money to have me up here, to have you all | 12:03:15 |
| 14 | together, and to start doing this, having | 12:03:19 |
| 15 | to do this by paper is as expensive.  That | 12:03:23 |
| 16 | means you have to go back and redraft and | 12:03:27 |
| 17 | depositions and whatnot.  You know, one of | 12:03:29 |
| 18 | our charges is to try to keep the cost of | 12:03:33 |
| 19 | doing this down. | 12:03:36 |
| 20 | MR. LATZMAN:  I think it's hard | 12:03:37 |
| 21 | to -- I mean, what you are saying -- I | 12:03:38 |
| 22 | agree that if their argument is accepted, | 12:03:41 |
| 23 | and we don't agree with their argument. | 12:03:44 |

Page 23

AS112907

24
25

THE ARBITRATOR: I know you
don't, and I haven't made a decision on it

12:03:48
12:03:48

00753

1        PROCEEDINGS
2    obviously.
3        MR. LATZMAN: They say that 9.2
4    is dispositive and you don't have to go any
5    further. If they are successful on that,
6    then right, you don't have to go any
7    further. I don't agree.
8        THE ARBITRATOR: I'm not saying I
9    do either, I mean.
10       MR. LATZMAN: And we agree on
11   that, and I think you agree on that also.
12   If they are successful, they are
13   successful. That's the end of it. That is
14   their argument.
15       THE ARBITRATOR: I don't know if
16   that is the case. I think that 9.2, there
17   is two issues to 9.2. One, the first issue
18   is whether or not it is what you purport it
19   to be, a separate business, separate and
20   apart. And number two, the agreement says
21   what happens if that is the case, but is
22   that what happens is the issue.
23       And quite frankly, I haven't
24   heard your argument on 9.2 fully yet. I
25   know what the argument is or the issue is,

12:03:50
12:03:50
12:03:53
12:03:55
12:03:58
12:04:01
12:04:02
12:04:03
12:04:04
12:04:05
12:04:07
12:04:09
12:04:11
12:04:13
12:04:14
12:04:18
12:04:21
12:04:26
12:04:28
12:04:30
12:04:33
12:04:36
12:04:38
12:04:41

00754

1        PROCEEDINGS
2    and I certainly haven't heard your
3    response. And I suspect after having
4    worked with you guys that you have one. I
5    have no idea how it would come out. It is
6    a way of trying to streamline and short
7    circuit this.
8        If, in fact, I don't agree with
9    their argument on 9.2, we're going to have
10   to address the other issues. Why don't we
11   do this, why don't you guys think that
12   through during lunch, and see if and how
13   you want to fold that kind of concept in.
14   And if not, it's your process, and I'll
15   certainly consider, as long as it's within
16   the bounds of what I can do and efficient,
17   if both of you agree to it, we'll certainly
18   consider it. Okay. I'll look at it from
19   that perspective . I have a meeting I have
20   to go to.
21
22       (Lunch recess taken.)
23
24       (Time noted: 12:05 p.m.)
25

12:04:44
12:04:46
12:04:49
12:04:51
12:04:55
12:04:58
12:04:58
12:05:00
12:05:03
12:05:07
12:05:09
12:05:11
12:05:14
12:05:17
12:05:20
12:05:22
12:05:25
12:05:28
12:05:32
12:05:35
12:05:35
12:05:35
12:05:35

00755

1
2        PROCEEDINGS
3        AFTERNOON SESSION
4        (Time noted 3:55.)
5
         THE ARBITRATOR: Gentlemen, fill
                    Page 24

15:55:14
15:55:14
15:55:21
15:55:21

AS112907

```
 6   me in.  What have you accomplished in your
 7   work?                                                15:55:25
 8        MR. LILLY:  We have put together                15:55:27
 9   what we can call a consent direction to              15:55:29
10   arbitrator, which would --                           15:55:30
11        THE ARBITRATOR:  Something I have               15:55:35
12   never heard of before.                               15:55:44
13        MR. LILLY:  No doubt about it.                  15:55:45
14        MR. KENNEY:  It's an English                    15:55:46
15   expression.                                          15:55:49
16        MR. LILLY:  This is what working                15:55:50
17   with Kenney Becker is all about.                     15:55:53
18        It would adjourn the hearings for               15:55:55
19   now.  Essentially convert this into                  15:55:58
20   motions, review of motions for summary              15:56:00
21   judgment and our dismissal with replies and          15:56:04
22   opposition papers and a couple of                    15:56:07
23   depositions, the depositions of the                  15:56:12
24   principals, finishing Mr. --                         15:56:15
25        THE ARBITRATOR:  You want to                    15:56:18
 ⯈                                                        15:56:18
00756
 1             PROCEEDINGS
 2   convert it to a paper hearing.
 3        MR. LILLY:  Yes, more or less.                   15:56:19
 4        MR. LATZMAN:  We're trying to                    15:56:22
 5   determine, in the first instance, trying to          15:56:23
 6   dispose of the issues.                               15:56:26
 7        THE ARBITRATOR:  Go ahead, and                  15:56:29
 8   finish up, and I'll comment on it.                    15:56:31
 9        MR. LILLY:  This is our consent                  15:56:32
10   direction.  The parties agreed to the                15:56:34
11   following directions.                                15:56:35
12        One, that the hearing which                     15:56:37
13   commenced on November 26, 2007, be                   15:56:39
14   adjourned; to be continued if necessary, at          15:56:42
15   the direction of the arbitrator, on a date           15:56:47
16   to be set.                                           15:56:52
17        Two, claimant shall file a motion              15:56:56
18   for summary judgment on or before Tuesday            15:57:00
19   January 15, 2008.                                    15:57:04
20        Three, respondents shall file                   15:57:10
21   opposition to claimant's motion for summary          15:57:12
22   judgment, together with cross motions for            15:57:16
23   summary judgment and/or motion to dismiss,           15:57:18
24   on or before Friday, February 15, 2008.              15:57:22
25        Four, claimant shall file its                   15:57:28
 ⯈                                                        15:57:37
00757
 1             PROCEEDINGS
 2   reply on its motion and opposition to
 3   respondent's cross motion on or before               15:57:39
 4   Friday, February 29, 2008.                           15:57:42
 5        Five, Respondents shall file                    15:57:46
 6   their reply to Claimant's opposition to              15:57:50
 7   cross motion on or before March 14, 2008.            15:57:54
 8        Six, the deposition of Eugene                   15:57:58
 9   Stephen Becker shall be held on Tuesday,             15:58:29
10   December 11, 2007, from 10 a.m. to                   15:58:31
11   approximately 5:30 p.m. at a location to be          15:58:35
12   determined.                                          15:58:39
13        Seven, the deposition of Martin                 15:58:43
14   Stephen Kenney shall take place on                   15:58:45
                                                          15:59:28
```

Page 25

AS112907

| | | |
|---|---|---|
| 15 | Wednesday, January 23, 2008, from 10 a.m. | 15:59:32 |
| 16 | until approximately 5:30 p.m. at | 15:59:36 |
| 17 | Mr. Kenney's office in Road Town, Tortola, | 15:59:40 |
| 18 | BVI, by telephone.  Mr. Kenney shall | 15:59:46 |
| 19 | arrange for a court reporter to be present | 15:59:55 |
| 20 | and swear him in and to take an audio | 15:59:58 |
| 21 | recording of the proceeding. | 16:00:01 |
| 22 | Eight, the standard of review for | 16:00:05 |
| 23 | the motion for summary judgment and motion | 16:00:08 |
| 24 | to dismiss shall be the standard applicable | 16:00:10 |
| 25 | for motions for summary judgment and | 16:00:14 |

00758

| | | |
|---|---|---|
| 1 | PROCEEDINGS | |
| 2 | motions to dismiss in the United States | 16:00:17 |
| 3 | District Court, Southern District of New | 16:00:19 |
| 4 | York. | 16:00:23 |
| 5 | Off the record. | 16:00:26 |
| 6 | | 16:00:27 |
| 7 | (Discussion held off the record.) | 16:00:27 |
| 8 | | 16:02:31 |
| 9 | MR. LILLY:  Number nine, the | 16:02:31 |
| 10 | parties shall be able to propound | 16:02:36 |
| 11 | evidentiary exhibits at the depositions, | 16:02:41 |
| 12 | provided that such exhibits are limited to | 16:02:45 |
| 13 | those submitted in binders to the ICDR | 16:02:50 |
| 14 | prior to the hearing, and those documents | 16:02:59 |
| 15 | admitted as evidence at the hearing of | 16:03:04 |
| 16 | November 26 through November 29. | 16:03:11 |
| 17 | MR. LATZMAN:  When you are | 16:03:14 |
| 18 | talking about exhibits, you are talking | 16:03:15 |
| 19 | about documents? | 16:03:16 |
| 20 | MR. LILLY:  Only documents. | 16:03:17 |
| 21 | Off the record for a second. | 16:03:22 |
| 22 | | 16:03:24 |
| 23 | (Discussion held off the record.) | 16:03:24 |
| 24 | | 16:03:53 |
| 25 | MR. LILLY:  And the transcripts | 16:03:53 |

00759

| | | |
|---|---|---|
| 1 | PROCEEDINGS | |
| 2 | of the hearings from November 26 to | 16:04:01 |
| 3 | November 29, 2007. | 16:04:07 |
| 4 | MR. LATZMAN:  So it's not -- it's | 16:04:10 |
| 5 | offering or referring to -- | 16:04:13 |
| 6 | MR. LILLY:  I said propound. | 16:04:17 |
| 7 | MR. LATZMAN:  I know you said | 16:04:22 |
| 8 | propound, but I'm trying to find out -- I | 16:04:23 |
| 9 | know what the word means. | 16:04:26 |
| 10 | Referring to or offering. | 16:04:31 |
| 11 | MR. LILLY:  Fine. | 16:04:34 |
| 12 | MR. LATZMAN:  I mean, did you | 16:04:38 |
| 13 | write an email dated blah, blah is | 16:04:39 |
| 14 | referring to something. | 16:04:43 |
| 15 | MR. LILLY:  Nine, parties shall | 16:04:44 |
| 16 | be able to offer or refer to evidentiary | 16:04:47 |
| 17 | exhibits at the depositions, provided that | 16:04:56 |
| 18 | such exhibits are limited to those | 16:05:00 |
| 19 | documents submitted to the ICDR in binders | 16:05:03 |
| 20 | prior to the hearings of November 26 to | 16:05:09 |
| 21 | November 29, 2007, and the transcripts of | 16:05:14 |
| 22 | those hearings, and the documents that were | 16:05:19 |
| 23 | admitted as evidence at the hearings. | 16:05:27 |

Page 26

```
                              AS112907
24              MR. LATZMAN:  Can you just read          16:05:38
25      that back.  This one is on the fly, by the       16:05:41
```
☐
00760
```
 1                 PROCEEDINGS
 2      way.                                             16:06:06
 3                                                       16:06:06
 4                 (The court reporter read back         16:06:06
 5                 requested portion of the              16:06:06
 6                 transcript.)                          16:06:06
 7                                                       16:06:06
 8                 MR. LATZMAN:  Or otherwise            16:06:08
 9      provided to the parties, you know, not less      16:06:08
10      than --                                          16:06:10
11                 MR. LILLY:  72 hours prior to the     16:06:14
12      depositions, the commencement of                16:06:15
13      depositions.                                     16:06:16
14                 MR. LATZMAN:  Maybe we should         16:06:20
15      carry in there the pleadings, the record of      16:06:33
16      the proceedings.                                 16:06:35
17                 MR. LILLY:  Right, statutes.          16:06:38
18      Okay.                                            16:06:41
19                 For the avoidance of all doubt,       16:06:44
20      the parties may also refer to statutes, the      16:06:48
21      pleadings filed in these proceedings.            16:06:51
22                 MR. LATZMAN:  Filed or had in the     16:06:58
23      proceedings.  I don't know what it means to      16:07:10
24      file.  I don't know what it means to file a      16:07:11
25      pleading or a document in an arbitration         16:07:14
                                                         16:07:18
```
☐
00761
```
 1                 PROCEEDINGS
 2      proceeding.  In a court, you go to the           16:07:19
 3      clerk's office and they mark it filed.           16:07:22
 4                 MR. LILLY:  Here you send it to       16:07:25
 5      Andrea and it's filed.                           16:07:27
 6                 MR. LATZMAN:  There were also         16:07:29
 7      documents which were not filed in that           16:07:30
 8      sense which were exchanged.                      16:07:32
 9                 MR. LILLY:  Yes.                       16:07:34
10                 MR. WISE:  Should we say              16:07:36
11      documents relied upon.                           16:07:38
12                 MR. BECKER:  No.  Documents had.      16:07:39
13      Relied upon --                                   16:07:41
14                 MR. KENNEY:  We dealt with           16:07:43
15      documents.  We're on pleadings now.             16:07:44
16                 THE ARBITRATOR:  Off the record.      16:07:48
17                                                       16:07:48
18                 (Discussion held off the record.)     16:07:49
19                                                       16:08:12
20                 MR. KENNEY:  Let's read back          16:08:12
21      number nine again.                               16:08:12
22                                                       16:08:12
23                 (The court reporter read back         16:08:12
24                 requested portion of the              16:08:12
25                 transcript.)                          16:08:12
```
☐
00762
```
 1                 PROCEEDINGS
 2                                                       16:08:12
 3                 MR. LATZMAN:  Do you want to take     16:08:12
 4      that from the top on that, nine.                 16:08:14
 5                 For the avoidance of any doubt,       16:09:12
                      Page 27
```

AS112907

```
 6    we're talking about pleadings --            16:09:16
 7            MR. LILLY:  Pleadings and           16:09:18
 8    documents submitted in these hearings.      16:09:20
 9            MR. LATZMAN:  Submitted or          16:09:24
10    exchanged.                                  16:09:25
11            MR. KENNEY:  Documents we dealt     16:09:27
12    with.  We're now talking about pleadings.   16:09:29
13            MR. LILLY:  You are talking about   16:09:31
14    letters to the ICDR?                        16:09:32
15            MR. LATZMAN:  I'm talking about     16:09:34
16    anything that we exchanged between us.      16:09:36
17            MR. WISE:  What about materials     16:09:38
18    placed before the arbitrator.               16:09:41
19            MR. LATZMAN:  That was --           16:09:43
20            MR. KENNEY:  We covered that.       16:09:45
21            MR. WISE:  We're trying to get      16:09:48
22    the totality of the stuff that was          16:09:49
23    available to us in this hearing had we      16:09:51
24    continued.                                  16:09:55
25            MR. LATZMAN:  I think if it's       16:09:55
```
⬚
00763
```
 1            PROCEEDINGS
 2    placed before the arbitrator, that is,      16:09:56
 3    quote, filed.  I think we have taken care   16:09:59
 4    of that.  I'm concerning about documents    16:10:01
 5    that were exchanged between us, such as     16:10:06
 6    discovery demands, for instance, responses. 16:10:09
 7    I don't know that the arbitrator even saw   16:10:12
 8    those.                                      16:10:14
 9            MR. BECKER:  Those documents are    16:10:15
10    had.                                        16:10:17
11            MR. LILLY:  Those are documents     16:10:18
12    that encompasses all documents had between  16:10:19
13    the parties in the pleadings.               16:10:22
14            MR. LATZMAN:  All papers, you       16:10:25
15    know, proceedings heretofore had herein or  16:10:27
16    exchanged between the parties in this       16:10:33
17    proceeding.                                 16:10:35
18            MR. LILLY:  Repeat that.  Papers    16:10:44
19    and documents had.                          16:10:46
20            MR. LATZMAN:  Papers and            16:10:48
21    documents and other items heretofore had    16:10:49
22    herein or exchanged between the parties.    16:10:55
23            THE ARBITRATOR:  Let me suggest     16:11:29
24    this.  This is what you got on the record,  16:11:30
25    that you get this typed up, and in essence, 16:11:32
```
⬚
00764
```
 1            PROCEEDINGS
 2    you make that an amendment to your          16:11:37
 3    arbitration agreement and put that in.  But 16:11:39
 4    we'll take that as a stipulation, but       16:11:46
 5    subject to your cleaning it up as to what   16:11:48
 6    we're going to do, --                       16:11:52
 7            MR. LILLY:  We're not quite         16:11:55
 8    finished with this.                         16:11:56
 9            THE ARBITRATOR:  Go ahead.  I'm     16:11:57
10    sorry.  I've got some comments.             16:11:58
11            MR. LILLY:  Okay.  The parties      16:12:00
12    have agreed to the following facts --       16:12:02
13    excuse me.  This is 10.  The parties have   16:12:06
14    agreed that the following facts are true    16:12:09
```
                          Page 28

AS112907

```
15    for the purpose of these proceedings.  And      16:12:11
16    first we have a series of definitions and       16:12:17
17    then we have some facts that we've agreed        16:12:20
18    to.                                              16:12:23
19          Definitions.  One, appellate             16:12:25
20    division means the appellate division of        16:12:29
21    the Supreme Court of the State of New York,     16:12:33
22    first department.                               16:12:36
23          MR. LATZMAN:  On the definitions,         16:12:37
24    maybe we can just -- because we agreed to       16:12:38
25    most -- we agreed to everything except for      16:12:41
```
□
00765
```
1           PROCEEDINGS
2     5.  I'm talking about before, previously.        16:12:46
3           MR. LILLY:  Yes.                            16:12:49
4           MR. LATZMAN:  We agreed to 5.  We           16:12:49
5     agreed to everything other than 5, 9 and          16:12:51
6     10.                                               16:12:54
7           MR. LILLY:  That's true, yes.               16:12:55
8           MR. LATZMAN:  Just to speed it              16:12:56
9     along.                                            16:12:57
10          MR. LILLY:  All right.  The                 16:13:00
11    definitions as set forth in claimant's           16:13:18
12    statement of facts dated July 31, 2007, as       16:13:23
13    marked by respondents on or about October        16:13:32
14    20, 2007, are accepted as the definitions        16:13:37
15    of terms provided as follows.                    16:13:44
16          MR. LATZMAN:  Except for.                   16:13:52
17          MR. LILLY:  Except for.                     16:13:54
18    Definitions of terms in the following facts       16:14:00
19    except for number 5:  February 1997 meeting      16:14:05
20    means that certain meeting between MSK and       16:14:15
21    ESB with Mr. Bernard Medoff at the offices       16:14:21
22    of M.R. Weiser, New York, New York on            16:14:26
23    February 24, 1997.                               16:14:30
24          9, IBL means Interclaim Ltd., a             16:14:35
25    Bermuda corporation, also known as               16:14:44
```
□
00766
```
1           PROCEEDINGS
2     Interclaim (Bermuda) Ltd.                         16:14:48
3           9A, IRL means Interclaim Recovery           16:14:54
4     Limited (in liquidation), an Irish company.       16:15:00
5           And 10, Joint Work has the                  16:15:11
6     meaning ascribed to such term in the             16:15:16
7     partnership agreement.                           16:15:21
8           Facts, 1, MSK and ESB executed             16:15:24
9     and entered into the initial partnership         16:15:29
10    agreement.                                       16:15:34
11          2, MSK and ESB executed and                 16:15:35
12    entered into the first amendment.                16:15:40
13          3, MSK and ESB executed and                 16:15:44
14    entered into the second amendment.               16:15:50
15          4, commencing as of February 20,            16:15:54
16    1997, the distribution of profits and            16:15:59
17    losses from KBS to its constituent               16:16:03
18    partners, MSK and ESB, was allocated in the      16:16:06
19    proportions of 99 percent to ESB and 1           16:16:13
20    percent to MSK.                                  16:16:19
21          5, prior to February 20, 1997,              16:16:22
22    the distribution of profits and losses from      16:16:33
23    KBS to its constituent partners, MSK and         16:16:36
```
Page 29

AS112907

| | | |
|---|---|---|
| 24 | ESB, was allocated in the proportions of 50 | 16:16:41 |
| 25 | percent to ESB and 50 percent to MSK in | 16:16:49 |

00767

| | | |
|---|---|---|
| 1 | PROCEEDINGS | |
| 2 | accordance with the first amendment. | 16:16:53 |
| 3 | 6, in note number 5 to the | 16:17:00 |
| 4 | financial statements of IBL, issued by | 16:17:05 |
| 5 | M.R. Weiser & Co. LLP on 6 September 1996, | 16:17:10 |
| 6 | it says "for the period from April 30, | 16:17:18 |
| 7 | 1996, (inception), through August 31, 1996, | 16:17:46 |
| 8 | the company paid approximately $123,000, | 16:17:55 |
| 9 | for legal services provided by a law firm, | 16:18:02 |
| 10 | which is partially owned by a shareholder | 16:18:06 |
| 11 | of the company." The law firm was KBS. | 16:18:08 |
| 12 | 7, between July 11, 1997, and | 16:18:24 |
| 13 | August 4, 2002, MSK was not involved in the | 16:18:42 |
| 14 | private practice of law and rendered no | 16:18:50 |
| 15 | legal professional services to clients | 16:18:53 |
| 16 | during this period of time. | 16:18:56 |
| 17 | 8, on or about August 1, 1997, | 16:19:00 |
| 18 | MSK relocated from New York City to Dublin, | 16:19:08 |
| 19 | Ireland. | 16:19:12 |
| 20 | 9, the first demand made by ESB | 16:19:58 |
| 21 | or KBS for a comprehensive list of all | 16:20:02 |
| 22 | client matters of MKS was by email from ESB | 16:20:07 |
| 23 | to MSK on June 2, 2005. | 16:20:16 |
| 24 | MR. LATZMAN: What was the | 16:20:35 |
| 25 | language in the email. That was really the | 16:20:36 |

00768

| | | |
|---|---|---|
| 1 | PROCEEDINGS | |
| 2 | question. | 16:20:39 |
| 3 | THE ARBITRATOR: Off the record. | 16:20:40 |
| 4 | | 16:20:40 |
| 5 | (Discussion held off the record.) | 16:20:40 |
| 6 | | 16:21:31 |
| 7 | MR. LILLY: Start again number 9. | 16:21:31 |
| 8 | The first demand made by ESB or | 16:21:40 |
| 9 | KBS for a comprehensive list of all legal | 16:21:43 |
| 10 | matters in which MSK has provided legal | 16:21:48 |
| 11 | services after July 1, 1995, was by email | 16:21:55 |
| 12 | from ESB to MSK on June 2, 2005. | 16:22:03 |
| 13 | Off the record. | 16:22:25 |
| 14 | | 16:22:25 |
| 15 | (Discussion held off the record.) | 16:22:26 |
| 16 | | 16:24:19 |
| 17 | MR. LILLY: 10, at no time did | 16:24:19 |
| 18 | ESB or KBS object to MSK establishing a new | 16:24:23 |
| 19 | legal professional practice under MSK's own | 16:24:29 |
| 20 | name in Ireland. | 16:24:33 |
| 21 | 11, between approximately | 16:24:36 |
| 22 | February 19, 1997, and August 5, 2002, MSK | 16:24:40 |
| 23 | was not involved in the private practice of | 16:24:47 |
| 24 | law, other than his participation as a 1 | 16:24:50 |
| 25 | percent partner of KBS. | 16:24:55 |

00769

| | | |
|---|---|---|
| 1 | PROCEEDINGS | |
| 2 | 12, on August 5, 2002, MSK | 16:24:59 |
| 3 | established MKS, a law firm in Dublin, | 16:25:09 |
| 4 | Ireland. | 16:25:15 |
| 5 | 13, on or before October 12, | 16:25:17 |

Page 30

AS112907

| | | |
|---|---|---|
| 6 | 2002, ESB became aware of the formation of | 16:25:25 |
| 7 | MKS through verbal and/or written | 16:25:30 |
| 8 | communications with MSK. | 16:25:33 |
| 9 | 14, on or about late 2002, ESB | 16:25:42 |
| 10 | and KBS assisted MKS by providing MKS with | 16:25:48 |
| 11 | a sub client trust account as a part of | 16:25:55 |
| 12 | KBS's master client trust account at Fleet | 16:25:58 |
| 13 | Bank in New York. | 16:26:03 |
| 14 | 15, on or about early 2003, MSK | 16:26:05 |
| 15 | and ESB exchanged emails over the | 16:26:08 |
| 16 | feasibility of MKS and KBS acquiring a | 16:26:13 |
| 17 | joint policy of professional indemnity | 16:26:17 |
| 18 | insurance. | 16:26:19 |
| 19 | 16, on or about June 2003, Baron | 16:26:21 |
| 20 | Bergstein, accountants, compiled and issued | 16:26:28 |
| 21 | a joint accountants' report to The Law | 16:26:35 |
| 22 | Society of England and Wales. | 16:26:39 |
| 23 | 17, on March 9, 2004, ESB faxed a | 16:26:42 |
| 24 | request to MSK to remove the KBS address as | 16:26:48 |
| 25 | the "USA office" shown on Martin Kenney & | 16:26:52 |

00770

| | | |
|---|---|---|
| 1 | PROCEEDINGS | |
| 2 | Co. firm stationery. | 16:26:58 |
| 3 | 18, on September 27, 2004, KBS | 16:27:00 |
| 4 | made a written demand on MSK to make up a | 16:27:11 |
| 5 | US $73,026 deficit in his capital account | 16:27:15 |
| 6 | with KBS. | 16:27:25 |
| 7 | 19, in or about January 2005, | 16:27:27 |
| 8 | Bernard Medoff conducted a review of the | 16:27:37 |
| 9 | financial records of KBS, at MSK's expense, | 16:27:40 |
| 10 | to determine the validity of KBS's demand | 16:27:45 |
| 11 | for US $73,026 from MSK. | 16:27:49 |
| 12 | 20, in or about January 2005, | 16:27:56 |
| 13 | Mr. Medoff concluded that MSK did owe KBS | 16:28:01 |
| 14 | the sum of US $73,026 by way of a deficit | 16:28:05 |
| 15 | in his capital account arising from 1997. | 16:28:12 |
| 16 | 21, upon receipt of Mr. Medoff's | 16:28:16 |
| 17 | conclusion, MSK (i) announced his intention | 16:28:20 |
| 18 | to pay the US $73,026 to KBS, and (ii) | 16:28:26 |
| 19 | offered to do so in exchange for a general | 16:28:33 |
| 20 | release from all claims from KBS and ESB | 16:28:38 |
| 21 | upon the formal dissolution of KBS. In | 16:28:41 |
| 22 | this connection, MSK presented draft | 16:28:45 |
| 23 | dissolution and release papers to KBS and | 16:28:49 |
| 24 | ESB to review. Joseph Lilly prepared the | 16:28:52 |
| 25 | papers at the request of MSK, who paid | 16:28:57 |

00771

| | | |
|---|---|---|
| 1 | PROCEEDINGS | |
| 2 | Mr. Lilly's bill. | 16:29:01 |
| 3 | 22, KBS rejected MSK's request | 16:29:06 |
| 4 | for a release and demanded immediate | 16:29:12 |
| 5 | payment of the US $73,026 capital account | 16:29:15 |
| 6 | deficit together with interest running from | 16:29:20 |
| 7 | 27 September 2004. | 16:29:23 |
| 8 | 23, MSK took the position that | 16:29:28 |
| 9 | under the terms of the partnership | 16:29:32 |
| 10 | agreement, a partner was not liable to make | 16:29:35 |
| 11 | up a capital account deficit until an event | 16:29:40 |
| 12 | occurred giving rise to the dissolution of | 16:29:45 |
| 13 | KBS. By email dated February 16, 2005, MSK | 16:29:48 |
| 14 | offered to withdraw from KBS in order to | 16:29:55 |

Page 31

AS112907

| | | |
|---|---|---|
| 15 | trigger the dissolution. | 16:29:59 |
| 16 | 24, on February 17, 2005, ESB | 16:30:01 |
| 17 | issued a written notice of withdrawal from | 16:30:08 |
| 18 | KBS, thereby causing KBS to be placed in a | 16:30:11 |
| 19 | state of dissolution. | 16:30:15 |
| 20 | 25, on March 9, 2005, ESB (i) | 16:30:18 |
| 21 | acknowledged KBS's receipt of US $73,026 | 16:30:25 |
| 22 | from MSK in satisfaction of MSK's | 16:30:35 |
| 23 | obligation to make up the deficit in his | 16:30:37 |
| 24 | capital account, and (ii) made written | 16:30:40 |
| 25 | demand on MSK to pay interest on the unpaid | 16:30:44 |

00772

|  |  |  |
|---|---|---|
|  | PROCEEDINGS | |
| 1 | | |
| 2 | deficit balance in the amount of US $2,917 | 16:30:53 |
| 3 | accruing between 27 September 2004 and | 16:31:01 |
| 4 | 9 March 2005. | 16:31:05 |
| 5 | I believe that's it.  Is that | 16:31:09 |
| 6 | right, Mr. Latzman? | 16:31:21 |
| 7 | MR. LATZMAN:  Yes, Mr. Lilly. | 16:31:23 |
| 8 | THE ARBITRATOR:  I didn't get the | 16:31:29 |
| 9 | last facts.  I was trying to figure out -- | 16:31:31 |
| 10 | MR. LILLY:  The last facts ended, | 16:31:34 |
| 11 | essentially, with the sequence of events | 16:31:37 |
| 12 | ending on March 9th with ESB acknowledging | 16:31:41 |
| 13 | KBS's receipt of the deficit payment and | 16:31:45 |
| 14 | demand on MSK to pay interest on the amount | 16:31:48 |
| 15 | accruing between 27 September 2004 and | 16:31:51 |
| 16 | 9 March 2005. | 16:31:56 |
| 17 | THE ARBITRATOR:  Are you done | 16:31:57 |
| 18 | with your stipulation? | 16:31:58 |
| 19 | MR. LILLY:  Yes. | 16:31:59 |
| 20 | THE ARBITRATOR:  I didn't know | 16:32:00 |
| 21 | you were going to put that in.  Do not make | 16:32:00 |
| 22 | that part of your arbitration agreement. | 16:32:03 |
| 23 | We'll just use it as a stipulation as to | 16:32:05 |
| 24 | how you want to proceed. | 16:32:07 |
| 25 | What I'd like you to do, very | 16:32:10 |

00773

|  |  |  |
|---|---|---|
|  | PROCEEDINGS | |
| 1 | | |
| 2 | quickly, is with these stipulations and the | 16:32:13 |
| 3 | other stipulations that we have, I'd like | 16:32:15 |
| 4 | you to set out what you believe are the | 16:32:18 |
| 5 | issues that still remain.  Because it's my | 16:32:22 |
| 6 | understanding, especially from hearing your | 16:32:28 |
| 7 | stipulations, that there is not an issue | 16:32:31 |
| 8 | with respect to the period up until August | 16:32:34 |
| 9 | 5th; is that correct? | 16:32:36 |
| 10 | MR. LATZMAN:  I don't understand | 16:32:37 |
| 11 | the question. | 16:32:38 |
| 12 | THE ARBITRATOR:  Do you | 16:32:39 |
| 13 | understand the question? | 16:32:39 |
| 14 | MR. LILLY:  We understand the | 16:32:40 |
| 15 | question, yes. | 16:32:42 |
| 16 | THE ARBITRATOR:  What I'm asking | 16:32:42 |
| 17 | you -- | 16:32:44 |
| 18 | MR. LATZMAN:  August 5, 2002. | 16:32:44 |
| 19 | THE ARBITRATOR:  August 5, 2002, | 16:32:46 |
| 20 | when he started the new firm, that there is | 16:32:48 |
| 21 | not an issue with respect to an accounting | 16:32:50 |
| 22 | for that period because you acknowledged in | 16:32:53 |
| 23 | the facts -- stipulated facts that he | 16:32:55 |

Page 32

AS112907

| | | |
|---|---|---|
| 24 | didn't practice law. | 16:32:58 |
| 25 | MR. LATZMAN:  Right.  That was | 16:32:59 |

00774

| | | |
|---|---|---|
| 1 | PROCEEDINGS | |
| 2 | one of the -- I think E. | 16:33:00 |
| 3 | THE ARBITRATOR:  It was in your | 16:33:04 |
| 4 | document.  So what I'd like you to do is | 16:33:05 |
| 5 | summarize what you believe, I guess, are | 16:33:09 |
| 6 | the outstanding issues or what your claims | 16:33:11 |
| 7 | are that I'm still addressing.  I guess | 16:33:14 |
| 8 | that has been stipulated.  It would have to | 16:33:19 |
| 9 | be addressed in the award, just to be | 16:33:21 |
| 10 | complete.  But what do you think are still | 16:33:23 |
| 11 | the issues that I have to address? | 16:33:26 |
| 12 | MR. LATZMAN:  Are you looking to | 16:33:30 |
| 13 | do that now? | 16:33:32 |
| 14 | THE ARBITRATOR:  Yeah. | 16:33:33 |
| 15 | MR. LILLY:  We intended to | 16:33:34 |
| 16 | address those in the motion for summary | 16:33:35 |
| 17 | judgment and the motion to dismiss. | 16:33:37 |
| 18 | THE ARBITRATOR:  That's what you | 16:33:41 |
| 19 | would like to -- I wasn't talking about the | 16:33:41 |
| 20 | detail of whether section A or I -- okay. | 16:33:43 |
| 21 | That's fine.  If you'd rather do it that | 16:33:47 |
| 22 | way. | 16:33:49 |
| 23 | MR. LILLY:  This is as far as we | 16:33:49 |
| 24 | can agree. | 16:33:51 |
| 25 | THE ARBITRATOR:  Okay.  Let me | 16:33:52 |

00775

| | | |
|---|---|---|
| 1 | PROCEEDINGS | |
| 2 | ask a couple of questions.  So I'm going | 16:33:55 |
| 3 | get all of this stuff in March, or when am | 16:33:58 |
| 4 | I going to get it? | 16:34:01 |
| 5 | MR. LILLY:  Well, you'll start | 16:34:02 |
| 6 | getting it -- | 16:34:05 |
| 7 | MR. LATZMAN:  The last paper is | 16:34:07 |
| 8 | due in March, right? | 16:34:08 |
| 9 | MR. LILLY:  The motion for -- | 16:34:09 |
| 10 | THE ARBITRATOR:  I'm not going to | 16:34:12 |
| 11 | look at it until -- it's not efficient for | 16:34:13 |
| 12 | me to do that because then I have to go | 16:34:16 |
| 13 | back and read it twice. | 16:34:18 |
| 14 | MR. LILLY:  March 14, 2008. | 16:34:20 |
| 15 | THE ARBITRATOR:  The last thing I | 16:34:23 |
| 16 | want to do is charge you to read this stuff | 16:34:23 |
| 17 | twice.  So middle of March, I'll get all of | 16:34:23 |
| 18 | this.  I want you to send it to me so I can | 16:34:26 |
| 19 | make sure that we're on track.  I want to | 16:34:32 |
| 20 | get it, have it filed and make sure we're | 16:34:32 |
| 21 | on track. | 16:34:33 |
| 22 | And then what I'm hearing you | 16:34:34 |
| 23 | both say is you want me to read these, go | 16:34:36 |
| 24 | through the documentation and read it and | 16:34:40 |
| 25 | come to a decision based on these motions | 16:34:43 |

00776

| | | |
|---|---|---|
| 1 | PROCEEDINGS | |
| 2 | that you are going to file. | 16:34:46 |
| 3 | MR. LILLY:  Yes. | 16:34:48 |
| 4 | THE ARBITRATOR:  And the | 16:34:49 |
| 5 | standards you want me to use is the | 16:34:51 |

Page 33

AS112907

| | | |
|---|---|---|
| 6 | standard that you outlined. | 16:34:53 |
| 7 | MR. LATZMAN:  Exactly. | 16:34:56 |
| 8 | THE ARBITRATOR:  What I want from | 16:34:57 |
| 9 | you in that connection from each of you is | 16:34:58 |
| 10 | a brief as to what you believe that | 16:35:00 |
| 11 | standard is, number one, and number two, to | 16:35:03 |
| 12 | the extent, and I may, though not | 16:35:06 |
| 13 | necessarily take testimony, I may want oral | 16:35:11 |
| 14 | argument -- or are you going to want oral | 16:35:15 |
| 15 | argument, I guess, is the question. | 16:35:18 |
| 16 | MR. LATZMAN:  I'm speaking on | 16:35:19 |
| 17 | this side of the table, I think we want to | 16:35:20 |
| 18 | reserve the right.  I don't know that I | 16:35:23 |
| 19 | want to waive it or commit. | 16:35:26 |
| 20 | MR. KENNEY:  We haven't | 16:35:28 |
| 21 | confronted the issue.  We're trying to | 16:35:28 |
| 22 | invest in economy and save cost.  So I | 16:35:33 |
| 23 | would say no on our side. | 16:35:36 |
| 24 | THE ARBITRATOR:  To the extent I | 16:35:39 |
| 25 | want oral argument or I need it, the | 16:35:40 |

00777

| | | |
|---|---|---|
| 1 | PROCEEDINGS | |
| 2 | question is, would you prefer to have oral | 16:35:43 |
| 3 | argument by telephone rather than live | 16:35:46 |
| 4 | argument?  That is the big issue I have | 16:35:48 |
| 5 | with counsel.  I suspect, I don't know, I | 16:35:51 |
| 6 | haven't seen your new papers, what they are | 16:35:53 |
| 7 | going to look like, you haven't either, but | 16:35:55 |
| 8 | you have a better feel, I guess, for what | 16:35:57 |
| 9 | I'm looking at and what we have honed down | 16:36:00 |
| 10 | here. | 16:36:02 |
| 11 | Are you willing to do oral | 16:36:03 |
| 12 | argument by telephone? | 16:36:06 |
| 13 | MR. LATZMAN:  Do we have to | 16:36:10 |
| 14 | commit ourselves now on that point? | 16:36:11 |
| 15 | THE ARBITRATOR:  No, you don't, | 16:36:14 |
| 16 | if you would rather discuss it.  But I want | 16:36:17 |
| 17 | a decision before -- I don't want this to | 16:36:20 |
| 18 | be a gamesmanship type thing.  I want a | 16:36:24 |
| 19 | decision before, either a joint decision | 16:36:28 |
| 20 | would be good, but if not, then I'll make | 16:36:31 |
| 21 | the decision. | 16:36:35 |
| 22 | MR. LATZMAN:  So the decision | 16:36:36 |
| 23 | would be on whether we want oral argument | 16:36:37 |
| 24 | and if so -- | 16:36:39 |
| 25 | THE ARBITRATOR:  No, I'm | 16:36:40 |

00778

| | | |
|---|---|---|
| 1 | PROCEEDINGS | |
| 2 | reserving the right to have oral argument. | 16:36:41 |
| 3 | That is another issue.  If you want oral | 16:36:44 |
| 4 | argument, I'll certainly consider that from | 16:36:47 |
| 5 | your perspective.  I reserve the right to | 16:36:49 |
| 6 | have oral argument, at least, by telephone | 16:36:52 |
| 7 | if I have questions.  I assume you want me | 16:36:55 |
| 8 | to do that.  If I have questions about your | 16:36:58 |
| 9 | papers that we can have oral argument, at | 16:37:01 |
| 10 | least, on telephone.  If you prefer live | 16:37:04 |
| 11 | argument, which some counsels do, you have | 16:37:07 |
| 12 | to -- I want you to let me know.  That is | 16:37:09 |
| 13 | obviously less economical. | 16:37:11 |
| 14 | MR. LILLY:  For us it's really a | 16:37:15 |

Page 34

AS112907

| | | |
|---|---|---|
| 15 | cost issue. We'd prefer to have oral | 16:37:16 |
| 16 | argument by telephone. | 16:37:19 |
| 17 | MR. LATZMAN:  I just would prefer | 16:37:20 |
| 18 | to defer that. | 16:37:22 |
| 19 | THE ARBITRATOR:  We'll decide on | 16:37:25 |
| 20 | it.  I'll decide that.  We generally are | 16:37:25 |
| 21 | trying to reduce the costs.  You know, I'll | 16:37:27 |
| 22 | certainly consider anything. | 16:37:32 |
| 23 | MR. LATZMAN:  In any event, you | 16:37:35 |
| 24 | would want that position before the final | 16:37:37 |
| 25 | submission of the papers? | 16:37:40 |

00779

| | | |
|---|---|---|
| 1 | PROCEEDINGS | |
| 2 | THE ARBITRATOR:  Yeah, I want to | 16:37:41 |
| 3 | know how you feel about it.  It makes it | 16:37:42 |
| 4 | obviously easier for me if you agree with | 16:37:45 |
| 5 | telephone. | 16:37:48 |
| 6 | MR. LATZMAN:  That would be | 16:37:48 |
| 7 | before the submission of the last paper, | 16:37:49 |
| 8 | March 14th? | 16:37:50 |
| 9 | THE ARBITRATOR:  Yeah. | 16:37:51 |
| 10 | MR. BECKER:  When might the oral | 16:37:51 |
| 11 | argument be? | 16:37:53 |
| 12 | THE ARBITRATOR:  Sometime after I | 16:37:54 |
| 13 | read all of that stuff, which I won't look | 16:37:55 |
| 14 | at, other than to check and make sure we're | 16:37:58 |
| 15 | on track.  I'm not going to read that until | 16:38:00 |
| 16 | after I've gotten everything, because as I | 16:38:03 |
| 17 | said, we want to be efficient here.  If I | 16:38:04 |
| 18 | read it in January, it will go into the | 16:38:07 |
| 19 | maze.  So I'll read it altogether at one | 16:38:12 |
| 20 | time. | 16:38:14 |
| 21 | MR. LILLY:  Sir, if the motions | 16:38:14 |
| 22 | are not dispositive -- if you find the | 16:38:16 |
| 23 | motions are not dispositive of the issues, | 16:38:19 |
| 24 | I think we'll have to resume hearings. | 16:38:21 |
| 25 | THE ARBITRATOR:  That's what I | 16:38:26 |

00780

| | | |
|---|---|---|
| 1 | PROCEEDINGS | |
| 2 | assumed you had in there, if necessary, at | 16:38:27 |
| 3 | the beginning, you would have to resume | 16:38:32 |
| 4 | hearings. | 16:38:34 |
| 5 | MR. BECKER:  That was a given, | 16:38:35 |
| 6 | Joe. | 16:38:37 |
| 7 | THE ARBITRATOR:  That's a given. | 16:38:38 |
| 8 | MR. LILLY:  Just to keep it all | 16:38:39 |
| 9 | clear, when do you want the brief for the | 16:38:41 |
| 10 | standards? | 16:38:43 |
| 11 | THE ARBITRATOR:  You can have | 16:38:45 |
| 12 | that -- at the time. | 16:38:46 |
| 13 | MR. LILLY:  By March? | 16:38:47 |
| 14 | THE ARBITRATOR:  By March, like I | 16:38:48 |
| 15 | said,  I just want at the end, I want to | 16:38:51 |
| 16 | know if you agree or if there is a | 16:39:06 |
| 17 | disagreement as to what that standard is. | 16:39:08 |
| 18 | MR. LATZMAN:  I don't think there | 16:39:10 |
| 19 | should be, but we'll see. | 16:39:11 |
| 20 | MR. BECKER:  This is a New York | 16:39:18 |
| 21 | standard for two non New York lawyers. | 16:39:20 |
| 22 | MR. LATZMAN:  Federal New York | 16:39:25 |
| 23 | standard. | 16:39:26 |

Page 35

```
                          AS112907
24                    MR. LILLY:  Federal New York          16:39:27
25          standard.                                       16:39:27

00781
1           PROCEEDINGS
2                     THE ARBITRATOR:  Educate me on        16:39:27
3           the nuances you think are important as          16:39:29
4           compared to the general standard that we        16:39:31
5           often apply.  If there is some nuance to        16:39:34
6           the federal New York standard compared to       16:39:37
7           the State New York standard or the general      16:39:39
8           standard that we --                             16:39:41
9                     Off the record.                       16:39:44
10                                                          16:39:44
11                    (Discussion held off the record.)     16:39:44
12                                                          16:40:05
13                    THE ARBITRATOR:  Anything else?       16:40:05
14                    MR. LATZMAN:  I don't believe so.     16:40:06
15                    MR. LILLY:  We have to collect        16:40:07
16          all of the exhibits and make sure that the      16:40:11
17          transcript and the exhibits are all one         16:40:13
18          complete set.                                   16:40:17
19                    THE ARBITRATOR:  Before we leave,     16:40:30
20          I want to make sure that we have all of the     16:40:31
21          exhibits that have been put in, that we've      16:40:34
22          got them secure and that they are going to      16:40:36
23          be sent to me.  And I think I can take some     16:40:39
24          of the stuff with me.  The exhibits, we'll      16:40:42
25          have to have one of you take responsibility     16:40:45

00782
1           PROCEEDINGS
2           of them.                                        16:40:49
3                     MR. LATZMAN:  What happens to the     16:40:49
4           binders, the binders that were brought          16:40:50
5           here, the binders submitted for your use,       16:40:51
6           the witness's use?                              16:40:57
7                     THE ARBITRATOR:  The ones that        16:40:57
8           are submitted for my use I take.  They have     16:40:59
9           my notes and tabs and my little                 16:40:59
10          idiosyncrasies of how I color code things.      16:41:01
11          Without them I'm lost.  So I will take          16:41:01
12          those with me.  That is why I bring this        16:41:08
13          collapsible bag to drag them back with me.      16:41:12
14                    But I want the exhibits shipped       16:41:16
15          to me by somebody.  One of the two of you       16:41:17
16          take responsibility for that.                   16:41:19
17                    MR. LATZMAN:  I guess we can each     16:41:21
18          ship our own exhibits.  Maybe that would        16:41:23
19          make the most sense.                            16:41:26
20                    THE ARBITRATOR:  You only had --      16:41:28
21                    MR. LATZMAN:  I only had a            16:41:29
22          couple.                                         16:41:30
23                    THE ARBITRATOR:  -- a couple of       16:41:30
24          exhibits.  Maybe you can put them in a box      16:41:30
25          and ship them.                                  16:41:33

00783
1           PROCEEDINGS
2                     MR. LILLY:  Ship them to the          16:41:34
3           ICDR?                                           16:41:36
4                     THE ARBITRATOR:  No, the              16:41:37
5           exhibits, once they are entered, I need         16:41:38
                          Page 36
```

AS112907

| | | |
|---|---|---|
| 6 | them. They should be sent to me, so I have | 16:41:41 |
| 7 | them. And let me think if there is | 16:41:44 |
| 8 | anything else. I will tell you that I'm | 16:41:50 |
| 9 | dealing with a financial issue on your | 16:41:54 |
| 10 | behalf. | 16:41:55 |
| 11 | Apparently, for me to change my | 16:41:57 |
| 12 | flight tomorrow is going to be | 16:42:00 |
| 13 | extraordinarily expensive, probably much | 16:42:02 |
| 14 | more expensive than me staying and catching | 16:42:07 |
| 15 | my flight on Saturday, which I have already | 16:42:12 |
| 16 | scheduled. I might decide just to stay and | 16:42:14 |
| 17 | work here tomorrow, rather than change it. | 16:42:17 |
| 18 | So if you see that issue, it's because it's | 16:42:22 |
| 19 | like 7 or $800 to change the flight, and | 16:42:22 |
| 20 | $300 to stay in the hotel. And I can work | 16:42:26 |
| 21 | here. | 16:42:29 |
| 22 | I just wanted you to know that, | 16:42:30 |
| 23 | if you are saying, why did he spend the | 16:42:31 |
| 24 | rest of the weekend here on our nickel, | 16:42:34 |
| 25 | it's because I'm trying to save you some | 16:42:38 |

00784

| | | |
|---|---|---|
| 1 | PROCEEDINGS | |
| 2 | money. She's trying to see if she can get | 16:42:40 |
| 3 | less expensive transportation. | 16:42:42 |
| 4 | Off the record. | 16:42:44 |
| 5 | | 16:42:44 |
| 6 | (Discussion held off the record.) | 16:42:44 |
| 7 | | 16:42:44 |
| 8 | THE ARBITRATOR: This process is | 16:43:15 |
| 9 | certainly doable. I will tell you that I | 16:43:45 |
| 10 | went back and looked at the last summary | 16:43:51 |
| 11 | judgment, and I understand why I denied it. | 16:43:53 |
| 12 | So we review motions for summary | 16:43:57 |
| 13 | judgment and motions to dismiss in | 16:44:07 |
| 14 | arbitration with great scrutiny. And as | 16:44:11 |
| 15 | you both know, if you dealt in the | 16:44:16 |
| 16 | arbitration area, we generally, unless it's | 16:44:19 |
| 17 | extremely clear, are not likely to grant | 16:44:29 |
| 18 | motions for summary judgment or motions to | 16:44:38 |
| 19 | dismiss. Keep that in mind and be very | 16:44:40 |
| 20 | specific to what you submit. I do | 16:44:43 |
| 21 | understand that the parties are applying | 16:44:45 |
| 22 | this and we'll try it and see where we can | 16:44:46 |
| 23 | get with it. | 16:44:49 |
| 24 | MR. LATZMAN: Thank you, | 16:44:51 |
| 25 | Mr. DeWitt. | 16:44:52 |

00785

| | | |
|---|---|---|
| 1 | PROCEEDINGS | |
| 2 | MR. BECKER: Thank you very much. | 16:44:53 |
| 3 | MR. LILLY: You are going to | 16:44:55 |
| 4 | apply the U.S. district standard approach? | 16:44:56 |
| 5 | THE ARBITRATOR: Yeah, I will. I | 16:44:59 |
| 6 | will apply the approach. That is why I | 16:45:01 |
| 7 | want a memorandum so I clearly understand | 16:45:03 |
| 8 | what you believe that is. | 16:45:06 |
| 9 | MR. LATZMAN: Thank you, sir. | 16:45:07 |
| 10 | THE ARBITRATOR: Okay, gentlemen. | 16:45:08 |
| 11 | Have a good trip home. | 16:45:10 |
| 12 | MR. LILLY: Mr. DeWitt, we just | 16:46:32 |
| 13 | want to clarify the standard of view that | 16:46:34 |
| 14 | is going to be applied to these motions | 16:46:36 |

Page 37

AS112907

| | | |
|---|---|---|
| 15 | because if the -- we've agreed that this | 16:46:39 |
| 16 | should be, this could and should be decided | 16:46:42 |
| 17 | by motions for summary judgment. | 16:46:46 |
| 18 | THE ARBITRATOR:  And I hear you. | 16:46:49 |
| 19 | MR. LILLY:  If the arbitral | 16:46:50 |
| 20 | standard is a very tight one that is | 16:46:51 |
| 21 | tighter than the U.S. district court one, | 16:46:54 |
| 22 | we don't want to spend our resources on | 16:46:58 |
| 23 | this. | 16:47:00 |
| 24 | THE ARBITRATOR:  I think what I'm | 16:47:01 |
| 25 | hearing both sides, and Mr. Latzman, please | 16:47:02 |

00786

| | | |
|---|---|---|
| | PROCEEDINGS | |
| 2 | concur, that that is the standard that you | 16:47:05 |
| 3 | want me to apply and that you want me to | 16:47:07 |
| 4 | apply it in that manner.  And I will apply | 16:47:11 |
| 5 | it in that fashion. | 16:47:16 |
| 6 | And I assume that you are going | 16:47:17 |
| 7 | to address some of the issues that I had | 16:47:21 |
| 8 | with your prior motions.  We obviously have | 16:47:24 |
| 9 | a lot more evidence, and you are going to | 16:47:29 |
| 10 | provide me with a lot more evidence by that | 16:47:31 |
| 11 | time. | 16:47:34 |
| 12 | MR. LILLY:  We don't know what | 16:47:34 |
| 13 | your issues were with the prior motion. | 16:47:36 |
| 14 | MR. KENNEY:  There was no papers | 16:47:39 |
| 15 | exchanged.  There was no judgment issue. | 16:47:40 |
| 16 | There was only an indication that the | 16:47:43 |
| 17 | arbitration -- | 16:47:44 |
| 18 | THE ARBITRATOR:  Let me, so that | 16:47:46 |
| 19 | it's clear, I understand that the parties | 16:47:49 |
| 20 | would like to see if this can be done at | 16:47:53 |
| 21 | the motion level.  And we're going to apply | 16:47:56 |
| 22 | that standard.  And to the extent that I | 16:48:00 |
| 23 | can do that on either side, I will. | 16:48:05 |
| 24 | MR. BECKER:  Sure. | 16:48:09 |
| 25 | THE ARBITRATOR:  And I understand | 16:48:10 |

00787

| | | |
|---|---|---|
| 1 | PROCEEDINGS | |
| 2 | that it's the parties' desire that we | 16:48:11 |
| 3 | attempt to do that, rather than what is | 16:48:15 |
| 4 | normally the procedure in arbitration. | 16:48:19 |
| 5 | Is that true? | 16:48:22 |
| 6 | MR. LATZMAN:  That's true.  We | 16:48:22 |
| 7 | stipulated that the standard of review is | 16:48:25 |
| 8 | the standard that applies to a district | 16:48:29 |
| 9 | court, federal district court judge sitting | 16:48:31 |
| 10 | in Manhattan, sitting in New York City. | 16:48:34 |
| 11 | MR. BECKER:  And all it was is | 16:48:36 |
| 12 | that there was a comment that we heard from | 16:48:37 |
| 13 | some other case law that on review of a | 16:48:41 |
| 14 | summary judgment, motion to dismiss from an | 16:48:44 |
| 15 | arbitrator, whatever the standard, | 16:48:48 |
| 16 | Mr. DeWitt made an anecdotal point about | 16:48:50 |
| 17 | it, as I understood it. | 16:48:58 |
| 18 | THE ARBITRATOR:  Right.  Don't | 16:48:59 |
| 19 | read into that that I have a different view | 16:49:02 |
| 20 | of it.  This is your process.  The parties, | 16:49:04 |
| 21 | I think, have clearly indicated that they | 16:49:06 |
| 22 | would like to dispose of this in an | 16:49:08 |
| 23 | efficient manner and do it that way, to the | 16:49:10 |

Page 38

AS112907

24    extent we can.                                                    16:49:14
25              I was just making a comment about                       16:49:14

00788
1              PROCEEDINGS
2    why it wasn't done before.  I didn't give                         16:49:16
3    you detailed reason why I didn't grant your                       16:49:18
4    motion to dismiss and your motion for                             16:49:22
5    summary judgment.  And the reason I didn't                        16:49:24
6    give you detail is that we do try to save                         16:49:26
7    money.  One of our processes here is to do                        16:49:29
8    it faster, better and less expensively.                           16:49:31
9    And doing that costs a lot of money, so we                        16:49:33
10   don't.                                                            16:49:37
11             MR. BECKER:  Thank you.                                 16:49:37
12             MR. LATZMAN:  Thank you, sir.                           16:49:38
13             THE ARBITRATOR:  Anything else?                         16:49:39
14             MR. LILLY:  Under the process of                        16:49:40
15   collecting the exhibits.                                          16:49:43
16             THE ARBITRATOR:  They should be                         16:49:44
17   right here.                                                       16:49:45
18                                                                     16:50:19
19                                                                     16:50:19
20                                                                     16:50:19
21             (Time noted:  4:50 p.m.)                                16:50:19
22
23
24
25

00789
1
2
3                     I N D E X
4    WITNESS              EXAMINATION BY          PAGE:LINE
5    Martin Kenney        Continued Cross-Exam
6                         Mr. Latzman                706:10
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

00790
1                C E R T I F I C A T I O N                             16:50:19
2                                                                     16:50:19
3    STATE OF NEW YORK        )                                       16:50:19
4                             ss:                                     16:50:19
5    COUNTY OF WESTCHESTER    )                                       16:50:19
                                        Page 39

AS112907

```
 6
 7              I, APRIL PEARL SCHIRM, Court Reporter          16:50:19
 8    and Notary Public within and for the County of          16:50:19
 9    Westchester, State of New York, do hereby certify:      16:50:19
10                                                            16:50:19
11              That I reported the proceedings that          16:50:19
12    are hereinbefore set forth, and that such               16:50:19
13    transcript is a true and accurate record of said        16:50:19
14    proceedings.                                            16:50:19
15                                                            16:50:19
16              AND, I further certify that I am not          16:50:19
17    related to any of the parties to this action by         16:50:19
18    blood or marriage, and that I am in no way              16:50:19
19    interested in the outcome of this matter.               16:50:19
20                                                            16:50:19
21                                                            16:50:19
22              _____              16:50:19
23                     APRIL PEARL SCHIRM                     16:50:19
24                       Court Reporter                       16:50:19
```

Page 40

Exhibit 13

STEPHEN LATZMAN
ATTORNEY AT LAW

276 FIFTH AVENUE, SUITE 306
NEW YORK, NEW YORK 10001

TELEPHONE
(212) 532-3368

FACSIMILE
(212) 685-5731

_By Email (BDanowski@nfb.com)_
_and First Class Mail_

December 4, 2007

North Fork Bank
9025 Main Road
Post Office Box 1439
Mattituck, NY 11952
Attn: Subpoena Compliance, Legal Processing, Operation Services

Re: Subpoena, Gymway Holdings Ltd., Gymway Limited

Gentlemen:

 Please be advised that the referenced subpoena returnable at the International Centre for Dispute Resolution is withdrawn.

Very truly yours,

Stephen Latzman