UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

KENNEY, BECKER LLP and
EUGENE S. BECKER,

                                Plaintiffs,                  Docket 06 Cv 2975 (JSR)

      -against-

MARTIN S. KENNEY,

                                Defendant.

-------------------------------------------------------------------x


## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
## TO MOTION FOR SANCTIONS AND INJUNCTIVE RELIEF

STEPHEN LATZMAN (SL 6462)
Attorney for Plaintiffs
276 Fifth Avenue, Suite 306
New York, New York 10001
(212) 532-2268

# Table of Contents

| | |
|---|---|
| Preliminary Statement | 1 |
| Statement of Facts | 1 |
| Argument | |
|     1. The Subpoena Was Properly Issued | 6 |
|     2. Prior Notice of a Trial Subpoena Is Not Required | 8 |
|     3. Movants Do Not Have Standing To Bring This Application | 8 |
|     4. The Evidence Sought is Material to Issues in Dispute | 10 |
|     5. Sanctions and Injunctive Relief Are Not Appropriate | 12 |
| Conclusion | 15 |

## Table of Authority

**Cases**                                                                                                           **Page**

Volt Information Sciences, Inc. v. Board of Trustees of
Leland Stanford Junior University, 489 U.S. 468, 479                                                                7

Security Insurance Company of Hartford v. TIG Ins. Co.,
360 F.3d 322, 328-329 (2nd Cir, 2004)                                                                          7-8

Odfjell ASA v. Celanese AG,
348 F. Supp.2d 283, 287 (SDNY, 2004, Rakoff, J.)                                                                    8

Langford v. Chrysler Motors Corp.,
513 F.2d 1121, 1126 (2d Cir.1975)                                                                                   9

Young v. United States Department of Justice,
882 F.2d 633, 642 (2nd Cir. 1989)                                                                              9

Estate of Ungar v. Palestinian Authority,
400 F.Supp.2d 541, 554 (SDNY, 2005, McMahon, J.)                                                                    9

United States v. Miller, 425 U.S. 435                                                                               9

Carey v. Berisford Metals Corp., 1991 WL 44843, 8 (S.D.N.Y., 1991)                                                  9

Chazin v. Lieberman, 129 F.R.D. 97,98(SDNY.1990)                                                                    9

Molefi v. the Oppenheimer Trust, 2007 WL 538547,2 (EDNY, 2007)                                                      14

Night Hawk Limited v. Briar Patch Limited, LP,
2003 WL 23018833 (SDNY, 2003, Sweet, J)                                                                             15

American International Life Assurance Company v. Vasquez,
2003 WL 548736, 2-3 (SDNY, 2003, Baer, J)                                                                           15


**Statutes**

Section 7505 of the New York Civil Practice Law and Rules                                                           7, 8

Federal Rule of Civil Procedure 45                                                                                  8, 9, 10, 14, 15

Federal Rule of Civil Procedure Rules 30 & 31                                                                       8

## PRELIMINARY STATEMENT

This memorandum of law is submitted in opposition to the motion of defendant and Gymway Limited and Gymway Holdings Limited for sanctions and injunctive relief. The motion is wholly without merit and brought for an improper purpose. The trial subpoena to North Fork Bank, of which movants complain, was properly issued, returnable at the trial of the arbitration between the parties, sought material and relevant evidence and was subject to determination of admissibility by the arbitrator. The Bank did not appear at the hearing as commanded, the hearing has been suspended; the subpoena is moot and has been withdrawn. The moving parties do not have standing for the relief they seek. Injunctive relief is wholly improper. The subpoena was fully authorized by the Rules of The International Centre for Dispute Resolution.

## STATEMENT OF FACTS

Following the orders of this court, the parties proceeded to arbitration before the International Centre for Dispute Resolution (the "ICDR"), a part of the American Arbitration Association. Defendant is the claimant before the ICDR; plaintiffs are respondents.

After several postponements, the arbitration evidentiary hearing was scheduled to commence on November 26, 2007. Arbitration Order # 4 directed the parties to exchange copies of all exhibits to be offered at the arbitration evidentiary hearing. On October 29, 2007, claimant provided his proposed exhibits. Included were nine proposed exhibits consisting of ten requests from Mr. Kenney to plaintiff to transfer funds from the Martin Kenney Solicitor sub account to either Gymway Holdings Ltd or Gymway Limited (the "Gymway Entities"), (exhibit 8). Presumably these documents were to be proffered to establish respondents' knowledge of Claimant's law practice.

1

The documents show that between February 17, 2003 and October 8, 2003, claimant transferred $ 491,500 from Martin Kenney & Co., Solicitors to the Gymway Entities. Kenney alleges that the plaintiffs' assistance in the establishment of the bank account to which there transactions relate somehow shows compliance with his Partnership Agreement obligations or estops plaintiffs' enforcement thereof (exh 1, Amended Statement of Claim, ¶ 25). Plaintiff knew that defendant Kenney had some form of association with Gymway, but did not know the nature and extent of the relationship (Becker Aff'd ¶ 31).

On November 8, 2007, a trial subpoena to North Fork Bank was prepared for opening documents of the Gymway accounts. The subpoena was served on the bank on November 9, 2007. The subpoena directed North Fork Bank to appear at the International Centre for Dispute Resolution, at 1633 Broadway, New York, New York on November 26, 2007 to give testimony and produce documents before the International Centre for Dispute Resolution in case 5180T0001906. The subpoena's command to appear and testify was at all times subject to the direction of the arbitrator at the hearing who would determine the admissibility of evidence and whether documents were to be provided to the parties.

Also on November 8, 2007, a supplemental discovery demand was prepared and served on claimant's counsel. Among other things, demanded were the Gymway invoices referenced in the ten wire transfer. Claimant objected to the supplemental discovery request. After a hearing by telephone on November 13, 2007, the arbitrator's ruling affirmed the relevance of these documents, directed that claimant produce the referenced invoices and documents relating to the liquidation in Ireland of Interclaim, Ltd., or its affiliates or subsidiaries in claimant's possession.

On November 13, 2007, the results of an online report was received which showed that Gymway Limited was incorporated in Ireland on February 2, 2000, was previously known as

2

"Interclaim (Ireland) Limited" and that claimant Kenney is a director (exhibit 9). Plaintiff Becker had no recollection of a direct connection between Gymway and Interclaim (Becker aff'd ¶ 33).

The Amended Statement of Claim (exhibit 1) alleges that the First Amendment to the Partnership Agreement, from which the Extra Partnership Work designation springs, arose as a result of the formation of Interclaim Ltd. to which Mr. Kenney intended to "devote a substantial portion of his professional energies" (¶ 14), and the "anticipated completion of US$9.25 million of primary capitalization for the company" (¶ 19).

At the arbitration evidentiary hearing defendant and his counsel spoke of the Kenney relationship with Gymway, which was that he was sending money from his one pocket to another with regard to internal invoices reflecting the provision of *consulting services* (Becker aff'd ¶ 34). In his declaration submitted on this motion, at paragraph 18, claimant's counsel states that Mr. Kenney is the director in charge of Gymway Limited and Gymway Holdings Limited, a signatory of their North Fork Bank accounts, and the sole beneficial owner of the funds at issue.

The subpoena directed North Fork Bank to appear on November 26, 2007 at the International Centre for Dispute Resolution to give testimony and produce documents. North Fork Bank did not appear at the arbitration hearing as commanded by the subpoena.

On November 27, 2007, Mr. Lilly, defendant's counsel announced "Yesterday Mr. Kenney retained the Kasowitz law firm of this building following emergency application to quash the subpoena, ex parte subpoena, which Mr. Latzman told us about yesterday." Counsel for plaintiffs pointed out, and the arbitrator agreed, that no testimony would be allowed nor documents provided to the parties unless approved by the arbitrator. Responding to Mr. Lilly's statement, counsel for plaintiffs stated, " First, the documents were not produced, so they're not here. Second, I would think in the first instance it would be an arbitrator's issue as to whether the

3

documents, if produced, were -- are to be turned over or used." The arbitrator agreed. "The Arbitrator: If -- I think that's -- I agree at that point in the event that the documents, the dispute is honored and the document are produced, then I'll have a decision to make. At this point I don't think I have any decision I have to make or appropriate for me to make. Are we in agreement on that? Mr. Lilly: I didn't hear what you said, sir. The Arbitrator: As Mr. Latzman said at this point there's no decision for me to make. In the event the documents happen to be produced while this is going on, then I will have to make a decision with regard to that." Later the arbitrator again stated to defendant's counsel "You've moved to quash it [the subpoena] before the judge. We're going to let the judge deal with it. To the extent that the documents are produced, then it's a decision I have to make, and I'll address it at that time."

On the third day of hearings, in the midst of his cross examination and following the testimony of a non-party, defendant suggested a meeting to limit and simplify the issues for the Arbitrator. Defendant's told the arbitrator that he wished to make a "little proffer." Mr. Lilly said that his proffer "might change what we do this afternoon" (exhibit 11). After a brief meeting with counsel, the parties met for about five hours alone without the presence of counsel in this attempt to settle. The parties then resumed their appearance before the arbitrator at approximately 6pm that Wednesday evening. Mr. Kenney said, *inter alia*, that the parties were in settlement discussions with each other and that he had to speak to another interested party before there might be any further development concerning settlement (Becker aff'd ¶ 6).

Prior to the continuation of the cross examination of Mr. Kenney the next morning, Mr. Lilly suggested that the parties continue their discussions, "during the break" (exhibit 12). At the break, Mr. Kenney again suggested a meeting. At 11:57 Mr. Lilly informed the arbitrator "this is a proposal that is influx, and if anybody wants to add or subtract, let me know. The proposal is to

4

adjourned the hearings for the time being" . . . " and that the arbitrator . . . resolve the issues by review of the motion for summary judgment and the motion to dismiss supplemented by brief and including depositions" (exhibit 12). The parties and counsel met continuously until little before 4:00 PM, when the arbitrator was advised of an agreement and a stipulation was placed on the record by Mr. Lilly (exhibit 12). The stipulated provided for depositions of the parties (with defendant's taken by telephone to save him expense), and scheduled the drafting and submissions of the motions to the arbitrator, the final submission, respondents' reply on its intended cross motion, being due March 14, 2008.

The parties came to a standstill agreement on all issues relating to the further conduct of the arbitration. The agreement dealt with all issues as a result of Defendant Kenney's request to Plaintiffs to limit issues, contain costs, suspend the ongoing evidentiary hearing and explore the possibility of dispositive motions before the arbitrator. The arbitrator asked Mr. Lilly if "You want to convert it to a paper hearing." Mr. Lilly, answered, "Yes, more or less" (exhibit 12).

Mr. Kenney and Mr. Becker agreed to the cessation of the pending and contemplated proceedings subject to a briefing schedule for motions for summary judgment and to dismiss that the parties wanted to pursue (Becker aff'd ¶¶ 9-15). There was no mention of any further proceedings other than what the parties' had agreed to on the record on November 29, 2007 (Becker aff'd ¶ 15).

The purpose of the parties' agreement was to simplify the issues and avoid unnecessary expense. As Mr. Kenney said, "we're trying to invest in economy and save cost" (exhibit 12).

Because of Mr. Kenney's breach of the standstill agreement plaintiff has asked that the arbitration evidentiary hearing resume as soon as possible. Given Mr. Kenney's recent admission that he is the director in charge of Gymway Limited and Gymway Holdings Limited, a signatory

of their North Fork Bank accounts, and the sole beneficial owner of the funds, North Fork Bank testimony and documents are unnecessary. The subpoena has been formally withdrawn.

## ARGUMENT

### 1. THE SUBPOENA WAS PROPERLY ISSUED

Mindful that this motion has been brought for an improper purpose, plaintiffs submit the following. Arbitration proceedings are being conducted before the International Centre for Dispute Resolution (the "ICDR") in accordance with the parties' agreement to arbitrate contained in paragraph 9.18 of Article IX of the parties' agreement dated June 1, 1995 (the "Initial Agreement"). Paragraph 9.17 of Article IX of the Initial Agreement provides, "This agreement shall be subject to and governed by the laws of the State of New York." Article IX of the Initial Agreement was ratified by paragraph 21 of the First Amendment dated as of July 1, 1996 (the "First Amendment").

Arbitrator's Preliminary Hearing and Scheduling Order # 1 (exhibit 2) provides, in part, at paragraph 4 as follows: "(a) the parties stipulate that the substantive Law of New York shall apply; [and] (b) the parties stipulate that the Arbitral Law shall be the Federal Arbitration Act."

Order # 2 (exhibit 3) modified portions of Preliminary Hearing and Scheduling Order # 1. Order # 2 provides, in part, as follows: "9. Hearing and Scheduling Order # 1 is hereby further modified as follows: 10. Applicable Law and Rules: The following shall apply: (a) International Rules of the ICDR shall apply; and (b) New York, NY shall be the Seat of Arbitration."

The Federal Arbitration Act requires not only that agreements to arbitrate be enforced, but also that they be enforced in accordance with their terms. "Parties are generally free to structure their arbitration agreements as they see fit" and may therefore "specify by contract the rules under which [their] arbitration will be conducted". The Federal Arbitration Act "simply

requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms," <u>Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University</u>, 489 U.S. 468, 479. Herein the parties agreed that any claim or controversy arising out of or relating to the Partnership agreement "shall be settled in accordance with the rules of the American Arbitration Association" (Initial Agreement, Article 9.18).

In Order # 2, the arbitrator appointed by the ICDR of the American Arbitration Association ruled that the International Rules shall apply. The International Arbitration Rules of the ICDR in effect at all times relevant to this proceeding provides at subdivision 1 of Article 28, "The tribunal shall apply the substantive laws(s) or rules of law designated by the parties as applicable to the dispute."

Section 7505 of the New York Civil Practice Law and Rules is applicable to this dispute by reason of subdivision 1 of Article 28 of the ICDR rules. CPLR 7505 provides in pertinent part, "An arbitrator and any attorney of record in the arbitration proceeding has the power to issue subpoenas." The North Fork Bank subpoena, issued by plaintiffs' attorney in arbitration was properly issued under the authority of the ICDR rules, incorporating the law is New York designated by the parties as applicable to the dispute.

The Partnership Agreement choice of law provision provides that the agreement shall be subject to and governed by the law of the State of New York (Initial Agreement, Article 9.17). The choice of law provision in this case is broad, unqualified and all encompassing. The choice-of-law provision should be construed to incorporate New York procedural rules regarding arbitration, see: <u>Security Insurance Company of Hartford v. TIG Ins. Co.</u>, 360 F.3d 322, 328-329 (2nd Cir, 2004), including CPLR 7505, which allows for attorney issued subpoenas in arbitration.

2. **PRIOR NOTICE OF A TRIAL SUBPOENA IS NOT REQUIRED.**

The subpoena directed North Fork Bank to appear November 25, 2007 at 1633 Broadway, New York, New York on November 26, 2007 to give testimony and produce documents at the "trial-like final hearing." [see, Odfjell ASA v. Celanese AG, 348 F. Supp.2d 283, 287 (SDNY, 2004, Rakoff, J.) before the ICDR.

Neither CPLR 7505 nor FRCvP 45 requires prior notice to a party of a subpoena returnable at trial. FRCvP 45 authorizes the issuance of subpoenas, by the court or an attorney for a party for pretrial proceeding or for trial. Prior notice is required only "If the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial" FRCvP Rule 45(b)(1). The requirement that other parties be notified, like notice of a nonparty deposition under Rules 30 and 31, enables a party object to the production of the documents or other things or to monitor proceedings so as to protect their own interests. Such concern is not present when the subpoena is returnable at trial or a "trial-like" arbitration proceeding. Adequate protection is afforded the parties and the Gymway Entities because the subpoena's command to appear and testify is subject to the direction of the arbitrator at the hearing who would determine the admissibility of evidence and whether documents were to be provided to the parties.

The subpoena in question is a trial subpoena, not a subpoena requiring the production of documents before trial. Prior notice of the issuance of the subpoena was not required.

3. **MOVANTS DO NOT HAVE STANDING TO BRING THIS APPLICATION.**

Neither defendant nor the Gymway Entities have standing to bring this application. The subpoena commanded North Fork Bank to appear and testify at the arbitration evidentiary hearing. In the absence of a claim of privilege, a party usually does not have standing to object to

8

a subpoena directed to a non-party witness." <u>Langford v. Chrysler Motors Corp.</u>, 513 F.2d 1121, 1126 (2d Cir.1975). No claim of evidentiary privilege has been raised by defendant or the Gymway Entities. Nor can there be. The courts have not recognized a banker-client testimonial privilege. See <u>Young v. United States Department of Justice</u>, 882 F.2d 633, 642 (2nd Cir, 1989). Therefore, they lack standing to object to the subpoena. See, <u>Estate of Ungar v. Palestinian Authority</u>, 400 F.Supp.2d 541, 554 (SDNY, 2005, McMahon, J.)

A bank depositor or customer generally has no right to challenge a subpoena issued against a bank. <u>United States v. Miller</u>, 425 U.S. 435. In <u>United States v. Miller</u>, the Supreme Court held that bank records of a customer's accounts are the "business records of the banks" in which the customer "can assert neither ownership nor possession" and that the customer has no legitimate "expectation of privacy" in connection with documents voluntarily conveyed to banks and exposed to their employees. 425 U.S. 435, 440, 442.

Plaintiff sought to obtain evidence at trial of the ownership and control of the Gymway entities. The evidence sought is clearly relevant to the factual allegations posited by defendant. Defendants and Gymway have failed to articulate a sufficient privacy interest to give them standing to contest the subpoena. See <u>Carey v. Berisford Metals Corp.</u>, 1991 WL 44843, 8 (S.D.N.Y.,1991); cf <u>Chazin v. Lieberman</u>, 129 F.R.D. 97,98(SDNY.1990).

Defendant and Gymway do not have standing to bring an application for sanctions under Rule 45. Defendant and Gymway are not "person[s] subject to the subpoena" and do not have standing to bring this application under FRCvP 45(c)(1). North Fork Bank is the "person subject to the subpoena," not defendant or Gymway.

Only a "person subject to a subpoena" may seek sanctions for a party's failure to take reasonable steps to avoid imposing an undue burden or expense. Federal Rules of Civil Procedure Rule 45 (c), entitled <u>Protecting a Person Subject to a Subpoena,</u>

"(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply.

North Fork Bank not Gymway or defendant is the "person subject to a subpoena." Rule 45 provides Gymway with rights, as a person arguably affected by the subpoena to move to quash. Amendments to Rule 45 effective December 1, 2007, allows a "person affected by a subpoena," in addition to a "person subject to a subpoena," to move to quash or modify a subpoena. Amended FRCvP 45(c)(3), entitled Quashing or Modifying a Subpoena, provides at subdivision (B) "When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena . . ."

Although Rule 45(c)(3) allows a motion to quash or modify a subpoena by either a "person subject to or affected by a subpoena," only a person "subject to a subpoena" may seek relief under Rule 45(c)(1). The subpoena has been withdrawn. Neither defendant nor Gymway were "subject" to the subpoena.

## 4. <u>THE EVIDENCE SOUGHT IS MATERIAL TO ISSUES IN DISPUTE</u>

The subpoena sought evidence material, relevant and necessary to defending against defendant's claims in arbitration. The subpoena was issued in good faith and for a proper purpose.

In arbitration defendant seeks a declaration that he is not obligated to account for his provision or sale of legal professional services between October 1, 2002 and February 17, 2005,

the date of the partnership's dissolution (Exh 1, Amended Statement of Claim, ppg 28-31.) At paragraph 25 of the Amended Statement of Claim, defendant alleges that plaintiffs were aware of defendant's establishment of his law practice and helped defendant by providing a sub-client trust account as a part of the Partnership's master client trust account at its bank, Fleet Bank in New York, to facilitate the holding of some of Martin Kenney Solicitors's operating funds in New York.

Defendant refers to this paragraph 25 in arguing that he complied with the Partnership Agreement (see, Amended Statement of Claim, ¶ 56) concerning Extra Partnership Work and that the doctrine of equitable estoppel bars respondents' contractual rights to an accounting (see, Amended Statement of Claim ¶ 64).

On October 29, 2007, defendant provided his proposed trial exhibits. Included were nine proposed exhibits consisting of ten requests from defendant to plaintiff to transfer funds from the Martin Kenney Solicitor sub account at Fleet Bank to either Gymway Holdings Ltd or Gymway Limited (the "Gymway Entities"), (exhibit 8). Presumably these documents were to be proffered to establish respondent's knowledge of Claimant's law practice. The documents show that between February 17, 2003 and October 8, 2003, claimant transferred $ 491,500 from Martin Kenney & Co., Solicitors to the Gymway Entities.

The November 8, 2007 trial subpoena to North Fork Bank sought opening documents of the Gymway accounts and directed the bank to appear at before the ICDR on November 26, 2007 to give testimony and produce documents. The subpoena's command to appear and testify was at all times subject to the direction of the arbitrator at the hearing who would determine the admissibility of evidence and whether documents were to be provided to the parties.

At the arbitration evidentiary hearing, Mr. Kenney admitted his interest in the Gymway Entities. In his declaration submitted on this motion, at paragraph 18, claimant's counsel states that Mr. Kenney is the director in charge of Gymway Limited and Gymway Holdings Limited, a signatory of their North Fork Bank accounts, and the sole beneficial owner of the funds at issue. The documents show that between February 17, 2003 and October 8, 2003, claimant moved $491,500 from one of entity of his to another.

In the event of the resumption of the evidentiary hearing, the North Fork Bank documents will be unnecessary in light of defendant's recent admission on his sole beneficial interest in Gymway.

5. **SANCTIONS AND INJUNCTIVE RELIEF ARE NOT APPROPRIATE**

Plaintiff's attorney properly issued the subpoena with the authority provided by Article 28 of the Rules of the International Centre for Dispute Resolution, the parties' partnership agreement and the order of the ICDR. The subpoena sought relevant and material testimony and documents to be offered at the "trial-like" arbitration hearing to commence on the date, time and place of its return. Prior to any testimony being offered or documents turned over to counsel and offered into evidence, the parties were able to object to the admissibility of the proffer and the arbitrator would be in powered to rule upon those objections.

Article 20, subsection 6 of the ICDR Rules provides, "The tribunal shall determine the admissibility, relevance, materiality and weight of the evidence offered by any party." Plaintiff operated in a wholly transparent matter concerning the sought evidence. The subpoena was issued out of this court and was returnable to the arbitral proceeding. No documents or testimony would be made available to plaintiff or counsel without the express approval of the arbitrator appointed.

The subpoena's command, to appear and present testimony and bring documents, at the hearing commencing on November 26, 2007 was not complied with. After hours of settlement discussion on the third day of hearing, November 28, 2007, and after hours of negotiations, and discussions the following day, the parties agreed to suspend the arbitration hearing, and in the words of the arbitrator, convert the matter to a "paper hearing."

There are no further trial or hearing proceedings scheduled. Any issues concerning the propriety of the subpoena have been rendered moot by the failure of North Fork Bank to appear at the arbitration hearing and the parties' agreement to alter the nature of the arbitration proceedings pending. Mr. Kenney's subsequent unexpected filing of this unnecessary motion constitutes a repudiation of the agreement between the parties. Plaintiffs have requested that the arbitrator reschedule the continued arbitration hearing. Given Mr. Kenney's recent admission that he is the director in charge of Gymway Limited and Gymway Holdings Limited, a signatory of their North Fork Bank accounts, and the sole beneficial owner of the funds, North Fork Bank testimony and documents are unnecessary.

The parties' stand down agreement was made on Thursday November 29, 2007, rendering the trial subpoena moot. It was not until December 3, 2007 four days after the parties stand down agreement, and one week after the return date of the subpoena before the International Centre for Dispute Resolution, did defendant contact the court concerning the instant motion. There was absolutely no purpose whatsoever for the filing of this motion. At the court's suggestion the subpoena was formally withdrawn. Nonetheless the defendant persisted in their wrongful request. Defendant's motion was served on December 10, 2007, two weeks after the return date of the trial subpoena, ten days after the parties stand down agreements, and after the subpoena was formally withdrawn.

13

There is no showing that defendants are entitled to either sanctions or injunctive relief.

Rule 45(c)(1) imposes an obligation upon an attorney or party issuing a subpoena to take reasonable steps to avoid imposing undue burden or expense on "a person subject to that subpoena." If this duty is violated, which is not the case here, the court may impose a sanction. Rule 45(c)(1) is inapplicable to the facts presented. Defendant and Gymway are not the "person subject" to the subpoena. The subpoena is directed to North Fork Bank. North Fork Bank is the "person subject" to the subpoena, not Gymway or defendant. Effective December 1, 2007. Rule 45, subdivision (c)(3)(B) was amended to provide standing to quash or modify to entities such as Gymway or defendant as a person "affected by a subpoena". Subdivision (c)(1) was not similarly amended. The remedies available under subsection (c)(1) are available only to a "person subject to the subpoena."

The moving parties make no showing that the subpoena imposed undue burden or expense upon them. On November 27, counsel for defendant informed the arbitrator that an "emergency application" would be made to the court to quash the subpoena. The application was not filed until thirteen days later and after the subpoena was rendered moot by the failure of North Fork Bank to attend the hearing in compliance with the subpoena, after the hearing had been suspended, after the hearing was converted to a "paper hearing," after the parties' had entered into a stand still agreement and after the subpoena has been formally withdrawn. The subpoena has not imposed any undue burden or expense on the moving parties. Returnable a the trial-like evidentiary hearing and subject to the oversight by the arbitrator, plaintiff acted properly and took reasonable steps to avoid imposing undue burden or expense.

In <u>Molefi v. the Oppenheimer</u> Trust, 2007 WL 538547, 2 (EDNY, 2007) the court observed that "there is scant authority in this circuit as to when and under what circumstances

14

sanctions under Rule 45(c)(1) should be imposed." The court continued, "According to the 1991 Advisory Committee Notes, however, the rule's sanctions provision was intended primarily to protect "a *non-party* witness as a result of a misuse of the subpoena." Fed.R.Civ.P. 45(c)(1) advisory committee's note (1991) (emphasis added)." The non-party "subject to the subpoena" is North Fork Bank not defendant or Gymway.

Assuming *arguendo* that the subpoena was improperly issued, withdrawal of the subpoena obviated the need for the instant application. Sanctions are properly imposed and attorneys' fees awarded where the party improperly issuing the subpoena refuses to withdraw it, requiring the non-party to institute a motion to quash. Night Hawk Limited v. Briar Patch Limited, LP, 2003 WL 23018833 (SDNY, 2003, Sweet, J); American International Life Assurance Company v. Vasquez, 2003 WL 548736, 2-3 (SDNY, 2003, Baer, J).

The application before the court is wholly meritless and is being presented solely to harass, cause a necessary delay and needless expense to the plaintiff.

## CONCLUSION

For the reasons stated above, and as set forth in the accompanying declaration and affidavit, the court must deny the instant application and declare that the instant application was brought for an improper purpose.

Dated: New York, NY
      December 17, 2007

STEPHEN LATZMAN (SL 6462)
Attorney for Plaintiffs
276 Fifth Avenue, Suite 306
New York, New York 10001
(212) 532-2268