UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
............................................................................X
KENNEY, BECKER LLP and                      :
EUGENE S. BECKER,                            :
                                             :
                         Plaintiffs,         :
                                             :
            v.                               :   06 Civ. 2975 (JSR)
                                             :
MARTIN S. KENNEY,                            :
                                             :
                         Defendant           :
............................................................................X

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR SANCTIONS AND INJUNCTIVE RELIEF

 

Dimitry Joffe (DJ-6498)
KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
(212) 506-1700

*Attorneys for Martin S. Kenney, Gymway Limited and Gymway Holdings Limited*

Dated:  New York, New York
        December 20, 2007

# **TABLE OF CONTENTS**

| | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| ARGUMENT | 2 |
| I. Plaintiffs' subpoena was patently improper. | 2 |
|     A. Plaintiffs' CPLR argument is misguided and meritless. | 2 |
|     B. The subpoena is not a proper trial subpoena. | 3 |
| II. Sanctions and injunctive relief are proper and warranted here. | 6 |
|     A. Court can order sanctions and injunctive relief on defendant's motion. | 6 |
|     B. Plaintiff's proffered excuses are all invalid. | 8 |
| CONCLUSION | 10 |

# TABLE OF AUTHORITIES

**Cases**      **Page**

AIG v. Vazquez, 2003 WL 548736 (S.D.N.Y. 2003) ..................................................5

BASF Corp. v. The Old World Trading Co., 1992 WL 24076 (N.D. Ill. 1992) ..................4

Chambers v. NASCO, Inc., 501 U.S. 32 (1991)..........................................................7

Cootes Drive LLC v. Internet Law Library, Inc., 2002 WL 424647 (S.D.N.Y. 2002) .........7

Dodson v. CBS, 2005 WL 3177723 (S.D.N.Y. 2005) .................................................4

Dynegy Midstream Services v. Trammochem, 451 F.3d 89 (2d Cir. 2006) ......................2

Fidelity Federal Bank v. Durga Ma Corp., 386 F.3d 1306 (9th Cir. 2004) ......................3

Griffith v. U.S., 2007 WL 1222586 (S.D.N.Y. 2007) ..................................................7

IQ Products v. Onyx Corp., 48 Fed. Appx. 107 (5th Cir. 2002). ...................................4

McNerney v. Archer Daniels Midland Co., 164 F.R.D. 584 (W.D.N.Y. 1995)..................4

Molefi v. Oppenheimer Trust, 2007 WL 538547 (E.D.N.Y. 2007) .................................7

Murphy v. Board of Educ., 196 F.R.D. 220 (W.D.N.Y. 2000) ..................................7, 8

NBC v. Bear Stearns & Co., 165 F.3d 184 (2d Cir. 1999)............................................2

Night Hawk Ltd. v. Briarpatch Ltd., 2003 WL 23018833 (S.D.N.Y. 2003).....................7

Pitter v. American Express, 1984 WL 1272 (S.D.N.Y. 1984) .......................................4

Playboy Enters. Int'l Inc. v. On Line Entm't, Inc., 2003 WL 1567120 (E.D.N.Y. 2003) .....4

Revander v. Denman, 2004 WL 97693 (S.D.N.Y. 2004)..............................................4

Schlaifer Nance & Co. v. Estate of Andy Warhol, 194 F.3d 323 (2d Cir. 1999)................7

Security Ins. v. TIG Ins., 360 F.3d 322 (2d Cir. 2004) ................................................3

Volt Information Sciences v. Board of Trustees, 489 U.S. 468 (1989)............................3

This reply memorandum of law is respectfully submitted on behalf of defendant Martin S. Kenney and third parties Gymway Limited and Gymway Holdings Limited in further support of their motion for sanctions and injunctive relief.

## **PRELIMINARY STATEMENT**

Plaintiffs had previously filed, in rapid succession, two improper court actions in a futile effort to avoid arbitration of their dispute with defendant. Having placed the first action on a suspense calendar in favor of arbitration and having dismissed the second action outright, this Court admonished plaintiffs not to persist in their vexatious conduct. Disregarding the Court's warning, plaintiffs issued from this Court an ex parte subpoena in violation of the Federal Arbitration Act, misleadingly failed to inform the arbitrator about it, and withdrew it only when confronted with defendants' motion to quash the subpoena and for sanctions, in a transparent attempt to avoid the latter. The Court nevertheless permitted defendant's remaining motion for sanctions and injunctive relief to proceed, and set forth a briefing schedule pursuant to which defendant timely filed his moving papers on December 10, 2007.

These facts are undisputed. In plaintiffs' *Alice-in-Wonderland* view of them, however, it was all "a deliberate plan by [defendant] to attempt to occupy the time, effort and resources of this court and Plaintiffs" (Becker Aff. ¶ 2); plaintiffs themselves operated in "a wholly transparent" manner (Opp. Br. at 12); their federal court subpoena was authorized by New York's CPLR; and the filing of defendant's motion was "unexpected" and belated (Opp. Br. at 13). Fittingly, plaintiff's own affidavit in opposition to the motion is but a hodgepodge of wholly irrelevant, gratuitous and baseless attacks on defendant and his purported acts and motives in various other proceedings between the parties.

None of plaintiffs' shenanigans should detract from the merits of defendant's motion -- i.e., that the subpoena was unauthorized and defective (Point I below), and that plaintiffs' misconduct warrants the imposition of sanctions and injunctive relief sought by this motion (Point II below).

## ARGUMENT

### I. Plaintiffs' subpoena was patently improper.

#### A. Plaintiffs' CPLR argument is misguided and meritless.

It is undisputed that plaintiffs issued their subpoena from a federal district court. And it is equally clear that, as a matter of controlling Second Circuit law, the power of a federal court to issue arbitration subpoenas can be invoked only by the arbitrators -- not by parties to arbitration -- pursuant to the Federal Arbitration Act that "provides statutory authority for invoking the powers of a federal district court to assist arbitrators in obtaining evidence." NBC v. Bear Stearns & Co., 165 F.3d 184, 187 (2d Cir. 1999); Dynegy Midstream Services v. Trammochem, 451 F.3d 89, 96 (2d Cir. 2006). Plaintiffs do not even address -- let alone distinguish -- these authorities.

Because the relevant and controlling law is so clearly against them, plaintiffs are forced instead to take an utterly untenable position that their federal court subpoena is proper under the New York CPLR. As a threshold matter, the subpoena in question is a federal subpoena issued under Rule 45 of the Federal Rules of Civil Procedure -- not a state court subpoena issued according to the New York CPLR. Therefore, plaintiffs' contention that they have the authority to issue subpoenas pursuant to CPLR 7505 is simply a red herring. Had plaintiffs issued their subpoena from a New York state court, they might have conceivably had some colorable basis to argue that CPLR authorizes such subpoenas -- but they did not.

But even in that hypothetical scenario, plaintiffs' argument would be wrong on the merits. In arguing that CPLR applies, plaintiffs cite cases holding only that where the parties agree that their dispute should be governed solely by state law, the FAA does not preempt the parties' choice of law, and the state's procedural as well as substantive law applies to the dispute. See Volt Information Sciences v. Board of Trustees, 489 U.S. 468 (1989); Security Ins. v. TIG Ins., 360 F.3d 322 (2d Cir. 2004). Here, by contrast, the parties specifically stipulated that "the substantive law of New York shall apply [and] that the Arbitral Law shall be the Federal Arbitration Act," and the arbitration rules will be those of the American Arbitration Association ("AAA"). Lilly Decl. Ex. D at 2 (emphasis added).[1] Courts have interpreted such agreements as "electing federal procedural rules for arbitration and state substantive law." Fidelity Federal Bank v. Durga Ma Corp., 386 F.3d 1306, 1312 (9th Cir. 2004). Accordingly, the FAA would have precluded plaintiff's subpoena even if it were issued from a New York state court because the parties agreed that their arbitration would be governed by the FAA, not by New York arbitration law.

### B.  The subpoena is not a proper trial subpoena.

Plaintiffs argue that because their subpoena was "returnable at trial" (Opp. Br. at 8), it was a trial subpoena requiring no prior notice.[2] However, it is clear that this subpoena was in

---

[1]  The parties initially disagreed about which set of AAA's rules should apply; the arbitrator subsequently rejected plaintiffs' motion requesting the application of the Commercial Arbitration Rules rather than International Arbitration Rules. See Lilly Decl. ¶ 11. The arbitrator's determination that the International Arbitration Rules apply in no way modified the parties' agreement that the FAA governs the arbitration.

[2]  The prior notice requirement of Rule 45(b)(1) clearly applies to the subpoena: the Rule applies to all subpoenas that "command production of documents . . . before trial," and no trial has been scheduled in this Action -- indeed, the Action has been placed, and remains, on the suspense calendar pursuant to the Court's Order. Lilly Decl. ¶ 7. Plaintiffs submit no authority for their contention that the evidentiary hearings in arbitration constitute a "trial" for purposes of Rule 45(b)(1). In any event, their argument is wrong for other reasons as well, as shown below.

-3-

fact intended as a discovery tool, and Rule 45 does <u>not</u> authorize such use of trial subpoenas. In <u>BASF Corp. v. The Old World Trading Co.</u>, 1992 WL 24076 at *2 (N.D. Ill. 1992), the court ruled that purported trial subpoenas issued after the close of discovery and <u>made returnable on the first day of trial</u> were improper under Rule 45 because they were used as a discovery tool: "While trial subpoenas may be used to require those served to produce documents at trial for the purpose of memory refreshment or trial preparation, they may not be used as a means to engage in further discovery." As the Fifth Circuit Court of Appeals stated in <u>IQ Products v. Onyx Corp.</u>, "trial subpoenas are not intended as a backdoor for discovery that could have been obtained before trial." 48 Fed. Appx. 107, *4 (5th Cir. 2002).

Courts in this Circuit are in accord. In <u>Pitter v. American Express</u>, 1984 WL 1272 (S.D.N.Y. 1984), plaintiff's trial subpoena "sought that exhaustive disclosure to which defendants had originally objected when demands were presented in the form of Rule 33 interrogatories." The court quashed the subpoena, holding that "shotgun production demands in the midst of trial are an impermissible substitute for orderly pre-trial discovery." <u>Id.</u> at *6. Other courts have likewise quashed improper discovery subpoenas masqueraded as "trial" subpoenas.[3]

---

[3]   See <u>Revander v. Denman</u>, 2004 WL 97693, at *2 (S.D.N.Y. 2004) ("Subpoenas calling for 'any and all records' are exactly the kind of 'shotgun' subpoenas that should not be issued on the eve of trial."); <u>McNerney v. Archer Daniels Midland</u>, 164 F.R.D. 584, 588 (W.D.N.Y. 1995) ("[W]hen a plaintiff, as here, is aware of the existence of documents before the discovery cutoff date and issues discovery requests including subpoenas after the discovery deadline has passed, then the subpoenas and discovery requests should be denied."); <u>Dodson v. CBS</u>, 2005 WL 3177723, at *1-2 (S.D.N.Y. 2005) ("[T]he scope of the request [was] broad and clearly [was] designed for discovery, not last-minute trial needs (such as for originals of documents where copies were produced in discovery and there is a need for the original at trial)") (citing numerous cases for the proposition that trial subpoenas "may not be used . . . as means to engage in discovery after the discovery deadline has passed"); <u>Playboy Enters. v. On Line Entm't</u>, 2003 WL 1567120 (E.D.N.Y. 2003) ("[P]laintiffs took it upon themselves to serve subpoenas, without prior application to the Court, months after discovery closed, little more than a month before trial, upon a non-party from whom discovery was never before sought").

Plaintiffs' subpoena at issue in this case bears all the hallmarks of an improper discovery request identified by the courts in the cases cited above. First, the subpoena was issued almost six months after the Arbitration discovery cut-off. Lilly Decl. ¶¶ 14, 16, 20. Second, the subpoena requests "all documents" relating to the bank accounts of Gymway Limited and Gymway Holdings Limited -- which is precisely the type of a "shotgun" request that the courts have held to be improper. Lilly Decl. ¶ 27. See also AIG v. Vazquez, 2003 WL 548736, at *3 (S.D.N.Y. 2003) ("The sweeping subpoena seeking 'any and all records pertaining to the [underlying matter]' was prima facie improper.") (cited by plaintiffs). This broad request is all the more improper in this matter because, as discussed in the opening brief, discovery in international arbitrations is very limited, and "fishing expeditions" -- of which the subpoena is a prime example -- are not permitted. Third, the existence of these bank records was well known to plaintiffs before the discovery cut-off, but plaintiffs made no request that the arbitrator issue a subpoena for their production. Lilly Decl. ¶ 20, 23. Fourth, the subpoena sought discovery of many of the same documents that the arbitrator ruled should not be produced based on defendants' objection as to their relevance. Lilly Decl. ¶ 28. Accordingly, the subpoena is an improper discovery tool and not a trial subpoena.

Furthermore, the subpoena's request that North Fork Bank also appear and testify at the hearing is nothing but a ruse to give the subpoena the appearance of a trial subpoena rather than an improper discovery device. Plaintiffs have neither included the Bank's anticipated witnesses on their witness list, nor provided any notice to the arbitrator or defendants that they intend to call the Bank's representatives as witnesses at the final status conference before the hearing, when the order of witnesses was established by the parties and the arbitrator. Lilly Decl. ¶¶ 14-15. The subpoena does not designate any particular representative of the Bank whose testimony it seeks to

secure, or describe the matters on which the Bank's testimony is requested in order for the Bank to designate appropriate representatives to testify on its behalf. Id. ¶ 29. In these circumstances, the only conceivable Bank witness pursuant to the subpoena would be its custodian of the requested records, for the sole purpose of authenticating them at the hearing -- but the request for the production of those records itself constitutes improper discovery, as shown above.

Finally, this is how plaintiffs' counsel himself described the subpoena to the arbitrator at the beginning of the evidentiary hearing on November 26, 2007 (Lilly Decl. Ex. L at p. 12):

> I issued a subpoena to North Fork Bank for documents relating to Gymway Limited and Gymway Holdings Ltd. That subpoena is returnable this morning here. When I say here, I mean at 10th Floor, 1633 Broadway. I just want to coordinate it with front desk when the documents come that they know where it's going.

There is not a word in plaintiff's representation about any North Fork Bank witnesses -- just like there was never any hint about any such witnesses in the prior hearings before the arbitrator. Indeed, it was only after defendant had advised the arbitrator of his intention to move to quash the subpoena and for sanctions that plaintiffs for the first time referred to the subpoena as calling for witness testimony as well as documents. Lilly Decl. Ex. M, 7:2.

## II.  Sanctions and injunctive relief are proper and warranted here.

### A.  The Court can order sanctions and injunctive relief on defendant's motion.

Plaintiffs' threshold argument that defendant has no standing to object to or move to quash the subpoena, and cases they cite for that proposition, is irrelevant as defendant does not challenge the subpoena on this motion -- the subpoena has been withdrawn. In any event, defendant and the Companies would have standing to challenge the subpoena because they have privacy interests in their highly confidential banking records sought by the subpoena, and "courts in this circuit have found that individuals, whose banking records are subpoenaed, have a privacy

interest in their personal financial affairs that gives them standing to move to quash a subpoena served on a non-party financial institution." Griffith v. U.S., 2007 WL 1222586, at *1 (S.D.N.Y. 2007) (citing cases).

Likewise without merit is plaintiffs' argument that only persons subject to subpoenas, and not parties, can seek sanctions for Rule 45 violations. Plaintiffs cite no authority for that proposition, and their reliance on the language of Rule 45(c)(1) itself is misplaced. The Rule only provides that the court issuing the subpoena can impose appropriate sanctions on attorneys who failed to comply with their duties not to impose undue burden or expense on a person subject to the subpoena. The Rule does not say that sanctions could be awarded only on that person's application.

Plaintiffs also completely ignore defendant's showing that, in addition to and independently of Rule 45, the Court has inherent powers to sanction an abuse of the judicial purpose or vexatious conduct, both of which are amply present here. Chambers v. NASCO, Inc., 501 U.S. 32, 43-46 (1991); Schlaifer Nance & Co. v. Estate of Andy Warhol, 194 F.3d 323, 334 (2d Cir. 1999).

Finally, plaintiffs do not even mention -- let alone distinguish -- Murphy v. Board of Educ., 196 F.R.D. 220 (W.D.N.Y. 2000), where the court imposed sanctions upon a party's application; and Cootes Drive LLC v. Internet Law Library, Inc., 2002 WL 424647 (S.D.N.Y. 2002), where the court issued an injunction prohibiting further issuance of subpoenas on a party's motion to quash -- both cases cited in defendant's opening brief. And nothing in the cases plaintiffs cite preclude sanctions here. In Night Hawk Ltd. v. Briarpatch Ltd., 2003 WL 23018833 (S.D.N.Y. 2003), the Court ordered sanctions sua sponte. And in Molefi v. Oppenheimer Trust, 2007 WL 538547, at *3 (E.D.N.Y. 2007), the court also awarded sanctions

for the issuance of procedurally defective subpoena, observing that "[w]hen a subpoena should not have been issued, literally everything done in response to it constitutes 'undue burden or expense' within the meaning of Civil Rule 45(c) (1)."

### B. Plaintiffs' proffered excuses are all invalid.

Plaintiffs' remaining arguments do not excuse their misconduct. Their oft-repeated contention that their secret subpoena was proper because the discovery sought was subject to determination of admissibility by the arbitrator (Opp. Br. at 1, 2, 3, 8, 11, 12, 14) turns Rule 45 on its head. Thus, in Murphy v. Board of Educ., 196 F.R.D. 220, 227 (W.D.N.Y. 2000), the court observed, in awarding sanctions, that "[the sanctioned attorney's] suggestion that she may secretly subpoena personal medical records then argue about the relevance of these documents later demonstrates a distressingly unrepentant posture. Her subpoena-first, ask-questions-later approach is clearly contrary to Rule 45." And so too here -- plaintiffs' insistence that they may secretly subpoena defendant's banking records and then argue about their relevance and admissibility before the arbitrator is "distressingly unrepentant" and "clearly contrary to Rule 45."[4]

Plaintiffs' claim that they "operated in a wholly transparent manner concerning the sought evidence" (Br. at 12) is simply incredible. It is undisputed that they issued the subpoena without giving any notice to defendant until the hearing, when they expected the documents to be produced. It is undisputed that plaintiffs never disclosed the subpoena to the arbitrator when the

---

[4] The Becker Affidavit with its baseless and gratuitous attacks on defendant, incredibly claiming that this application was "a deliberate plan by [defendant] to attempt to occupy the time, effort and resources of this court and Plaintiffs" (Becker Aff. ¶ 2), is further evidence of plaintiffs' unrepentant and vexatious conduct. Because Becker's assertions are wholly unrelated to this application, they are not addressed on the merits; however, defendant Kenney does not admit and expressly denies Becker's allegations about his conduct and motives, and reserves all of his rights to further respond to those allegations.

-8-

arbitrator ruled on plaintiffs' parallel arbitration request for the Companies' records. It is undisputed that plaintiff did not disclose the subpoena even after the arbitrator had already ruled that most of the Companies' documents sought by the subpoena should not be produced based on defendant's relevancy objection. In sum, plaintiffs issued the subpoena ex parte, never served it on defendant, kept it secret from the arbitrator and even went behind the arbitrator's back in violation of his discovery ruling -- some transparency!

Plaintiffs' complaints about this motion -- i.e., the purportedly "unexpected filing of this unnecessary motion," and the fact that it "was served on December 10, 2007, two weeks after the return date of the trial subpoena, ten days after the parties stand down agreements, and after the subpoena was formally withdrawn" -- are preposterous. Defendant expressly advised plaintiffs that he intended to move to quash the subpoena and for sanctions on November 27, 2007. Lilly Decl. ¶¶ 30, 32.[5] Then, and at all times prior to the December 3, 2007 conference call with the Court, plaintiffs continued to insist that their subpoena was proper. It was not until that call, after defendants' counsel set forth the basis for their contemplated motion to quash and for sanctions, that plaintiff's counsel stated -- for the first time -- that he was withdrawing the subpoena. The Court then heard both sides' arguments about the propriety of the remaining motion for sanctions and permitted defendant to make that motion, setting forth December 10, 2007 as the due date for defendants to file and serve their papers in support of the motion.

---

[5] Defendant's counsel stated on November 27: "Mr. DeWitt, yesterday, Mr. Kenney retained the Kasowitz firm of this building following emergency application to quash the subpoena, ex parte subpoena, which Mr. Latzman told us about yesterday. We've been informed by our counsel that the subpoena was issued illegally for at least four reasons, one of which being that it was outside the jurisdiction of this arbitration. It was third-party discovery; it's not proper under the FAA. It was not in accordance with the Federal Rules of Civil Procedure. And probably other issues as well . . . . Kasowitz has been instructed to file an application to quash the subpoena and -- before Judge Rakoff -- and to move for sanctions against the respondents." Lilly Decl. ¶ 32 3:3-16.

Following that call, plaintiffs threatened defendant that they would cross-move for Rule 11 sanctions if defendant filed its motion. That threatened cross-motion was subject of another conference call with the Court on December 7, 2007, when the Court ruled that plaintiffs cannot bring their motion until defendant's motion has been adjudicated. Thus, plaintiffs' claim that defendant's motion was "unexpected" or belatedly filed is absolutely baseless.

Finally, plaintiffs' counsel explanation why they withdrew the subpoena is demonstrably disingenuous. Thus, the Latzman declaration states that the "North Fork Bank documents are unnecessary in light of defendant's recent admission that he is the director in charge of Gymway Limited and Gymway Holdings Limited, a signatory of their North Fork Bank accounts, and the sole beneficial owner of the funds," suggesting that as the reason for withdrawing the subpoena. Latzman Decl. ¶ 31. However, the subpoena was withdrawn with prejudice on December 3, 2007 -- well before "defendant's recent admission," which was made in papers filed on December 10, 2007. The subpoena was in fact withdrawn only in the face of defendant's application to quash the subpoena and for sanctions, in a transparent attempt to avoid the latter.

## CONCLUSION

For reasons stated above, the Court should award appropriate sanctions including reasonable attorneys' fees and costs incurred in connection with this motion, and order an injunction prohibiting plaintiffs from issuing any further subpoenas without leave of Court.

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP

By: _____
Dimitry Joffe (DJ-6498)

1633 Broadway
New York, New York 10019
(212) 506-1700

*Attorneys for Martin S. Kenney, Gymway Limited and Gymway Holdings Limited*

-10-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
............................................................X
KENNEY, BECKER LLP and
EUGENE S. BECKER,

                Plaintiffs,

                              06 Civ. 2975 (JSR)

      v.

MARTIN S. KENNEY,

                Defendant
............................................................X

## CERTIFICATE OF SERVICE

The undersigned, an attorney licensed to practice in the state of New York, hereby certifies that on December 20, 2007, he caused true and correct copies of Reply Memorandum of Law in Further Support of Motion for Sanctions and Injunctive Relief to be served by hand upon:

Stephen Latzman, Esq.
276 Fifth Avenue, Suite 306
New York, NY 10001
212-532-3368
Attorneys for Plaintiffs

Robert J. DeWitt, Esq.
International Centre for Dispute Resolution
1633 Broadway
New York, NY 10019
Arbitrator, Case No. 50 180 T 0019 06

International Centre for Dispute Resolution
Attn: Ms. Andrea H. Bugbee
1633 Broadway
New York, NY 10019
Case Manager, Case No. 50 180 T 0019 06

_____
Dimitry Joffe, Esq. (DJ-6498)