UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

KENNEY, BECKER LLP and
EUGENE S. BECKER,

                        Plaintiffs,                Docket 06 Cv 2975 (JSR)

    -against-

MARTIN S. KENNEY,

                        Defendant.

------------------------------------------------------------------x

## PLAINTIFFS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR RECONSIDERATION

STEPHEN LATZMAN (SL 6462)
Attorney for Plaintiffs
276 Fifth Avenue, Suite 306
New York, New York 10001
(212) 532-2268

# Table of Contents

| | | |
|---|---|---|
| Initial Statement | | 1 |
| Argument: | Plaintiffs Did Not Act In Bad Faith and Were Not Were Not Motivated By Improper Purpose | |
| 1. | The Subpoena Did Not Violate Any Prior Arbitration Order or Order | 3 |
| 2. | The Court Overlooked That Hearing Order No. 1 Was Modified by Order No. 2 to Incorporate the International Rule of the ICDR | 5 |
| 3. | The Subpoena Sought Evidence for a Proper Purpose | 7 |
| 4. | The Absence of Notice was Colorably Proper and Not for an Improper Purpose | 8 |
| 5. | Plaintiffs Do Not Have a History of Vexatious Conduct | 9 |
| 6. | Sanctions are Unwarranted | 11 |
| Conclusion | | 13 |

## Table of Authority

**Cases**            **Page**

Eisemann v. Greene, 204 F.3.d 393 (2d Cir. 2000)    1

Shamis v. Ambassador Factors Corp., 187 F.R.D.148, 151 (S.D.N.Y. 1999)    1, 2

United States v. International Brotherhood of Teamsters,
948 F.2d 338, 345 (2d Cir. 1991)    2

United States v. Seltzer, 227 F.3d 36, 40 (2d Cir. 2000)    2

Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 336 (2d Cir. 1999).

Dow Chemical Pacific Ltd v. Rascator Maritime S.A.
782 F.2d 329, 344 (2d Cir. 1986)    2

Security Insurance Company of Hartford v. TIG Ins. Co.,
360 F.3d 322, 328-329 (2nd Cir, 2004)    6

Odfjell ASA v. Celanese AG,
348 F. Supp.2d 283, 287 (SDNY, 2004, Rakoff, J.)    9

Matter of the Arbitration Between R3 Aerospace, Inc. and
Marshall of Cambridge Aerospace Ltd., 927 F.Supp. 121 (SDNY 1996)    10

Molefi v. the Oppenheimer Trust, 2007 WL 538547,2 (EDNY, 2007)    12

Night Hawk Limited v. Briar Patch Limited, LP,
2003 WL 23018833 (SDNY, 2003, Sweet, J)    12

American International Life Assurance Company v. Vasquez,
2003 WL 548736, 2-3 (SDNY, 2003, Baer, J)    12

Oliveri v. Thompson, 803 F,2d 1265, 1280 (2d Cir. 1986)    12

**Statutes**

Federal Rule of Civil Procedure 45    9, 12

9 U.S.C § 201, et seq.    10

Federal Rule of Civil Procedure Rules 11    12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

KENNEY, BECKER LLP and
EUGENE S. BECKER,

                                  Plaintiffs,                    Docket 06 Cv 2975 (JSR)

        -against-

MARTIN S. KENNEY,

                                  Defendant.

-------------------------------------------------------------------x

### PLAINTIFFS' MEMORANDUM OF LAW
### IN SUPPORT OF MOTION FOR RECONSIDERATION

#### Initial Statement.

    Plaintiffs respectfully move the court pursuant to Local Rule 6.3 for reconsideration or reargument of the Court's Memorandum of Order determining defendant's motion for sanctions entered on the dockets on March 10, 2008 (the "Order"). It is respectfully submitted that the Court overlooked factual matters or controlling decisions in rendering its decision.

    At the Order's conclusion, the Court refers to the issuance of the subpoena as a "Mistake." The Court states that it has "chosen to credit the new representations that plaintiff's counsel made to the court during oral argument on this motion that no further such mistakes will occur" [emphasis supplied]. It is respectfully submitted that reargument and reconsideration should be granted by reason of the Court having overlooked controlling decisions or factual matters that were put before it on the underlying motion. Eisemann v. Greene, 204 F.3.d 393 (2d Cir. 2000); Shamis v. Ambassador Factors Corp., 187 F.R.D.148, 151 (S.D.N.Y. 1999).

1

Upon reconsideration, plaintiffs respectfully submit that the "mistaken" issuance of a subpoena does not constitute bad faith. Although, as the Court has found the subpoena issued under the authority of the federal court may have been a "mistake," the record indicates that its issuance was not motivated by bad faith and not motivated by an improper purpose, such as delay or harassment.

In the Order, the Court states that the subpoena was "[B]latantly improper for numerous reasons, all of which suggest that plaintiffs had no proper basis for the subpoena and were acting in bad faith" (Order, pg. 5). It is respectfully submitted that the Court overlooked factual matters put before it on the motion, and that plaintiffs are entitled to reconsideration. Local Rule 6.3; Shamis v. Smbassador Factors Corp., 187 F.R.D. 148. 151 (SDNY, 1999)

A finding of bad faith is the "touchstone" for a sanctions award, see United States v. International Brotherhood of Teamsters, 948 F.2d 338, 345 (2d Cir. 1991); United States v. Seltzer, 227 F.3d 36, 40 (2d Cir. 2000). "Bad faith" claims are those which are "motivated by improper purposes such as harassment or delay." Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 336 (2d Cir. 1999). Respectfully, upon reconsideration the finding of bad faith cannot be sustained in light of the undisputed factual matters overlooked or misapprehended by the Court showing that the issuance of the subpoena was not "entirely without color" and was not for the "reasons of harassment or delay or for other improper purposes." Dow Chemical Pacific Ltd v. Rascator Maritime S.A. 782 F.2d 329, 344 (2d Cir. 1986). The requirement that sanctions may be awarded when a litigant acts in bad faith, vexatiously, wantonly or for oppressive reasons implies that there must be subjective bad faith. See, Dow Chemical Pacific Ltd v. Rascator Maritime S.A., supra. A decision to impose sanctions must be made with "restraint and discretion" Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 334 (2d Cir. 1999)

# ARGUMENT:
## PLAINTIFFS DID NOT ACT IN BAD FAITH AND WERE NOT MOTIVATED BY IMPROPER PURPOSE

**1.   The Subpoena Did Not Violate Any Prior Arbitration Ruling or Order.**

In finding "Bad Faith" the Court made several factual findings, which are contrary to the record. The court stated at page 6 of the Order that "[I]t appears that the subpoena sought at least some of the documents that the arbitrator had already ruled were not discoverable" and that "plaintiffs' violation is relevant to whether the subpoena had an improper purpose or was filed in bad faith."

The subpoena was issued on November 8, 2007 to North Fork Bank for evidence concerning non-parties Gymway Holdings Ltd and Gymway Limited, (the "Gymway Entities") to be presented at the arbitration hearing. Neither North Fork Bank nor either of the Gymway entities are parties to the arbitration proceeding. The arbitrator had made no ruling whatsoever concerning non-party discovery or third party subpoenas. In fact, that position endures to the present.

The arbitrator made no ruling on third party subpoena or non-party discovery. At oral argument, plaintiffs' counsel stated that the arbitrator when informed of the filing of the filing of this application in late December 2007 stated that he usually provides for review of subpoena before issuance, but no arbitrator orders herein provided for such review (Transcript p. 10, Lines 10-22, Oral Argument 1/3/08). Defendant's counsel does not and cannot dispute this. At page 11, line 23 through page 12, line 2, the court questioned defendant's counsel, "Your adversary says that usually – this arbitrator indicated that he usually indicates in advance that you have to apply to him for subpoena and here he overlooked that apparently. Is that right?" Defendant's counsel

3

responded, "Well, I'm not sure he overlooked or not. I was not in the arbitration myself." (Transcript page 12, lines 3-4).

The fact remains that there was <u>no</u> arbitrator's ruling or order on non-party discovery or third party subpoenas. Issuance of the subpoena did not violate any order or ruling concerning discovery from non-parties. Overlooking the clear facts in the records, the Court concluded that the subpoena sought documents "that the arbitrator had already ruled were not discoverable." (Order pg 6; Lilly Decl. ¶ 22). There was no such ruling. No arbitrator ruling or order dealt with discovery from a non-party or subpoenas to a non-party, defendant's repeated assertions to the court notwithstanding. The November 13, 2007 ruling constantly referred to by defendant did not deal with non-party discovery or non-party subpoenas and was five days after issuance of the November 8, 2007 subpoena.

The ruling referenced by the court (Order pg. 6) applied only to party discovery and occurred on November 13, 2007 (Lilly Decl. ¶ 22), five days *after* issuance of the subpoena on November 8, 2007 (Lilly Decl, exh A). Again, the defendant's submission and the Court's finding that the subpoena was issued in violation of an arbitration ruling are wrong. A November 8, 2007 subpoena could not ever be in violation of a later November 13, 2007 ruling, assuming the November 13 ruling related to the third party subpoena and non-party discovery – which it did not. Contrary to the Court's finding, there were no "previously set limits on third party subpoenas

Hearing Order No. 7 dated November 16, 2007 (Lilly Decl, exh I) memorializes the October 24, 2007 Status Hearing. The arbitrator granted plaintiffs (respondents herein) leave to submit a written demand for information regarding certain entities "allegedly affiliated with claimant" referred to in defendant's submissions in arbitration. Claimant was directed to respond

4

to such demand on or before November 13, 2007, "to the extent such documents *are in claimant's possession.*" In accordance with the order, plaintiffs prepared and served its discovery request to defendant on November 8, 2008 (Lilly Decl, exh J). Defendant generally objected to the November 8, 2008 discovery request to claimant (Lilly Decl, exh K). Defendant made no specific objection to documents concerning the Gymway Entities demanded of defendant. The hearing of November 13, 2007, dealt with claimant's objections *to the party document request to defendant.* After hearing claimant's objections, the arbitrator ordered claimant, defendant herein, to produce certain documents *in his possession* relating to banking transactions with the non-party Gymway Entities.

The record is clear that the arbitrator made no rulings or orders concerning non-party discovery and non-party subpoenas.

2. **The Court Overlooked That Hearing Order No. 1 Was Modified By Order No. 2 To Incorporate The International Rules Of The ICDR.**

Among the reasons cited by the Court for holding that the subpoena was "blatantly improper" is that under Hearing Order No. 1, the Federal Arbitration Act ("FAA") governs the arbitration and that under the FAA only arbitrators, not parties to the arbitration have authority to issue subpoenas (Order pg. 5). The court overlooked Hearing Order No. 2, which, among other things, modified Order No. 1 to provide that the International Arbitration Rules of the ICDR shall apply. Thus in assessing whether a party had a colorable basis to issue a subpoena the International Rules rule of the ICDR, as well as the FAA must be consulted.

The record contains Order No. 2 dated February 25, 2007 (Ex. E to Lilly Dcl., & exh 3 to opposition papers). Paragraphs 9 and 10 of Order No. 2 provides,

"9. Hearing and Scheduling Order # 1 is hereby further modified as follows:

5

"10. Applicable Law and Rules: The following shall apply: (a) International Rules of the ICDR shall apply; and (b) New York, NY shall be the Seat of Arbitration."

Authority to issue the subpoena must include an examination of the International Rules of the ICDR. Plaintiff properly consulted such rules prior to issuance of the subpoena.

The International Arbitration Rules of the ICDR in effect at all times relevant to this proceeding provides at subdivision 1 of Article 28. "The tribunal shall apply the substantive laws(s) or rules of law designated by the parties as applicable to the dispute." Herein the parties agreed that any claim or controversy arising out of or relating to the Partnership agreement "shall be settled in accordance with the rules of the American Arbitration Association" (Initial Agreement, Article 9.18). The Partnership Agreement choice of law provision provides that the agreement shall be subject to and governed by the law of the State of New York (Initial Agreement, Article 9.17). The choice of law provision in this case is broad, unqualified and all encompassing. The choice-of-law provision should be construed to incorporate New York procedural rules regarding arbitration, see: <u>Security Insurance Company of Hartford v. TIG Ins. Co.</u>, 360 F.3d 322, 328-329 (2nd Cir, 2004).[1]

The court's finding relied upon to Order No. 1 as determinative but overlooked the fact that Order No. 2 modified Order No. 1 to make the International Rules of the ICDR applicable to the proceeding, bringing into play state law. The subpoena, "mistakenly" issued as the court

---

[1] Joseph Lilly, counsel for defendant has acknowledged that New York procedural law applies to the arbitration proceeding. At the deposition of plaintiff Eugene Becker taken on February 15, 2008, counsel for the parties entered into the "Usual" New York deposition stipulations. Defendant's counsel, Joseph Lilly stated: "I'd like to stipulate that all rights provided by the C.P.L.R. and part 221 of the unified rules, including the right to object to any testimony except as to form or to move to strike any testimony at this examination is reserved." Mr. Lilly repeated the acknowledgement at the February 29, 2008 deposition of defendant.

6

found, was at the least colorably authorized by the International Rules of the ICDR and parties agreement.[2]

### 3. The Subpoena Sought Evidence for a Proper Purpose.

The subpoena was issued for a proper purpose. The purpose of the subpoena was to obtain evidence to present at the arbitration hearing.

The subpoena commanded the non-party to appear and testify at International Centre for Dispute Resolution. The subpoena was returnable at the commencement of the scheduled hearing. All evidence was subject to control by the Arbitrator, who indicated that he would review and rule on objections to all documents that may be produced pursuant to the subpoena. (See,. exh L. Lilly Decl). Plaintiffs did not *ever* attempt to circumvent the arbitration process and its control by the arbitrator. To the contrary, at the very commencement of the hearing plaintiffs' counsel on the record informed the parties and the arbitrator of the subpoena. The subpoena sought evidence material and relevant to issues before the arbitrator. In their papers submitted previously, plaintiffs show that the subpoenaed evidence related to matters then in dispute. Defendant did not contravert this proffer.

On October 29, 2007, defendant provided his proposed arbitration trial exhibits, including documents showing requests to plaintiffs to transfer funds from a Martin Kenney Solicitor sub account at Fleet Bank to either Gymway Holdings Ltd or Gymway Limited , both entities being non-parties (Opposition papers, exh 8). Presumably defendant intended to offer these documents to establish respondents' (plaintiffs herein) knowledge of claimant's law practice to support his defense of equitable estoppel. To establish at the arbitration that, *inter alia,* defendant's transactions were not at arm's length, and to rebut the assertion of knowledge that defendant

---

[2] This court was itself "unclear" concerning subpoena issuance in an arbitration proceeding (See, transcript of oral argument, 1/3/08, at pg. 8, line 3ff).

7

sought to impute to plaintiffs (concerning defendant's equitable estoppel argument) and to show that Gymway Entities were controlled by defendant, on November 8, 2007, plaintiffs made a supplemental discovery demand to defendant and issued a trial subpoena to North Fork Bank.

On November 13, 2007, the arbitrator ruled that disclosure concerning the transactions between Martin Kenney Solicitors and the Gymway Enities and defendant's interest therein was proper and should be provided. As Mr. Lilly stated at paragraph 22 of his declaration, "[T]he arbitrator ruled that defendants should produce the Companies' [the Gymway Entities] formation documents and invoices <u>to the extent such documents and invoices were in defendant's possession</u>. . . ." [emphasis supplied].

The trial subpoena issued November 8, 2007 to North Fork Bank sought testimony and documents at the hearing in the possession of the non-party bank concerning the non-party Gymway Entities, to establish defendant's interest in the Gymway Entities and the other matters referenced herein and the declaration of plaintiff Becker dated December 14, 2007 submitted on the previous motion. The documents sought from the non-party were not subject to any prior rulings or orders of the arbitrator.

The subpoena returnable at the trial-like arbitration hearing was for the purpose of compelling the presentation of evidence at the arbitration hearing on issues *raised by defendant* in his arbitration submissions and claims. The subpoena was for a proper purpose.

4. **The Absence of Notice was Colorably Proper and Not for An Improper Purpose.**

The Court cites the absence of advance notice of the subpoena as indicium of "bad faith." Respectfully, an examination of the record, shows that advance notice was arguably not required, and the failure to provide notice was not motivated by an improper purpose.

8

Without dispute, FRCvP 45 does not require prior notice of a trial subpoena (see FRCvP Rule 45(b)(1)). The subpoena was returnable at the commencement of the arbitration hearing, where the subpoena's command to appear and testify is subject to the control of the arbitrator.

An arbitration hearing has all of the earmarks of a trial: an adversary proceeding before a neutral decision; presentation of evidence, presentation of testimony, testing of witnesses by cross examination, all managed by a neutral decision maker for ultimate disposition. Indeed, this Court has described an arbitration hearing as "trial-like." Odfjell AAS v. Celanese AG, 348 F.Supp 2d 283 (S.D.N.Y. 2004, Rakoff, J.).

Plaintiffs did not seek to obtain evidence surreptitiously. To the contrary, the subpoena was returnable before the International Centre for Dispute Resolution on the date of the scheduled hearing. At the commencement of the arbitration hearing, without the subpoena having been honored, plaintiffs' counsel fully disclosed to the arbitrator and the parties the relevant facts concerning the subpoena.

The failure to provide advance notice of the subpoena returnable at the "trial-like" arbitration hearing was not without color and was not taken for reasons of harassment, delay or other improper purpose. The arbitration went forward. Plaintiffs had to deal with defendant's specious argument of equitable estoppel, to which the subpoena relates.

5. **Plaintiffs Do Not Have a History of Vexatious Conduct.**

In imposing sanctions, the court incorrectly characterized its Order of July 13, 2007 issued in the action Kenney, Becker LLP v. Kenney, 06 Cv. 7634 (JSR) ("Kenney II") to demonstrate "plaintiffs' particular history of vexatious conduct" (Order pg. 7). The Court described Kenney II as seeking "slightly different relief" from the instant case. Respectfully, the description of the claim and disposition in Kenney II is inaccurate.

9

In this action, commenced in state court, plaintiff sought an accounting under the parties' partnership agreement. The action was commenced in New York State Supreme Court on October 12, 2005. Defendant removed this action under the Federal Arbitration Act on April 17, 2006, more than six months later, and after the State court had granted an order to compel arbitration and the parties proceeded to arbitration. Plaintiff did not oppose removal.

Kenney II sought relief in state court under the New York State Lawyers Code of Professional Responsibility (the "Code') not under the parties' partnership agreement. Plaintiffs argued that it needed certain information from defendant to comply with its obligations under the Code. Upon removal by defendant, plaintiff moved to remand Kenney II arguing that the claim, based upon the parties' obligations under the Code was non-commercial and not removable under 9 U.S.C. § 201 et. seq. In support of its position, plaintiffs cited <u>Matter of the Arbitration Between R3 Aerospace, Inc. and Marshall of Cambridge Aerospace Ltd.</u>, 927 F.Supp. 121 (SDNY 1996). Defendant cross-moved to dismiss and to enjoin commencement of any further proceedings without leave of the court. Defendant argued that the commencement of Kenney II was "vexatious."

The Court distinguished <u>Matter of the Arbitration Between R3 Aerospace, Inc. and Marshall of Cambridge Aerospace Ltd.</u>, denied the remand motion and dismissed Kenney II. The court denied defendant's cross motion for an injunction. The court stated (pg. 6, Order July 13, 2007, annexed as ex. C to Lilly decl.), "Nevertheless the court cannot say that plaintiff's theory was so frivolous as not be 'warranted by existing law or by a nonfrivolous argument for extension, modification, or reversal of existing law of the establishment of new law'" [citation omitted].

Plaintiffs do not have a history of vexatious conduct. To the contrary, defendant's bringing the sanctions motion after the subpoena was dishonored, the arbitration hearing suspended, and the subpoena formally withdrawn smacks of improper litigation tactics, diverts focus and wastes judicial resources.

6. **Sanctions are Unwarranted.**

The Order awards defendant attorneys fees and costs expended in "preparing and arguing this motion." It is respectfully submitted that inasmuch as the subpoena was not complied with, the arbitration hearing suspended by agreement of the parties, and the subpoena was formally withdrawn, imposition of sanctions is improper.

It is not disputed that the non-party witness did not appear on November 26, 2007 in response to the subpoena. It is also not disputed that on November 29, 2007, the hearing was converted to a "paper hearing" by agreement of the parties (see transcript, exhibit 12 to opposition papers at page 25). As Mr. Lilly said in describing the parties' agreement, "It would essentially convert this [arbitration hearing] into motions, review of motions for summary judgment and our dismissal with replies and opposition papers and a couple of depositions. . ." (ibid) It is also not disputed that defendant's admission concerning his interest in the Gymway Entities at the hearing and subsequently rendered the subpoena unnecessary. In light of the foregoing, plaintiffs were entirely "blind sided" on December 3, 2007, when they learned that defendant intended to proceed with a motion to quash and for sanctions. Plaintiffs negotiated a standstill agreement, agreeing to suspend the hearing in the midst of defendant's cross examination, without the slightest inkling that defendant intended to file a needless motion directed at a moot subpoena.

Rule 11, while not applicable here, provides important guidance. A Court will not consider a sanctions motion unless an opportunity is provided to withdraw the offending papers. FRCvP Rule 11(c)(1)(A) provides that a motion for sanctions shall not be filed with or presented to the court unless the challenged paper is not withdrawn within 21 days after service of the proposed motion.

Although "there is scant authority in this circuit as to when and under what circumstances sanctions under Rule 45(c)(1) should be imposed" Molefi v. the Oppenheimer Trust, 2007 WL 538547, 2 (EDNY, 2007), reported decisions incorporate a Rule 11 type "Safe Harbor" provision. Sanctions are properly imposed and attorneys' fees awarded where the party improperly issuing the subpoena refuses to withdraw it, requiring the non-party to institute a motion to quash. Night Hawk Limited v. Briar Patch Limited, LP, 2003 WL 23018833 (SDNY, 2003, Sweet, J); American International Life Assurance Company v. Vasquez, 2003 WL 548736, 2-3 (SDNY, 2003, Baer, J). Any "undue burden" caused by the subpoena ceased at the latest on December 3, 2007 when the subpoena was formally withdrawn. Assuming *arguendo* that the subpoena was improperly issued, its mootness and withdrawal rendered sanctions unwarranted.

The Second Circuit has articulated a desire to mitigate costs occasioned by arguably frivolous conduct. In Oliveri v. Thompson, 803 F.2d 1265, 1280 (2 Cir. 1986), In a different context the Court stated, "As a general principle, it would be inequitable to permit a defendant to increase the amount of attorneys' fees recoverable as a sanction by unnecessarily defending against frivolous claims which could have been dismissed on motion without incurring the additional expense." The dishonor of the subpoena's command, the parties' standstill agreement suspending the hearing, the subpoena's mootness at the time of the standstill agreement and the subsequent formal withdrawal of the subpoena obviated the need for the application and served

no purpose other than to create a firestorm, divert attention from the issues in dispute in the arbitration and cause the waste of resources.

## CONCLUSION

For the reasons stated above, the motion for reconsideration should be granted and defendant's motion for sanctions denied.

Dated: New York, NY
      March 24, 2008

                                                  STEPHEN LATZMAN (SL 6462)
                                                  Attorney for Plaintiffs
                                                  276 Fifth Avenue, Suite 306
                                                  New York, New York 10001
                                                  (212) 532-3368

CERTIFICATE OF MAILING

State of New York  )
                   )ss.:
County of New York)

Stephen Latzman, an attorney, certifies following:

On March 24, 2008, I caused to be served the within Memorandum of Law by overnight courier, by depositing same in a prepaid properly addressed wrapper in an official depository under the exclusive care and control of the Federal Express Corporation within the state of New York upon the following:

Joseph Lilly, Esq.,
60 East 42nd Street, Suite 1338
New York, NY 10165

Dimitry Joffe, Esq,
Kasowitz, Benson, Torres and Friedman
1633 Broadway
New York, NY 10019

Dated:  March 24, 2008

_____
Stephen Latzman, Esq. (SL 6462)
Attorney for Plaintiff
276 Fifth Avenue, Suite 306
New York, New York 10001
(212) 532-3368

14