UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

KENNEY, BECKER LLP and
EUGENE S. BECKER,

                Plaintiffs,                Docket 06 Cv 2975 (JSR)

    -against-

MARTIN S. KENNEY,

               Defendant.

------------------------------------------------------------------x

## PLAINTIFFS' REPLY MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR RECONSIDERATION

Stephen Latzman, Esq. (SL 6462)
Attorney for Plaintiff
276 Fifth Avenue, Suite 306
New York, New York 10001
(212) 532-3368

# Table of Contents

| | |
|---|---|
| Preliminary Statement | 1 |
| Factual Matter in The Record Overlooked by the Court | 1 |
| A Court Must Exercise Restraint and Discretion | 3 |
| The Subpoena Did Not Violate a Prior Arbitration Order | 4 |
| The Court Overlooked Hearing Order No. 2 and The Applicably of the ICDR Rules | 7 |
| Defendant's Misstatement of the Issue of Relevancy and The Court's Mistake | 10 |
| The Subpoena Sought Evidence Material to Issues in Dispute | 12 |
| There was no Undue Burden | 13 |
| The Subpoena "Mistakenly" Issued Out of This Court Did Not Constitute Bad Faith | 15 |
| Conclusion | 15 |

## Table of Authorities

**Cases**                                                                                                       **Page**

United States v. International Brotherhood of Teamsters,
948 F.2d 338, 345 (2d Cir. 1991)      3

Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 336 (2d Cir. 1999)      3, 4, 9

Dow Chemical Pacific Ltd v. Rascator Maritime S.A.
782 F.2d 329, 344 (2d Cir. 1986)      3

Security Insurance Company of Hartford v. TIG Ins. Co.,
360 F.3d 322, 328-329 (2nd Cir, 2004)      8

**Statutes**

9 U.S.C § 201, et seq.      7, 8

NY Civil Practice Law and Rules, sections 2302(a) and 7505      8-9

## Preliminary Statement

Plaintiffs respectfully submit this Memorandum of Law in further support of their motion for reconsideration of the Court's order, dated March 6, 2008 (the "Order") and in reply to defendant's Memorandum of Law in Opposition.

## Factual Matter in the Record Overlooked by the Court

Plaintiffs' Memorandum of Law set forth particular factual matters in the record that the Court overlooked in rendering the Order. These matters entitling plaintiffs to reconsideration include:

- The Court overlooked factual matter in the record that shows that these plaintiffs had not violated any Arbitrator ruling.

- The Court overlooked factual matter in the record which shows that the Subpoena did not violate any order of the Arbitrator.

- The Court overlooked matter in the record that shows the Arbitrator had made no rulings concerning subpoenas.

- The Court overlooked matter in the record that shows the Arbitrator had made no rulings concerning non-party discovery.

- The Court overlooked matter in the record that shows that there were no "previously set limits on third-party subpoenas."

- The Court overlooked matter in the record that shows that Hearing Order No.7 dated November 16, 2007 memorializes an October 23, 2007 telephone conference granting plaintiffs leave to submit a supplemental discovery request to defendant and ordering defendant to produce responsive documents in his possession.

1

- The Court overlooked matter in the record that the subject subpoena to the non-party North Fork Bank was issued on November 8, 2007, prior to the telephone conference with the Arbitrator of November 13, 2007.

- The Court overlooked factual matter in the record showing that the telephone conference of November 13, 2007, posited by defendant as definitive and relied upon by the Court, was not memorialized by any writing, recording or transcript.

- The Court overlooked factual matter in the record which shows that defendant's description of the substance of the November 13, 2007, adopted by the Court is not objectively evidenced, but is based solely on the self-serving declaration of its counsel.

- The Court overlooked factual matter in the record which shows that the Arbitrator, in dealing with plaintiffs' party discovery request, found ownership and control of the Gymway Entities relevant and material and directed defendant to produce formation documents for the Gymway Entities in his possession, and documents concerning defendant's transactions with the Gymway Entities in his possession.

- The Court overlooked the fact that the subpoena sought evidence from the non-party North Fork Bank consisting of "Account Opening Documents" for particularly described accounts of the Gymway Entities.

- The Court overlooked the fact that the subpoena sought evidence that was relevant and material to issues in the arbitration, which issues had been raised by defendant, showing a clear proper purpose.

2

- The Court overlooked the fact that the subpoena sought such relevant and material evidence for use at the "trial like" hearing, showing a proper purpose.

- The Court overlooked the fact that any burden (and there was none) in complying with the subpoena was that of North Fork Bank, not defendant's or the Gymway Entities.

- The Court overlooked the fact that Hearing Order No. 2 to make the International Rules of the ICDR applicable to the arbitration proceeding expressly modified Hearing Order No.1.

- The Court overlooked the fact that Hearing Order No. 2, which provided for conduct of the arbitration proceeding pursuant to the International Rules of the ICDR, made applicable to the proceeding the parties' agreement that New York State Law apply.

### A Court Must Exercise Restraint and Discretion

Defendant's opposition memorandum does not dispute the recitation of the factors to be considered by a Court in imposing sanctions. "Bad faith" is the "touchstone for a sanctions award." United States v. International Brotherhood of Teamsters, 948 F.2d 338, 345 (2d Cir. 1991)."Bad Faith" claims are those, which are "motivated by improper purposes such as harassment or delay." Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 344 (2d Cir. 1999), and implies subjective "Bad Faith." See, Dow Chemical Pacific Ld. v. Rascator Maritime, 782 F.2d 329, 344 (2d Cir. 1986).

A Court must exercise "restraint and discretion" in a decision to impose sanctions. Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 323 (2d Cir. 1999). Plaintiffs

respectfully urge the Court to examine the factual matters in the record that the Order of March 6, 2008 overlooked.

Likewise, it is incumbent on a movant for sanctions relief to be circumspect, careful and accurate in its presentation to the Court. There is no room for misrepresentation, parsing or immoderate tone in such a serious matter. Regrettably, defendant and his counsel have again misrepresented several matters to this Court in their opposition brief. This is the latest manifestation of their improper litigation strategy.

### The Subpoena Did Not Violate a Prior Arbitration Order

Plaintiffs' moving Memorandum of Law on this motion for reconsideration pointed out that the Court's finding that the subpoena violated an Arbitrator's ruling, overlooked the record which indicated that the Arbitrator had made *no* ruling on subpoenas or discovery from other than a party. Making this finding, the Court apparently credited the false position of defendant and his counsel in their initial brief that the subpoena violated the Arbitrator's discovery ruling. Defendant argued, and the Court found, that the subpoena was issued *after* the Arbitrator's ruling disallowing it (see defendant's Memorandum of Law, December 10, 2007 pgs 10-11; Order, pp.6- 7). Defendant refers to certain "rulings" made on November 13, 2007 by the Arbitrator, but the record shows that the subject subpoena to the non-party was issued on November 8, 2007. This fact is crucial to the Court's finding that plaintiff violated an arbitration order. Confronted with this inescapable timeline, defendant now backs off from his misstatement about a violation of an Arbitrator's order.

Defendant read and continues to read into the November 13, 2007 telephone conference content that is at best unclear or does not exist at all to support what defendant *asserts* it to be. Other than a non-specific reference relating to *party* discovery in the Hearing Order No.7 (which

4

memorializes an October 24, 2007 telephone conference), there is no record whatsoever concerning the substance of the November 13, 2007 telephone conference with the Arbitrator, nor any indication how it is that plaintiffs have perpetrated a "violation" of an arbitral ruling on party discovery by the *prior* issuance of the subject *non-party* subpoena. The "ruling" which plaintiffs "violated" according to defendant and his counse, does not exist.

In advancing his position, defendant relies upon the self-serving declaration of his counsel to describe purported details of the November 13, 2007 conference and elide over the facts by misrepresenting that the conference resulted in a ruling that plaintiffs violated. The Court overlooked the fact that there is no record or written record of the November 13, 2007 conference. But, in this serious proceeding, a sanctions motion, defendant argues that plaintiffs be sanctioned for violating rulings made thereat.

At best, the substance of the November 13, 2007 telephone conference is in dispute. However, a dispute about a telephone conference dealing with party discovery should not, respectfully, occupy Court resources in dealing with the (defendant-alleged) violation of a non-existent non-party arbitral ruling. Plaintiff cannot be sanctioned for violating an arbitral or any order that does not exist, nor for "violating" a ruling, unrelated to the prior issued subject subpoena, when the very existence of that unrelated ruling as well as its substance are disputed.

Hearing Order No.7 followed a status hearing held on October 24, 2007. The Arbitrator granted plaintiff leave to submit a supplemental document request to defendant. Hearing Order No.7 directed that defendant respond with all requested documents "to the extent that such documents are in claimant's [defendant's] possession." The Court overlooked the clear facts in the record that no arbitration order dealt with discovery from non-parties and that the November 13, 2007 telephone conference dealt only with party disclosure. Defendant's assertion that the

Arbitrator ruled on the "very same documents" sought from North Fork Bank (Defendant's Memorandum of Law, p. 8) is simply not true; it is a misstatement. At best, defendant derives support from nothing other than defendant's own attorney's self-serving declaration.

Even defendant now accepts the fact that the November 13, 2007 telephone conference did not address a subpoena issued five days earlier. In his opposition brief, defendant no longer talks of plaintiffs' violating the Arbitrator's order. Rather, defendant and his counsel state that plaintiffs malevolently failed to inform the Arbitrator and them of the subject subpoena. (Opposition Memo P. 5). This is not the sanctioned conduct previously urged by defendant and accepted by the Court of plaintiffs' "violation" of a prior arbitral ruling (Order, p. 6) or plaintiffs' non-adherence to "previously set limits on third-party discovery" (Order, p.6, footnote 4).

Defendant now talks not of plaintiffs' violating the Arbitrator's order; instead he argues that plaintiffs "misleadingly failed to inform the Arbitrator about" the subject subpoena (Opposition Memorandum of Law, p. 1) and that it "was issued almost six months after the Arbitration discovery cut-off". (Opposition Memorandum of Law, p.5.) These submissions ignore the fact that the October 24, 2007 telephone conference, evidenced by Hearing Order No. 7, granted plaintiffs leave to serve defendant with a supplemental document demand for documents in his possession, and that discovery issues were very much then alive. There was no prohibition on the parties' entertaining non-party activity. As the Arbitrator had indicated, and as have plaintiffs noted at oral argument on January 3, 2008 and elsewhere, there was no such order. There was no such prohibition. The Arbitrator did not require the parties seek his leave for issuance of a subpoena.

Nor did plaintiffs violate any standing arbitration order concerning subpoenas. As stated in plaintiffs' moving brief, and not denied by defendant, the Arbitrator himself noted that he

6

usually established a framework for issuance of subpoenas – but had NOT done so in the present instance. (See, Plaintiffs' Memorandum of Law in Support of Motion for Reconsideration, pp. 3-4; referring also to Transcript, p. 10, lines 10-22, and pp. 11-12 Oral Argument. 1/3/08).

Assuming arguendo, the "ruling" following the November 13, 2007 related to non-party discovery (to which it clearly did not, despite defendant's careful misrepresentations to the contrary in his moving papers and at oral argument on January 3, 2008) it is respectfully submitted that the Court overlooked that there was no written order following the November 13, 2007 conference the substance of which is unclear. In absence of a relevant written order and in absence of specific directions, the finding of sanctionable conduct arising therefrom cannot be sustained. How can a party be sanctioned for conduct allegedly violative of an order, when the content of that order is disputed (assuming, arguendo, the fiction that the order relates to third party discovery)?

The mistake that the Court has made with respect to plaintiffs' "violation" of "previously set limits on third-party subpoenas" results from defendant's serial firestorm strategy that should now be clearly discernible in these proceedings.

### The Court Overlooked Hearing Order No. 2 and the Applicability of the ICDR Rules

In their moving Memorandum of Law on this motion for reconsideration, plaintiffs show that the Court overlooked facts in the record showing that Hearing Order No.2 modified Hearing Order No.1. In the Order the Court pointed to Hearing Order No.1 to establish that the FAA applied to the conduct of the arbitration proceedings. The Court overlooked Hearing Order No.2.

In his opposition brief, defendant glosses over the modification by Hearing Order No. 2 of Hearing Order No. 1. Defendant states that Hearing Order No. 2 provided that the International Rules of the ICDR shall apply (Opp, Memo, p.7). Plaintiffs agree. The rules of the

and Rules §§ 2302(a), 7505. The Court's finding in support of the determination of bad faith that Federal Arbitral Law, not New York Procedural Law, applied to the arbitration overlooked the fact in the record that by reason of Hearing Order No. 2 the International Rules of the ICDR were applicable to the proceeding, and that by reason thereof the laws of New York State applied to the dispute.

Respectfully, plaintiffs submit that the issuance of a subpoena in accord with the New York CPLR may have been mistaken, but there were warrants for doing so. It does not, axiomatically, amount to the bad faith, as the Court held by overlooking the fact that Hearing Order No. 2 made applicable to the arbitration proceeding the parties' agreement that New York law shall apply. Certainly, given the applicability of New York State law, *subjective* bad faith is absent. There was no plaintiff bad faith.

The defendant in its opposition papers does not deny that it attorney Joseph Lilly has acknowledged that New York procedural law applies to the arbitration proceeding, by offering New York deposition stipulations at the February 15, 2008 deposition of plaintiff and at the February 29, 2008 deposition of defendant.[1] There is no argument as among the parties that the New York CPLR has applicability to the arbitration proceeding. Multiple depositions were taken of the parties in accordance with the Civil Procedure Law and Rules of New York. Defendant and his counsel have conducted themselves in accordance with New York procedural law in the arbitration proceeding. Plaintiffs' "mistaken" use of the New York procedural rules in issuing the subpoena cannot amount to "bad faith". *Defendant's response* is bad faith.[2]

---

[1] A further deposition of defendant on March 23 was also conducted pursuant to New York deposition procedures.

[2] "Bad Faith" is "motivated by improper purposes such as harassment or delay," Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 344 (2d Cir. 1999). Defendant and his counsel Joffe should also be required to explain the purpose of serving defendant's reply brief in the

9

### Defendant's Misstatement of the Issue of Relevancy and The Court's Mistake

In support of the motion for reconsideration, plaintiffs show that the Court overlooked facts in the record showing that the subpoena was issued for a proper purpose, that the subpoena sought evidence for hearing of matters relevant and material to issues in dispute. The Court does not refer to this core issue in its Order of March 6, 2008.

In response to plaintiffs' submission about the clear relevancy of the subpoenaed documents, incredibly, defendant states, at page 7 of his Opposition Memorandum that "[t]he question of the relevancy of the subpoenaed documents was *never* before this Court on defendant's motion" (emphasis supplied).

The *"question of the relevancy of the subpoenaed documents"* **was** before this Court. There are extensive sections and references to such *relevancy* in plaintiffs' filings in opposition to the sanctions motion. The Court did not reference this core issue; it overlooked it.

In declaring that the question of relevancy was "never before the Court," defendant once again completely misstates the record. In his affidavit in opposition to the initial motion, Eugene Becker, Esq. sets forth the relevancy and materiality to the issues in dispute of the subpoenaed documents (see Affidavit of Eugene Becker dated December 14, 2007 pars 30-36). Plaintiffs' Memorandum of Law devoted an entire section to establish that the evidence sought was material to the issues in dispute and that the subpoena was therefore plainly issued in good faith and obviously for a proper purpose (see, Point 4, entitled, "The Evidence Sought Is Material To

---

initial motion upon Arbitrator Richard DeWitt and ICDR Case Manager Andrea Bugbee (See Certificate of Service of Dimitri Joffe attached to defendant's reply brief). What proper purpose could exist for Joffe, who does *not* represent defendant in the arbitration proceeding, to serve his brief upon them? Defendant and his counsel should also be called on to give details of the parties on whom their moving papers were served. Plaintiffs are concerned that service on the Arbitrator compromised him and the process.

Issues In Dispute" at pgs 10-12). Defendant's response? "It never happened"! Whether resulting from inexperience, or as defendant's actions throughout suggest, part of a pattern of wrongful conduct, defendant's gross misstatement of the record must be addressed. The Court having relied upon defendant's obviously false statement must grant reconsideration.

Issues of materiality and relevance of the subpoenaed evidence for use at the hearing were before the Court on the initial motion. Defendant and his counsel focused on trashing plaintiffs by ambushing them by this motion and did not make a submission in the moving papers as to relevancy. The Court followed defendant's falsity on this and did *not* deal with the core issue of relevancy in its inquiry into bad faith. This was defendant's intention: if it were obvious as it was and is that the documents sought by plaintiffs were relevant to issues in the arbitration, *especially to an imaginative but false and wasteful argument **raised by defendant** on equitable estoppel,* defendant would then not be able to even begin to argue "bad faith".

It is truly beyond any reasonable explanation how defendant can ignore plaintiff's detailed recitation on the initial motion of the relevance and propriety of seeking evidence concerning ownership and control of the Gymway Entities and assert that the issue was *"never"* before the Court. The Court overlooked these facts in the record. Reconsideration must be granted.[3]

### The Subpoena Sought Evidence Material to Issues in Dispute

The Court overlooked facts in the record establishing that the subpoena sought matter determined by the Arbitrator to be relevant and material to issues in dispute. The subpoena called for North Fork Bank to testify at the arbitration hearing and bring "Account Opening

---

[3] Defendant, it is clear, would like this Court to ignore the relevancy of the ownership and control of Gymway Entities so that at arbitration plaintiffs' hands will be tied behind their backs. And better to ignore this issue or this firestorm sanctions motion would collapse when self-evident relevancy is revealed.

Documents" relating to account number 964011386 in the name of Gymway Limited and account number 9614014453 in the name of Gymway Holdings Ltd.

The Court overlooked facts in the record that the Arbitrator had ruled that transactions between Martin Kenney Solicitors and the Gymway Entities and ownership and control of the Gymway Entities are material to issues in the arbitration. The defendant does not dispute this position set forth in plaintiffs' moving brief herein (see page 8 moving Memorandum of Law). Defendant provided invoices (the authenticity of which are disputed) at the arbitration hearing. Defendant did not provide the formation documents. Defendant has offered an "equitable estoppel" argument in the arbitration and has continuously referred to the Gymway Entities bank account activity that involved North Fork Bank. The Subpoena sought evidence for use at the arbitration hearing of "Account Opening Documents" relating to two specifically designated bank accounts. The Arbitrator determined that ownership and control were relevant to the issues in the arbitration.

The "Account Opening" documents that a bank would have in connection with designated accounts are resolutions of the entity authorizing the opening of the account and designating the appropriate signatories. These documents would show ownership and control of the corporate bank account, items specifically placed in issue by defendant's position that somehow his transactions with the Gymway Entities were such that the plaintiffs had a quality and volume of knowledge of defendant's law practice that somehow supported his equitable estoppel argument. The documents sought from the North Fork Bank were specific and detailed. This was no "fishing expedition." The request was made because of the issue raised by this defendant – not the Plaintiffs.

There was no request made of defendant for "Account Opening Documents." These documents sought from the non-party North Fork Bank were not sought from the defendant. The Arbitrator made no ruling on the propriety of document production from or subpoenas to the non-party. There were no "prior discovery" limitations as this Court has stated, and clearly had in mind: "that does not excuse parties from adhering to previously set limits on third party subpoenas" (Memorandum Order, p. 6, fn 4). Respectfully, the Court overlooked factual matter in the record showing the subpoena was not in contravention of any Arbitrator ruling or order.

### There was No Undue Burden

The Order found that the subpoena imposed an undue burden on a third party, but awarded sanctions payable to defendant. It is respectfully submitted that the Court overlooked matters in the record, which establish that there was no undue burden, that the conversion of the hearing to a "paper hearing" mooted the subpoena and its subsequent formal withdrawal mitigated any burden imposed on the third party.

While the Court held that all done in response to an improper subpoena is "undue", the record is devoid of any evidence to show what the third party did (other than counsel's statement that the bank began to assemble documents). The Court overlooked the fact that the "burden" ceased, at the latest with the formal withdrawal of the subpoena on December 3, 2007.

Defendant's statement, at page 11 of its Memorandum of Law without citation to the record that plaintiffs "persisted in their claim that the subpoena was perfectly proper" is absolutely without any basis at all, and another example of defendants repeated mischaracterization of the record. At footnote 1 on pg 11-12 of its memo, defendant's counsel repeats this assertion, "Plaintiffs' counsel continued to insist that their subpoena was proper," citing Lilly Declaration pars 32 –35 in support. An examination of the cited declaration provides

yet another example of the blatant mischaracterization of the record by defendant and counsel. Paragraphs 32 and 33 concern the arbitration proceedings of November 27. Paragraph 34 concerns the December 3 telephone conference with the Court. Paragraph 35 states that North Fork Bank did not produce documents on the return date. There is not one word in any of the paragraphs referred to by defendant to suggest that that plaintiff continued to insist the subpoena was proper until December 3 as defendant counsel represents.

There was no mention whatsoever of the subpoena subsequent to the morning of November 27, 2007, when Mr. Lilly succinctly summarized defendant's position. Had there been discussion of the subpoena, the plaintiffs certainly would have dealt with it formally on the record within the context of the parties' standstill agreement made November 29, rather than having to face defendant's ambush -- this unnecessary and truly vexatious motion for sanctions.[4]

The Court overlooked matters in the record showing that the plaintiff did take steps to avoid imposing undue burden or expense on a person subject to the subpoena. The subpoena was mooted on November 29, 2007 and formally withdrawn on December 3, 2007. The Order imposing sanctions for briefing and arguing the motion overlooked the fact that the reasonable steps were taken before briefing and argument.

---

[4] Defendant initiated settlement discussion on November 28, 2008. The next morning, defendant suggested a process to convert in the first instance the arbitration proceeding to a "paper hearing" to save expense. As part of the standstill agreement, the parties' agreed on November 29, 2008 to suspend the hearing, conduct party depositions and the submission of written dispositive motions to the Arbitrator. The Subpoena returnable at the offices of the ICDR was mooted with the parties' agreement. In light of the parties' agreement, plaintiffs were absolutely shocked four days later when they learned that defendant intended to file a motion to quash and for sanctions. For a detailed rendition of defendant's duplicitous conduct, see Becker Affidavit Pars.6-16

### The Subpoena "Mistakenly" Issued Out of This Court Does Not Constitute Bad Faith

Defendant did not dispute plaintiffs' position that the requirement that sanctions be awarded when a litigant acts in bad faith implies subjective bad faith. The Court has described issuance of the subpoena as a "mistake." At oral argument the Court further implied that issuance of the mistaken subpoena out of the Federal Court was not intentional by stating, "If you had thought, even one second of about it, you would have, at an absolute minimum, asked this Court whether you can use its name in a suspended case for a subpoena for any purpose whatsoever" (Transcript, oral argument January 3, 2008, p. 5 lines 19-22).

Issuance of the "mistaken" subpoena was not in bad faith, and was not motivated by any improper purposes, whether harassment, delay or other improper behavior.

### Conclusion

Plaintiffs have shown core factual matters overlooked by Court in the Order. Plaintiffs have shown how when confronted with the undisputed factual record, defendant has altered his position. As stated, a court must act with restraint and discretion in this proceeding. Respectfully, the Court must also examine defendant's conduct herein. Plaintiff has pointed to defendant's previous egregious misrepresentations, bad faith parsing and misstatements. The court is urged to review plaintiff Becker's affidavit of December 14, 2007, with regard to defendant's duplicitous conduct herein. There is no way to describe defendant's application as anything other than a dishonest ambush with dishonest predicates. Such tactics are, respectfully, *never* acceptable, particularly in a serious proceeding such as the instant one. The court overlooked matter in the record showing the real function and purpose of defendant's wasteful motion for sanctions, filed after the arbitration was suspended on November 29, 2007 in the midst of defendant's cross examination of his meritless claims after securing from plaintiff an agreement to convert the

15

proceeding to a "paper hearing" to save expense, and after the subpoena was formally withdrawn.

It is therefore, requested that by reason of the Court having overlooked factual matters in the record, the motion for reconsideration should be granted, the Order of March 6, 2008 vacated and defendant's motion denied.

Dated: New York, NY
April 7, 2008

STEPHEN LATZMAN (SL 6462)
Attorney for Plaintiffs
276 Fifth Avenue, Suite 306
New York, New York 10001
(212) 532-2268

## CERTIFICATE OF MAILING

State of New York  )
                          )ss.:
County of New York)

Stephen Latzman, an attorney, certifies following:

On April 7, 2008, I caused to be served the within Reply Memorandum of Law by overnight courier, by depositing same in a prepaid properly addressed wrapper in an official depository under the exclusive care and control of the Federal Express Corporation within the state of New York upon the following:

Joseph Lilly, Esq.,
60 East 42nd Street, Suite 1338
New York, NY 10165

Dimitry Joffe, Esq,
Kasowitz, Benson, Torres and Friedman
1633 Broadway
New York, NY 10019

Dated: April 7, 2008

_____
Stephen Latzman, Esq. (SL 6462)
Attorney for Plaintiff
276 Fifth Avenue, Suite 306
New York, New York 10001
(212) 532-3368

17