```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
KENNEY, BECKER LLP, and EUGENE S.    :
BECKER,                              :
                                     :   06 Civ. 2975 (JSR)
             Plaintiffs,             :
                                     :   MEMORANDUM ORDER
        -v-                          :
                                     :
MARTIN S. KENNEY,                    :
                                     :
             Defendant.              :
------------------------------------ x
```

JED S. RAKOFF, U.S.D.J.

    By Order dated March 6, 2008, the Court granted defendant Martin S. Kenney's motion to impose sanctions on plaintiffs Kenney, Becker LLP and Eugene S. Becker for their wrongful issuance, under the purported authority of this Court, of a third-party subpoena in the arbitration proceedings ongoing between the parties. See Order of Mar. 6, 2008 ("Order"). On March 24, 2008, plaintiffs moved for reconsideration pursuant to Local Rule 6.3. As the motion raises no factual matters or controlling authority that the Court overlooked in reaching its earlier result and that reasonably might have altered that result, see Shrader v. CSX Transp., 70 F.3d 255, 257 (2d Cir. 1995); S.D.N.Y. Local Civil Rule 6.3, the motion is denied.

    As an initial matter, it must be noted that nowhere in plaintiffs' motion for reconsideration do they challenge the first and most fundamental basis on which the Court found the subpoena to be improper: that it purported to be issued in connection with this case in this Court despite the fact that the Court had fully and unambiguously stayed the case for all purposes pending completion of

arbitration. As the Court stated at oral argument, it is inconceivable that counsel could in good faith have arrogated to himself the Court's subpoena power under those circumstances without, at a minimum, inquiring with the Court in advance. See transcript, 1/3/08.

Nor does the motion for reconsideration raise any non-frivolous challenge to the second and third bases cited by the Court in its Order. As to the second, which was that plaintiffs could not possibly have believed that the arbitration rules granted them the authority to issue the subpoena, plaintiffs' argument is apparently as follows: that the Court "overlooked" that Hearing Order No. 2 modified Hearing Order No. 1; that Hearing Order No. 2 invoked the rules of the International Arbitration Rules of the International Centre for Dispute Resolution, which therefore also "must be consulted," Pl. Mem. at 5; that those rules direct adherence to the substantive rules designated by the parties; that the parties designated the law of New York; and that the subpoena was authorized under the procedural rules of New York. Yet this convoluted argument misses the fundamental threshold point raised by the March 6 Order: that it is "border[ing] on frivolous" to claim authority under New York State procedural rules for a subpoena issued under the aegis of a federal district court. See Order at 5-6 n.2. What previously bordered on frivolous is, when raised a second time, decisively so.

Referring to the third basis on which the Court found the subpoena improper, that it was not accompanied by prior notice,

plaintiffs - incredibly - raise again the same argument about a "trial subpoena" that the Court flatly and explicitly rejected as "completely meritless." See Order at 6 n.3.

Aside from all this, plaintiffs spend the majority of their submissions describing the "factual matters" allegedly overlooked by the Court in connection with its finding that the subpoena "sought at least some documents that the arbitrator had already ruled were not discoverable." Order at 6. A slightly more detailed account of the relevant chronology is perhaps warranted. According to the record before the Court on the underlying motion, on November 8, 2007, at the arbitrator's invitation, plaintiffs submitted a limited supplemental request for documents in defendant's possession, including invoices and both formation documents and corporate documents and resolutions of Gymway Holdings Limited and Gymway Limited. See Respondents' Discovery Requests, Ex. J to Declaration of Joseph H. Lilly, III, in Support of Motion for Sanctions and Injunctive Relief ("Lilly Decl."). On that same day, before the arbitrator had ruled on the requests, plaintiffs' counsel issued the subpoena here at issue to third party North Fork Bank, seeking some of the very same documents, including corporate documents and resolutions of the Gymway companies. On November 9, 2008, defendant submitted objections to the supplemental requests to the arbitrator, see Ex. K to Lilly Decl., and on November 13, the arbitrator held a hearing during which he ruled that defendant should produce formation documents and invoices, but not corporate documents and resolutions.

Lilly Decl. ¶ 22.[1] At this hearing, plaintiffs in no way indicated that they had already issued a subpoena to obtain those very corporate documents from a third party.

Based on the above account, plaintiffs claim that the Court's Order erred, first, in finding that the subpoena violated a ruling "already" made by the arbitrator, because the arbitrator did not technically rule on the documents until after the subpoena was issued. The Court refuses to take this game of semantics as a serious argument. The fact is that plaintiffs went outside the process put in place by the arbitrator in an attempt to evade the arbitrator's control over discovery; it is immaterial that the process did not culminate in a ruling until after the offensive conduct (at which time, plaintiffs made no effort to bring the possible inconsistency to the arbitrator's attention).

Plaintiffs also claim that the Court erred in describing the arbitrator's ruling as applying to the same documents described in the subpoena, because the ruling concerned documents in defendant's possession only, while the subpoena sought documents from a third

---

[1] In their motion for reconsideration, plaintiffs make much of the fact that the arbitrator's November 13 ruling is not memorialized in writing and that, therefore, the substance of that ruling is "at best" in dispute. Plaintiffs' Reply Memorandum of Law in Support of Motion for Reconsideration ("Pl. Reply Recons."), at 5. However, the description of the ruling offered by plaintiffs in the declaration accompanying their opposition to the sanctions motion provides an account identical, in the relevant respect, to that offered by defendant: "[T]he arbitrator directed that claimant produced the invoices . . . and documents relating to the liquidation of [another company]." Declaration of Stephen Latzman in Opposition at ¶ 16.

4

party. The documents sought from the third party, however, were the same documents sought from defendant - albeit, perhaps, on different pieces of paper. While the Court appreciates the point that seeking these documents from a third party may not have violated the letter of the arbitrator's ruling, it certainly violated the spirit, and remains pertinent to the Court's overall finding - based on numerous factors of which this is only one - that plaintiffs acted in bad faith.[2]

Next, plaintiffs argue that the Court "overlooked" their "core" argument, raised with respect to the underlying motion, that the documents sought by the subpoena were "relevant" to the subject matter of the arbitration. Pl. Reply Recons. at 10. The Court agrees with plaintiffs that it did not address this issue in its March 6 Order, but the simple reason is that the question bears not at all on whether or not the subpoena was procedurally improper or brought in bad faith. The argument remains equally immaterial on reconsideration.

Plaintiffs also claim that sanctions were unwarranted because they ultimately withdrew the subpoena. The Court continues to find this argument, already presented on the underlying motion, to be unpersuasive. First, plaintiffs had numerous opportunities to withdraw the improper subpoena <u>before</u> this Court became involved, but only did so when faced with the possibility of this motion for

---

[2] The Court makes clear, in any event, that its earlier ruling would have stood entirely on other factors unrelated to any violation of the arbitrator's ruling.

5

sanctions. See Order at 3. Second, as defendant's counsel explained at oral argument, by the time plaintiffs withdrew the subpoena he had already put in substantial effort to prepare a motion to quash it. And third, North Fork (the third party that Federal Rule of Civil Procedure 45 is aimed at protecting) was burdened by the subpoena before plaintiffs withdrew it. See Order at 7 n.5.

Finally, plaintiffs have the temerity to fasten upon the Court's - in retrospect overly charitable - characterization of their most recent conduct as making up part of a series of plaintiffs' "mistakes," Order at 8, arguing that "the 'mistaken' issuance of a subpoena does not constitute bad faith" warranting sanctions. See Plaintiffs's Memorandum of Law in Support of Motion for Reconsideration at 1-2. The Court certainly will be more chary about pulling its punches in the future, but by way of explanation, the "mistake" to which the Court referred was the "mistake" in plaintiffs' judgment that led plaintiffs to believe they could engage in such conduct without this Court holding them to account.

In conclusion, the Court adheres to its original finding that plaintiffs issued the subpoena in bad faith, and to its decision, as an exercise of its discretion, see Chambers v. NASCO, Inc., 501 U.S. 32, 50-51, 55 (1991), to award sanctions in the amount of defendant's attorneys' fees and costs incurred in preparing, filing, and arguing the sanctions motion. The Court is in receipt of defendant's calculations of these costs, as well as plaintiffs' objections

thereto, and shortly will enter an order specifying the amount of the award.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       April 22, 2008